FILED
2007 Oct-23  PM 01:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

**SOFFACT 22 PM 4 16**

U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO._____ |
| v. | ) ) | Jury Trial Demanded |
| AMERICAN HOME SHIELD CORPORATION, | ) ) ) | CV-07-P-1928-S |
| Defendant. | ) ) | |

## NATIONWIDE CLASS ACTION COMPLAINT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs Laura and Steven Faught ("the Faughts" or "plaintiffs") bring this nationwide class action, on behalf of themselves and all others similarly situated, against defendant American Home Shield Corporation ("AHS"). Plaintiffs seek redress for AHS's nationwide policy and practice, effectuated by standardized and uniform written sales materials, to breach uniform written insurance contracts and to systematically violate the duty of good faith in investigating and paying insurance claims, all in connection with AHS's refusal to pay claims under its written home warranties.

### I.

### JURISDICTION AND VENUE

1.      Plaintiffs are each adult resident citizens of Jefferson County, Alabama. Defendant AHS is a corporation organized under and existing pursuant to the laws of the state of Delaware, with its principal place of business in Memphis, Tennessee.   The amount in

controversy exceeds $75,000, exclusive of interest and costs. This Court, therefore, has subject matter jurisdiction over this cause pursuant to 28 U.S.C. §1332, because there exists complete diversity of citizenship between plaintiffs and defendant and the amount in controversy exceeds the statutory jurisdictional amount. Venue is proper under 28 U.S.C. §1391, since the events giving rise to plaintiffs' claims occurred within this judicial district and division and since AHS is subject to the personal jurisdiction of this Court.

## II.

## FACTUAL AVERMENTS

### A.

### AHS'S NATIONWIDE PATTERN OF CONDUCT

2.     AHS, a subsidiary of Servicemaster Co., is in the business of selling home warranties to home buyers throughout the United States, typically at the time a house changes hands. AHS markets these warranties using standardized written sales materials (Exhibit A), and the warranties themselves are in the nature of insurance policies embodied in detailed, uniform contractual provisions (Exhibit B).

3.     AHS purports to "warrant" major components and appliance systems of the home against breaking down by reason of age or normal wear and tear. Major components warranted include the home's heating, ventilation, and air conditioning ("HVAC") system. According to AHS sales materials, such components are covered "regardless of age." (Ex. A). Indeed, this is the first item covered in the "Common AHS Home Warranty Questions" contained in the AHS sales materials. (Ex. A). It is the express purpose of the warranty to provide coverage for the breakdown of older components.

2

4.     The written warranty itself provides that HVAC and other components are covered against breakdown, provided only that the components:

   A.     Are located within the confines of the main foundation of the house or attached or detached garage (with the exception of the exterior well pump, air conditioner, and pool and/or spa equipment, if selected);

   B.     Become inoperative due to normal wear and tear;

   C.     Are in good working order on the Effective Date of this contract; and

   D.     Are properly maintained and installed throughout the term of this contract for proper diagnosis.

(Ex. B, ¶ 1) (emphasis supplied).

5.     In direct violation of the express provisions of the contract, the actual policy and practice of AHS is to deny coverage on any components that display any sign of having been improperly cleaned or maintained, at any time in the history of the component, including an alleged failure to clean or maintain that occurred prior to the effective date of the warranty insurance policy. Since the contract requires only that the component be in good working order at the time of the contract's inception and that the policyholder properly maintain it during the term of the warranty contract, it is therefore AHS's usual and customary practice to violate the unambiguous terms of its own contract.

6.     AHS's deliberate and nationwide practice of denying claims in violation of its own contract is in bad faith. It is the very essence of bad faith for an insurance company to deliberately breach the express provisions of its own adhesion contract forms.

7.     There is a provision in the AHS written policy that excludes from coverage damage "caused by . . . failure to clean or maintain." (Exhibit B, ¶ 8) (emphasis supplied). In contravention of this provision, AHS normally and routinely denies coverage where there is any

3

evidence, however minor, that the component is dirty or was not maintained, regardless of whether the failure to clean or maintain was, in fact, the cause of the damage. AHS normally and routinely fails to differentiate between a component that may evidence some signs of having not been properly cleaned and maintained, but which failed for unrelated reasons (e.g., age and normal wear and tear), and a component that in fact failed because of a failure to clean or maintain.

8.     AHS's normal and customary policy and practice of denying claims based on the ¶ 8 exclusion, without regard to whether failure to clean or maintain actually caused the damage, is in bad faith, violating the insurance company's express duty to properly investigate and evaluate claims.

9.     The AHS written warranty insurance policy requires the policyholder to allow a service company chosen by AHS to make the determination of whether there was a failure to clean or maintain a component. These service companies are provided with powerful financial incentives to report that there was a failure to clean or maintain. Service companies chosen and hired by AHS are allowed to charge the policyholder a much higher price to repair or replace the component if coverage is denied than AHS would pay if coverage was granted. In other words, if the service companies report that the damage was caused by ordinary wear and tear, AHS pays them far less for the repair than they could charge the homeowner if coverage is denied and the homeowner was thereby saddled with the bill. AHS then relies exclusively on the report by its own improperly incentivized service companies to make its decision to pay or not pay claims. There is no provision for the insured to contest AHS's decision. Unlike in many casualty insurance policies, there is no provision for having an umpire or other neutral decide disputes

4

relating to claims, nor may the insured request a separate opinion from a service provider of the insured's choosing.

10.     AHS's nationwide policy and practice of relying solely upon service providers who are financially incentivized to deny claims is in bad faith. AHS knows full well that the service companies that it hires are financially motivated to deny claims, and with that knowledge, fails to otherwise investigate or evaluate its policyholders' claims, in violation of the duty of good faith to investigate and evaluate all claims.

**B.**

**FACTS RELATING TO THE NAMED PLAINTIFFS**

11.     Plaintiffs Steven and Laura Faught purchased their home located at 6924 Mountain View Drive NE, Pinson, Alabama 35216, in November 2006. On November 6, 2006, as part of the inspection process associated with the home purchase, the Faughts hired a qualified HVAC service company, Sewell Service Co. of Birmingham, Alabama, to inspect the furnace and air conditioner. The inspector stated that both units were in "good operating condition," but that the "filter needs to be replaced." (Exhibit C). The Faughts had the filter replaced and replaced it regularly thereafter.

12.     The house located at 6924 Mountain View Drive is an older home, and the Faughts were concerned that many of the older components, including the air conditioner, might soon need to be repaired or replaced because of age and ordinary wear and tear. Accordingly, the Faughts purchased a home warranty from AHS, contract number 80424851, with a contract term of December 12, 2006 through December 12, 2007. (Exhibit D). The premium for this twelve-month policy was $419.00. Explicit coverages appearing on the face of the contract

included, among others, "air conditioning." The Faughts timely paid all premiums and otherwise satisfied all conditions precedent to coverage.

13.    Home air conditioners such as the one located at 6924 Mountain View Drive should be cleaned and serviced annually. To ensure the efficient function of the HVAC system, including the furnace and air conditioner, filters should be replaced regularly, typically every three months.    The Faughts replaced the filters regularly and at intervals of less than three months. Since they purchased a house with an air conditioner that was in "good working order," there was no obligation on the Faughts to have the unit cleaned or maintained until a year had elapsed, i.e., until December 2007.

14.    On July 15, 2007, less than seven months after the Faughts purchased their home and entered into the warranty insurance agreement with AHS, the air conditioner unit failed. The air conditioner unit was at this time 31 years old.

15.    A service contractor chosen by AHS, Air Repair LLC of Hueytown, Alabama, made a service call on July 16, 2007, after the Faughts reported the air conditioner failure to AHS. The service contractor determined that the "unit has shorted compressor -- contactor has melted terminal.    Emp. coil is clogged due to not having a proper filter rocking system. Condenser coil is also clogged on 75% of its surface." (Exhibit E).    Based solely on this, AHS made the decision to deny the claim because of an alleged failure to clean and maintain the air conditioner. Air Repair LLC gave the Faughts an estimate of $5,650 to replace the unit.

16.    The next day, the Faughts asked the service contractor who originally inspected the air conditioner prior to purchasing the home, Sewell Service Co., to inspect the air conditioner. Sewell noted that the unit was 31 years old and determined that "system has compressor failure due to age -- compressor shorted internally." (Exhibit F).

6

17.    AHS nevertheless stood by its decision to deny the claim.

18.    AHS's decision to deny the Faughts' claim under the warranty insurance agreement violated the agreement and was in bad faith. AHS's bad faith, as in its conduct towards the plaintiff class members generally, took a number of forms. First, to the extent AHS based its decision on a determination that the air conditioner unit failed because of failure to clean or maintain occurring before the Faughts entered into the warranty agreement with AHS, reliance upon such a ground violates the clear provisions of the contract and is in bad faith. Second, since there was never any determination that the failure of the compressor was caused by any failure to clean or maintain as opposed to the extreme age of the unit, AHS's decision violated the contract and was in bad faith. Finally, AHS's sole reliance upon a contractor who has a financial incentive to deny the claim was in bad faith.

## C.

## CLASS ACTION ALLEGATIONS

19.    Plaintiffs bring this action on their own behalf and on behalf of others similarly situated as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which plaintiff seeks to represent is composed of and defined as:

> All persons who, in the last six years, have purchased a residential home warranty contract from AHS applicable to a house within the United States and, within the original contract term of one year, had a claim denied for repair or replacement of a major home component based on an alleged failure to clean or maintain.

20.    This action has been brought and may properly be maintained as a class action pursuant to the provisions of the Rule 23(a)(1)-(4) and Rule 23(b) of the Federal Rules of Civil Procedure, and satisfies the numerosity, commonality, typicality, adequacy and superiority requirements thereof because:

(a)    The plaintiff class is so numerous that the individual joinder of all members is

7

impracticable under the standard of Fed. R. Civ. P. 23(a)(1).

(b)     Common questions of law and fact exist as to all members of the class, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions which affect only individual members of the class within the meaning of Fed. R. Civ. P. 23(a)(2). These common questions of law and fact include, without limitation:

    (1)     Whether defendant has engaged in a violation of law as alleged herein;

    (2)     Whether defendant by nature of its wrongful conduct is liable for damages and losses resulting from the conduct alleged herein; and

    (3)     Whether the defendant had a policy and uniform practice of breaching its uniform written warranty contracts, as alleged herein;

    (4)     Whether the defendant's policy and practice of breaching its uniform written warranty contracts was done in bad faith.

(c)     Plaintiff's claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The plaintiff and all members of the class sustained damages arising out of defendant' common course of conduct in violation of law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of law as alleged herein.

(d)     The individual and representative plaintiff will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4).

8

Plaintiffs have no interests which are adverse to the interests of the class members. Plaintiffs purchased, like the other class members, a home warranty and had coverage denied based on AHS's pattern and policy of breaching its contracts in bad faith. Plaintiffs are adequate representatives of the class and any subclass as designated by the court. Plaintiffs have retained counsel who have substantial experience and success in the prosecution of class action and consumer litigation.

(e)     The scheme affected all class members similarly. Plaintiffs and all members of the class had claims denied on essentially identical grounds. As a result, the issues which affect plaintiff and the class members in common predominate over those which affect only the interest of any particular class member. Thus, common questions of law and fact greatly predominate over questions of law or fact affecting only individual members of the class.

(f)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of

9

the factual issues of the case. By contrast, the conduct of this action as a class

action presents far fewer management difficulties, conserves the resources of

the parties and the court system, and protects the rights of each class member.

### III.

### CLAIMS FOR RELIEF

### COUNT I

### Breach of Contract

21.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 20.

22.     AHS breached its contractual obligations to plaintiffs and the class.

23.     As a consequence of defendant's breach of contract, plaintiffs and the class members have suffered damages in the form of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress.

### COUNT II

### Bad Faith Failure To Pay An Insurance Claim

24.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 23.

25.     The foregoing conduct by AHS towards plaintiffs and the class members breached the duty of good faith inherent in all insurance contracts, and constitute the tort of bad faith failure to pay an insurance claim.

26.     As a consequence of defendant's bad faith failure to pay, plaintiffs suffered damages in the form of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress.

## IV.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, plaintiffs seek the following relief:

(a)     following appropriate discovery, an order certifying this cause as a nationwide class action pursuant to Fed. R. Civ. P. 23, with appropriate subclasses as the Court deems appropriate, and notice as applicable to the absent class members;

(b)     a declaration that AHS's nationwide pattern and practice of conduct as alleged herein constitutes breach of contract and bad faith with respect to plaintiffs and the class as a whole;

(c)     appropriate injunctive relief requiring AHS to reform its practices and to pay claims pursuant to the provisions of its uniform warranty insurance policies;

(d)     appropriate equitable relief, including requiring AHS at the end of Phase I of the class action to provide an accounting of all transactions and other activity relating to the class members' insurance payments;

(e)     upon a jury verdict, an award of compensatory and punitive damages to compensate plaintiffs and the class members and to punish AHS and deter it and others similarly situated from bad faith conduct with regard to the payment of claims under similar contracts;

(f)     interest;

(g)     costs; and

(h)     such further and different relief as the Court may deem appropriate.

John E. Norris
One of the Attorneys for Plaintiff

11

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
G. Renée Dall (DAL005)
Davis & Norris, LLP
2151 Highland Avenue, Suite 100
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989

Lea Bone (BON017)
Bates & Bone, LLC
2151 Highland Avenue, Suite 100
Birmingham, Alabama 35205
Telephone: 205.930.0097
Facsimile: 205.930.9989

## PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL CLAIMS

OF COUNSEL

## NOTICE TO CLERK: PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:

American Home Shield Corporation
c/o Registered Agent
The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama 36109

12