FILED

2007 Dec-03  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated,** | ) ) ) | **CASE NO. CV-07-P-1928-S** |
| | ) | |
| **Plaintiffs,** | ) | **Jury Trial Demanded** |
| | ) | |
| **A.** | ) | |
| | ) | |
| **AMERICAN HOME SHIELD CORPORATION,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## PLAINTIFFS' OPPOSITION TO DEFENDANT AMERICAN HOME SHIELD'S MOTION TO DISMISS

_____

D. Frank Davis (DAV009)
John E. Norris (NOR041)
G. Renée Dall (DAL005)
Davis & Norris, LLP
2151 Highland Avenue, Suite 100
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989

Lea Bone (BON017)
Bates & Bone, LLC
2151 Highland Avenue,
Suite 100
Birmingham, Alabama 35205
Telephone: 205.930.0097
Facsimile: 205.930.9989

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    AHS Patently Violates The Terms Of Its Home
        Warranty Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    AHS's Decision To Deny The Plaintiffs' Claim Under
        The Warranty Insurance Agreement Violated The
        Agreement And Was In Bad Faith . . . . . . . . . . . . . . . . . . . . . . . 7

    C.    No Justification Exists For AHS Violating Its Home
        Warranty Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Dismissal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.    Any Suggestion On The Part Of The Defendant That
        Plaintiffs Need To Produce Evidence Of The
        Superiority Of Proceeding As A Class Action At This
        Stage Of The Litigation Is Patently Wrong.. . . . . . . . . . . . . . 12

    C.    Plaintiff's Class Allegations Are Entirely Adequate . . . . . . . . 13

        1.    The Class Is So Numerous That Joinder Of All
                Members Is Impracticable . . . . . . . . . . . . . . . . . . . . . . 16

        2.    There Are Questions of Law And Fact Common
                To The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        3.    The Claims And Defenses Of The
                Representative Plaintiffs Are Typical Of The
                Claims And Defenses Of The Class . . . . . . . . . . . . . . 19

        4.    The Representative Plaintiffs Will Fairly
                And Adequately Protect The Interest Of The Class . . . 20

5.    Common Issues Predominate Over Individual
      Ones, And The Class Device Is Far
      Superior To Individual Determinations . . . . . . . . . . . .21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAURA FAUGHT and STEVEN** | ) | |
| **FAUGHT, on behalf of themselves** | ) | |
| **and all others similarly situated,** | ) | **CASE NO. CV-07-P-1928-S** |
| | ) | |
| **Plaintiffs,** | ) | **Jury Trial Demanded** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMERICAN HOME SHIELD** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT AMERICAN HOME SHIELD'S MOTION TO DISMISS

Plaintiffs Laura Faught and Steven Faught submit the following in Opposition to the Motion to Dismiss filed by Defendant American Home Shield Corporation (hereinafter "AHS").

## I.

## INTRODUCTION

Defendant's Motion to Dismiss asks this Court to (a) allow a nationwide corporation that is in the business of selling home warranties to breach uniform written insurance contracts and to systematically violate the duty of good faith in investigating and paying insurance claims by refusing to

pay claims under its written home warranties; (b) deny recovery for damages suffered as a direct result of AHS's failure to pay valid claims; (c) ignore the clear factual allegations in the complaint supporting every element of Plaintiffs' claims for relief; and (d) turn Rule 23 on its head by denying class action status to a case that cries out for class treatment, classwide injunctive relief, and class damages.       Defendant's Motion completely disregards the procedural role of such a filing – the only issue in a Rule 12(b)(6) Motion to Dismiss is whether the allegations in Plaintiffs' complaint sufficiently state a claim for relief.  Defendant lamely attempts to conflate this limited function with that of a response to an as-of-yet-unfiled Motion for Class Certification, as made evident by the Defendant framing the "statement of issue" as "[w]hether Plaintiffs Have Successfully Demonstrated that this Cause is Due to be Certified by the Court as a Class Action Lawsuit."[1]  Defendant's Brief, p. 3.  Indeed, Defendant offers *no argument* in support of the contention that on the face of Plaintiffs' Complaint there exist no set of facts that would entitle them to relief.  Defendant's sole contention is that class certification should be denied and ergo the Plaintiffs' complaint should be dismissed.  See, e.g. Def. Br. pp. 6, 24.

        Notwithstanding Defendant's procedurally improper endeavor, it is

---

[1] On November 28, 2007, the Defendant withdrew its jurisdictional challenge set out in its

clear that Plaintiffs' complaint readily satisfies the "exceedingly low" dismissal standard, and thus Defendant's Motion to Dismiss is due to be denied based on the facts, the law, and the equities.

## II.

## RELEVANT FACTS

The following statement of facts, as set forth in Plaintiffs' Nationwide Class Action Complaint, establishes the sufficiency of Plaintiffs' allegations:

### A.    AHS Patently Violates The Terms Of Its Home Warranty Contracts.

AHS, a subsidiary of Servicemaster Co., is in the business of selling home warranties to homebuyers throughout the United States, typically at the time a house changes hands.    (Nationwide Class Action Complaint (hereinafter "Compl.") ¶ 2).    AHS markets these warranties using standardized written sales materials, and the warranties themselves are in the nature of insurance policies embodied in detailed, uniform contractual provisions.  (Id. and Exhibits A and B.)

AHS purports to "warrant" major components and appliance systems of the home against breaking down by reason of age or normal wear and tear.

_____

initial Motion to Dismiss, and thus that argument is not addressed here.

(Compl. ¶ 3.)   Major components warranted include the home's heating, ventilation, and air conditioning ("HVAC") system.  (Id.)  According to AHS sales materials, such components are covered "no matter what age."   (Ex. A). Indeed, this is the first item covered in the "Common Warranty Questions" contained in the AHS sales materials.  (Id.).  It is the express purpose of the warranty to provide coverage for the breakdown of older components. (Compl. ¶ 3.)

The written warranty itself provides that HVAC and other components are covered against breakdown, provided only that the components:

> A.   Are located within the confines of the main foundation of the house or attached or detached garage (with the exception of the exterior well pump, air conditioner, and pool and/or spa equipment, if selected);

> B.   Become inoperative due to normal wear and tear;

> C.   Are in good working order on the Effective Date of this contract; and

> D.   Are properly maintained and installed throughout the term of this contract for proper diagnosis.

(Compl. ¶ 4 and Ex. B, ¶ A(1)(a-d)) (emphasis supplied)).

In direct violation of the express provisions of the contract, the actual policy and practice of AHS is to deny coverage on any components that display any sign of having been improperly cleaned or maintained, at any time

in the history of the component, including an alleged failure to clean or maintain that occurred prior to the effective date of the warranty insurance policy. (Compl. ¶ 5.) Since the contract requires only that the component be in good working order at the time of the contract's inception and that the policyholder properly maintain it during the term of the warranty contract, it is therefore AHS's usual and customary practice to violate the unambiguous terms of its own contract. (Id.)

AHS's deliberate and nationwide practice of denying claims in violation of its own contract is in bad faith. (Compl. ¶ 6.) It is the very essence of bad faith for an insurance company to deliberately breach the express provisions of its own adhesion contract forms. (Id.)

There is a provision in the AHS written policy that excludes from coverage damage "caused by . . . failure to clean or maintain." (Compl. ¶ 7 and Exhibit B, ¶ G(8)) (emphasis supplied).) In contravention of this provision, AHS normally and routinely denies coverage where there is any evidence, however minor, that the component is dirty or was not maintained, regardless of whether the failure to clean or maintain was, in fact, the cause of the damage. (Compl. ¶ 5.) AHS normally and routinely fails to differentiate between a component that may evidence some signs of having not been properly cleaned and maintained, but which failed for unrelated reasons (e.g.,

age and normal wear and tear), and a component that in fact failed <u>because of</u> a failure to clean or maintain.  (<u>Id</u>.)

AHS's normal and customary policy and practice of denying claims based on the ¶ G(8) exclusion, without regard to whether failure to clean or maintain actually caused the damage, is in bad faith, violating the insurance company's express duty to properly investigate and evaluate claims.  (Compl. ¶ 8.)

The AHS written warranty insurance policy requires the policyholder to allow a service company chosen by AHS to make the determination of whether there was a failure to clean or maintain a component.  (Compl. ¶ 9). These service companies are provided with powerful financial incentives to report that there was a failure to clean or maintain.  (<u>Id</u>.)  Service companies chosen and hired by AHS are allowed to charge the policyholder a much higher price to repair or replace the component if coverage is denied than AHS would pay if coverage was granted.  (<u>Id</u>.)  In other words, if the service companies report that the damage was caused by ordinary wear and tear, AHS pays them far less for the repair than they could charge the homeowner if coverage is denied and the homeowner was thereby saddled with the bill.  (<u>Id</u>.) AHS then relies exclusively on the report by its own improperly incentivized service companies to make its decision to pay or not pay claims.  (<u>Id</u>.)  There

is no provision for the insured to contest AHS's decision.  (Id.)  Unlike in many casualty insurance policies, there is no provision for having an umpire or other neutral decide disputes relating to claims, nor may the insured request a separate opinion from a service provider of the insured's choosing.  (Id.)

AHS's nationwide policy and practice of relying solely upon service providers who are financially incentivized to deny claims is in bad faith. (Compl. ¶ 10.)  AHS knows full well that the service companies that it hires are financially motivated to deny claims, and with that knowledge, fails to otherwise investigate or evaluate its policyholders' claims, in violation of the duty of good faith to investigate and evaluate all claims.  (Id.)

**B.      AHS's Decision To Deny The Plaintiffs' Claim Under The Warranty Insurance Agreement Violated The Agreement And Was In Bad Faith.**

Plaintiffs Steven and Laura Faught purchased their home located at 6924 Mountain View Drive NE, Pinson, Alabama 35216, in November 2006. (Compl. ¶ 11.)  On November 6, 2006, as part of the inspection process associated with the home purchase, the Faughts hired a qualified HVAC service company, Sewell Service Co. of Birmingham, Alabama, to inspect the furnace and air conditioner.  (Id.)  The inspector stated that both units were in "good operating condition," but that the "filter needs to be replaced."  (Compl.

¶ 11 and Exhibit C).  The Faughts had the filter replaced and replaced it regularly thereafter.  (Compl. ¶ 11.)

The house located at 6924 Mountain View Drive is an older home, and the Faughts were concerned that many of the older components, including the air conditioner, might soon need to be repaired or replaced because of age and ordinary wear and tear.  (Compl. ¶ 12.)  Accordingly, the Faughts purchased a home warranty from AHS, contract number 80424851, with a contract term of December 12, 2006 through December 12, 2007.  (Id. and Exhibit D).  The premium for this twelve-month policy was $419.00.  (Compl. ¶ 12.)  Explicit coverages appearing on the face of the contract included, among others, "air conditioning."  (Id.)  The Faughts timely paid all premiums and otherwise satisfied all conditions precedent to coverage.  (Id.)

Home air conditioners such as the one located at 6924 Mountain View Drive should be cleaned and serviced annually.  (Compl. ¶ 13.)  To ensure the efficient function of the HVAC system, including the furnace and air conditioner, filters should be replaced regularly, typically every three months.  (Id.)  The Faughts replaced the filters regularly and at intervals of less than three months.  (Id.)  Since they purchased a house with an air conditioner that was in "good working order," there was no obligation on the Faughts to have

the unit cleaned or maintained until a year had elapsed, i.e., until December 2007.  (Id.)

On July 15, 2007, less than seven months after the Faughts purchased their home and entered into the warranty insurance agreement with AHS, the air conditioner unit failed.  (Compl. ¶ 14.)  The air conditioner unit was 31 years old at this time.  (Id.)

A service contractor chosen by AHS, Air Repair LLC of Hueytown, Alabama, made a service call on July 16, 2007, after the Faughts reported the air conditioner failure to AHS.  (Compl. ¶ 15.)  The service contractor determined that the "unit has shorted compressor – contactor has melted terminal.  Emp. coil is clogged due to not having a proper filter rocking system.  Condenser coil is also clogged on 75% of its surface."  (Id. and Exhibit E).  Based solely on this, AHS made the decision to deny the claim because of an alleged failure to clean and maintain the air conditioner. (Compl. ¶ 15.)  Air Repair LLC gave the Faughts an estimate of $5,650 to replace the unit.  (Id.)

The next day, the Faughts asked the service contractor who originally inspected the air conditioner prior to purchasing the home, Sewell Service Co., to inspect the air conditioner.  (Compl. ¶ 16.)  Sewell noted that the unit was 31 years old and determined that "system has compressor failure due to age --

compressor shorted internally." (Id. and Exhibit F).  AHS nevertheless stood

by its decision to deny the claim.  (Compl. ¶ 17.)

AHS's decision to deny the Faughts' claim under the warranty

insurance agreement violated the agreement and was in bad faith.  (Compl. ¶

18.)  AHS's bad faith, as in its conduct towards the Plaintiff class members

generally, took a number of forms.  (Id.)  First, to the extent AHS based its

decision on a determination that the air conditioner unit failed because of

failure to clean or maintain occurring before the Faughts entered into the

warranty agreement with AHS, reliance upon such a ground violates the clear

provisions of the contract and is in bad faith.  (Id.)  Second, since there was

never any determination that the failure of the compressor was caused by any

failure to clean or maintain as opposed to the extreme age of the unit, AHS's

decision violated the contract and was in bad faith.  (Id.)  Finally, AHS's sole

reliance upon a contractor who has a financial incentive to deny the claim was

in bad faith.  (Id.)

### C.   No Justification Exists For AHS Violating Its Home Warranty Agreement.

There is no justification for AHS holding itself out as warrantying

major components and appliance systems of the home against breaking down

by reason of age or normal wear and tear, yet in practice denying coverage on

any components that display any sign of having been improperly cleaned or maintained.  (See Compl. ¶¶ 3, 5.)  As a result of this practice, Plaintiffs and the putative class members have suffered damages in the form of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress.  (See Compl. ¶¶ 23, 26.)  Unless a class is certified, an injunction issued, and the economic justification removed, it seems clear the conduct by this defendant will continue to be business as usual – profiting from the sale of home warranties to customers while routinely denying the customers' valid claims.

## III.

## ARGUMENT

Defendant has filed a motion to dismiss Plaintiffs' Complaint in its entirety, yet makes no argument that the complaint fails to give rise to any claim for relief.  Instead, Defendant attempts to pervert the procedural process by arguing against class certification and extrapolating from that argument that Plaintiffs' Complaint should be dismissed.  As we demonstrate below, Defendant is in error procedurally, legally, and factually.

### A.    Dismissal Standard.

Motions to dismiss for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6) are "viewed with disfavor," and, accordingly,

dismissals for failure to state a claim are "rarely granted." McCloud v. Homeside Lending, 309 F.Supp.2d 1335, 1338 (N.D. Ala. 2004) (citing Brooks v. Blue Cross and Blue Shield of Florida, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted), Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968)).   In deciding a motion to dismiss, the court must accept as true the allegations of the complaint and draw reasonable inferences in the Plaintiffs' favor. McCloud, 309 F.Supp.2d at 1337-1338 (N.D. Ala. 2004) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), Brooks, 116 F.3d at 1369, Quality Foods de Centro America, S.A. v. Latin America Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983)).  A court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon, 467 U.S. at 73.

"Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are 'exceedingly low.'" McCloud, 309 F.Supp.3d at 1338 (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985)).

**B.  Any Suggestion On The Part Of The Defendant That Plaintiffs Need To Produce Evidence Of The Superiority Of Proceeding As A Class Action At This Stage Of The Litigation Is Patently Wrong.**

Contrary to Defendant's implication otherwise, it is procedurally improper for Plaintiffs to bear the burden of having to produce evidence to counter a Motion to Dismiss under Rule 12(b)(6). See, e.g., Brooks v. Blue Cross and Blue Shield of Florida, 116 F.3d 1364, 1368 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."). Defendant's citation to Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 722 (11th Cir. 1987), for the proposition that "a court may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted," Def. Br. p. 5, is illustrative of the problem running throughout Defendant's Motion – the Court is not considering a motion for class certification, but rather a motion to dismiss, which is procedurally an entirely different beast. While Plaintiffs will eventually "bear the burden of establishing the propriety of Fed. R. Civ. P. 23 ("Rule 23") class certification," Def. Br. p. 5, that burden is not on the Plaintiffs at this juncture. Rather, Plaintiffs' burden in surviving a motion to dismiss is to simply satisfy the "exceedingly low" threshold of stating a claim upon which relief may be granted.

## C.    Plaintiff's Class Allegations Are Entirely Adequate.

Defendant spent the entirety of their brief, which was couched as a Motion to Dismiss, on untimely and inappropriate attacks on the merits of

13

Plaintiffs' class action claims.  Treating Plaintiffs' Complaint as if it were the last piece of paper Plaintiffs get to file on the issue of class certification, Defendant has written its brief in opposition to class certification, making arguments that wrongly conflate what Plaintiffs must prove to proceed as a class action with Defendant's view of the underlying facts of the case. Defendant, of course, is premature.

Defendant, for example, claims that the allegations of the complaint, standing alone, fail to identify a class that has been demonstrated to be "easily ascertainable."  Def. Br. p. 8.  Similarly, Defendant argues that the allegations of the Complaint, without more, fail to establish that the class is so numerous as to make joinder of all the individual class members impractical, Def. Br. p. 8, a requirement class action lawyers shorthand as "numerosity."   This defense argument simply says, "Plaintiffs didn't say the number of potential plaintiffs, so they didn't say enough about numerosity."   In a like vein, Defendant argues that the Complaint's class allegations should be dismissed because the Complaint has not shown "the commonality requirement [to be] met," Def. Br. p. 10, it "does not adequately demonstrate the [Plaintiffs'] claims here rise to the level needed to establish typicality which is sufficient to satisfy the requirements of Rule 23(a)", Def. Br. p. 11, it "does not demonstrate [adequacy of representation] to a sufficient degree[,]" Def. Br.

p.12, and other such protests about the inadequacy and lack of factual detail contained in Plaintiffs' Complaint.

However, *not one single case* cited by Defendant involves a dismissal of a class action complaint for failure to state a claim.  Indeed, all but two of Defendant's cases involve a full-fledged class certification hearing where evidence was presented by the parties on the issues of class certification.  (The two exceptions do not bolster the Defendant's argument: in the first, <u>Earnest v. General Motors Corp.</u>, 923 F.Supp. 1469 (N.D.Ala. 1996), Def. Br. p. 8, the court granted the defendants' motion to strike or dismiss the class allegations because it found the class definition, which included those people with car engines "such as those in the said vehicles of the named Plaintiffs," so broad, amorphous, and vague that it failed to meet the minimum standard of definiteness.  The court nonetheless allowed the plaintiffs thirty days to amend their complaint to adequately describe the class.  In the second exception, <u>East Texas Motor Freight System Inc. v. Rodriguez</u>, 431 U.S. 395 (1977), Def. Br. p. 10, even though the plaintiffs never formally moved for class certification, it was only after the trial was over and plaintiffs had only presented evidence of individual, rather than classwide, damages that the court dismissed the class allegations.)  Thus, Defendant's entire argument that the Court should peremptorily dismiss Plaintiffs' complaint short of a class

certification hearing is without any basis in the law, and contravenes the authority Defendant cites in its brief.

Although immaterial to the pending motion at hand, Plaintiffs feel compelled to briefly address herein Defendant's specious argument that Plaintiffs' class allegations should be dismissed.

### 1.    The Class Is So Numerous That Joinder Of All Members Is Impracticable.

The standard for whether numerosity is satisfied is not high.  The test under Rule 23(a)(1) is simply whether there are so many potential class members that joinder is impracticable.  "'Impracticable' does not mean 'impossible'; plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class." In re HealthSouth Corp. Sec. Litig., 213 F.R.D. 447, 457 (N.D.Ala. 2003) (citations omitted).  The Eleventh Circuit has held that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers varying according to other factors." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted) (*cert. denied* 479 U.S. 883, 107 S.Ct. 274 (1986).

AHS is a nationwide company that is in the business of selling home warranties to homebuyers throughout the United States.   According to

Defendant's website, AHS "[s]ervic[es] 49 states and 1.2 million homeowners," and "is the nation's . . . largest home warranty company . . . ." (Ex. G.)  While it is true that Plaintiffs did not allege a particular number of class members in the Complaint, even without the benefit of discovery it borders on the incredible that with over a million home warranty contracts potentially at issue, Plaintiffs will be unable to satisfy the very low threshold for showing that joinder of individual class members is impracticable within the meaning of Rule 23(a)(1).  See, e.g. Hill v. Butterworth, 170 F.R.D. 509 (N.D. Fla. 1997), vacated on other grounds, 147 F.3d 1333 (11th Cir.1997) (finding 30 class members satisfies numerosity); Hi-Co Enterprises, Inc. v. ConAgra, Inc., 75 F.R.D. 628 (D.C. Ga. 1976) (finding 45 class members satisfies numerosity requirement); 7A Wright, Miller & Kane, Federal Practice and Procedure § 1762 nn.16-53 (numerosity satisfied by classes numbering from just a few to millions of class members).

The fact that Defendant literally makes no argument to support its contention that the class as defined in Plaintiffs' Complaint is not easily ascertainable reinforces that the class definition, namely:

> All persons who, in the last six years, have purchased a residential home warranty contract from AHS applicable to a house within the United States and, within the original contract term of one year, had a claim denied for repair or replacement of a major home component based on an alleged failure to clean or

maintain[, ]

is manifestly clear on its face.  (Compl. ¶ 19.)

### 2.    There Are Questions of Law And Fact Common To The Class.

"Rule 23(a) does not require that all the questions raised by the dispute be common."  Cox, 784 F.2d at 1557.  Rather, as Rule 23(a) explicitly states, a court need only find that there "exists at least one issue affecting all or a significant number of proposed class members" to satisfy the commonality requirement."  Kreuzfeld A.G. v. Carnehammar, 138 F.R.D. 594, 599 (S.D.Fla.1991); see In re Healthsouth Corp. Sec. Lit., 213 F.R.D. 447, 457 (N.D.Ala. 2003) ("This minimal standard merely requires an identity of some factual or legal matter among members of the class.") (citing Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 456 (11th Cir.1996)); see also 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3.10 (4th ed. 2005).  The permissibility of a class action is *not* defeated if separate issues of law and fact exist, particularly regarding damages.  Klay v. Humana, Inc., 382 F.3d 1241, 1259 (11th Cir. 2004) ("numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.") (citation omitted).

As detailed in Plaintiffs' Complaint, numerous critical common

questions of law and fact exist, and, indeed, predominate in this case, including: whether Defendant has engaged in breach of contract and/or bad faith failure to pay an insurance claim; whether Defendant by nature of its wrongful conduct is liable for damages and losses resulting from this conduct; whether Defendant had a policy and practice of breaching its uniform written warranty contracts; and whether Defendant's policy and practice of breaching its uniform written warranty contracts was done in bad faith.  Thus, Rule 23(a)(2)'s requirement of commonality is readily satisfied.

### 3. The Claims And Defenses Of The Representative Plaintiffs Are Typical Of The Claims And Defenses Of The Class.

Typicality, as this requirement is commonly known, primarily directs the district court to focus on whether named representatives' claims have "the same essential characteristics as the claims of the class at large."  Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004) (*cert. denied* 546 U.S. 960, 126 S.Ct. 478 (2005) (citation omitted).  "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984) (*cert. denied* 470 U.S. 1004, 105 S.Ct. 1357 (1985).  Thus, "[t]o be typical, a representative's claim need not always involve the same facts or law,

provided there is a common element of fact or law." Senter v. Gen. Motors Corp., 532 F.2d 511, 525, n.31 (6th Cir. 1976) (*cert. denied* 429 U.S. 870, 97 S.Ct. 182 (1976)); see also 7A Charles A. Wright et al, Federal Practice and Procedure 3d. § 1764 (1986) ("the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class.").

In this case, there is no doubt that Plaintiffs' claims are typical of the proposed class – Laura and Steven Faught both suffered damages in the form of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress as a consequence of Defendant's failure to pay a valid claim for repair or replacement of a major home component based on an alleged failure to clean or maintain within the original contract term of one year. Likewise, the proposed class sustained damages in the form of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress as a consequence of Defendant's failure to pay a valid claim for repair or replacement of a major home component based on an alleged failure to clean or maintain within the original contract term of one year. Therefore, the typicality requirement is satisfied in this case.

**4.    The Representative Plaintiffs Will Fairly And**

**Adequately Protect The Interest Of The Class.**

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  As detailed in Plaintiffs' Complaint, Plaintiffs have no interests that are adverse to the interests of the class members.  Plaintiffs, like the other class members, purchased a home warranty and had coverage denied based on AHS's pattern and policy of breaching its contracts in bad faith.  Plaintiffs are adequate representatives of the class and any subclass as designated by the court.  Plaintiffs have retained counsel who have substantial experience and success in the prosecution of class action and consumer litigation.

Thus, the requirement of adequacy of representation is satisfied.

> **5.      Common Issues Predominate Over Individual Ones, And The Class Device Is Far Superior To Individual Determinations.**

In their Motion For Class Certification, Plaintiffs will demonstrate that common issues predominate over individual issues, and that the class device is superior to individual adjudications, pursuant to Rule 23(b)(3).   For purposes of this Opposition to Defendant's Motion to Dismiss, it is enough to point out to the Court that the key issue in this case – whether AHS has a pattern and practice of denying warranty claims for lack of maintenance *prior* to the putative plaintiffs' entering into a contractual relationship with AHS –

is a very narrow one, with the scheme affecting all class members similarly. Plaintiffs and all members of the class had their claims denied on essentially identical grounds. As a result, the issues that affect Plaintiffs and the class members in common predominate over those that affect only the interest of any particular class member. Thus, common questions of law and fact greatly predominate over questions of law or fact affecting only individual members of the class.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the factual issues of the case. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves

the resources of the parties and the court system, and protects the rights of each class member.

## IV.

## CONCLUSION

Based on the fact that Defendant offers no argument for why Plaintiffs' complaint should be dismissed (and the arguments Defendant makes regarding class certification are feeble, at best), it is clear that AHS's Motion to Dismiss should be denied out of hand.  Plaintiffs respectfully request this Court to deny Defendant AHS's Motion to Dismiss, and to grant Plaintiffs such other, further, or different relief to which they may show themselves entitled.

Respectfully submitted this the 3rd day of December, 2007.

/s/ G. Renée Dall_____
G. Renée Dall
One of the Attorneys for Plaintiff

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
G. Renée Dall (DAL005)
Davis & Norris, LLP
2151 Highland Avenue, Suite 100
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989

Lea Bone (BON017)
Bates & Bone, LLC
2151 Highland Avenue, Suite 100
Birmingham, Alabama 35205
Telephone: 205.930.0097
Facsimile: 205.930.9989

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this the 3rd day of December 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert C. Black, Jr.
Doy Leale McCall, III
Hill, Hill, Carter, Franco, Cole & Black, P.C.
425 South Perry Street
P.O. Box 116
Montgomery, Alabama 36101-0116

/s/ G. Renée Dall_____
OF COUNSEL