FILED

2008 Sep-11  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.: 2:07-CV-1928-RDP** |
| **v.** | ) ) | |
| **AMERICAN HOME SHIELD CORPORATION,** | ) ) ) | |
| **Defendant.** | | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs

Steven and Laura Faught ("plaintiffs" or "the Faughts") submit the following,

along with separately filed evidentiary submissions, in support of their Motion For

Class Certification filed contemporaneously herewith.  Plaintiffs seek to certify a

nationwide class of similarly situated individuals as to the claim of breach of

contract against defendant American Home Shield Corporation ("defendant" or

"AHS").

# I.

## SUMMARY

Plaintiffs seek certification of a narrowly-defined, ascertainable class of approximately 100,000 individuals claiming damages from defendant's uniform conduct of breaching a single contract provision contained in every one of defendant's form home warranty insurance contracts.  This is not a fraud or deceptive advertising case involving individual issues of reliance.  The heart of this class action is the straightforward application of unambiguous and uniform form contract language, making it ideal for Rule 23 class certification.

Indeed, the case is so straightforward it may be explained in just a few words.  Steven and Laura Faught bought an older home with aging appliances and systems, including a central air conditioning unit that was over 30 years old.  Because of the age of the house and its components, the Faughts decided to purchase a home warranty from defendant American Home Shield.  Based on AHS's advertised claim that it would cover failing home components "regardless of age," the Faughts felt that an AHS warranty would provide them with some security against the unpleasant possibility of a large and unexpected cash expense if one of their recently-purchased home's aging systems failed.

Like 100,000 other AHS customers, however, the Faughts soon found out that an AHS home warranty provides only false security.  The Faughts bought the

AHS home warranty because they feared for the worst -- that their central air conditioning unit would fail.  The worst happened seven months into the one-year warranty contract term.  Despite a contract provision that clearly and unambiguously required only that the Faughts maintain the components of their home *during the contract term*, AHS refused to pay to repair or replace the Faughts' broken air conditioner because of "failure to clean or maintain."  An air-conditioning unit is only required to be "cleaned and maintained" once a year.  Accordingly, the Faughts and the 100,000 similarly-situated class members had their warranty claims denied because AHS claimed that someone failed to clean and maintain the covered home component *at some time prior to the commencement of the contract term*.  Such denials are a clear breach of the contract provision requiring only that maintenance be performed "during the contract term."

The entire case is really just that simple.  The uniform contract language contained in all 100,000 class members' home warranties plainly provides coverage of a component as long as it is properly maintained during the contract term.  In the case of the Faughts and all 100,000 class members, however, AHS denied coverage for failure to clean or maintain *during the first one-year warranty term*, meaning that AHS necessarily based the denial on an alleged failure to clean or maintain the component at some time *before* the commencement of the contract

term.

Because each class member was party to a home warranty contract with identical language and had his or her claim denied by this defendant during the first year of warranty coverage based on a failure to clean or maintain a covered component, each is similarly situated for commonality purposes and common issues by far predominate over individual issues, which relate solely to the amount of damages to which each individual class member is entitled. Typicality exists because the Faughts were treated in the exact same way as the rest of the class. Numerosity is not an issue here -- defendant admits the putative class numbers "some 100,000." The Faughts will fairly and adequately represent the class and have retained experienced attorneys with years of experience in class action litigation. The size of this class and the paucity of individual issues make the class device far superior to 100,000 individual actions. We flesh out below all of these reasons this case should be certified as a nationwide class action.

## II.

## FACTS

### A.    The Faughts Were Denied Coverage For Failure To Clean And Maintain During The Initial Contract Term.

Plaintiffs Steven and Laura Faught purchased their home located at 6924

Montain View Drive NE, Pinson, Alabama, in November 2006.  (Tab A,[1] Faught

Aff. ¶ 2).   The house was an older one, and the Faughts were concerned that many

of the older components, including the central air conditioner, might soon need to

be repaired or replaced because of age and ordinary wear and tear.  (Tab A, Faught

Aff. ¶ 3).  Accordingly, the Faughts purchased a home warranty from AHS,

contract number 80424851, with a contract term commencing on December 12,

2006 and ending on December 12, 2007.  (Tab A, Faught Aff. ¶ 4 and Ex. A

thereto).  The Faughts paid a premium of $419.00 for this coverage.  (Id.).   The

contract gave explicit coverage for "air conditioning."  (Id.).

        Typically both air conditioner companies and home warranty companies like

AHS recommend that an air conditioner unit be serviced – cleaning and

maintenance – on an annual basis.  (Tab B).  On July 15, 2007, less than seven

months after the Faughts purchased their home and entered into the warranty

contract with AHS, the air conditioner unit failed.  (Tab A, Faught Aff. ¶ 5).  The

air conditioner unit at this time was 31 years old.  (Id.).

        The Faughts immediately reported the failure of the air conditioner to AHS.

(Tab A, Faught Aff. ¶ 6).  AHS chose a service contractor, Air Repair LLC of

Hueytown, Alabama, which made a service call at the Faughts home on July 16,

---

[1]References to "Tab" numbers refer to the Evidentiary Materials In Support of Plaintiffs' Motion
For Class Certification, filed contemporaneously herewith.

2007.  (Tab A, Faught Aff. ¶¶ 6-7).  Air Repair determined that the unit failed

because it had not been properly cleaned and maintained, and based on this, AHS

denied the claim and refused to repair or replace the failed air conditioner unit.

(Tab A, Faught Aff. ¶¶ 7-8).

The AHS form warranty contract provides, in part:

**A.  Coverage**

1.  During the coverage period, AHS will arrange for an AHS
authorized service contractor (Service Contractor) to repair or replace
the system and appliances stated as covered in accordance with the
following terms and conditions of this contract so long as the systems
and appliances:

> A.      Are located within the confines of the main
> foundation of the home or attached or detached garage
> (with the exception of the exterior well pump, air
> conditioner, and pool and/or spa equipment, if selected;
>
> B.      Become inoperative due to normal wear and tear;
>
> C.      Are in good working order on the Effective Date
> of the contract (as defined below); and
>
> D.      ***Are properly maintained and installed
> throughout the <u>term of this contract</u> for proper
> diagnosis.***

(Tab A, Faught Aff. Ex. A).  There is no provision in the contract that authorizes

AHS to deny claims based on failure to clean or maintain a covered component

before the commencement of the contract term.  (<u>Id.</u>).  Additionally, neither the

foregoing nor anything else in the contract conditions coverage on the age of the

system or appliance.  Indeed, AHS regularly advertises that it will cover components "no matter what age."  (Tab C, Davis Aff. Ex.A).  For example, in advertising materials purporting to answer "frequently asked questions," AHS states:

> Q. My system or appliance is over 10 years old. Is it covered?
>
> A.    Yes. Your AHS Home Warranty covers your home systems and appliances no matter what age.

(Id.).

## B.    Discovery Reveals That "Some 100,000" AHS Customers Also Had Claims Denied During The Initial Contract Term For Failure To Clean Or Maintain, and That The Class Is Easily Ascertainable

During discovery, AHS has produced  pages of documents and plaintiffs have conducted depositions of individuals knowledgeable as to the generation and maintenance of those documents, including documents maintained in AHS's massive electronic database.  Based on the knowledge gained during these depositions, plaintiffs directed a single interrogatory to AHS narrowly seeking information concerning the class.  (Tab D).  Specifically, for the period commencing on January 1, 2001 to date, plaintiffs requested all information maintained in AHS's database concerning situations where AHS denied claims based on the need to repair or replace a covered component where the denial occurred in the *first* contract term based on an alleged failure to clean or maintain

the component.  This is narrower than *all* denials based on failure to clean or maintain as it excludes denials that took place during a renewal term – that is, more than one year after coverage began.

AHS responded by confirming that the "entire class" in this case numbers "some 100,000." (Tab D).  AHS objected to providing all information concerning all 100,000 denials, instead producing a spreadsheet purporting to give detailed information as to a random sample of 336 denials nationwide. (Tab. D).  The specifics set out in the spreadsheet confirmed that almost all of the denials made during the first year of the warranty for failure to clean or maintain were components that are very expensive to repair or replace, primarily air conditioners, heat pumps, and to a lesser extent, furnaces.  Of the 336 presented by way of sample, 85% were air conditioners and other HVAC components.  (Tab D).

AHS was able to present this information and quantify the size of the class because all of the information concerning these claims during the class period resides in the Oracle database maintained by AHS.  Defendant's head of information technologies testified:

> Q.    Would it be possible to construct a search of the Oracle database for the period of contract start dates after January 1, 2001, to date, and pull out those records where customers had claims during their original contract term, first contract term?
>
> A.    Yes.
>
> Q.    And so, would you also be able to further narrow that

search to customers whose contract start dates on or after January 1, 2001, to date, who had claims denied during their first contract term for a particular reason of denial?

      A.    Yes.

(Tab E, Yanishevski Depo. pp. 43-44).

* * *

      Q.    And would it be possible to go into the Oracle database and execute a search to pull up all of the examples where customers have been --- had had that particular field denial of reason clicked off as, say, maintenance?

      A.    Yes.

(Tab E, Yanishevski Depo. p. 37).  Accordingly, the identity of each class member in this case may be ascertained through a simple computer search of the data residing in AHS's computers.

## C.    Plaintiffs Have Retained Counsel With Decades Of Experience Successfully Litigating Class Actions

Plaintiffs have retained D. Frank Davis of the law firm Davis & Norris LLP, Birmingham, Alabama, as counsel in this case, and propose his appointment as class counsel pursuant to Rule 23(g).  Mr. Davis has devoted a significant portion of his thirty (30) plus year legal career to mass tort and class action litigation.  (Tab B, Davis Aff. ¶ 2).  He has represented both plaintiffs and defendants in many different class actions.  (Id.).  He has settled class actions and tried class actions. (Id.).  Mr. Davis is a member of the Alabama and Tennessee bars and he is currently admitted to practice in the United States Supreme Court, the Fifth and

Eleventh Circuit Courts of Appeals, and each federal district court in Alabama. (Id.).   He has been admitted, at one time or another, on a *pro hac vice* basis in federal or state courts in most of the states in the country. (Id.).

Some of the more recent class action and mass tort cases where Mr. Davis was either lead counsel or co-lead counsel include:

a.    <u>Williams v. America Online, Inc.</u>:  Represented the defendant in the purported national class action.

b.    <u>Leonard v. National Rent-A-Car</u>:  Represented the defendant in the purported national class action.

c.    <u>Hammack v. Quaker State Corporation</u>:  Represented the Plaintiffs.  The case was certified as a national class action and concluded with a multi-million dollar settlement.

d.    <u>Singleton v. Splitfire, Inc.</u>:  Represented the Plaintiffs.  The case was certified as a national class action and concluded with a multi-million dollar settlement.

e.    <u>Wilson v. Dahberg</u>: Represented the Plaintiffs.  The case was certified as a national class action and concluded with a multi-million dollar settlement.

f.     <u>Dyer v. Monsanto, et al.</u>:   Represented approximately 5,000 plaintiffs for damages arising from PCBs manufactured by Defendant.  The case settled for $43 million.

g.     <u>Tolbert v. Monsanto, et al.</u>:   Represented the approximately 18,000 plaintiffs for damages arising from PCBs manufactured by Defendant.  The case settled for $300 million.

h.     <u>Aaron v. Chicago Housing Authority, et al.</u>:  Davis & Norris, withdrew from this case shortly after Mr. Davis and his partner withdrew from their prior firm.   The case settled shortly afterward for a multi-million dollar number.

i.     <u>The Vietnam Assoc. for Victims of Agent Orange/Dioxin, et al. v. Dow Chemical Co., et al.</u>:  Davis and Norris is counsel representing a plaintiff class of between 2-4 million Vietnamese nationals and residents of Vietnam who have suffered damages as a result of Dioxin exposure during the Vietnam War. (Tab C, Davis Aff. ¶ 3).

### III.

### ARGUMENT

Plaintiffs seek to represent a narrow, ascertainable class, defined as follows:

All persons in the United States of America who entered into an a AHS home warranty relating to a home located within one of the fifty states of the United States with an initial commencement date of on or after January 1, 2001, and who during the initial contract term had one

or more claims for repair or replacement of a covered component denied based on the claimed reason that the component was not properly cleaned or maintained.

It is undisputed in this case that AHS's computer database contains, in a retrievable format, the identities, including names, addresses, and dates of claims denials, for every single one of the 100,000 class members. Thus, not only is the class ascertainable, the identification of the class members for purposes of notice may be obtained electronically within AHS's own computer systems.

## A.      Plaintiffs Have Satisfied The Requirements Of Rule 23(a)

Rule 23(a) sets forth the following three requirements for all class actions:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  This proposed class action easily satisfies all four of these criteria, as we demonstrate below:

### 1.      The Class Is So Numerous That Joinder Of All Members Is Impracticable

The requirement that the class be "so numerous that joinder of all members is impracticable," commonly referred to as the numerosity requirement, is easily

satisfied here.  The Eleventh Circuit has held that "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty is adequate, with numbers between varying according to other factors.'" Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir 1986) (quoting 3B Moore's Federal Practice ¶ 23.05[1] at n.7 (1978)).   There are "some 100,000" class members, according to defendant's discovery responses.  (Tab D).  This more than satisfies the numerosity requirement.

>### 2. **There Are Questions of Law Or Fact Common To The Class.**

"Rule 23(a) does not require that all the questions raised by the dispute be common." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir. 1986). "Rather, as Rule 23(a) explicitly states, a court need only find a *single* common issue of law or fact to satisfy the commonality requirement." Kreuzfeld A.G. v. Carnehammar, 138 F.R.D. 594, 599 (S.D.Fla.1991); see In re Healthsouth Corp. Sec. Lit., 213 F.R.D. 447, 457 (N.D.Ala. 2003) ("This minimal standard merely requires an identity of some factual or legal matter among members of the class.") (citing Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 456 (11th Cir.1996)); see also 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3.10 (4th ed. 2005).  The permissibility of a class action is *not* defeated if separate issues of law and fact exist, particularly regarding damages.  Klay v. Humana, Inc., 382 F.3d 1241, 1259 (11th Cir. 2004) ("numerous courts have recognized that the presence

of individualized damages issues does not prevent a finding that the common issues in the case predominate.").

In this case, a single common issue predominates the entire litigation: whether AHS's widespread practice of denying claims during the first year of the home warranty for failure to clean or maintain violates the provisions of the uniform contract provisions. For each class members' claim, that single issue governs whether he or she is entitled to damages for breach of contract. That issue is identical in every class member's case – whether identical conduct in identical circumstances violates identical contract language. Thus, the issue of commonality is easily satisfied.

### 3. The Claims And Defenses Of The Representative Plaintiff Are Typical Of The Claims And Defenses Of The Class.

Typicality, as this requirement is commonly known, primarily directs the district court to focus on whether named representatives' claims have "the same essential characteristics as the claims of the class at large." Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004) (citation omitted). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). Thus, "to be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." Senter v. Gen.

Motors Corp., 532 F.2d 511, 525, n.31 (6th Cir.); see also 7A Charles A. Wright et al, Federal Practice and Procedure 3d. § 1764 (1986) ("the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class.").

In this case, there is no doubt that plaintiffs' claims are typical of the proposed class – the Faughts, like the class members, had a claim denied for failure to clean or maintain during the first year of the warranty.

### 4.      The Representative Plaintiffs Will Fairly And Adequately Protect The Interest Of The Class.

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4). The courts typically look at two criteria for determining the adequacy of representation: (a) the named representatives must have common interests with unnamed members of the class; and (b) it must appear that the named representatives will vigorously prosecute the case and protect the interests of the class through qualified counsel.  Drayton v. Western Auto Supply Co., 2002 WL 32508918 at *5 (11th Cir. 2002) (attached, Exhibit A) (citing Gonzales v. Cassidy, 474 F.2d 67, 72 (5th Cir. 1973)).

In this case, it is certainly true that plaintiffs Steven and Lauren Faught have common interests with the unnamed members of the class, because, like the class,

each has suffered damages for breach of contract in exactly the same circumstances as the other members of the class.

With regard to the requirement that the named representatives vigorously prosecute the case and protect the interests of the class through qualified counsel, the Faughts intend to do just that.  (Tab A, Faught Aff. ¶ 11).  The Faughts are pleased with the legal representation that has been provided in this case.  (Tab A, Faught Aff. ¶ 9).  The attorneys have kept each client informed of the progress of the case, and the Faughts both believe their attorneys will fairly and competently represent the interests of the class.  (Id.).  The named plaintiffs are both interested in these proceedings.  (Tab A, Faught Aff. ¶ 10).  Each is familiar with the conduct and practices challenged in this litigation because each has suffered injury and damage from the defendant's uniform practice of breaching its contracts.  (Id.).

Although "adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class," Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 727 (11th Cir. 1987), the Faughts intend to vigorously pursue their claims and the claims of the class members against defendants.  (Tab A, Faught Aff. ¶ 11).  The Faughts are willing and will be pleased to act as the class representative in this matter.  (Tab A, Faught Aff. ¶ 12).  Each named plaintiffs' interest in this litigation is consistent with the interest of the proposed nationwide class.  (Id.).  There has been no collusion between the Faughts and other members

of the proposed class.  (Id.)    Therefore, the Faughts are adequate members

representatives of the class.

While adequacy of counsel is presumed, see, e.g., Siegel v. Realty Equities

Corp. of N.Y., 54 F.R.D. 420 (S.D.N.Y. 1972); 3 Alba Conte & Herbert B.

Newberg, Newberg on Class Actions § 7.24 (4th ed. 2005), no such presumption is

necessary in this case.   Plaintiffs' lead counsel, D. Frank Davis, of the

Birmingham, Alabama law firm Davis & Norris LLP, is an experienced class

action lawyer with the background and expertise to competently and vigorously

pursue the claims of the plaintiff class.  (Tab C, Davis Aff.).  Mr. Davis has

devoted a significant portion of his thirty-year legal career to mass tort and class

action litigation.  (Id.).  Mr. Davis has represented both plaintiffs and defendants in

class actions in many different states throughout the country.  (Id.).  He has both

settled class actions and tried class actions.  (Id.).  Mr. Davis is a member of the

Alabama and Tennessee bars.  (Id.).  He is currently admitted to practice in the

United States Supreme Court, the Fifth and Eleventh Circuit Courts of Appeals,

and each federal district court in Alabama.  (Id.).  Mr. Davis has been admitted, at

one time or another, on a *pro hac vice* basis in federal or state courts in a majority

of the states in the country.  (Id.).

As detailed in Mr. Davis's affidavit (id.), Mr. Davis has been lead or co-lead

counsel in many class action and mass tort cases.  (Id.).  He has successfully

defended class actions and has obtained numerous multi-million dollar settlements

on behalf of plaintiff classes.  (<u>Id.</u>).  Among other things, Mr. Davis was a lead counsel for the plaintiffs in <u>Tolbert v. Monsanto Co., et al.</u>, which settled for $300 million on behalf of 18,000 claimants who were poisoned by PCB contamination in Anniston, Alabama.  (<u>Id.</u>).  Mr. Davis is qualified, experienced, and well able to conduct this litigation.  (<u>Id.</u>).  He will vigorously and competently pursue this litigation.  (<u>Id.</u>).

**B.    Plaintiffs Have Satisfied The Predominance And Superiority Requirements Of Rule 23(b)(3)**

In addition to satisfying the four prongs of Rule 23(a), a class action must also satisfy at least one of the prongs of Rule 23(b).  Plaintiffs here seek certification, pursuant to Rule 23(b)(3), of the claim by the plaintiff class for breach of contract, seeking monetary relief only.[2]

In determining whether an action satisfies Rule 23(b)(3)'s requirement that questions of law or fact common to members of the class predominate over any questions affecting only individual members such that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, the district court examines the following factors:

> (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d)

---

[2] Plaintiffs do not at this time seek certification of their claim for bad faith failure to pay an insurance claim. Plaintiffs seek certification of a class seeking monetary damages only for breach of contract, and thus at this time do not seek class treatment of claims for injunctive relief or punitive damages.

18

the difficulties likely to be encountered in the management of a class
action.

Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions Of Law And Fact Predominate.

As the Eleventh Circuit declared, "[u]nder Rule 23(b)(3), 'it is not necessary
that all questions of fact or law be common, but only that *some* questions are
common and that they predominate over individual questions.'"  Klay v. Humana,
Inc., 382 F.3d 1241, 1254 (11th Cir. 2004) (emphasis supplied) (citing In re
Theragenics Corp. Secs. Litig., 205 F.R.D. 687, 697 (N.D. Ga. 2002)).  "The
common questions need not be dispositive of the entire action. In other words,
'predominate' should not be automatically equated with 'determinative' or
'significant.' Therefore, when one or more of the central issues in the action are
common to the class and can be said to predominate, the action will be considered
proper under Rule 23(b)(3) even though other important matters will have to be
tried separately."  7A Charles A. Wright et al., Federal Practice and Procedure 3d.
§ 1778 (1986).

This case simply cries out for class treatment under Rule 23(b)(3).  The
common questions of law and fact – whether AHS breached its contracts by
denying claims during the first year for failure to clean or maintain a covered
component – completely predominate in this litigation.  The common questions of
law and fact dwarf the *only* individual issue presented: how much damage did each

plaintiff suffer.  Such questions of damages simply do not negate class action

certification.  "[N]umerous courts have recognized that the presence of

individualized damages issues does not prevent a finding that the common issues

in the case predominate." Klay, 382 F.3d at 1259 (citing Allapattah Servs. v.

Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003)).

Indeed, the courts have recognized that breach of contract claims brought by

consumers based on form contracts "present the classic case for treatment as a class

action." Kleiner v. First National Bank of Atlanta, 97 F.R.D. 683, 692 (N.D. Ga.

1983).  Such cases are "routinely certified." Id. (citing numerous federal and state

court cases).  In Kleiner, for example, the court noted that the meaning of contract

terms in a form contract "is the predominant issue in the case and is common to all

class members." Id. at 692. Furthermore, "[t]hat individual questions may remain

after interpretation of the contract -- questions of damages or possible defenses to

individual claims -- would not defeat" class certification. Id.; accord Brown v.

Cameron-Brown Co., 92 F.R.D. 32, 38 (E.D. Va. 1981); Ingram v. Joe Conrad

Chevrolet, Inc., 90 F.R.D. 129, 131 (E.D. Ky. 1981).

In a recent case, the Eleventh Circuit recognized the uncontroversial notion

that breaches of form contract present issues predominantly common rather than

individual.  In Allapattah Services, Inc. v. Exxon Corp., 333 F.3d 1248 (11th Cir.

2003), the Eleventh Circuit affirmed class certification in a breach of contract case

similar, though apparently not identical, contracts between Exxon and its distributors.  The Eleventh Circuit dismissed Exxon's argument "that there were individual issues inherent in each dealer's breach of contract claim and its own affirmative defenses."  Allapattah, 333 F.3d at 1261.  The court held that because "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers, the duty of good faith was an obligation that it owed the dealers as a whole.  Whether it breached that obligation was a question common to the class and the issue of liability was appropriately determined on a class-wide basis."  Id.  The Eleventh Circuit further found persuasive that "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."  Id.

Allapattah and the other cited cases compel a similar result here.  There are no issues in this case that are individualized beyond the measure of each class member's damages.  The form contracts and the appropriate construction of their terms determines liability "for the class as a whole," making that issue predominate over the individual issues of damages.  Id.

### 2. A Class Action Is Superior To Any Other Method Of Adjudication Of This Matter.

Courts in breach of form contract cases have also routinely determined that class certification is superior to other available methods for the fair and efficient

adjudication of the controversy.  "One of the most important objectives of the class action procedure is the aggregation of a number of small claims to allow for relief in situations where it might not otherwise be obtainable."  Morris v. Transouth Financial Corp., 175 F.R.D. 694, 701 (M.D. Ala. 1997).  In this case, there are 100,000 claimants and not one with a potential recovery that would provide a sufficient incentive to file a solo action.  See Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997).

Additionally, since this case involves contract interpretation, and since the class is easily ascertainable, there do not exist here the sort of manageability problems that have given district courts pause in finding that the class device is superior to a multiplicity of solo civil actions.  It would be a far greater problem, in fact, should the courts of this country become overwhelmed by 100,000 separately filed lawsuits, with the potential for wildly varying recoveries and inconsistent results.  As a result, this case is "a classic case for the use of the class action device."  Morris, supra, 175 F.R.D. at 701.

## IV.

## CONCLUSION

For the foregoing reasons, plaintiffs pray for an order:

1.  Certifying the breach of contract claims for monetary damages as a nationwide class pursuant to Rule 23(b)(3);

2.  Appointing D. Frank Davis as class counsel pursuant to Rule 23(g);

3.  Authorizing notice to the class members in a form to be hereafter

approved by the Court; and

4.  Such further or different relief as the Court may deem appropriate.


/s/ D. Frank Davis
D. Frank Davis
Lead Plaintiff Counsel

Of Counsel:
John E. Norris
Wesley B. Barnett
Davis & Norris LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama  35205
(205) 930-9900
Email:  fdavis@davisnorris.com
         jnorris@davisnorris.com
         wbarnett@davisnorris.com

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record was served by filing with the Court's electronic filing system on this the 11th day of September, 2008:

Michael D. McKibben
Michael R. Pennington
Jason A. Walters
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place                          *Attorneys for Defendant*
1819 Fifth Avenue North              *American Home Shield Corporation*
Birmingham, Alabama 35203
Telephone: (205) 521-8000

Facsimile: (205) 521-8800
mmckibben@bradleyarant.com
mpennington@bradleyarant.com
jwalters@bradleyarant.com

Robert R Gasaway
KIRKLAND & ELLIS LLP
655 Fifteenth Street NW, Suite 1200          *Attorneys for Defendant*
Washington, DC 20005                         *American Home Shield Corporation*
202-879-5175
202-879-5200 (fax)
rgasaway@kirkland.com

Martin R Boles
KIRKLAND & ELLIS LLP
777 S Figueroa Street, 37th Floor            *Attorneys for Defendant*
Los Angeles, CA 90017                        *American Home Shield Corporation*
213-680-8428
213-680-8500 (fax)
mboles@kirkland.com

/s/ D. Frank Davis
OF COUNSEL