FILED

2009 Oct-09  PM 05:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AMERICAN HOME SHIELD CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. CV-07-P-1928-S |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT

Plaintiffs Laura and Steven Faught and Defendant American Home Shield Corporation ("AHS") respectfully submit this joint motion and incorporated supporting memorandum of law for an order preliminarily approving the proposed settlement (the "Settlement") reflected in the Stipulation of Settlement (the "Stipulation"), which has been contemporaneously filed with the Court and is attached as Exhibit 1.[1]

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the attached Stipulation.

1

## I.   PRELIMINARY STATEMENT

Plaintiffs and Defendant have reached a Settlement in this case (the "Action") and now seek entry of the attached [Proposed] Order Preliminarily Approving Settlement And Providing For Notice (the "Proposed Preliminary Approval Order"), through which the Court: (i) grants preliminary approval of the proposed Settlement; (ii) directs that notice of the proposed Settlement be given to members of the Class (defined in the Stipulation as those Persons in the United States who purchased or were issued any Home Service Contract during the period beginning on July 24, 2001 up to and including the date on which a Preliminary Approval Order is issued)[2] in the proposed form and manner; (iii) issues an injunction, as set forth in paragraph 11 of the Proposed Preliminary Approval Order, enjoining the commencing, prosecuting, participating in or continuing the prosecution of any Suit asserting any Claims, arising from Home Service Contracts concluded and events occurring during the Class Period and related to AHS's policies, procedures, and/or practices during the Class Period as alleged in, or reasonably related to those alleged in, the Action,; and (iv) schedules a hearing before the Court to determine whether the proposed Settlement should be finally approved.

---

[2] Excluded from the Class are the Defendant, its parents, subsidiaries, affiliates, officers, directors, and employees; and any judge, mediator or arbitrator who has jurisdiction over or will serve in connection with this matter now or in the future, and any member of the family of any such judge, mediator or arbitrator.

As set forth in detail herein and in the Stipulation, the proposed Settlement provides significant and material benefits to the Class, was reached after intensive arm's-length negotiations between experienced and informed counsel on both sides, and is well within the range of what might be approved as fair, reasonable, and adequate at a final approval hearing. Accordingly, the Parties respectfully submit that the Court should preliminarily approve the Settlement and provide for notice to the Class in accordance with Federal Rule of Civil Procedure 23 and the Class Action Fairness Act of 2005.

## II.    OVERVIEW OF THE LITIGATION AND SETTLEMENT

### A.    <u>Background of the Litigation</u>

AHS is engaged in the business of issuing, administering and selling home service contracts. Home service contracts (sometimes called "home warranty contracts") are one-year service contracts for certain appliances and systems in residential homes. An AHS Home Service Contract obliges AHS, in exchange for a fee, to arrange for service technicians to provide repair and replacement services under circumstances explained in the particular contract.

Plaintiffs Laura Faught and Steven Faught filed their original complaint against AHS in this case on October 22, 2007, and amended the complaint on October 6, 2009. The original and amended complaints challenge broadly AHS's policies and practices relating to the adjustment of claims submitted under AHS

Home Service Contracts. Plaintiffs allege that AHS has engaged in a broad nationwide pattern of (1) denying claims for coverage of appliances or their components that display signs of being inadequately maintained and/or cleaned; (2) deliberately breaching express provisions of its Home Service Contracts; and (3) relying upon a service diagnosis from service providers nationwide who stand to gain financially if the appliance at issue is denied coverage under the Home Service Contract, as they may then charge more to repair or replace the appliance than they could under the terms of their service agreements with AHS. Plaintiffs have asserted claims for breach of contract and bad faith, and seek money damages (both compensatory and punitive) for themselves and the proposed nationwide class, as well as declaratory and/or injunctive relief to require AHS to readjust claims that had been denied previously.

The Action seeks certification of a putative nationwide class, which is defined as follows:

> All persons who have held a residential home warranty contract from AHS applicable to a house within the United States at any time since June 21, 2001. Excluded from this class are the defendant, any subsidiary or affiliate of the defendant, and any judge, arbitrator, or mediator who may adjudicate, arbitrate, or mediate this action.

Amended Complaint, ¶ 20.

4

The Action has been both vigorously contested and subject to significant discovery. AHS filed and briefed a substantial motion to dismiss early in the case (which Plaintiffs opposed and the Court denied by Order dated December 20, 2007). AHS answered the Complaint on January 29, 2008, denying all material allegations. The parties engaged in written discovery, and AHS produced thousands of pages of responsive documents. Additionally, Plaintiffs deposed four AHS employees, with such depositions addressing merits and class certification issues. Plaintiffs filed their motion for class certification on September 11, 2008, supported by a voluminous evidentiary submission and a brief, and renewed that motion on October 31, 2008. The Court suspended consideration of that motion while the parties pursued settlement discussions. Throughout the course of the litigation, AHS has vigorously denied, and continues to deny, all liability with respect to any and all facts or claims alleged in the Action.

**B.    The Settlement**

### 1.    *Settlement Negotiations*

In addition to contentious litigation, the parties have also have engaged in protracted and vigorously contested settlement negotiations. On July 29, 2008, the Court ordered the parties to engage in mediation. The parties agreed on Martin Van Tassel as mediator and have engaged in more than fifteen joint

mediation sessions with Mr. Van Tassel, numerous individual settlement discussions with Mr. Van Tassel, and several dozen in-person and telephonic settlement discussions between the parties themselves. The parties exchanged dozens of drafts of proposed settlement agreements and, at various stages, spent days negotiating individual paragraphs of a proposed settlement agreement.

Ultimately, these negotiations resulted in the execution of a stipulation of settlement on or about January 9, 2009, which resolved the action on a class-wide basis, with the exception of attorneys' fees. Among the terms of the January 9 agreement was a provision permitting AHS to defer presentation of a settlement in this case until a separate proposed settlement in a similar case was finally approved. The settlement in that case, styled *Edleson v. American Home Shield of California and American Home Shield Corporation*, Case No. 37-2207-0007125-CU-BT-CTL, Superior Court of the State of California for the County of San Diego, had been preliminarily approved on December 31, 2008. But the settlement in the *Edleson* action was disapproved by that Court by order dated July 8, 2009. A copy of the one-paragraph order is attached as Exhibit 2.

Because the parties in this case viewed this settlement as providing a reasonable and fair resolution of the issues here, the parties in this case resumed their negotiations, again utilizing the services of Mr. Van Tassel. Mindful of the rejection of the *Edleson* settlement by the California state court, during the next

stage of negotiations, the parties endeavored to reach a settlement that offered broader relief to the Class than the rejected *Edleson* settlement. These extensive negotiations, which covered numerous negotiating sessions, culminated in the Stipulation, which was executed on October 6, 2009. The Stipulation resolves all issues in the case as regards relief to the Class and the Plaintiffs. It is this stipulation of settlement that the parties now present to the Court for its consideration, and as to which the parties request the Court to enter the Preliminary Approval Order.

2.    ***Summary of the Settlement***

The Settlement provides relief for each claim asserted in the Amended Complaint. In particular, the Settlement establishes a new Review Desk, which will be staffed with experienced customer service representatives who will be specially trained to address Submissions made by Settlement Class Members. The Review Desk will conduct a fresh re-review of any Denied Claim that is submitted by a Settlement Class Member for reconsideration. If a Settlement Class Member is not satisfied with the relief offered in the Review Desk process, he or she retains the right to bring an individual suit against AHS for AHS's alleged breach of contract, so long as such claim is individualized and does not turn on allegations of generalized AHS policies or practices.

Moreover, the Settlement provides for (1) an additional payment to Settlement Class Members who bring an individual suit (as permitted by the terms of the Stipulation) against AHS after going through the Review Desk process and recover more through that suit than AHS offered through the Review Desk, and (2) reporting to Named Plaintiffs' Counsel regarding the processing of Submissions. The additional payment to the Settlement Class Members was not available under the *Edleson* settlement, and therefore broadens the benefits to the Class Members encompassed by this Settlement.[3]  Additionally, sixty (60) days after AHS has completed the processing of all Submissions, AHS shall send a written report to Named Plaintiffs' Counsel containing the number of Submissions made and a summary of relief offered in response to those Submissions.

The Stipulation also provides that AHS will make certain changes to its business practices.  AHS will, within four (4) months of the Effective Date, distribute written training materials to the Contractor Network conveying the importance AHS places on honoring the terms of coverage and other terms of its Home Service Contracts and the important role that contractors play in this effort. AHS will continue to monitor its business practices, and may solicit the input of

---

[3] Additionally, this Settlement provides for specific deadlines for AHS to process Submissions, additional services to be provided by AHS if certain interim benchmarks regarding the number of Submissions processed has not been met, and specific communications from AHS to Settlement Class Members regarding their Submissions within specified periods of time.  None of this relief was offered in the *Edleson* settlement.

Named Plaintiffs' Counsel in this regard, and will, no later than sixteen (16) months after the Effective Date, make another distribution to its Contractor Network of written training materials to address and resolve any material issues that AHS determines require further training or revision.

These primary benefits of the Settlement successfully address Plaintiffs' claims for breach of contract and bad faith failure to pay an insurance claim[4]. Additionally, these benefits provide prospective relief designed to eliminate any allegedly problematic business practice or policy relating to the manner in which contractors diagnose claims for repair or replacement pursuant to the Home Service Contracts.

In return, Plaintiffs and the Settlement Class agree to release and forever discharge AHS and the other Released Parties from liability for any claims arising from Home Service Contracts concluded and events occurring during the Class Period and related to AHS's policies, procedures, and/or practices during the Class Period as alleged in, or reasonably related to those alleged in, the Action, including (i) Contractor Relations Practices; and (ii) AHS's policies, procedures and/or practices respecting: the timing or promptness of responding to customer problems and situations, including expediting such responses; the diagnosis of customer problems and situations; authorizing repairs or

---

[4] In addition to denying the specific allegations in the Action, AHS contends that it issues a home service contact, not an insurance policy, and thus it is not subject to a claim for bad faith failure to pay an insurance claim.

replacements in response to customer requests; choosing between offering repairs and offering replacements; offering or requiring the acceptance of cash in lieu of repairs or replacements; denying claims (in part or in their entirety); applying contract limitations and exclusions; applying business rules for emergencies; responding to customer inquiries or escalating the attention given to such inquiries; or otherwise making decisions regarding either the application of the terms and conditions of Home Service Contracts, or the authorization of repair and replacement services pursuant to Home Service Contracts. Significantly, however, Settlement Class Members all retain the right to bring claims against AHS for breach of a Home Service Contract to the extent such claims are individualized and do not turn on allegations of generalized AHS polices or practices, assuming such claims are not resolved through the Review Desk process.

## III.    LEGAL ANALYSIS

### A.    Applicable Legal Standards

Preliminary approval of a proposed settlement is the first step in a two-step process to settle a class action. At preliminary approval, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Manual for Complex Litigation, Fourth*, § 13.14, at 173 (Federal Judicial Center, 2004); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163

F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (citation omitted). "If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing." *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); Fresco v. Auto Data Direct, Inc., 2007 U.S. Dist. LEXIS 37863, *11-12 (S.D. Fla. 2007).

At this juncture, the Parties request only that the Court grant preliminary approval of the proposed Settlement and provide for notice to the Class. Preliminary approval does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member. The primary purpose of preliminary approval is to communicate the proposed settlement to the class, to review and approve the proposed form of notice to the class, and to authorize the manner and form of dissemination of the notice. *Armstrong*, 616 F.2d at 314. Where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383-84 (D. Md. 1983).

**B.      The Proposed Settlement Is the Result of Arm's-Length Negotiations**

A proposed settlement that is the result of arms-length negotiations by class counsel is presumptively fair and reasonable. *See* 4 Newberg on Class Actions § 11:41 (4th ed.). Here, the proposed Settlement is the product of lengthy and hard-fought negotiations conducted on both sides by experienced counsel who were thoroughly familiar with the factual and legal issues. Additionally, a neutral mediator presided over the vast majority of the settlement negotiations between the parties, in which counsel for both sides vigorously litigated in their respective client's best interest.

**C.      The Proposed Settlement Is Within the Range of Possible Approval**

The proposed Settlement falls well within the range of a reasonable settlement. The determination of a "reasonable" settlement is not susceptible to any one specific formula. *See In re Medical E-Ray Film Antitrust Litig.*, CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998). Rather "in any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *accord Woodward v. Nor-Am Chem. Co.*, 1996 U.S. Dist. LEXIS 7372, *48 (S.D. Ala. May 23, 1996).

Here, the proposed Settlement was achieved after serious, informed, arms'-length negotiations between the parties, and falls squarely within the range of reasonableness, warranting notice of the settlement to Class Members.  AHS will re-review each submitted Denied Claim and if a Class Member is not satisfied with the result of this re-review, he or she retains the right to bring an individual suit against AHS regarding that claim.  If a Class Member brings such an individual suit and recovers more in the suit than AHS offered through the re-review of the clam, AHS is liable for either the payment of attorneys' fees or an additional $1,000 award to the Class Member.  Additionally, AHS will review and change certain of its business practices about which the Plaintiffs complained according to a specific timetable presented in the Stipulation.  In sum, the Settlement offers precisely the sort of equitable relief sought in the Complaint on behalf of the Class Members.

The Defendants always vigorously denied liability, and continue to deny any wrongdoing.  The proposed Settlement represents concessions by both parties after hard-fought negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues.  In these

circumstances, the proposed Settlement is presumptively fair and reasonable. *See Teachers' Ret. Sys. Of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 WL 1087261, at *1 (S.D.N.Y. May 14, 2004) (finding that a proposed settlement that is the result of arm's length negotiations by class counsel is presumptively fair and reasonable).

Moreover, courts recognize that the opinion of experienced and informed counsel supporting a proposed settlement is entitled to considerable weight. *Ohio Pub. Interest Campaign v. Fisher Foods*, 546 F. Supp. 1, 11 (N.D. Ohio 1982); *In re Salomon Inc. Sec. Litig.*, No. 91 Civ. 5442, 1994 U.S. Dist. LEXIS 8038, at *42 (S.D.N.Y. June 15, 1994). Here, Named Plaintiffs' Counsel believe that the proposed Settlement is in the best interest of the Settlement Class based upon their experience, their knowledge of the strengths and weaknesses of the case, their analysis of the discovery reviewed to date, the likely recovery at trial and on appeal, and all other factors considered in evaluating proposed class action settlements.

### D.    Conditional Certification of the Settlement Class is Appropriate

The parties have agreed to certification of a class for settlement purposes only. Certification of the Settlement Class for purposes of granting preliminary approval to the proposed settlement is appropriate here. Federal Rule 23 provides that an action may be maintained as a class action if each of the four

prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). *See also Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976); *Corum v. Fifth Third Bancorp*, No. 99 CV-268-H, 2004 U.S. Dist. LEXIS 4651, at *4 (W.D. Ky. Mar. 3, 2004). The prerequisites of Rule 23(a) for class certification are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. As set forth below, all of the requirements of Rule 23 are met in connection with approval of the Settlement, justifying preliminary certification of the proposed Class for settlement purposes only.

### 1.   *The Class Is Sufficiently Numerous*

Class certification is appropriate in cases where, as here, the class is so numerous that joinder of all class members would be impracticable. *See Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 294 (N.D. Ill. 2008). "Impracticable" does not mean impossible, only the difficulty or inconvenience of joining all members of the class. *See D. W. v. Poundstone*, 165 F.R.D. 661 (M.D. Ala. 1996); *Bradley v. Harrelson*, 151 F.R.D. 422 (M.D. Ala. 1993); *Fifth Moorings Condominiums, Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979). The test merely requires a showing of impracticality, not that it would be impossible to join all class members. Though there is no definite standard as to the size a given class must attain in order to satisfy Rule 23(a)(1), generally fewer than 21 is inadequate and more than 40 adequate. *Cox v. Am. Cast Iron Pipe Co.*, 784 F. 2d

1546, 1553 (11th Cir. 1986); *Redmon*, 249 F.R.D. at 294. Here, there are over 4 million class members, so "numerosity" is clearly satisfied.

### 2. *Common Questions of Law and Fact Exist*

Rule 23(a)(2) requires that there be either questions of law or fact common to the Class. The threshold of commonality is "not high." *Campos v. Immigration and Naturalization Service*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citing *Forbrush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)). The rule does not require that all class members have the exact same legal claims (*see Kreuzfeld A.a. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991)), nor does it require that all the questions of law or fact be common (*see Singer v. AT&T Corp.*, 185 F.R.D. 681, 687 (S.D. Fla. 1998); *Walco Investments*, 168 F.R.D. at 315; *Haitian Refugee Center, Inc. v. Nelson*, 694 F.Supp. 864, 877 (S.D. Fla. 1988)). In fact, Rule 23(a)(2) merely requires that "the class members share 'a common nucleus of operative fact,' such that resolution of common questions affect all or substantially all of the class members." *Redmon*, 249 F.R.D. at 294. The focus should be on whether the representative's claims arise from the same course of conduct that gives rise to the class's claims, and whether the claims are based on the same legal theory. *See Kreuzfeld*, 138 F.R.D. at 599 (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982) ("[T]he issue turns on whether there exists at least one issue affecting all or a significant number of

proposed class members.")).   In this case, questions of law and fact common to the Class include, among others, the following: (1) whether AHS's standardized marketing materials and advertising claims contained any misrepresentations; (2) whether AHS has a policy and practice of conspiring with the service technicians it hires to minimize or eliminate any actual repairs or replacements of covered appliances and systems and allowing contractors to charge the customer out of pocket costs for improperly denied repairs, to charge for unnecessary items or to charge excessive prices for non-covered or unnecessary items; (3) whether AHS has a policy and practice of delaying or denying claims for service, and offering inadequate repairs in lieu of replacement, inadequate cash-in-lieu of repair, and improper application of contract provisions and business rules, in breach of its contract terms; and (4) whether the proposed Settlement is reasonable, fair and adequate.

### 3.   *Lead Plaintiffs' Claims are Typical of Those of the Class*

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   "A plaintiff's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based in the same legal theory.'" *Redmon*, 249

F.R.D. at 294 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005)).

The purpose of the typicality requirement is to ensure that the Plaintiffs' interests in this litigation are aligned with the represented group (the Settlement Class), and in pursuing their own claims, the named Plaintiffs will also advance the interests of the Class members. *See In re American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *McAnaney v. Astoria Financial Corp.*, No. 04-CV-1101, 2006 WL 2689621, at*4 (E.D.N.Y. Sept. 19, 2006) (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)); *Senter*, 532 F.2d at 524 (holding that "[f]actual identity between the plaintiff's claims and those of the class he seeks to represent is not necessary."). Typicality is satisfied where the interests of the named party arises from the same course of conduct that gave rise to the claims of the class she seeks to represent, and are based on the same legal or remedial theory; furthermore typicality will not be destroyed by factual variations. *See Kornberg v. Princess Cruises Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Redmon*, 249 F.R.D. at 294.

The Plaintiffs' claims are typical because they arise from the same alleged policies and practices giving rise to the claims of absent class members, and the

Plaintiffs seek the same relief. The claims pursued by the Plaintiffs are aligned with the interests of absent Class Members to ensure that the Plaintiffs, as class representatives, will prosecute the universal claims of the Class with diligence and care. Since the Plaintiffs seek to prove that the Defendant committed the same "acts in the same method against an entire class" the typicality requirement is satisfied. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987).

### 4.   *Plaintiffs Will Adequately Protect the Interests of the Class*

The adequacy requirement of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 594 (1997). To satisfy this requirement, the Plaintiffs must demonstrate (1) that "the plaintiff's attorney is qualified, experienced and will competently and vigorously prosecute the suit"; and (2) "that the interest of the class representative is not antagonistic to or in conflict with other members of the class." *Powers v. Government Emples. Ins. Co.*, 192 F.R.D. 313, 317 (S.D. Fla. 1998) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)). The Plaintiff satisfies both prongs of the adequacy test." The Plaintiffs satisfy both prongs of the adequacy test. Named Plaintiffs' Counsel are well experienced and have proven their dedication to the Class through their work in this case. Moreover, the Plaintiffs have interests entirely

19

aligned with the Class and are sufficiently interested in the case outcome. Therefore, the typicality requirement has been met.

### 5.   *The Requirements of Rule 23(b) Are Satisfied*

As stated above, class certification is appropriate if one of the provisions of Rule 23(b) is met. Here, the proposed Settlement Class satisfies Rule 23(b)(3), making preliminary certification of the proposed Settlement Class appropriate in the present case. The requirements of Rule 23(b)(3) are met when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It further provides that "[t]he matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* Here, a class action would be a superior method of adjudicating these claims given the common interests of the Class Members and the extent of the factual and legal investigation already conducted by Named Plaintiffs' Counsel. Additionally, "[c]onfronted with a request for settlement-

only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods.,* 521 U.S. at 620. Accordingly, certification is appropriate under Rule 23(b)(3).

### E.    The Proposed Notice Program Is Adequate

Rule 23(c)(2)(B) provides that the court must direct to class members the best notice practicable under the circumstances. The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173-74 (1974)).

The notice program proposed here meets this standard. Defendant will directly mail a copy of the approved Notice to all Class Members at their last known address, which will be verified, or corrected if necessary, by a third-party selected by AHS and approved by Named Plaintiffs' Counsel. The Notice program is reasonably calculated to notify the Class of the Settlement, and therefore satisfies the required standards.

In addition, the contents of the Notice are sufficient. The Notice must fairly describe the litigation and the proposed settlement and its legal

significance. *See, e.g., Trvigg*, 153 F.3d at 1088 (5th Cir. 1977)) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, in so far as possible, may be understood by the average absentee class member[.]"); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained."). The Notice here contains all pertinent terms.

## IV.    THE COURT HAS THE AUTHORITY TO ENTER THE REQUESTED INJUNCTION

This Court has the authority to enter the injunction set forth in the attached Proposed Preliminary Approval Order.

### A.    The Court Has the Inherent Power to Enjoin Class Members from Commencing or Prosecuting any Action Related to the Released Claims Pending Final Approval of the Class Settlement

Consistent with the inherent equitable powers of federal courts, Fed. R. Civ. P. 65 allows the Court to issue preliminary injunctions upon an appropriate showing by the requesting party. It is well-established that a party seeking a preliminary injunction must establish that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will result if the relief is not granted; (3) the threatened injury outweighs the harm that the requested relief may cause

the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006); *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000). In a class action, a Rule 65(d) injunction applies to all class members who do not opt-out of participating in the class action.

It is standard for Federal courts to enjoin Class Members and their counsel from prosecuting related actions when preliminarily approving class settlements. *See, e.g., In re HealthSouth Corp. Sec. Litig.*, Order Preliminarily Approving Settlement and Providing for Notice, No. CV-03-BE-1500-S (N.D. Ala. March 27, 2009) (attached hereto as Exhibit 3); *Williams v. Nat'l Sec. Ins. Co.*, Preliminary Approval Order and Preliminary Injunction, No. 1:02cv977 (M.D. Ala. Dec. 12, 2005) (attached hereto as Exhibit 4). An injunction is similarly appropriate here, as the requested relief meets the requirements of Rule 65. First, the Parties believe there is a high likelihood that the Court will conclude that the proposed Settlement is fair and reasonable and grant final approval. The proposed Settlement was negotiated at arm's-length and will provide long-term relief to Class Members in the form of reconsideration of submitted previously denied claims and altered business practices. Second, Class Members and AHS could suffer irreparable injury if another judgment undermined the proposed recovery or relief agreed upon by the parties. Third, Class Members would suffer

little, if any, harm because they may choose to opt out of the class if they are dissatisfied with the proposed Settlement. At most, the Class Members may experience only slight delay in pursuing their claims under the Settlement. Fourth, the public interest favors the entry of a preliminary injunction that would allow the Court to consider a settlement that would resolve numerous claims against AHS on a global basis to the benefit of all Class Members.

**B.    The All Writs Act Provides Independent Authority to Enjoin Class Members and Related Litigation**

While Rule 65 and the Court's inherent powers provide sufficient authority for the Court to enjoin Class Members from prosecuting any action related to the Released Claims, the All Writs Act grants this Court independent authority to issue the requested injunction. Under the Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act allows federal courts to protect "ongoing proceedings . . . future proceedings . . . [and] already-issued orders and judgments." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004). An All Writs Act injunction can be issued by a District Court, even if one or more of the Rule 65 requirements are not met. *Id.* at 1100-1101.

In particular, Federal courts rely on the All Writs Act to enjoin related litigation that threatens the management of a class action proceeding. *See, e.g.,*

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (finding that a federal court may enjoin state court proceedings where it has preliminarily approved a nationwide class settlement); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203-04 (3d Cir. 1993) (affirming federal court's injunction enjoining further related litigation where the "prospect of settlement was indeed imminent"). Moreover, courts have used the authority of the All Writs Act to enjoin parties from pursuing related litigation. *See Hillman v. Webley*, 115 F.3d 1461, 1469 (10th Cir. 1997) (in connection with a class action settlement, "[t]he district court undoubtedly had the authority under the All Writs Act to enjoin parties before it from pursuing conflicting litigation in the state court . . ."); *In re Lease Oil Antitrust Litig.*, 48 F.Supp. 2d 699, 704 (S.D. Tex. 1998) (issuing injunction preventing parties from pursuing settlement efforts in state courts as a protection of the district court's MDL jurisdiction). Accordingly, the Court has discretion in crafting the appropriate scope of an injunction under the All Writs Act.

The timing of the requested injunction is also appropriate. A district court has the authority to issue an injunction following preliminary approval of a settlement agreement under the All Writs Act. *See Hanlon*, 150 F.3d at 1025 ("the temporary approval of the nationwide settlement stayed the state class

actions. The federal court had the power to issue an injunction against continued state proceedings under the All Writs Act...").

An injunction preventing the Named Plaintiffs and all Class Members from prosecuting any actions related to the Released Claims is appropriate to aid this Court in its jurisdiction over the remainder of this proceeding. The prosecution of a parallel action could only serve to delay and undermine this Court's timely consideration of the fairness and reasonableness of the proposed settlement. Moreover, the injunction will allow the Parties to focus its time and resources on the approval of the proposed Settlement and implementation of the relief provided to Class Members by the proposed Stipulation. Accordingly, this Court can, and should, issue the requested injunction pursuant to its independent authority under the All Writs Act.

## V.   CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court enter the Proposed Preliminary Approval Order.

/s  John E. Norris
John E. Norris
One of the Attorneys for Plaintiffs

OF COUNSEL:

DAVIS & NORRIS LLP
2154 Highland Avenue South
Birmingham, Alabama  35205
(205) 930-9900

/s  John E. Goodman
John E. Goodman
One of the Attorneys for Defendant

OF COUNSEL:

BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203
(205) 521-8000

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> D. Frank Davis
> John E. Norris
> Wesley W. Barnett
> Davis & Norris LLP
> 2154 Highland Avenue
> Birmingham, AL 35205
> fdavis@davisnorris.com
> jnorris@davisnorris.com
> wbarnett@davisnorris.com

> Lea Bone
> Bates & Bone LLP
> 2151 Highland Avenue, Suite 120
> Birmingham, AL 35205
> woowooindian@aol.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None.

/s/ John E. Goodman
John E. Goodman (GOO017)