FILED
2009 Oct-27  PM 03:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 3

1
Martin R. Boles (State Bar No. 124159)
mboles@kirkland.com
2
KIRKLAND & ELLIS LLP
3
777 South Figueroa Street
Los Angeles, California 90017
4
Telephone: (213) 680-8400; Facsimile (213) 680-8500

5
Robert R. Gasaway (Pro Hac Vice)
rgasaway@kirkland.com
6
Ashley C. Parrish (Pro Hac Vice)
7
aparrish@kirkland.com
KIRKLAND & ELLIS LLP
8
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
9
Telephone: (202) 879-5016; Facsimile: (202) 879-5200

10
Attorneys for Defendants
11
AMERICAN HOME SHIELD OF CALIFORNIA, INC.
AMERICAN HOME SHIELD CORPORATION
12

13
Francis A. Bottini, Jr.
frankb@johnsonbottini.com
JOHNSON BOTTINI, LLP
14
655 W. Broadway, Suite 1400
15
San Diego, CA 92101
Telephone: (619) 230-0063; Facsimile: (619) 233-5535
16

17
Attorney for Plaintiffs
KARON and L.B. CHIP EDLESON

18
**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
19
**FOR THE COUNTY OF SAN DIEGO**

20
KARON and L.B. CHIP EDLESON, on behalf of )
themselves and all others similarly situated,   )
21                                               )
                                                 )
22           Plaintiffs,                         )
                                                 )
23   v.                                          )
                                                 )
24   AMERICAN HOME SHIELD OF CALIFORNIA, )
     INC., AMERICAN HOME SHIELD            )
25   CORPORATION, and DOES 1-20,           )
                                           )
26           Defendants.                   )
27   _____)

Case No. 37-2007-00071725-CU-BT-CTL

Judge Steven R. Denton

**STIPULATION OF SETTLEMENT**

28

RECEIVED

OCT 0 2 2008

# TABLE OF CONTENTS

I.      PREAMBLE ....................................................................................................3

II.     DEFINITIONS.............................................................................................4

III.    CLAIMS OF THE NAMED PLAINTIFFS AND BENEFITS OF
        SETTLEMENT.............................................................................................9

IV.     DENIAL OF WRONGDOING OR LIABILITY .........................................9

V.      SETTLEMENT CONSIDERATION .........................................................10

VI.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY ....................17

VII.    IMPLEMENTATION OF THE SETTLEMENT .........................................18

VIII.   DETERMINATION OF ATTORNEYS FEES, COSTS, AND
        EXPENSES...................................................................................................21

IX.     PAYMENT METHOD AND INSTRUCTIONS.........................................22

X.      RELEASE, COVENANT NOT TO SUE, AND DISMISSAL OF
        CLAIMS ......................................................................................................23

XI.     ENFORCEMENT AND TERMINATION..................................................26

XII.    MISCELLANEOUS PROVISIONS............................................................27

THIS STIPULATION OF SETTLEMENT is entered into as of this ___ day of September, 2008 (the "Settlement Date"), by and among named plaintiffs Karon and L.B. Chip Edleson (the "Named Plaintiffs"), individually and as representatives of the Class, and defendants American Home Shield of California, Inc. and American Home Shield Corporation (the "Defendants"), by and through their attorneys.

## I.   PREAMBLE

WHEREAS, on July 24, 2007, this action, captioned *Karon and L.B. Chip Edleson, on behalf of themselves and all others similarly situated, v. American Home Shield of California, Inc., American Home Shield Corporation, The ServiceMaster Company, and Does 1-20*, No. 37-2007-00071725-CU-BT-CTL (Superior Court of California, County of San Diego, Steven R. Denton, or his successor, presiding (the "Court")) (the "Action"), which alleges that American Home Shield failed to fulfill contractual obligations to its customers and breached other duties under California law, was filed as a putative nationwide class action in the Superior Court of California for the County of San Diego;

WHEREAS, the Defendants vigorously denied, and continue to vigorously deny, any wrongdoing and any liability in relation to the allegations contained in the complaint filed in the Action (the "Complaint");

WHEREAS, the parties have engaged in substantial discovery to evaluate the merits of the parties' respective claims and defenses, and have engaged in arm's-length settlement negotiations; and

WHEREAS, prompted in part by this Action and during the course of this Action, American Home Shield Corporation has changed its business practices nationwide, including by making available FlexPlan Contracts to its customers;

NOW THEREFORE, it is agreed, by and among the undersigned, that this Action shall be settled and dismissed on the merits and with prejudice, without costs to Plaintiffs or Defendants (except as hereinafter provided), subject to the approval of the Court on the terms and conditions outlined herein.

## II.    DEFINITIONS

As used herein, the following terms have the respective meanings specified, which shall be equally applicable to both the singular and plural forms:

2.1.    "Agreement" means this agreement and all of its attachments and exhibits, which the settling parties understand and agree set forth all material terms and conditions of the Settlement between them and which is subject to this Court's approval.

2.2.    "AHS Competitor" means any Person (other than AHS) that issues, offers for sale, or underwrites in North America any of the various service contracts commonly known as "home warranties," and going by various names in different markets and under different regulatory regimes, including designations such as "service contract," "extended service contract," "residential service contract," "home service contract," "home protection contract," and "warranty contract."

2.3.    "Alternative Johnson Bottini LLP Attorney" means Frank J. Johnson.

2.4.    "American Home Shield" or "AHS" means American Home Shield Corporation, a Delaware Corporation, together with all its direct and indirect subsidiaries, including American Home Shield of California, Inc.

2.5    "Attorneys Fees & Expenses" has the meaning ascribed it in paragraph 8.2.

2.6.    "Business Day" means any day that is not a Saturday, Sunday or the day set aside for observing New Year's Day, Martin Luther King Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, or Christmas Day, and any other day declared a holiday by the President or Congress.

2.7.    "Claims" means any and all claims, demands, debts, rights, causes of action, suits, actions, damages, costs, expenses, compensation, requests for compensation or reimbursement, obligations, liabilities, penalties, attorneys fees, or losses in law or equity, of whatever kind or nature, whether or not known, ripe or mature.

2.8.    "Class" means all Persons in the United States who purchased or were issued any Home Warranty Contract during the Class Period.  Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, directors, and employees; Judge Steven R. Denton; and any

judge and any member of the family of any judge who has jurisdiction over this matter now or in the future.

2.9.   "Class Counsel" means counsel appointed by the Court as counsel to represent the Class and/or the Settlement Class.  Unless the Court orders otherwise, "Class Counsel" means Johnson Bottini LLP and Chapin Wheeler LLP.

2.10.   "Class Member" means the Named Plaintiffs and any Person that is a member of the Class.

2.11.   "Class Notice" means the notice provided to Class Members pursuant to paragraph 7.3 in the form attached as Exhibit A.

2.12.   "Class Notice Date" means the first date on which Defendants, as provided by paragraph 7.3, (i) have substantially completed the sending of the Class Notice; (ii) have made available the information required to be made available via an Internet website; and (iii) stand prepared to make available, in response to any Class Member requests that may be received by mail, the information required to be made available by paragraph 7.3.

2.13.   "Class Period" means the period beginning on July 24, 2001 up to and including the date on which the Preliminary Approval Order is issued.

2.14.   "Contractor Network" means a subset of the larger universe of independent home repair contractors engaged by AHS to make service calls to Home Warranty Contract customers, which subset is defined as those who have executed a written contract with AHS containing a commitment by AHS to attempt to dispatch to such contractor a specified number of service calls per annum, also known as a "call commitment."

2.15.   "Contractor Relations Initiative" means the 24-month process described in paragraph 5.3.

2.16.   "Contractor Relations Practices" means, generally, AHS's practices respecting selecting, recruiting, training, dispatching, rating, evaluating, terminating, monitoring, compensating, incentivizing, rewarding, penalizing, disciplining, following up service calls by, allocating services calls to, authorizing repairs by, allowing non-covered charges to be collected by,

-5-

1    supervising repair or replacement work performed by, enforcing compliance with contract terms by,

2    overseeing compliance with applicable permitting or other legal requirements by, or otherwise

3    supervising, managing, or monitoring independent home repair contractors that AHS engages,

4    authorizes and/or directs to make service calls for purposes of providing services pursuant to Home

5    Warranty Contracts.

6        2.17.   "Day" or "day" means calendar day unless identified as "Business Day."

7        2.18.   "Denied Claim" means a Settlement Class Member request received by American

8    Home Shield for service on an item covered under his/her Home Warranty Contract during the Class

9    Period, where repair or replacement services were denied by AHS, in whole or in part, or where the

10    Class Member deemed inadequate a cash payment they received from AHS in lieu of repair or

11    replacement services.

12        2.19.   "Effective Date" means the date on which the time for filing an appeal under

13    California Rule of Court Rule 8.104, as may be amended, expires without any appeal being filed

14    from a Final Judgment and Order of the Court approving the Settlement. In the event that one or

15    more such appeal(s) from such a final decision of the Court is timely brought, the Effective Date will

16    be the date on which such appeal(s) are finally resolved in favor of upholding the Settlement without

17    any modification, except any downward adjustment in attorney fees, costs, and expenses that may be

18    ordered by the Court as permitted by paragraph 8.1, and without any possibility of a further appeal

19    to, or any discretionary review by, any court superior to this Court.

20        2.20.   "Escrow Account" has the meaning ascribed it in paragraph 8.2.

21        2.21.   "Escrow Agent" has the meaning ascribed it in paragraph 8.2.

22        2.22.   "Fairness Hearing" means a hearing conducted by this Court after the Class Notice

23    Date for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Agreement

24    pursuant to class action procedures and requirements; and (ii) entering a Final Judgment and Order.

25        2.23.   "Final Judgment and Order" means a final order (that cannot be further appealed)

26    entered by this Court after the Fairness Hearing granting its approval of the Settlement pursuant to

27    paragraph 7.8 in substantially the form attached as Exhibit B.

28

1    2.24. "FlexPlan Contract" means a Home Warranty Contract issued by AHS with the
2    features and attributes described in paragraph 5.2. An exemplar of the FlexPlan Contract which
3    shall be deemed to satisfy the conditions of paragraph 5.2 is attached as Exhibit C. Such exemplar
4    may be modified by AHS at anytime provided it contains the features described in paragraph 5.2.

5    2.25. "Home Warranty Contract" means and includes any of the various service contracts
6    issued to the public and/or underwritten by AHS, or by a parent or affiliate of AHS, commonly
7    known as "home warranties," and going by various names in different markets and under different
8    regulatory regimes, including designations such as "service contract," "extended service contract,"
9    "residential service contract," "home service contract," "home protection contract," and "warranty
10   contract."

11   2.26. "Lead Class Counsel" means the Person appointed by the Court to discharge the
12   duties of Lead Class Counsel as set forth in this Agreement. Unless the Court orders otherwise,
13   "Lead Class Counsel" means Francis A. Bottini, Jr.

14   2.27. "Named Plaintiffs Payment" has the meaning ascribed it in paragraph 5.4.

15   2.28. "Opt-Out List" means the complete, final, and accurate list of all properly submitted
16   exclusion requests received by Class Counsel and provided to counsel for Defendants, as required
17   under paragraph 7.5.

18   2.29. "Person" means any natural person, any legal entity, including a limited or general
19   partnership, a corporation, a limited liability company, an association, a joint stock company, a trust,
20   a joint venture, sole proprietorship, an unincorporated organization, any other form of legal entity,
21   and/or any governmental body (including any department, agency, commission, authority,
22   administration, or political subdivision thereof), whether federal, state, local or other.

23   2.30. "Plaintiffs" means the Named Plaintiffs and all Class Members.

24   2.31. "Preliminary Approval Order" means an order entered by this Court preliminarily
25   approving the Settlement pursuant to paragraph 7.2 in substantially the form attached as Exhibit D.

26   2.32. "Quarterly Meeting" has the meaning ascribed it in paragraph 5.3.a.

27   2.33. "Released Claims" means any and all Claims set forth in paragraphs 10.1 and 10.2.

28

1    2.34.  "Released Parties" means the Defendants, their respective, direct or indirect,

2    subsidiaries, divisions, partners, limited partners, owners, investors, holding companies, parents,

3    affiliates (regardless of the form of the legal entity, e.g., corporation, limited liability company,

4    general or limited partnership), including their respective predecessors and successors, and their

5    respective present and former officers, directors, employees, principals, agents, attorneys, and/or any

6    other Person for which any of these Persons shall have a direct or indirect interest, or for which they

7    may otherwise be responsible, as of any given date.

8    2.35.  "Releases" means collectively the terms of the releases, covenants not to sue, and

9    agreed-on dismissal set forth in paragraphs 10.1, 10.2, 10.3, 10.4, and 10.5.

10    2.36.  "Review Desk" means the review process established by American Home Shield as

11    described in paragraph 5.1.

12    2.37.  "Settlement" means the terms of the parties' agreed-on settlement as reflected and

13    embodied in this Agreement.

14    2.38.  "Settlement Class" means all Class Members that do not opt out of the Settlement in a

15    timely and valid manner in accordance with the procedures set forth herein.

16    2.39.  "Settlement Class Member" means the Named Plaintiffs and any Person that is a

17    member of the Settlement Class.

18    2.40.  "Submission" has the meaning ascribed it in paragraph 5.1.f.

19    2.41.  "Submission Period" means a period of ninety (90) days, beginning thirty (30) days

20    after the Effective Date.

21    2.42.  "Submittal Form" means the form obtained from AHS that must be used to make

22    submissions to the Review Desk.  A copy of a Submittal Form is attached as Exhibit E.

23    2.43.  "Suit" means any lawsuit, suit, action, proceeding, litigation, legal representation or

24    complaint brought or pending in any federal, state, administrative, judicial, arbitral, or other forum,

25    whether direct, derivative or representational.

26    2.44.  "Suit Intention Notice Date" has the meaning ascribed it in paragraph 5.1.n.

27

28

-8-

1

2   **III.    CLAIMS OF THE NAMED PLAINTIFFS AND BENEFITS OF SETTLEMENT**

3          The Named Plaintiffs believe the claims asserted in the Action have merit.  However, the

4   Named Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued

5   proceedings necessary to prosecute the Action against the Defendants through trial and through

6   appeals.  Named Plaintiffs and Class Counsel have also taken into account the uncertain outcome

7   and the risk of any litigation, especially a complex action such as this Action, as well as the

8   difficulties and delays inherent in such litigation.  Class Counsel are also mindful of the inherent

9   problems of proof and possible defenses to the claims asserted in the Action.  Class Counsel believe

10  the Settlement confers substantial benefits to the Settlement Class.  Based on their evaluation, Class

11  Counsel have determined that the Settlement is in the best interests of the Named Plaintiffs and the

12  Class.

13  **IV.    DENIAL OF WRONGDOING OR LIABILITY**

14         4.1.     This Agreement constitutes the resolution of disputed claims and is for settlement

15  purposes only.  Defendants deny that they have violated any law; deny that they have breached any

16  agreement with, or obligation to, Named Plaintiffs or the Class Members (or anyone else); deny any

17  liability to Named Plaintiffs or the Class Members (or anyone else) for Released Claims; and deny

18  all the allegations of wrongdoing recited in the Complaint.

19         4.2.     Notwithstanding anything else herein, neither the fact of, nor any provision

20  contained herein, nor any action taken hereunder, shall constitute or be construed as an admission of

21  any liability or wrongdoing, or recognition of the validity of any allegation of fact or contention of

22  law made by Plaintiffs in this Action or in any other Suit.

23         4.3.     This Agreement, and statements made in negotiating this Settlement, and any

24  actions taken by Defendants hereunder, shall not be offered or be admissible in evidence or used in

25  any fashion against Defendants in any Suit for any purpose, except in a Suit to enforce the terms

26  hereof that is brought by Named Plaintiffs or Class Members against Defendants.  Nothing herein

27  shall be construed to preclude the Released Parties from offering this Agreement and the Releases in

28

1   defense of any Claims, including Suits brought by Named Plaintiffs or other Class Members, at any

2   time.

3   **V.     SETTLEMENT CONSIDERATION**

4          In consideration for the full, complete, irrevocable, and final Settlement of this Action and in

5   consideration for dismissal of this Action with prejudice and in consideration for the Releases

6   contained herein, American Home Shield will provide benefits to Settlement Class Members as

7   follows:

8          5.1.     *Review Desk*.  AHS will establish the Review Desk.

9                  a.     Except as otherwise provided herein, the Review Desk will consider

10  Submissions from any Settlement Class Member who experienced a Denied Claim during the Class

11  Period.

12                 b.     Settlement Class Members wishing to submit their Denied Claims to the

13  Review Desk must make a Submission.

14                 c.     AHS will make Submittal Forms available to Settlement Class Members

15  via (i) a dedicated website; (ii) a dedicated 1-800 telephone number; and (iii) a dedicated United

16  States Post Office Box address, all three of which will be created and maintained by AHS at AHS's

17  expense.  Settlement Class Members may make Submissions to the Review Desk via mail sent to a

18  designated Post Office Box address, via sending an electronic image of the Submission to an e-mail

19  address identified by AHS, or via any other method that may be permitted by AHS.

20                 d.     AHS will send Settlement Class Members notification of the opening of

21  the Submission Period no later than twenty (20) days after the occurrence of the Effective Date via

22  postcards sent by third-class United States mail to Settlement Class Members' last known addresses,

23  as this information has been retained by AHS in the ordinary course of business.  These postcard

24  notifications will explain how to obtain Submittal Forms, how to make Submissions, the beginning

25  and ending dates of the Submission Period, and whatever other information AHS may deem

26  appropriate.

27                 e.     AHS will review all Submissions that are received by AHS during the

28

1   Submission Period.

2           f.      Submissions must be made via a signed, dated and fully and properly
3   completed Submittal Form that provides AHS with, at a minimum, (i) the Settlement Class
4   Member's name as it appeared on his or her Home Warranty Contract; (ii) the address of the real
5   property covered by the Class Member's Home Warranty Contract; (iii) the Settlement Class
6   Member's preferred method for receiving responsive communications from AHS; (iv) a description
7   of the home system, appliance, or other item at issue; (v) the approximate date (or at a minimum, the
8   year) during the Class Period of the Settlement Class Member's initial request for Home Warranty
9   Contract service; (vi) a description of the Settlement Class Member's service request and alleged
10  Denied Claim; (vii) the reasons the Settlement Class Member believes the same service request
11  should now be reviewed and the Denied Claim overturned or revised; and (viii) the Settlement Class
12  Member's present address, telephone number, and e-mail address (collectively, a "Submission").

13          g.      At the Settlement Class Member's discretion, additional information may
14  also be provided via the Submittal Form to bolster his or her Submission, including the following:
15  (i) photographs; (ii) receipts; (iii) cancelled checks; (iv) correspondence with AHS; (v)
16  correspondence with contractors (whether or not chosen by AHS) that diagnosed or attempted to
17  correct the relevant service issue; (vi) a statement providing relevant history or an overview of
18  events; and/or (vii) other supplemental information.

19          h.      Submissions will be considered by AHS and processed in any reasonably
20  commercially feasible and efficient order that AHS deems appropriate, e.g., prioritization based on
21  the reverse chronological order of the date of claim.  The time for resolving claims will depend on a
22  number of factors, including the number of Submissions received by the Review Desk.  Nothing
23  herein will be interpreted or construed to mean that AHS will incur any obligation to meet any
24  specific processing deadline.

25          i.      Settlement Class Members for whom AHS determines additional
26  contractual benefits are appropriate based on its consideration of a Submission will be offered, at
27  AHS's sole option, one of the following:

28

-11-

(1)    In cases where the breakdown at issue in the relevant Denied Claim has not already been resolved, either (i) cash equal to the Settlement Class Member's estimated out-of-pocket costs for the repair or replacement services determined by AHS to be covered under the terms of the Settlement Class Member's applicable Home Warranty Contract, or (ii) provision of those same services by AHS;

(2)    In cases where the breakdown at issue in the relevant Denied Claim has already been resolved, either (i) cash equal to the actual out-of-pocket costs for the repair or replacement services determined by AHS to be covered under the terms of the Settlement Class Member's applicable Home Warranty Contract, as established and documented by bona fide receipts for such costs provided to the Review Desk; or (ii) if no such receipts are provided, then AHS's wholesale cost of such repair or replacement as reasonably determined to apply at the time of the Denied Claim;

(3)    Waiver of the contract fee (or some other discount) for one-year of coverage under a FlexPlan Contract; or

(4)    Any other compensation deemed to be reasonable by AHS.

j.    In considering and processing Submissions, AHS may deduct from any offer an amount equal to the amount of any prior concessions or cash-in-lieu payments, in whatever form, made to the Settlement Class Member. For the avoidance of doubt, consequential damages shall not be recovered as the result of, or in connection with, any Submission.

k.    AHS may seek confirmation of the Settlement Class Member's out-of-pocket repair or replacement expenses by directly contacting any vendor providing relevant services or equipment to the Settlement Class Member. In addition, by making a Submission to the Review Desk, the Settlement Class Member shall be deemed to represent that the Submission is being made in good faith and authorize AHS to contact the Settlement Class Member notwithstanding any "do not call" or similar laws that might otherwise limit or constrain AHS's ability to initiate unsolicited contacts with former customers.

l.    All releases of whatever type or nature, and in whatever form (including

-12-

1    by operation of law), of AHS by a Class Member before this Settlement shall be in full force and

2    effect and not be deemed diminished, waived, or otherwise rendered ineffective by this Agreement.

3               m.      Any Settlement Class Member receiving monetary or other benefits as the

4    result of a Submission will be deemed to have thereby irrevocably released any and all Claims

5    against the Released Parties arising from, relating to, or otherwise regarding the Denied Claim at

6    issue in the Submission.

7               n.      After the end of the Submission Period, Settlement Class Members who

8    did not make a Submission may not bring a Suit against AHS based on a Denied Claim unless (A)

9    the Settlement Class Member provides the following information to AHS by calling 1-877-433-3843

10    or a successor 1-800 telephone number established and maintained by AHS, at its sole expense and

11    communicated to Class Members via a posting on AHS's website, (i) the Settlement Class Member's

12    present address, telephone number, and e-mail address; (ii) the address of the real property covered

13    by the Class Member's Home Warranty Contract, or other information sufficient for AHS to confirm

14    that the request is being made by a Class Member; and (iii) an announcement of the Settlement Class

15    Member's "intention to bring Suit against AHS on a Claim arising in the Edleson Class Period" or

16    an equivalent statement; and (B) at least fifteen (15) days have elapsed since the date the Settlement

17    Class Member provided such notice (the "Suit Intention Notice Date"). All applicable statutes of

18    limitations shall be deemed tolled for the benefit of those Settlement Class Members who provide

19    such notice for a period of fifteen (15) days beginning on the relevant Suit Intention Notice Date.

20    Failure of a Class Member to follow this procedure in this paragraph 5.1(n) shall not serve as a bar to

21    dismiss a Claim, provided, however, that AHS may insist that this procedure be followed before a

22    Suit may be allowed to proceed.

23               o.      Settlement Class Members who make Submissions may not bring a Suit

24    against AHS for any Denied Claim unless that Denied Claim has been presented to AHS in a

25    Submission and at least one hundred twenty (120) days have elapsed since that Submission. All

26    applicable statutes of limitations shall be deemed tolled for the benefit those Settlement Class

27    Members who make Submissions for a period of one hundred twenty (120) days beginning on the

28

1   date of the relevant Submission. Nothing herein shall be interpreted to mean that a Class Member

2   may obtain the revival of a Claim that has lapsed and is barred under the applicable limitations

3   period by submitting the Claim to the Review Desk.

4       5.2.     ***FlexPlan Offer***. For a period of twenty-four (24) months, beginning on the

5   Effective Date, and without modifying any existing Home Warranty Contract, AHS will make

6   available to all Settlement Class Members in good standing an opportunity, upon the expiration of

7   their current Home Warranty Contract, if any, to enter into a FlexPlan Contract.

8       a.     For purposes of this Agreement, a FlexPlan Contract shall mean a Home

9   Warranty Contract that includes the following features:

10       (1)     No "lack of maintenance" contract exclusion in the core coverage

11   received by the customer for the standard contract price, or, in the alternative, an express option to

12   obtain additional coverage at an additional cost that eliminates any otherwise applicable "lack of

13   maintenance" coverage exception;

14       (2)     An express option to obtain coverage for certain "undetectable

15   pre-existing conditions"; namely, those conditions not capable of being identified by visual

16   inspection or simple mechanical test;

17       (3)     An express option to obtain $250 or more worth of coverage for

18   upgrades needed in order to correct code violations affecting AHS's ability to make AHS-approved

19   repairs or replacements; and

20       (4)     An express option to obtain $250 or more worth of coverage for

21   procuring permits for AHS-approved repairs or replacements.

22       b.     Nothing in this Agreement shall limit or preclude AHS from determining in its

23   sole discretion the prices at which coverage, including those described above, shall be offered to

24   Settlement Class Members or other customers or prospective customers.

25       5.3.     ***Contractor Relations Initiative***. The Contractor Relations Initiative will last for

26   twenty-four (24) months beginning on the Effective Date, and will recognize that AHS is a for-profit

27   enterprise that must operate profitably and compete free from undue impediments in a highly

28

-14-

1    dynamic competitive environment. Pursuant to the Contractor Relations Initiative:

2              a.    AHS will meet with Lead Class Counsel, or at the option of Lead Class

3    Counsel, an Alternative Johnson Bottini LLP Attorney, at least once per quarter in the month

4    following the close of the calendar quarter to which the meeting relates (a "Quarterly Meeting"), and

5    Lead Class Counsel shall make himself available more often upon AHS's request, for a confidential

6    face-to-face discussion of then current Contractor Relations Practices and opportunities for making

7    improvements thereto. Quarterly Meetings will be held in San Diego at the offices of counsel for the

8    Defendants.

9              b.    Copies will be given to Lead Class Counsel of all relevant AHS mass

10   written communications regarding service work order fulfillment practices that are distributed

11   generally to the Contractor Network after the Effective Date.

12             c.    No later than four (4) months after the Effective Date, AHS will make a

13   dedicated distribution of written training materials to the Contractor Network conveying the

14   importance AHS places on honoring the terms of coverage and other terms of Home Warranty

15   Contracts and the important role that contractors play in this effort. At least ten (10) Business Days

16   before making this distribution, AHS shall provide copies of the draft written training materials to

17   Lead Class Counsel for review and comment. Comments suggested by Lead Class Counsel shall be

18   considered by AHS, and AHS may, in its sole discretion and in the exercise of its business judgment,

19   revise its written training materials in whole or in part in response to these comments.

20             d.    Beginning no later than the end of the ninth (9th) month after the Effective

21   Date, AHS will begin to produce quarterly service work order fulfillment performance reports in a

22   standardized format based on a methodology for sampling outcomes of AHS service calls that shall

23   be chosen by AHS in its commercially reasonable business judgment. One purpose of these reports

24   will be to obtain useful measurements of the satisfaction levels of AHS's customers as a group with

25   the repair and replacement services provided to them by AHS, while bearing in mind that, because

26   these reports involve sampling, the majority of AHS contractors and service calls likely will not be

27   reflected in any given quarterly report. Lead Class Counsel will be given confidential access to

28

1  these reports at least ten (10) Business Days before the Quarterly Meetings.

2        e.      At least ten (10) Business Days in advance of each Quarterly Meeting,

3  AHS will provide Lead Class Counsel with a written quarterly report as to the number of

4  Submissions made and a summary of relief offered in response to those Submissions since the cut

5  off date for the last quarterly report. During the Submission Period, these reports will be provided to

6  Lead Class Counsel on a monthly basis no later than the tenth (10th) day of the month following the

7  month to which the report pertains.

8        f.      Class Counsel will be bound to treat all communications and related

9  materials coming from or directed to AHS as strictly confidential AHS proprietary commercial

10  information, and Class Counsel will be precluded from accepting representations inconsistent with

11  Class Counsel's role in carrying out this Settlement.

12        g.      AHS and Class Counsel agree to the following specific restrictions on

13  Class Counsel's activities during the twenty-four (24) month Contractor Relations Initiative period:

14        (1)      Class Counsel will neither represent any Person nor act as principal

15  in any Suit against AHS or any other Released Party nor encourage, assist or participate with any

16  Person in so doing;

17        (2)      Class Counsel will neither represent any Person nor act as principal

18  in any Suit against any AHS contractor based on events arising from an AHS service call and/or the

19  contractor's business relationship with AHS; and

20        (3)      Class Counsel will not represent or provide legal advice to or

21  otherwise help or advise in any manner any AHS Competitor except with express written permission

22  from AHS.

23        h.      AHS and Class Counsel will cooperate so as to comply with ethical rules

24  applicable to the practice of law as regards this Settlement and, in particular, with respect to the

25  limitations on Class Counsel's activities provided for in this paragraph.

26        5.4.      The Named Plaintiffs in this action shall receive an incentive payment of $5,000

27  each, or as otherwise specified by the Court, and a compensatory payment of $5,000 jointly, or as

28

-16-

1   otherwise specified by the Court, as compensation for serving as Named Plaintiffs in this action and
2   as full compensation and complete satisfaction for any alleged injuries individualized as to them that
3   are described in the Complaint (collectively, the "Named Plaintiffs Payment"). As a part of this
4   Settlement, Named Plaintiffs agree they will not act as principals or attorneys in any Suit if that
5   activity would violate the restrictions on Class Counsel's Contractor Relations Initiative activities if
6   such were undertaken by Class Counsel.

7       5.5.      The Named Plaintiffs and Class Counsel agree that they (i) will not make any
8   false statements of fact in any way concerning the Defendants, their affiliates or their respective
9   officers, directors, and employees; and (ii) will not make any statements to third Persons that could
10  constitute slander, libel, or which would have a tendency to subject to ridicule or disparagement the
11  Defendants, their affiliates, their business operations, or their respective officers, directors, or
12  employees.

13  **VI.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY**

14      6.1.      Upon execution hereof, the parties agree that, subject to Court approval, this
15  Action will be deemed, for purposes of this Settlement only, to satisfy the requirements for class
16  certification under California law. Defendants have agreed to certification of the Settlement Class
17  for purposes of this Settlement only.

18      6.2.      Any certification of the Settlement Class hereunder, or otherwise, shall not
19  constitute and shall not be construed (in this Action or in any other Suit) as an admission on the part
20  of Defendants, or as the basis of a finding, or as evidence, that this Action or any other proposed or
21  certified class action is appropriate for class treatment in a contested certification proceeding. This
22  Agreement is without prejudice to the rights of Defendants to oppose (i) any requests for class
23  certification in this Action should this Agreement be terminated or fail to be approved or
24  implemented for any reason, or (ii) any requests for class certification in any Suit involving a
25  proposed or certified class action.

26      6.3.      If this Agreement is not approved, does not become effective, or if it is terminated
27  or fails to be implemented for any reason, any certification, either preliminary or final, of the Class

28

-17-

1   or of any other alleged class shall be deemed null and void *ab initio* and without force or effect.

2   **VII.    IMPLEMENTATION OF THE SETTLEMENT**

3   Upon execution hereof by all parties, the parties will respectively undertake the following
4   actions to implement and obtain approval of the Settlement:

5   7.1.    ***Use of Reasonable Efforts.*** Named Plaintiffs, Class Counsel, and Defendants
6   will use reasonable efforts to obtain preliminary approval of this Settlement, final approval of this
7   Settlement, and the entry of a Final Judgment and Order that dismisses this Action with prejudice
8   and binds the Named Plaintiffs and all Settlement Class Members. Named Plaintiffs and Class
9   Counsel will cooperate fully and completely with Defendants with respect to any and all appeals of
10  the Final Judgment and Order and in obtaining the dismissal of any and all subsequent Suits against
11  the Released Parties asserting Released Claims.

12  7.2.    ***Preliminary Approval.*** On or promptly after the Settlement Date, Named
13  Plaintiffs, Class Counsel, and Defendants will jointly present this Agreement and a motion seeking
14  its preliminary approval to the Court. Counsel for the parties will take all appropriate steps to obtain
15  the entry of a Preliminary Approval Order that (i) appoints Class Counsel for the purpose of
16  representing the Class and all Class Members; (ii) conditionally certifies the Class for purposes of
17  this Settlement only; (iii) preliminarily approves this Agreement and determines the Settlement to be
18  sufficiently fair, reasonable, and adequate as to allow notice to be disseminated to the Class;
19  (iv) approves notice to Class Members substantially in the form attached hereto as Exhibit A and in
20  the manner described herein; (v) schedules a Fairness Hearing to determine, after notice to the Class,
21  whether this Settlement should be finally approved as fair, reasonable, and adequate; and (vi)
22  preliminarily bars and enjoins all Class Members, or any of them, from commencing, prosecuting, or
23  continuing the prosecution of, any Suit asserting any of the Claims made in this Action, in any
24  capacity against AHS or any of the Defendants, pending the final determination of whether this
25  Settlement should be approved by the Court, except for proceedings in this Action relating to the
26  approval of the Settlement. The Preliminary Approval Order will remain in effect until either (i) the
27  Effective Date occurs, or (ii) the Court enters an order declaring this Settlement terminated and no

28

1 longer binding.

2     7.3.     ***Methods of Notifying Class Members.*** No later than fifty (50) days after the

3 entry of the Preliminary Approval Order, the parties shall notify Class Members of the Settlement in

4 the following manner:

5     a.     Defendants will send a Class Notice via first-class U.S. mail, postage

6 prepaid to the last known address of each Class Member, as this information has been retained by

7 AHS in the ordinary course of business. Defendants may distribute Class Notice using any bulk rate

8 or pre-sorted mail rate made available by the United States Postal Service.

9     b.     Defendants will make available on an internet website, to be selected by

10 Defendants and disclosed in the Class Notice, copies of the following items: the Class Notice, this

11 Agreement, a Submittal Form and information about the Review Desk process described in

12 paragraph 5.1.

13     c.     Defendants will make available to Class Members, upon request received

14 by mail at a mailing address to be identified in the Class Notice, copies of the following items: (i) the

15 Class Notice; (ii) this Agreement, (iii) a Submittal Form; and (iv) a summary of the Review Desk

16 process described in paragraph 5.1.

17     d.     Following notice to the Class Members, as described in paragraph 7.3.a.,

18 Defendants and/or their affiliates may communicate with Class Members by e-mail or any other

19 cost-effective means of communication.

20     7.4.     At least seven (7) days prior to the Fairness Hearing, counsel for Defendants will

21 provide Lead Class Counsel and the Court with a declaration from a competent declarant stating that

22 the Class Notice Date has occurred.

23     7.5.     ***Exclusions from the Settlement Class.*** Any Class Member may request

24 exclusion from the Settlement Class. Any Class Member who would like to request exclusion from

25 the Settlement Class must make the request in accordance with the procedures and requirements set

26 forth in the Class Notice. Beginning on the Friday immediately following the Class Notice Date and

27 on every Friday until the time for requesting exclusion has expired, Class Counsel shall provide to

28

1    Defendants complete and accurate copies of all exclusion requests received during the week ending

2    on the previous Friday.  In addition, within ten (10) days after expiration of the deadline for Class

3    Members to request exclusion from the Settlement Class, Class Counsel shall furnish the Opt-Out

4    List to counsel for Defendants.

5         7.6.    ***Written Objections to the Settlement.***    Any Settlement Class Member may

6    present written objections explaining why the Settlement should not be approved as fair, reasonable,

7    or adequate, or why attorneys fees, costs, and expenses should not be awarded to Class Counsel in

8    the amount or in the manner set forth herein and in Exhibit F.  Written objections must be submitted

9    in accordance with the procedures and requirements set forth in the Class Notice.

10        7.7.    ***Appearances at Fairness Hearing.***  Any Settlement Class Member may appear at

11   the Fairness Hearing for purposes of supporting or objecting to the Settlement.   Any Settlement

12   Class Member who would like to make an appearance at the Fairness Hearing must make a Fairness

13   Hearing appearance request in accordance with the procedures and requirements set forth in the

14   Class Notice.  Any Settlement Class Member who does not file and serve a written objection, as

15   described in paragraph 7.6, or make a Fairness Hearing appearance request, as described in this

16   paragraph 7.7, in a timely fashion and in the appropriate manner, shall be foreclosed from objecting

17   to or seeking review of this Settlement whether by appeal or otherwise.

18        7.8.    ***Final Judgment and Order.***   Upon the approval of the Settlement by the Court

19   after the Fairness Hearing, Defendants will make a motion (which Plaintiffs will support) for entry

20   of a Final Judgment and Order.   This Final Judgment and Order shall, among other things,

21   permanently foreclose and bar all Released Claims (including Claims for additional recovery,

22   penalties, interest, attorneys fees, costs, and expenses) and all other Claims that any Settlement Class

23   Members have alleged or could have alleged in connection with this Action.

24        7.9.    ***Retention of Jurisdiction.***   The parties shall request that the Court shall retain

25   jurisdiction over this Settlement for twenty-four (24) months after the Effective Date for purposes of

26   implementing the Settlement.  After 24 months from the Effective Date, this Action shall be deemed

27   concluded and the Court's jurisdiction shall be relinquished.

28

**VIII.   DETERMINATION OF ATTORNEYS FEES, COSTS, AND EXPENSES**

8.1.     The parties have separately executed a stipulation regarding an award of attorneys fees, costs, and expenses in this Action, attached hereto as Exhibit F.  The parties recognize that the Court has ultimate authority to approve or disapprove any award of attorneys fees, costs, and expenses.  Because this Settlement is for the benefit of the Settlement Class, however, the parties further agree that any downward adjustment in attorneys fees, costs, and expenses that may be ordered by the Court will not be a basis or reason for terminating the Settlement under any provision hereof.

8.2.     Defendants shall, no later than ten (10) days after entry of the Final Judgment and Order, deposit by wire transfer the sum of attorneys fees, costs, and expenses, approved by the Court and as reflected in the Final Judgment and Order, as payment for any and all services that have been or will be rendered by Class Counsel in this Action other than activities to be undertaken in connection with the Contractor Relations Initiative (the "Attorneys Fees & Expenses").  This wire transfer will be made into a segregated, identified interest bearing money market or similar account (the "Escrow Account") under the control of First Tennessee Bank, or such other agent mutually agreed upon by counsel for the parties (the "Escrow Agent"), to be held by it and disbursed pursuant to the terms hereof.

8.3      No later than ten (10) days after Lead Class Counsel transmits wiring instructions pursuant to paragraph 9.1, Defendants shall send by wire transfer to Lead Class Counsel the Named Plaintiffs Payment.  Lead Class Counsel shall be responsible for ensuring that each Named Plaintiff receives the appropriate allocation of the Named Plaintiffs Payment.  Defendants will have no obligation, liability, or responsibility whatsoever (i) for any taxes or other charges relating to the Named Plaintiffs Payment, or (ii) to ensure that the funds are allocated among the Named Plaintiffs fairly, correctly, or appropriately.

8.4      The Attorneys Fees & Expenses and the Named Plaintiffs Payment, together with any court-approved amounts to be paid to Class Counsel for activities to be undertaken in connection with the Contractor Relations Initiative, plus accrued interest on any such deposits, shall be the sole,

1    aggregate, maximum, and gross amount Defendants or any Released Party will owe or pay to Named

2    Plaintiffs, the Class, and Class Counsel for any attorneys fees, costs, and expenses and/or any other

3    amounts of any kind whatever incurred in connection with this Action, or for any other reason

4    related to this Action.  Defendants shall be reimbursed for any such taxes or charges that they are

5    required to pay on Class Counsel's or any Settlement Class Members' behalf.

6    **IX.    PAYMENT METHOD AND INSTRUCTIONS**

7    9.1.        No later than ten (10) days after the Effective Date, Lead Class Counsel will

8    transmit wiring instructions to the Escrow Agent for the payment of attorneys fees, costs, and

9    expenses from the Escrow Account to Class Counsel.

10   9.2.        Once Lead Class Counsel's wiring instructions have been received by the Escrow

11   Agent, the Escrow Agent may cause funds on deposit in the Escrow Account to be reduced and paid

12   out in accordance with this paragraph 9.2.

13   a.  Funds may be paid out of the Escrow Account for the benefit of Class Counsel

14   only upon a payment instruction from Lead Class Counsel, addressed to the Escrow Agent with

15   copies to Defendants, that is in accordance with the Final Judgment and Order, or as otherwise

16   directed by the Court.

17   b.    The Escrow Agent shall make no payment pursuant to a payment

18   instruction from Lead Class Counsel unless at least three (3) Business Days have elapsed since the

19   receipt of the instruction and Defendants have interposed no objection to the payment.  In the event

20   of an objection, the dispute between the parties shall be resolved by the Escrow Agent, with the

21   involvement of the Court as necessary.

22   c.    Any accrued interest remaining in the Escrow Account after a payment

23   instruction from Lead Class Counsel has been executed will be paid out of the Escrow Account, after

24   deduction of the costs of the Escrow Agent, to Lead Class Counsel for the benefit of Class Counsel.

25   d.    Any funds remaining in the Escrow Account after a payment instruction

26   from Lead Class Counsel has been executed, and any accrued interest thereon has been paid out, and

27   any costs of the Escrow Agent have been deducted, shall be paid out by the Escrow Agent to

28

-22-

1  Defendants, for their benefit.

2          9.3.      Lead Class Counsel shall be responsible for ensuring that Class Counsel receives

3  the appropriate allocation of the funds in the Escrow Account. Defendants will have no obligation,

4  liability, or responsibility whatsoever (i) for any taxes or other charges relating to money paid out of

5  the Escrow Account, or (ii) to ensure that the funds are allocated among Class Counsel fairly,

6  correctly, or appropriately. To the extent any attorney or firm serving as Class Counsel or otherwise

7  contests their or its portion of the total award for attorneys fees, costs, and expenses provided for

8  hereby or approved by the Court, such attorney or firm must look solely to Lead Class Counsel, and

9  not to Defendants, for their remedy. Under no circumstances will Defendants have any obligation

10  whatsoever arising from this Action to any attorney or firm serving as Class Counsel or otherwise

11  representing Class Members other than the obligations set forth herein.

12          9.4.      Should the Agreement be terminated after the deposit of money into the Escrow

13  Account but before the Effective Date, the Escrow Account shall be closed and its funds (including

14  any interest remaining in the Escrow Account after deduction of any costs of the Escrow Agent)

15  disbursed to the Defendants, as directed by Defendants, without any further order of the Court or any

16  countersignature by any escrow agent other than the Escrow Agent.

17          9.5.      Not later than thirty (30) days following the final closing of the Escrow Account,

18  the Escrow Agent shall file with the Court a statement disclosing the distribution of funds from the

19  Escrow Account.

20          9.6.      Upon disbursement of all funds in the Escrow Account upon any termination of

21  the Agreement, the Escrow Agent shall be released and relieved of all liabilities and obligations, if

22  any, arising out of or relating to the administration of the Escrow Account and any such liabilities

23  and obligations shall become the liabilities of Defendants.

24  **X.      RELEASE, COVENANT NOT TO SUE, AND DISMISSAL OF CLAIMS**

25          10.1.     Named Plaintiffs covenant and agree, and the entire Settlement Class will be

26  deemed to have covenanted and agreed, that Named Plaintiffs and all Settlement Class Members

27  will, by operation of the Final Judgment and Order and as of the Effective Date, have fully,

28

1    unconditionally, irrevocably, and completely released, waived, relinquished, and forever discharged
2    all of the Released Parties from any and all Claims, including for an accounting, for the rescission or
3    reformation of contracts (or any equitable theory whatsoever), and for prospective injunctive relief to
4    mandate, cease, reform, or otherwise modify in any way the Released Parties' business practices,
5    arising from Home Warranty Contracts concluded and events occurring during the Class Period and
6    related to AHS's policies, procedures, and/or practices during the Class Period as alleged in, or
7    reasonably related to those alleged in, the Action, including (i) Contractor Relations Practices; and
8    (ii) AHS's policies, procedures and/or practices respecting the timing or promptness of responding to
9    customer problems and situations, including expediting such responses, the diagnosis of customer
10   problems and situations, authorizing repairs or replacements in response to customer requests,
11   choosing between offering repairs and offering replacements, offering or requiring the acceptance of
12   cash in lieu of repairs or replacements, denying claims (in part or in their entirety), applying contract
13   limitations and exclusions, applying business rules for emergencies, responding to customer
14   inquiries or escalating the attention given to such inquiries, or otherwise making decisions regarding
15   either the application of the terms and conditions of Home Warranty Contracts, or the authorization
16   of repair and replacement services pursuant to Home Warranty Contracts.

17          10.2.    Named Plaintiffs covenant and agree, and the entire Settlement Class will be
18   deemed to have covenanted and agreed, that Named Plaintiffs and all Settlement Class Members
19   will, by operation of the Final Judgment and Order and as of the Effective Date, have fully,
20   unconditionally, irrevocably, and completely released, waived, relinquished, and forever discharged
21   all of the Released Parties from any and all Claims, including for damages based on theories of
22   breach of express contract, breach of implied contract, reformation of contract, breach of warranty,
23   fraud, misrepresentation, concealment, failure to disclose, fraudulent misrepresentation, negligent
24   misrepresentation, bad faith failure to pay claims, breach of covenant or good faith and fair dealing,
25   breach of local, state, or federal consumer protection laws or regulations, including Section 1750 and
26   associated provisions of the California Civil Code and Sections 17200, 17500, and associated
27   provisions of the California Business and Profession Code and other similar provisions of the laws
28

1  of California and of other states, or any other legal theory whatsoever, based on events occurring
2  during the Class Period and allegedly caused by AHS's generalized policies, procedures, and/or
3  practices as described in paragraph 10.1; provided, however, that the release contained in this
4  paragraph shall not encompass any AHS customer's breach of Home Warranty Contract claim that is
5  individualized and does not depend on any allegation of generalized AHS policies, procedures,
6  practices, or any other reasonably disputed allegation of fact that applies in common across any
7  subset of the Class.

8       10.3.     Named Plaintiffs covenant and agree, and the Settlement Class will be deemed to
9  have covenanted and agreed, that Named Plaintiffs and each Settlement Class Member will, by
10  operation of the Final Judgment and Order as of the Effective Date, have covenanted not to
11  participate in any Suit with respect to any Released Party arising from or related to the Claims in
12  equity released in paragraph 10.1 for a period of twenty-four (24) months beginning on the Effective
13  Date, except as to any claims for breach of this Agreement.  Each Settlement Class Member
14  covenants not to participate in any Suit against the Defendants during this twenty-four (24) month
15  period unless such Settlement Class Member has first complied with the terms hereof.

16       10.4.     In consideration of the benefits described herein, Named Plaintiffs agree, and
17  each Settlement Class Member shall be deemed to have agreed, to the dismissal with prejudice of
18  this Action.

19       10.5.     Nothing in this Agreement is intended to, or will operate to, release or
20  compromise in any way any claims that have been brought, or may in the future be brought through
21  amendments to pleadings filed by the State of Texas or otherwise, against AHS by the State of Texas
22  in Cause No. 2006-21887, *American Home Shield of Texas, Inc. v. State of Texas* in the 295th
23  Judicial District Court of Harris County, Texas.  This paragraph shall not be read to diminish or cast
24  into question the participation in this Settlement of any Settlement Class Member, including
25  Settlement Class Members from Texas.

26

27

28

-25-

1  **XI.  ENFORCEMENT AND TERMINATION**

2       11.1.     Upon any alleged material breach by AHS of its obligations hereunder, Plaintiffs

3  may, after giving AHS reasonably specific notice of the alleged material breach, and allowing a

4  period no less than forty-five (45) days for AHS to correct the alleged breach, seek an order from the

5  Court finding that AHS is in material breach of its commitments hereunder. In the event the Court

6  makes a finding of material breach, the Court shall direct AHS to come into compliance with this

7  Agreement within forty-five (45) days or such other period of time that the Court deems appropriate.

8  In seeking such an order from the Court, Plaintiffs must not oppose any AHS request to be allowed a

9  fair opportunity to present evidence and argument to the Court.

10      11.2.     Defendants will have the option to terminate this Settlement, in their sole

11 discretion, if the number of requests for exclusion from the Settlement exceeds five percent (5%) of

12 the total number of Class Members. Defendants will have thirty (30) days from their receipt of the

13 Opt-Out List in which to exercise, in their sole discretion, this right to terminate. In addition, this

14 Agreement may also be terminated by Defendants, in their sole discretion, in the event that any of

15 the following occur: (i) a motion seeking the Court's preliminary approval or final approval of this

16 Settlement is denied or is granted but later reversed on appeal; or (ii) the entry of the Final Judgment

17 and Order is reversed on appeal; or (iii) the Preliminary Approval Order is modified by the Court, or

18 the Final Judgment and Order is modified by the Court or on appeal, in either case without the

19 consent of Defendants. Notwithstanding the foregoing, any downward modification of the Final

20 Judgment and Order either by the Court or on appeal, regarding the amount of attorneys fees, costs,

21 and expenses to be awarded to Class Counsel shall not give Defendants, Plaintiffs, or Class Counsel

22 the option to terminate this Agreement. Any termination pursuant to this paragraph shall be

23 accomplished by filing with the Court a notice of termination, which shall be served on Lead Class

24 Counsel. Upon the filing of such a termination notice, this Settlement shall be deemed to be

25 terminated.

26      11.3.     Notwithstanding any termination of this Agreement, paragraphs 4.3, 5.3.f, 6.2,

27 6.3, 11.3, 12.4, 12.12, 12.17, 12.19, 12.20, 12.21, 12.22, and 12.23 (and the defined terms used

28

1    therein) shall remain in full force and effect.  In the event this Settlement is terminated before the

2    Effective Date for any reason, all other paragraphs of this Agreement, and the Settlement itself, shall

3    be deemed null and void *ab initio* and without force or effect.  In such event, this Agreement shall

4    not be offered in evidence or used in this or any other Suit for any purpose including the existence,

5    suitability for certification, or maintenance of any purported class.  In such event, this Agreement

6    and all negotiations, statements, proceedings, and documents prepared in connection herewith

7    (including all legal briefs and exhibits thereto) shall not be deemed or construed to be an admission

8    or confession by any party of any fact, matter, or proposition of law and shall not be offered by

9    anyone adverse to the Defendants for any purpose whatsoever in any Suit.  In the event of such

10   termination, all parties to this Action shall stand in the same position as if this Agreement had not

11   been negotiated, signed, or filed with the Court, except as expressly provided in this paragraph.

12       11.4        The Named Plaintiffs on behalf of themselves and each Settlement Class Member

13   covenant and agree that if any Claims are filed against any Released Party that violate any injunction

14   entered by the Court in this Action, the Released Party shall be entitled to reimbursement from the

15   Settlement Class Member of any reasonable attorneys fees, expenses or costs actually incurred in

16   seeking and obtaining the enforcement of such injunction as against such Claim.

17   **XII.    MISCELLANEOUS PROVISIONS**

18       12.1.  ***Entire Agreement.***  This Agreement, and all Exhibits attached hereto and hereby

19   incorporated by reference, shall supersede any previous agreements or understandings between the

20   parties with respect to the subject matter hereof.  The exemplar of the FlexPlan Contract attached as

21   Exhibit C is provided solely for illustrative purposes, and its inclusion herein is not intended to

22   suggest that the specific contractual terms and language appearing in Exhibit C are necessary or

23   required for FlexPlan Contracts generally.  This Agreement is the entire agreement of the parties and

24   may not be changed, modified, or amended except in writing signed by counsel on behalf of all

25   parties, subject to Court approval.

26       12.2.        ***Modification By Writing Only.***  This Agreement may be amended or modified

27   only by a written instrument, signed by both Class Counsel and Counsel for the Defendants, and

28

1  subject to Court approval.  Each party will promptly consider and respond to any other party's

2  written request to modify the Settlement or this Agreement.

3      12.3.  ***Recommendation to Plaintiffs.***  Class Counsel shall immediately recommend the

4  Settlement to Named Plaintiffs and Class Members, and shall use their best efforts to obtain their

5  approval of, support for, and participation in this Settlement.

6      12.4.  ***Expenses.***  Except as otherwise expressly set forth herein, each party hereto will

7  pay all costs and expenses incident to its negotiation and preparation hereof and to its performance

8  and compliance with all agreements and conditions contained herein on its part to be performed or

9  complied with, including the fees, expenses, and disbursements of its counsel, independent public

10  accountants, and other advisors, whether or not the Final Judgment and Order shall have been

11  entered by the Court.  Nothing herein shall require Defendants to pay out or expend any monies

12  other than as expressly provided herein.

13      12.5.  ***Illegality or Unenforceability of Provisions.***  In the event that any one or more of

14  the provisions contained herein shall for any reason be held in whole or in part to be invalid or

15  unenforceable in any respect by any federal, state, administrative, judicial, arbitral, or other forum,

16  bar association, or committee of competent jurisdiction, such invalidity or unenforceability shall not

17  affect any other provision hereof if the parties hereto agree in writing to proceed as if such invalid or

18  unenforceable provision had never been included herein.  Absent such agreement, this Agreement

19  shall be deemed terminated.

20      12.6.  ***Amount Paid Not a Penalty.***  No consideration or amount or sum paid, credited,

21  offered, or expended by Defendants in the performance hereof constitutes a penalty, fine, punitive

22  damages, or other form of penalty for any alleged Claim or offense.

23      12.7.  ***Agreement Mutually Prepared; Construction.***  This Agreement shall be deemed

24  to have been mutually prepared by the parties and shall not be construed against any one of them by

25  reason of authorship.  Accordingly, no party hereto shall be considered to be the drafter of any of its

26  provisions for the purpose of any statutes, case law, or rule of interpretation or construction that

27  might otherwise cause any provision or paragraph hereof to be construed against its purported

28

1   drafter. Otherwise, this Agreement shall be construed in accordance with the four corners of the

2   agreement and otherwise in accordance with the contract construction rules applicable to contracts

3   made within the State of California. References in this Agreement to: (1) "herein," "hereto,"

4   "herewith" and "hereunder" shall refer to this Agreement as a whole; (2) any paragraph or section

5   shall be to a paragraph hereof, unless otherwise specified; (3) Exhibits shall refer to Exhibits

6   attached hereto; and (4) "including" shall be deemed to be immediately followed by "without

7   limitation." The preamble is hereby incorporated herein by reference.

8       12.8.    ***Counterparts.*** This Agreement may be executed in one or more counterparts,

9   each of which shall be deemed an original but all of which together shall constitute one and the same

10  instrument. For purposes hereof, a facsimile signature shall be deemed an original.

11      12.9.    ***Binding Effect.*** This Agreement shall be binding upon and inure to the benefit of

12  the parties, the Defendants, the Named Plaintiffs, the other Settlement Class Members, and their

13  representatives, heirs, successors, and assigns. The parties expressly agree that the terms hereof,

14  including all promises and covenants stated herein, are contractual and shall survive the execution

15  hereof and entry of the Final Judgment and Order and shall continue in full force and effect

16  thereafter in accordance with their terms.

17      12.10.    ***Headings and Recitals.*** The headings and subheadings (if applicable) hereof are

18  included for convenience only and shall not be deemed to constitute part hereof or to affect its

19  construction.

20      12.11.    ***Waiver.*** Any party may waive rights belonging to it hereunder or defaults or

21  breaches hereof committed by the opposing party. No waiver by any party of any provision hereof

22  or any default or breach hereunder, whether intentional or not, shall be valid, however, unless the

23  same shall be in writing and signed by the party making such waiver. Nor shall such waiver be

24  deemed to extend to any prior or subsequent default or breach hereunder or affect in any way any

25  rights arising by virtue of any prior or subsequent such default or breach.

26      12.12.    ***Full Authority.*** All counsel executing this Agreement any related documents

27  warrant and represent that they have full authority to do so and that they have the authority to make

28

1  binding commitments in regards to the actions required or permitted to be taken hereunder in order
2  to effectuate its terms.

3      12.13.    ***Receipt of Advice of Counsel.***  The parties acknowledge, agree, and specifically
4  warrant to each other that they have fully read this Agreement, received independent legal, tax, and
5  financial advice with respect to the advisability of entering into it and with respect to the legal effect
6  hereof.  The parties further acknowledge, agree, and specifically warrant that they fully understand
7  the legal effect hereof.

8      12.14.    ***Opportunity to Investigate.***  The parties acknowledge, agree, and specifically
9  warrant to each other that they and their counsel have had adequate opportunity to make whatever
10  investigation and inquiries are deemed necessary or desirable in connection with the subject matter
11  of the Settlement and the advisability of entering into this Agreement.

12      12.15.    ***Good Faith Settlement.***  The parties acknowledge, agree, and specifically warrant
13  to each other that they are entering into this Agreement freely, without duress, in good faith, and at
14  arms length.  The benefits, procedures and offers set forth in this Agreement constitute the entire
15  consideration provided the Settlement Class Members under this Agreement and are agreed by all
16  parties to constitute fair, reasonable and adequate consideration for the Releases and the other
17  agreements and obligations of the Settlement Class Members reflected in this Agreement.  Neither
18  AHS nor any of the Released Parties shall have any obligations to any Settlement Class Member in
19  respect of the Released Claims, except as expressly provided for in this Agreement.

20      12.16.    ***Unknown Claims.***  The parties acknowledge, agree, and specifically warrant to
21  each other that they are familiar with California Civil Code Section 1542, which provides:

22          A general release does not extend to claims which the creditor does not
            know or suspect to exist in his favor at the time of executing the
23          release, which if known by him must have materially affected his
            settlement with the debtor.
24

25  Being aware of California Civil Code Section 1542, all parties releasing claims hereby expressly
26  waive any and all rights they may have under this law and under any other federal or state law of
27  similar effect with respect to the matters released herein.

28

1    12.17.   *Notices.*   Unless otherwise provided herein, any notice, request, waiver,

2    instruction, application for Court approval, or application for Court order sought in connection

3    herewith or other document to be given by any party or to the other party shall be in writing and

4    delivered personally or sent by registered or certified mail, postage pre-paid, with copies by

5    facsimile to the attention of Plaintiffs' counsel or Defendants' counsel (as well as to any other

6    recipients that the Court may specify).   As of the Settlement Date, the respective representatives are

7    as follows:

8                    For Defendants:   **Martin R. Boles**
                                        KIRKLAND & ELLIS LLP
9                                       777 South Figueroa Street
                                        Los Angeles, California 90017
10                                      Telephone: (213) 680-8400
11                                      Facsimile: (213) 680-8500

12                   For Plaintiffs:   **Francis A. Bottini, Jr.**
                                        JOHNSON & BOTTINI, LLP
13                                      655 W. Broadway, Suite 1400
                                        San Diego, CA 92101
14                                      Telephone: (619) 230-0063
15                                      Facsimile: (619) 233-5535

16    12.18.   *Extensions of Time.*   The parties may agree, subject to the approval of the Court

17    where required, to reasonable extensions of time to carry out the provisions hereof.

18    12.19.   *No Beneficiaries.*   No portion hereof shall provide any rights to, or be enforceable

19    by, any Person other than Named Plaintiffs, Class Members, Class Counsel, or Defendants. No third

20    party beneficiaries are created or intended to be created hereby. No Plaintiff or Class Member may

21    assign or otherwise convey any right to enforce any provisions hereof.

22    12.20.   *Preservation of Privilege.*   Nothing contained herein or in any order of the Court,

23    and no act required to be performed pursuant hereto or any order of the Court, is intended to

24    constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work

25    product protection, or common interest/joint defense privilege.

26    12.21.   *No Public Announcement.*   Except as provided herein, none of the Named

27    Plaintiffs, Class Counsel, or Defendants shall, without prior written approval, make any press release

28

-31-

1   or other public announcement concerning this Agreement, except as and to the extent that any such
2   party shall be so obligated by law, in which case the other party shall be advised and the parties shall
3   use their reasonable efforts to cause a mutually agreeable release or announcement to be issued;
4   provided, however, that the foregoing shall not apply to communications or disclosures necessary to
5   implement the provisions hereof or to accounting and/or the Securities and Exchange Commission
6   disclosure provisions or the rules of any stock exchange.

7      12.22.  ***Confidentiality and Return of Documents.*** With respect to all information and
8   documents obtained by, through, or from Defendants, through formal and informal discovery, Class
9   Counsel and Named Plaintiffs represent that they have not shared such information with any
10  individuals or third parties, other than the Named Plaintiffs, their legal and support staff and retained
11  experts, Judge Steven R. Denton, and the Honorable Howard B. Wiener (Ret.). All information
12  related to this Action including that reflected in Class Counsel's files shall be maintained in the
13  strictest confidence to be used only in carrying out the express terms hereof. Within forty-five (45)
14  days of the conclusion of the 24-month Contractor Relations Initiative, the Named Plaintiffs and
15  Class Counsel will return to Defendants any and all documents, data, and other materials provided
16  by Defendants in their files, including those provided in connection with the Contractor Relations
17  Initiative and all copies thereof. Upon satisfaction of this duty and responsibility, Class Counsel will
18  certify in writing that all such data, documents, and materials, and all copies thereof, have been
19  returned. Nothing herein is intended to or shall operate to prohibit: (1) disclosures by Named
20  Plaintiffs and/or Class Counsel that, after reasonable notice to Defendants, are legally required to
21  respond to legal processes or requests from government agencies, nor of any legally required
22  disclosure not specified herein; (2) disclosures to the Named Plaintiffs' and Class Counsels'
23  fiduciaries, insurers, attorneys, or financial representatives, provided an express agreement to
24  maintain the confidentiality of such information is in place and being adhered to; and (3) Class
25  Counsel from filing all documents necessary to obtain approval and confirmation of the Settlement
26  and/or to enforce the Settlement.

27     12.23.  ***Governing Law.*** This Agreement shall be governed by and construed in
28

1   accordance with the domestic laws of the State of California without giving effect to any choice or

2   conflict of law provision or rule (whether of the State of California or any other jurisdiction) that

3   would cause the application of the laws of any jurisdiction other than the State of California.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN WITNESS WHEREOF, Plaintiffs and Defendants have executed this Stipulation of Settlement on this 30 day of September, 2008.

**DEFENDANTS**

American Home Shield of California, Inc.
American Home Shield Corporation

By: _____

      Martin R. Boles, Esq.
      KIRKLAND & ELLIS LLP
      777 South Figueroa Street
      Los Angeles, CA  90017-5800
      Telephone:  (213) 680-8428
      Facsimile:  (213) 680-8500

**NAMED PLAINTIFFS, CLASS COUNSEL,
AND CLASS MEMBERS**

By: _____

      Francis A. Bottini, Jr., Esq.
      JOHNSON & BOTTINI, LLP
      655 W. Broadway, Suite 1400
      San Diego, CA  92101
      Telephone:  (619) 230-0063
      Facsimile:  (619) 233-5535

By: _____

      Edward D. Chapin, Esq.
      CHAPIN WHEELER LLP
      550 West "C" Street, Suite 2000
      San Diego, CA  92101
      Telephone:  (619) 241-4810
      Facsimile:  (619) 955-5318

-34-

IN WITNESS WHEREOF, Plaintiffs and Defendants have executed this Stipulation of

Settlement on this ___ day of September, 2008.

DEFENDANTS

American Home Shield of California, Inc.
American Home Shield Corporation


By: _____

       Martin R. Boles, Esq.
       KIRKLAND & ELLIS LLP
       777 South Figueroa Street
       Los Angeles, CA 90017-5800
       Telephone: (213) 680-8428
       Facsimile: (213) 680-8500


By: _____

       Brian L. Rupiper
       Senior Vice President, CFO and Treasurer
       American Home Shield Corporation

NAMED PLAINTIFFS, CLASS COUNSEL,
AND CLASS MEMBERS


By: _____

       Francis A. Bottini, Jr., Esq.
       JOHNSON & BOTTINI, LLP
       655 W. Broadway, Suite 1400
       San Diego, CA 92101
       Telephone: (619) 230-0063
       Facsimile: (619) 233-5535

34

IN WITNESS WHEREOF, Plaintiffs and Defendants have executed this Stipulation of Settlement on this 30th day of September, 2008.

DEFENDANTS

American Home Shield of California, Inc.
American Home Shield Corporation

By: _____

        Martin R. Boles, Esq.
        KIRKLAND & ELLIS LLP
        777 South Figueroa Street
        Los Angeles, CA 90017-5800
        Telephone: (213) 680-8428
        Facsimile: (213) 680-8500

NAMED PLAINTIFFS, CLASS COUNSEL, AND CLASS MEMBERS

By: _____

        Francis A. Bottini, Jr., Esq.
        JOHNSON & BOTTINI, LLP
        655 W. Broadway, Suite 1400
        San Diego, CA 92101
        Telephone: (619) 230-0063
        Facsimile: (619) 233-5535

By: _____

        Edward D. Chapin, Esq.
        CHAPIN WHEELER LLP
        550 West "C" Street, Suite 2000
        San Diego, CA 92101
        Telephone: (619) 241-4810
        Facsimile: (619) 955-5318

1
2

By: _Karon Edleson_

    Karon Edleson

3
4
5
6
7

By: _Chip Edleson_

    L.B. Chip Edleson

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**COUNSEL LIST**
**EDLESON v. AMERICAN HOME SHIELD OF CALIFORNIA, INC**
**CASE NO. 37-2007-00071725-CU-BT-CTL**

3

4

5

6

| | |
|---|---|
| Francis A. Bottini, Jr., Esq. | Attorney for Plaintiffs |
| JOHNSON & BOTTINI, LLP | KARON and L.B. CHIP EDLESON |
| 655 W. Broadway, Suite 1400 | |
| San Diego, CA  92101 | |
| Telephone:  (619) 230-0063 | |
| Facsimile:  (619) 233-5535 | |

7

8

9

10

11

12

| | |
|---|---|
| Robert R. Gasaway, Esq. | Attorneys for Defendants |
| Ashley C. Parrish, Esq. | AMERICAN HOME SHIELD OF |
| Matthew E. Papez, Esq. | CALIFORNIA, INC. and AMERICAN HOME |
| KIRKLAND & ELLIS LLP | SHIELD CORPORATION |
| 655 Fifteenth Street, NW | |
| Washington, D.C.  20005 | |
| Telephone:  (202) 879-5000 | |
| Facsimile:  (202) 879-5200 | |

13

14

15

| | |
|---|---|
| Martin R. Boles, Esq. | Attorney for Defendants |
| KIRKLAND & ELLIS LLP | AMERICAN HOME SHIELD OF |
| 777 South Figueroa Street | CALIFORNIA, INC. and AMERICAN HOME |
| Los Angeles, CA  90017-5800 | SHIELD CORPORATION |
| Telephone:  (213) 680-8428 | |
| Facsimile:  (213) 680-8500 | |

16

17

18

19

20

21

22

23

24

25

26

27

28

-36-