FILED

2009 Oct-27  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 7

1  JOHNSON BOTTINI, LLP
   Francis A. Bottini, Jr., Esq. (SBN 175783)
2  Frank J. Johnson, Esq. (SBN 174882)
3  Brett M. Weaver, Esq. (SBN 204715)
   655 West Broadway, Suite 1400
4  San Diego, California 92101
   Telephone:    (619) 230-0063
5  Facsimile:    (619) 233-5535

6
   CHAPIN WHEELER LLP
7  Edward D. Chapin, Esq. (SBN 053287)
   Jill S. Houlahan, Esq. (SBN 185757)
8  Douglas J. Brown, Esq. (SBN 248673)
9  550 West "C" Street, Suite 2000
   San Diego, California 92101
10 Telephone:    (619) 241-4810
   Facsimile:    (619) 955-5318
11
   Attorneys for Plaintiffs
12 KARON and L. B. CHIP EDLESON, On Behalf of
   Themselves and All Others Similarly Situated
13

14              **SUPERIOR COURT OF CALIFORNIA**

15              **FOR THE COUNTY OF SAN DIEGO**

16

17 KARON AND L.B. CHIP EDLESON,          ) Case No. 37-2007-00071725-CU-BT-CTL
   On Behalf of Themselves and All Others )
18 Similarly Situated,                    )
                                          )
19          Plaintiffs,                   ) MEMORANDUM OF POINTS AND
                                          ) AUTHORITIES IN SUPPORT OF
20 v.                                     ) PLAINTIFFS' MOTION FOR A
                                          ) PRELIMINARY INJUNCTION
21 AMERICAN HOME SHIELD OF               )
   CALIFORNIA, INC.; AMERICAN HOME       ) CONDITIONALLY UNDER SEAL
22 SHIELD CORPORATION;                   ) PURSUANT TO CRC 2.551(c)
   THE SERVICEMASTER COMPANY; and        )
23 DOES 1 through 20,                     ) (The enclosed record is subject to a motion or
                                          ) application to file the record under seal)
24          Defendants.                   )
                                          )
25                                        ) Dept:  70
                                          ) Judge: Hon. Jay M. Bloom
26                                        ) Date:  November 30, 2009
                                          ) Time:  11:00 a.m.
27

28

1

2

**TABLE OF CONTENTS**

3

I.     INTRODUCTION ............................................................................................................1

II.    SUMMARY OF EVIDENCE............................................................................................2

III.   ARGUMENT...................................................................................................................4

      A.     Legal Standard .....................................................................................................4

      B.     There Is A Reasonable Probability That Plaintiffs Will Ultimately Prevail On
              Their Consumer Claims .......................................................................................5

            1.      Overview of the CLRA And UCL.............................................................5

            2.      AHS's Conduct Violates Both the UCL and the CLRA.......................6

      C.     The Balancing of Harm Tips in Plaintiffs' Favor.......................................22

      D.     Plaintiffs' Requested Relief.............................................................................23

            1.      Disclose flat rate prices and ranking system to customers...................23

            2.      Order AHS to stop entering into contractor service agreements that
                   incentivize contractors to deny claims, perform band-aid repairs,
                   up-sell non-covered charges and penalize contractors for performing
                   necessary replacements..........................................................................24

            3.      Require AHS to collect and maintain information regarding the
                   amount of non-covered expenses to charge to its customers by its
                   contractors............................................................................................25

III.   CONCLUSION...............................................................................................................26

i

# TABLE OF AUTHORITIES

## CASES

*ABBA Rubber Company v. Seaquist*, 235 Cal.App.3d 1 (1992) .........................................................26

*Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992) ...................................................................6

*Bardin v. DaimlerChrysler Corp.* 136 Cal.App.4th 1255 (2006) ...........................................................5

*Brockey v. Moore*, 107 Cal.App.4th 86 (2003)......................................................................................6

*Broughton v. Cigna Healthplans*, 21 Cal.4th 1066 (1999) ....................................................................5

*Butt v. California*, 4 Cal.4th 668 (1996) .................................................................................................5

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal.4th 163 (1999) .........................6

*Colgan v. Leatherman*, 135 Cal.App.4th 663 (2006) .............................................................................4

*Committee on Children's Television, Inc. v. General Fords Corp.*, 35 Cal.3d 197 (1983)................7

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal.App.4th 963 (1992) ................24

*DVD Copy Control Assn., Inc. v. Bunner*, 31 Cal.4th 864 (2003)..........................................................5

*Fidelity National Home Warranty Co. v. American Home Shield of California, Inc.*, 2002 Cal.App.Unpub. LEXIS 3273 (2002) ...................................................................................................3

*Hernandez v. Stabach*, 145 Cal.App.3d 309 (1983) ...............................................................................4

*Hummell v. Republic Fed. Sav. & Loan Assn'n*, 133 Cal.App.3d 49 (1982)......................................26

*Hunt v. Superior Court*, 21 Cal.4th 984 (1999) .....................................................................................5

*Mosk v. National Research Co. of Calif.*, 201 Cal.App.2d 765 (1962) ...............................................24

*Pastoria v. Nationwide Insurance*, 112 Cal.App.4th 1490 (2003) ......................................................22

*People v. Dollar Rent-a-Car Systems, Inc.*, 211 Cal.App.3d 119 (1989)...........................................21

*People v. Hill*, 66 Cal.App.3d 320 (1977) .............................................................................................23

*People v. James*, 122 Cal.App.3d 25 (1981)...........................................................................................4

*People v. Mergent, Inc.,* 170 Cal.App.4th 333 (2009)..........................................................................23

*Scripps Clinic v. Superior Court*, 108 Cal.App.4th 1255 (2006) ..........................................................6

*South Bay Chevrolet v. GMAC*, 72 Cal.App.4th 861 (1999) ..................................................................6

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093 (1996) ........................6, 13

1  **OTHER AUTHORITIES**

2  CCP § 529 ................................................................................................................25

3  CCP § 995.710 ..........................................................................................................25

4  CCP § 527 ..................................................................................................................3

5  CCP § 128.7 ...............................................................................................................3

6  Bus. & Prof. Code § 17200 ........................................................................................6

7  Bus. & Prof. Code § 17203 ........................................................................................4

8  Insurance Code § 12740 ...........................................................................................21

9  Insurance Code § 12743 ...........................................................................................21

10  Insurance Code § 790.3 .......................................................................................2, 22

11  Civil Code § 1770 ...........................................................................................5, 6, 21

12  Civil Code § 1780 .......................................................................................................4

13  CRC 3.1306 .................................................................................................................4

14  Evidence Code § 452 ..................................................................................................3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Even after two years of litigation and a failed settlement that contemplated that AHS would mend its ways, AHS continues to engage in egregious, systematic, and wrongful business practices that deny homeowners the benefits of the home warranty plans purchased from AHS. A preliminary injunction should be issued because the overwhelming evidence presented herein amply demonstrates that plaintiffs have a reasonable probability of success on the merits and that Class Members are being irreparably damaged due to AHS's false advertising and unfair business practices.

AHS falsely advertises that it "can help make covered repairs or replacement easier and less costly" for consumers who purchase its home warranty plans. In order to convince consumers to purchase an AHS plan, AHS states that it "is committed to and solely focused on providing relief from home repair hassles," and "[i]f AHS determines your covered system component or appliance can't be repaired by a service contractor, it will be replaced."

These advertisements are false since AHS fails to disclose that it trains its contractors to "Think Denial," to repair rather than replace items, and to charge consumers substantial sums of money for items covered under the warranty plans under false pretexts. AHS also fails to disclose that the contractors it hires to perform repairs for consumers under its home warranty plans sign uniform, fixed-rate contracts with AHS that would result in substantial and recurring losses to the contractors *if* the sole source of the contractors payment was AHS. If this were the case, of course, no contractor would work for AHS. However, AHS encourages its contractors to make a profit not from AHS, but from the very consumers for whom AHS is allegedly providing "protection" from such charges. AHS does so by training and financially incentivizing the contractors to wrongfully deny claims based on pre-textual reasons such as "lack of maintenance" and "improper installation." Once the claim is wrongfully denied, AHS pays zero and the contractor is free to charge the consumer whatever it wants to repair or replace the item since it is not covered by the home warranty plan. Indeed, as Exhibit B amply demonstrates, a consumer with an AHS home warranty plan is far worse off than a consumer without one since the AHS customer ends up paying up to eight times

1

what a normal consumer has to pay to fix or replace something because they have to pay the full retail rate in addition to the cost of the AHS home warranty plan and the service fee imposed by the contractor. Since AHS never has any intention of honoring the terms of its home warranty plans, it is engaging in promissory fraud.

Of course, AHS never tells its customers about its nefarious relationship with the contractors. Instead, it attempts to scare consumers into buying its worthless home warranty plans by including in its advertisements the average costs that consumers not covered by a home warranty plan pay to have things repaired and replaced. This, of course, along with AHS's other false advertisements and assurances, falsely misleads the consumer to believe that AHS will actually fix or replace things covered under its home warranty plans. If AHS revealed the rock bottom flat-rate pricing agreements it enters into with its contractors, no consumer would ever buy an AHS home warranty plan. *See* Ex. A (demonstrating that AHS pays its contractors as little as 14% of what it actually costs to do the job). Indeed, even for the rare AHS customer who does not get gouged by AHS's complicit contractors, AHS customers pay between 34-72% of the flat-rate payment AHS's contractors receive since they have to pay a service fee for each call. *See* Ex. C.[1]  Finally, AHS continues to violate Ins. Code §790.3 (which requires AHS to "conduct and diligently pursue a thorough, fair, and objective investigation" of its customers' claims) since it does nothing to investigate Class Members' claims and instead relies exclusively on its third party contractors, who are trained to "Think Denial" and gouge the Class Member.

## II.    SUMMARY OF EVIDENCE

AHS violates the law by:

> [W]rongfully denying legitimate warranty claims covered by the policies, setting guidelines and stipulations which penalize contractors for expending resources to resolve problems covered under the policies thereby inducing contractors to fraudulently represent to policyholders that legitimate claims are not covered under the policy,

---

[1] Indeed, AHS's fraud is amply demonstrated by the fact that AHS would go bankrupt if it honored the terms of its home warranty plans and actually paid contractors the market rates necessary, according to AHS's own survey, to properly fix the systems covered under AHS's home warranty plans. *See* Ex. D.

2

1    through bogus denials, band-aid repairs, and gouging consumers with outrageous non-covered

2    charges. *See* Weaver Dec. at Exs. 17 – 18, 26 – 51.

3         AHS, on the other hand, will suffer no legitimate hardship if the injunction is granted.

4    Detailed below, Plaintiffs' requested relief simply seeks to have AHS honor the terms of its home

5    warranty plans and merely conditions AHS's "continued activity on compliance with California's

6    consumer protection laws." *People v. Mergent, Inc.*, 170 Cal.App.4th 333, 341 (2009) (explaining

7    that trial court was well within its "broad discretion" to enjoin defendant from conducting any

8    business in California without complying with California's consumer protection laws).

9         **D.**     **Plaintiff's Requested Relief**

10         This Court's power to enjoin AHS's business practices is "extraordinarily broad."

11    *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal.App.4th 963, 972 (1992). In fact,

12    "because false advertising and unfair business practices can take many forms, the Legislature has

13    given the courts the power to fashion remedies to prevent their 'use or employment' in whatever

14    context they may occur." *Id.* An injunction under California's consumer protection statutes may be

15    prohibitory or mandatory, and may include whatever orders are necessary to prevent the unfair

16    practices from continuing in the future. Id. at 972-73. While "it would be impossible to draft in

17    advance detailed plans and specifications of all acts and conduct to be prohibited, since unfair or

18    fraudulent business practices may run the gamut of human ingenuity and chicanery," *Mosk v.*

19    *National Research Co. of Calif.*, 201 Cal.App.2d 765, 772 (1962), the Court should, at a minimum,

20    fashion a remedy that will significantly deter AHS from continuing to engage in its unfair business

21    practices pending trial. Toward this end, Plaintiff requests that the Court order AHS to adopt and

22    implement one of the following remedies, either individually, collectively, or in any combination,

23    within 45 days from the date of the Court's order:

24         *1. Disclose flat rate prices and ranking system to customers*

25         Requiring a defendant to disclose its unlawful business practices is a common type of

26    injunctive relief. *See Colgan,* 135 Cal.App.4th at 677 (trial court issued an injunction requiring

27    defendant "to disseminate on its Web site for a period of six month and in newspapers circulated

28

throughout California for a period of 12 consecutive weeks a 'corrective announcement'" that its product was not made in the U.S.A. as defendant falsely claimed); *Consumers Union*, 4 Cal.App.4th at 971 (affirming trial court's injunction requiring dairy company to disclose true health effects its advertisements and on its milk bottles).

Here, the Court should require AHS to disclose to its current and potential customers, in its contracts, on its website, via letter, and as part of its marketing materials, that AHS pays its contractors far less than what those contractors would make on a non-home warranty claim. AHS should also disclose that it ranks its contractors primarily based on their average cost per invoice and determines the amount of work a contractor receives based on that ranking. Only then can a consumer fairly evaluate the actual benefits of purchasing or renewing an AHS home warranty plan.

> ### 2. Order AHS to stop entering into contractor service agreements that incentivize contractors to deny claims, perform band-aid repairs, up-sell non-covered charges and penalize contractors for performing necessary replacements

As discussed above, AHS enters into operations agreements with its preferred contractors requiring AHS to assign an increased percentage of work to the preferred contractors. Because these contracts require the preferred contractors to keep costs at or below the group average cost per invoice, which is already well below the going market rate, AHS's contractors have a strong financial incentive to deny claims, perform band-aid fixes and up-sell non-covered charges. The contracts also punish AHS's contractors for performing necessary replacements, thus causing them to almost exclusively repair items. Accordingly, the Court should enjoin AHS from entering into any future service agreements that prevent a contractor from earning a profit from AHS and thus force the contractor to charge the consumer for alleged non-covered items in order to be able to make enough money to perform the necessary repair or replacement.

24

### 3. *Require AHS to collect and maintain information regarding the amount of non-covered expenses charged to its customers by its contractors*

The Court should order AHS to require contractors to submit to AHS the amounts AHS's customers are charged by the contractors for non-covered services and upgrades and to ensure that any such charges are legitimate and reasonable.[12]

### E. The Court Should Require Plaintiffs To Post A Bond In A Minimal Amount

Upon entry of a preliminary injunction, a court must require the party seeking the injunction to produce either an undertaking or put up a bond in lieu of one. C.C.P. §§ 529(a), 995.710. In determining the amount of the injunction, the trial court "is to estimate the harmful effect which the injunction is likely to have on the restrained party, and to set the undertaking at that sum." *ABBA Rubber Company v. Seaquist*, 235 Cal.App.3d 1, 14 (1992). "That estimation is an exercise of the trial court's sound discretion." *Id.* The amount of the undertaking has to be an approximation of the reasonably foreseeable damages caused by the injunction. *Id.* The defendant bears the burden of presenting admissible and quantitative evidence of the harm that an injunction would cause. *Hummell v. Republic Fed. Sav. & Loan Assn'n,* 133 Cal.App.3d 49, 51 (1982).

The amount of the undertaking here should be minimal because AHS will not reasonably suffer any damage if the requested relief is granted. Indeed, Plaintiffs' proposed injunction does not put AHS out of business, prevent it from selling home warranties, bar any truthful advertising, or even preclude it from denying any claims that are legitimately not covered by the terms of its policies.[13] Instead, the proposed injunction merely requires AHS to deal with its customers in an honest and truthful fashion. Thus only a de minimus bond should be required.

---

[12] AHS currently keeps no data regarding how much its contractors charge its consumers, nor does AHS make any effort to ensure that such charges are appropriate or reasonable.

[13] Amazingly, AHS's "person most knowledgeable" recently testified that such information was "fluff data" and no interested to AHS. *See* Sanderson Depo, attached at Weaver Decl., Ex. 21.

1 | **IV.    CONCLUSION**

2 |     For the reasons stated above, Plaintiffs respectfully request that the Court grant their motion

3 | for preliminary injunction.

4 | DATED:  October 9, 2009

JOHNSON BOTTINI, LLP
Francis A. Bottini, Jr. (CA 175783)
Frank J. Johnson (CA 174882)
Brett M. Weaver (CA 204715)

BRETT M. WEAVER

655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 230-0063
Facsimile:   (619) 233-5535

Counsel for Plaintiffs

26