# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LAURA FAUGHT; STEVEN FAUGHT,** on behalf of themselves and all others similarly situated, } } } } | |
| **Plaintiffs,** } } | |
| v. } | Case No.: **2:07-CV-1928-RDP** |
| } | |
| **AMERICAN HOME SHIELD CORPORATION,** } } } } | |
| **Defendant.** } | |

## ORDER ON EXPEDITED UNOPPOSED MOTION FOR INJUNCTION OF RELATED PROCEEDINGS UNDER ALL WRITS ACT

This case is before the court on Defendant's Expedited Unopposed Motion for Injunction of Related Proceedings Under All Writs Act (Doc. # 39), filed on October 27, 2009. On October 29, 2009, Class Members Karon and L.B. Chip Edleson, through their local counsel, filed an opposition to the motion. (Doc. # 40). The court has carefully considered the arguments advanced by the Edlesons and the matters presented to the court by Defendant in its motion. (Doc. # 39). For the reasons explained below, the motion (Doc. # 39) is **GRANTED**.

On October 20, 2009, the court entered an order preliminarily approving the parties' classwide settlement in this action and providing for notice to the class.[1] The order provides for, among other things, an injunction against all Class Members from commencing, prosecuting,

---

[1] The Edlesons suggest that class members will be confused by the class notice in this case, in light of the notice they had previously received of the subsequently-rejected *Edleson* settlement. But apparently they have not read the court-approved notice in this case, which specifically advises class members that this case is distinct from *Edleson*, and that the *Edleson* settlement was terminated. (Doc. # 37, Ex. 2).

participating in or continuing the prosecution of any action asserting any claims covered by the Stipulation of Settlement (as more fully set forth in the order). (Doc. # 37, ¶ 12). The injunction entered by the court is important to protect the court's jurisdiction to fairly consider the settlement, without interference from other competing claims or lawsuits.

The court has been informed by the parties that the lawsuit styled *Karon and L.B. Chip Edleson v. American Home Shield of California, Inc., et al.*, Case No. 37-2007-00071725-CU-BT-CTL, pending in the Superior Court of California for the County of San Diego, continues to be prosecuted. Without question, the continued prosecution of the *Edleson* action interferes (and would continue to interfere) with this court's final consideration of the Stipulation of Settlement, which has been preliminarily approved, and if "left unchecked, would have . . . the practical effect of diminishing the court's power to [determine the propriety of] bring[ing] [this] litigation to a natural conclusion." *ITT Comm. Dev. Corp. v. Barton*, 569 F. 2d 1351, 1359 (5th Cir. 1978).

This court is confident that (1) it has the authority under the All Writs Act to enjoin the Edlesons from prosecuting their putative class action[2] and (2) it is an appropriate exercise of that

---

[2] According to the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Thus, a federal court has the authority under the All Writs Act to enjoin state court proceedings or its litigants where the injunction fits an exception to the Anti-Injunction Act. When a nationwide class action approaches the final stages of settlement, parallel state court proceedings sufficiently interfere with the court's jurisdiction to warrant an injunction. *See In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 239 (3d Cir. 2002) ("In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.") (citing *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203 (3d Cir. 1993)); *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) (holding that, even though settlement had not been formally approved, "the extensive involvement

authority to so enjoin the Edlesons from doing so until such time as the court can make a final determination of whether the settlement reached by the parties – and *preliminarily* approved by this court – is fair, adequate, and reasonable. Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court has explained that, pursuant to the "necessary in aid of jurisdiction" provision, an injunction is appropriate when "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *see also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 234 (3d Cir. 2002) (quoting *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996)) (an injunction is necessary to aid the court's jurisdiction where "the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation"). The Act allows federal courts to protect "ongoing proceedings . . . future proceedings . . . [and] already-issued orders and judgments." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004). Courts have repeatedly invoked this statutory authority to enjoin state courts from allowing class actions to continue that refer or relate to the subject matter of settlements entered in federal court.

In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the federal court entered preliminary approval of a national class action settlement in a product liability case. As part of the preliminary approval order, the federal court enjoined settlement class members against any ability

---

of the district court in settlement negotiations to date and in the management of this substantial class action" justified the district court's injunction against parallel state court proceedings). Accordingly, the posture of this case satisfies the exception allowing an injunction in aid of federal jurisdiction.

to "commence or prosecute any action or proceeding in any court or tribunal asserting any of the claims described in . . . the Settlement Agreement." *Hanlon*, 150 F.3d at 1018. When counsel in a competing class action continued to prosecute that state court class action, the federal district court enjoined the state action from proceeding. The Ninth Circuit affirmed that order and stated:

> [T]he temporary approval of the nationwide settlement stayed the state court class actions. The federal court had the power to issue an injunction against continued state proceedings under the All Writs Act, 28 U.S.C. § 1651.

*Id.* at 1025; *see also Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203 (3d Cir. 1993) ("Our sister circuits have also identified impending and finalized settlements in federal actions as justifying 'necessary in aid of jurisdictions' injunctions of duplicative state actions."); *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985) (All Writs Act injunction entered against 30 state attorneys general from pursuing state attorney general actions in contravention of national federal court settlement); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, No. CV 92-P-11558-S, 1994 WL 114580, at *7 (N.D. Ala. April 1, 1994) (court entered temporary stay suspending all federal and state civil actions "to the extent that any classes proposed or certified in such actions purport to include persons and claims included in the complaint in the [instant actions]").

The Edlesons make two arguments in support of their opposition to the Expedited Unopposed Motion for Injunction of Related Proceedings Under All Writs Act. (Doc. # 39). First, they argue that the *Edleson* action does not (and would not) interfere with this court's jurisdiction because the settlement is not valid. Second, they assert that the court was not informed of key facts that, if known at the time, would have counseled against preliminary approval of the settlement. The court will address each argument in turn.

The Edlesons' first argument is not just wide of the mark, it is wholly frivolous. The court concludes, without any hesitation, that continued litigation of a competing (and now uncertified) putative class action in the California state court would interfere with the process for determining whether the settlement reached here should be approved by this court.[3]

As Defendant AHS has noted in a letter received (and that has been filed into the court's record) by the court:

> If the All Writs injunction is not issued by this Court, AHS will, in essence, be deprived of the benefits of the settlement it has, at great length, negotiated with Messrs. Davis and Norris, without the benefit of a final hearing and despite this Court's findings in its preliminary approval order. Furthermore, should the Edlesons be allowed to proceed, there is a real risk that the California court may interfere with this Court's decision-making. Certainly exposing AHS to an injunction by the California court, on the very issues that are the subject of this settlement, threatens to saddle AHS with inconsistent obligations as regards its business practices, and forces it to defend claims that it has settled. Such a result would be particularly ironic because the Edlesons are not current AHS customers – and have not been since 2005 – and have no personal interest in any of the business practice issues.

(Doc. # 42 at p. 3).

To be clear, the court has not finally approved the settlement proposed by the parties in this case. It has, however, given preliminary approval to the parties' settlement. Among the many factors that the court considered in preliminarily approving the settlement proposed in this matter

---

[3] The court notes that the parties had previously indicated to the court in 2008 that they were negotiating a settlement in this case and had met on numerous occasions with the court appointed mediator. However, when the proposed settlement in *Edleson* was reached, the parties in this case requested that this court informally stay this case – and the court did so in order to allow the California Superior Court to assess the propriety of the settlement. The parties promptly reported to the court that Judge Bloom had rejected the class settlement in *Edleson* and that they had re-engaged the mediator and were continuing negotiations. This not only tends to refute the Edlesons' accusation that the settlement was a quick strike, middle-of-the-night transaction, but also shows that, last year, Class Counsel and this court (consistent with principles of federalism) voluntarily stayed the case in deference to the California court's jurisdiction.

were the facts that the terms of this settlement were (1) negotiated over an extended period of time with assistance from one of the neutrals appointed to the court's ADR panel, and (2) substantially more advantageous to the Class Members than the settlement which was proposed and ultimately rejected by the California state court in *Edleson*. For example, the Faught settlement does not require class members to wait 120 days from submission to the Review Desk to file suit. It does not provide AHS another built-in opportunity to sell additional contracts. It includes additional safeguards to ensure notice goes to appropriate addresses. It provides that Review Desk staff will have a minimum level of experience (*i.e.*, three years). It provides that if submissions are not being processed in a timely manner, AHS will provide additional staffing to the Review Desk. It provides deadlines for AHS to make decisions on submissions. It provides for an appeal process within the Review Desk. It provides for explicit instructions to Review Desk employees regarding factors to consider in evaluating submissions. And perhaps most notably, it provides for an award of attorneys fees or a monetary payment to those class members rejecting offers, filing suit, and recovering more than the amount offered by AHS's Review Desk in court, *i.e.*, recovery of actual attorneys' fees up to $5,000 or three times the difference between the amount offered by AHS and the amount received in court, or a $1,000 lump sum. These are all valuable aspects of the proposed settlement that were not present in respect to the *Edleson* settlement which was flatly rejected by the California Superior Court Judge.[4]

---

[4]Indeed, Judge Bloom made the following findings in *Edleson*:

> Plaintiffs, other than the two lead plaintiffs, really get nothing more than a right to submit or resubmit claims to a defendant that has allegedly not acted in good faith on prior occasions. There are no guarantees claims will now be accepted or properly serviced, or that if improperly denied, plaintiffs have any realistic remedy. They may have the right to sue in the future, but that is subject to the applicable statute of limitations in each jurisdiction in the United States. The

In light of these considerations, the court is concerned that the Edlesons, through their California counsel, have chosen to (1) both ignore and violate this court's Order enjoining the prosecution of other lawsuits, and (2) interfere with the court's jurisdiction over the preliminarily approved settlement here. The court simply will not tolerate that type of conduct.

Nor does the Edlesons' second argument have any merit. To the extent the Edlesons argue that Class Counsel did not have the authority to settle, they have at this point failed to explain why they (or their counsel) have any right to (1) control who can represent a class of affected AHS customers, or (2) why they (or their counsel) have some exclusive right to control who may become Class Counsel. Indeed, a fatal flaw of their argument is their *mis*assumption that their counsel currently represent anyone other than them.

There is not a certified class in the California case, nor do the Edlesons' counsel currently stand as either Class Counsel or Lead Class Counsel. The Edlesons are merely individual plaintiffs *seeking* to represent a class against AHS in the California court system. The gravamen of their

---

> court has no information as to what the applicable limitations are or what other limits may exist to preclude filing of a lawsuit.
>
> The settlement also allows defendant to essentially sell more insurance to plaintiffs at an unspecified price. This allows defendant to make additional money from the settlement rather than paying it out to plaintiffs. The contractor relations initiative also does not provide plaintiffs with any realistic guarantees. The entire settlement essentially asks plaintiffs to give up many viable and realistic rights in return for the hope that defendant will act in good faith. Without more concrete guarantees, plaintiffs, other than the lead plaintiffs, have gotten very little in return for a waiver of claims against defendant. In the face of this illusory result for plaintiffs, counsel receive $2.75 million and defendants substantially limit their liability for past conduct. The court cannot accept this result. Any settlement must give the plaintiff class some tangible benefits or an unfettered right to bring legal claims against defendant.

(Doc. # 39, Ex. 6).

argument appears to be that their counsel cut a side deal with Class Counsel in this case about who would take the first shot at seeking certification of a class. On or about September 30, 2008, the parties in the *Edleson* matter entered into a Stipulation for Settlement which was preliminarily approved by the California court. (Doc. # 39, Ex. 5). However, the Stipulation of Settlement was ultimately rejected on July 8, 2009. In connection with the *Edleson* Stipulation, the parties to that case also entered into a letter agreement which purports to provide that the *Edleson* Lead Counsel's consent was required to settle the claims pending in Alabama.[5] (Doc. # 39, Ex. 4). Although the ultimately-rejected *Edleson* Stipulation requires that it be terminated in writing, the letter agreement in which AHS agreed to obtain consent of "Lead Class Counsel" before settling this matter contains no similar provision. Furthermore, upon the court's rejection of the *Edleson* settlement, the order preliminarily approving the settlement, which appointed "Lead Class Counsel," was effectively nullified. The Edlesons' counsel are simply not "Lead Counsel" any more. The Edlesons' counsel took their shot – and struck out because the court found the settlement they had negotiated on behalf of the class was wholly inadequate. Thus, there is not a sufficient showing at this time that the settlement of this matter was invalid (nor is there a sufficient showing that would lead the court to rescind its preliminary approval).

Again, the court is not, at this time, making any decision on the merits regarding any of the Edlesons' arguments or the validity of the settlement in this case. Indeed, it will not do so until objections are filed and a fairness hearing is conducted. Furthermore, the court will maintain an open mind as to all potential objections; however, the tone and substance of the Edlesons'

---

[5] If the Edlesons do raise an objection based on the argument that their counsel have some exclusive authority to approve any settlement of this action, the court expects that they will support such an assertion – both factually and legally.

Opposition leads the court to offer this warning – the question here is whether the settlement is fair, adequate and reasonable, not whether it disadvantages a lawyer's contingent hope for a large fee.[6]

As noted above, the court concludes that continued prosecution of the *Edleson* action stands to interfere with the classwide settlement the parties in this case have reached, which settlement this court has preliminarily approved, and of which it has required notice be given to the class members, because, among other things, the *Edleson* action seeks the same type of relief (or at least substantially similar relief) as that encompassed by the settlement. The court finds that "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986). The court also finds that continued prosecution of the *Edleson* action would frustrate the preliminary approval order already entered by the court, and entry of this injunction is necessary and appropriate "to effectuate and prevent the frustration of orders [the court] has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

The Edlesons' continued prosecution of their California state case is a clear violation of this court's preliminary approval order. The parties to this case had previously agreed to "stand down" while the *Edleson* settlement was being considered. The Edlesons are now required to stand down while the settlement in this case is being considered.

**WHEREFORE**, the court, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), hereby **ENJOINS** the continued prosecution of the lawsuit styled *Karon and L.B. Chip Edleson v. American*

---

[6] The Edlesons have every right, at the appropriate time and in the appropriate manner, to object to this settlement. But any such objections are to be made to, and considered by, this court. The Edlesons cannot ignore or violate this court's orders, nor can they mount a de facto collateral attack to the settlement, in California or elsewhere.

*Home Shield of California, Inc., et al.*, Case No. 37-2007-00071725-CU-BT-CTL, pending in the Superior Court of California for the County of San Diego.

    **DONE** and **ORDERED** this   30th   day of October, 2009.

                                                        **R. DAVID PROCTOR**
                                                       UNITED STATES DISTRICT JUDGE