IN THE UNITED STATES DISTRICT COURT
FORT THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | )CIVIL ACTION CV-07-P-1928-S ) |
| v. | ) ) |
| AMERICAN HOME SHIELD CORPORATION, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFFS FOR INCENTIVE PAYMENTS AND MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEYS' FEES**

## I.

## INTRODUCTION

This is a nationwide class action case involving a class of over 4 million consumers who either were or are customers of defendant American Home Shield Corporation ("AHS"). After over two years of contentious litigation and marathon settlement negotiations, Class Counsel have achieved a settlement agreement with AHS that is unprecedented in the quality and scope of the relief to be afforded to the class members. Faced with an opponent with serious defenses on the merits, Class Counsel have nevertheless forced AHS to agree to settle this case on a basis that will

require AHS to reconsider every previously denied warranty claim that any class member re-submits for review, with draconian penalties hanging as a threatening ax over AHS's head should it fail to overturn prior decisions wrongfully denying claims.

Class Counsel seek a modest award of 25% of any amounts <u>actually paid</u>[1] to class members, plus a payment of $1.5 million to be paid by AHS, separate and apart from the relief awarded to the class.  After an agreement was reached as to the relief to be accorded the class, AHS agreed not to oppose a fee request in this amount, including the amount to be paid by AHS.  Given that the fee request is on the low side of fee awards by courts in this Circuit in similar cases, and given that the percentage portion of the fee does not come out of some "fund" but rather only out of the amounts actually paid to class members, we do not anticipate any serious opposition by the class members to this fee request.

Additionally, as is common and ordinary in class action settlements, the plaintiffs, Steven and Laura Faught, seek an incentive payment of $5,000 apiece to compensate them for their services as class representatives.  The Faughts, at great personal sacrifice as to their own claim against AHS, have performed exemplary services on behalf of the class.  The amount requested

---

[1] <u>Cf.</u> <u>Waters v. International Precious Metals Corp.</u>, 190 F.3d 1291 (11th Cir. 1999) (affirming district court's awarding percentage of fund established to pay claims even though district court acknowledged that the claims submitted would be less than the fund established to pay them).

to compensate them for their valuable services is in line with incentive fee awards in similar cases.

We flesh out below all of these reasons the Court should grant this motion by the Faughts for an incentive payment and motion by Class Counsel for an award of attorneys' fees.

## II.

## FACTUAL BACKGROUND

**A.  The <u>Faught</u> Litigation and Settlement Negotiations.**

The Faughts filed this lawsuit in 2007 seeking to represent a nationwide class of AHS customers aggrieved by AHS's bad faith claims handling practices and routine breaches of the terms of its uniform written contracts with its customers.  After a year of litigation, discovery, and motion practice, the parties began a protracted and contentious negotiation that ultimately led to this settlement.  The road to settlement was long and bumpy.  Class Counsel on at least three occasions walked out of mediation sessions after concluding that further negotiations would be fruitless.  Ex. A, Davis Dec. ¶ 9.   On one of those occasions, after AHS took a position in mediation that plaintiffs frankly found to be outrageous, plaintiffs formally terminated the mediation, and filed the next day an adversarial motion for class certification.  <u>Id.</u>; Ex. B, Van Tassel Dec. ¶ 3. Class Counsel only

withdrew that motion after AHS reversed its position on an extremely controversial subject, which broke what appeared to be an unbreakable logjam in the negotiations.  Id.; Ex. A, Davis Dec. ¶ 9.

The negotiations were largely conducted in formal mediation.  The mediator was George M. Van Tassel, III, a well-known and accomplished Birmingham attorney specializing in mediation and other forms of alternative dispute resolution.  See generally Ex. B, Van Tassel Dec.  The negotiations were extraordinarily protracted.  Indeed, the parties met in formal mediations sessions with Mr. Van Tassel on 17 occasions.   Ex. B, Van Tassel Dec. ¶ 2; Ex. A, Davis Dec. ¶ 9.   Class Counsel met with AHS's attorneys in person and by telephone on numerous occasions outside the presence of Mr. Van Tassel.  Ex. A., Davis Dec. ¶ 9; Ex. G, Goodman Dec. ¶ 3.

## B.     The Parties Agreed To Class Relief Before Commencing Negotiations Concerning Attorneys' Fees For Class Counsel.

The parties actually reached two settlements in this case.  In November, 2008, the parties reached an agreement as to a resolution of the claims of a class that was originally defined in the complaint, consisting of those who had claims denied based on lack of annual maintenance during the first year of a home warranty.  Ex. G, Goodman Dec. ¶¶ 3-4; Ex. B, Van Tassel Dec. ¶ 3.  The parties entered into a formal stipulation of settlement

as to that class on January 13, 2009.  Ex. G, Goodman Dec. ¶ 3.  That

stipulation reflected no agreement as to attorneys' fees and as of that date the

parties had not engaged in any discussions or negotiations concerning

attorneys' fees.  Id.  The parties engaged in some fee negotiations thereafter

but were unable to reach an agreement.  Ex. G, Goodman Dec. ¶ 4; Ex. A,

Davis Dec. n.1.

The parties agreed to postpone presenting the settlement to this Court

until after the final resolution of the class action settlement in Edleson.  Ex.

G, Goodman Dec. ¶ 5.  After the Edleson court rejected the settlement

reached in that case, the parties began negotiating a settlement that would

include a broader class than that encompassed by the original Faught

complaint.  Id.. ¶ 6.  At that point in time, fees were "off the table" because

the parties were once again negotiating as to the substance of class relief.

Ex. B, Van Tassel Dec. ¶ 4; Ex. A, Davis Dec. n.1.  Thereafter there was no

discussion of fees until after an agreement had been reached as to the

settlement for the larger class.  Id.; Ex. A, Davis Dec. ¶ 9 & n.1; Ex. G,

Goodman Dec. ¶ 7; Ex. F, Norris Dec. ¶ 5 & n.1.

## C.     The Settlement and Fee Request.

Class Counsel ultimately reached an agreement with AHS as to the

nature and scope of class relief.  For purposes of this fee petition, it is of

central importance to understand the relief to be awarded this class.  Other

than $1.5 million to be paid out directly by AHS, and not out of any funds

paid to the class,[2] Class Counsel principally seek fees in the form of a

percentage of the monetary award *actually paid* to class members.  This

settlement does not involve the establishment of a fund from which

payments may or may not be paid to the class.  Ex. C, Stipulation of

Settlement.  It does not contemplate the payment in the form of coupons that

may or may not be redeemed by class members.  Id.  Instead, the settlement

contemplates that AHS will man what is known as a "Review Desk" with

experienced customer service employees.  Id.  The Review Desk, for a

specified period of time, will accept submissions by class members who

made claims under their AHS warranties but were dissatisfied with the relief

offered or given (or not offered or given) by AHS.  Id.  The Review Desk is

obligated to review each such submission and, if appropriate, to offer

additional benefits to the party submitting the claim.  Id.

The Edleson settlement with which the Court is familiar, and which

the Superior Court of San Diego County, California rejected as not being

fair, reasonable, or adequate, similarly contemplated a review desk, but there

---

[2] As we explain in more detail below, the purpose of the $1.5 million to be paid directly by AHS is to compensate Class Counsel for the substantial non-monetary benefits that the class will receive, as well as to provide Class Counsel with funds to perform the substantial work that will be necessary to monitor the Review Desk's decisions and ensure that the Review Desk operates in good faith.  Class Counsel elected to seek fees structured in this way with a lower percentage (25%) rather than seek a larger percentage in the range of 35% to 50%, which the caselaw indicates would be justified in a case such as this one.

the similarity between this settlement and that one ends.  See generally Ex.

D, Edleson Stipulation of Settlement, Ex. E; Edleson Order Denying

Approval of Class Settlement. The Edleson settlement gave the review desk

completely unbridled discretion to simply affirm the previous decision as to

which the class member complained, with absolutely no adverse

consequences attached.  Ex. D, Edleson Stipulation of Settlement ¶ 5.1.

Indeed, class members in Edleson, in exchange for this completely illusory

relief, gave broad form releases that would substantially limit or completely

prohibit any later litigation concerning the class members' claims.  Id. ¶¶

5.1, 10.1, 10.2; 10.3; see also Exhibit E, Edleson Order Denying Approval of

Class Action ("In the face of this illusory result for plaintiffs, counsel

receive $2.75 million and defendants substantially limit their liability").

Just the opposite, this settlement provides draconian penalties if AHS

wrongfully denies or underpays a claim.[3]  Ex. C, Stipulation of Settlement

¶¶ 5.2(Q), 5.2(R), 5.2(S).  A class member who is dissatisfied with his or her

treatment by the Review Desk retains the right to sue for breach of the

original warranty contract, with the statute of limitations, of course, tolled by

the pendency of this class action and by the stipulation of settlement itself.

Id.; See American Pipe and Constr. Co. v. Utah, 414 U.S. 538, 550-51

---

[3] As to first year lack of maintenance HVAC denials, the settlement also mandates the reversal of all denials of such claims except in very narrow circumstances.  Ex. C, Stipulation of Settlement, Ex. A.

(1974) (holding that pendency of class action tolls the statutes of limitations for all putative class members) see also Ex. C, Stipulation of Settlement ¶ 5.2(Q) (explicitly tolling statute of limitations for class members who submit claims until seven days after receiving a decision concerning their submission to the Review Desk).  If the class member retains an attorney and sues because of the denial of a claim relating to the HVAC system based on "lack of maintenance" during the first year of the warranty, and if the class member recovers more than the Review Desk offered, under the settlement AHS must pay, in addition to the damages, attorneys' fees, capped at $5,000 or three times the difference between the recover and what the Review Desk offered, whichever is greater.[4]   Ex. C, Stipulation of Settlement, ¶ 5.2(R).  All other claimants who recover more than the Review Desk offers will receive, on top of any damages, a penalty paid by AHS in the amount of $1,000.[5]  Id. ¶ 5.2(S).

---

[4] The reason first year lack of maintenance HVAC claims are treated differently is twofold.  First, these claims are the ones involving the most money since the HVAC is typically the most expensive system in a house to repair or replace.  Second, as the plaintiffs alleged in their original complaint, the merits of the breach of contract claim for first year lack of maintenance claims is grounded in the clear language of the uniform AHS warranty language, which squarely precludes the denial of a claim for failure to do annual maintenance during the first year of the contract – how can a customer be faulted for failing to do something that is required to be done once a year when a year has not yet elapsed?  See generally Class Action Complaint.

[5] First year lack of maintenance HVAC claimants are entitled to the $1,000 penalty as well if they choose to proceed pro se rather than hire an attorney to prosecute their claim.  Ex. C, Stipulation of Settlement ¶ 5.2(S).

Class Counsel do not seek to be paid any amount of these penalties or attorneys' fees. Rather, Class Counsel seek to be paid a percentage of the amounts the Review Desk awards in cash payments to class members. This is only a limited portion of the relief the Review Desk is authorized to award to class members, if appropriate. For example, if a class member claims that AHS wrongfully failed to repair a water heater, and that water heater remains unrepaired, then AHS may appropriately elect to have its own contractors repair the water heater. Ex. C, Stipulation of Settlement ¶ 5.2(K)(i). In this situation, since the class member does not receive any cash payment, Class Counsel would not receive any portion of the benefit provided to the Class Member. Similarly, AHS may in certain circumstances elect, with the agreement of the class member, to provide an extension of the warranty period to a class member. Ex. C, Stipulation of Settlement ¶ 5.2(K)(iii). Again, Class Counsel would receive nothing in this circumstance even though the class member receives something of value.

So this is not a situation where Class Counsel seeks to have the Court place an artificially high value on some "benefit" given to the class, and then award as fees a percentage of that value. To the contrary, the modest request made in this fee request would give Class Counsel only a percentage of a

*portion* of the benefit provided to the class, that portion being the amounts the AHS Review Desk pay out in cash payments to the class.

Moreover, as we explain in the Argument section below, Class Counsel could have justified petitioning for a much higher percentage of the cash payments made to class members in view of the relief obtained in this matter.  Class Counsel elected not to do this, but instead to recover some portion of what a larger percentage would have generated in the form of a cash payment from AHS.  Ex A, Davis Dec. ¶ 14.   This cash payment likely will not make up for the reduced percentage that Class Counsel seeks – it is instead likely that Class Counsel will ultimately receive less than we would have received had Class Counsel petitioned for and received 30% or 35%, percentages with solid support in the decisions awarding and affirming class action attorneys' fees.[6]  The advantage of this arrangement is that the enhanced amount over and above 25%  will come out of AHS's pocket rather than the pockets of the class members.

---

[6] We do not venture to speculate as to how much the class members will ultimately receive, and which, if approved, would form the basis of a 25% fee.  We do point out, however, that the class numbers 4.3 million, of which we understand fully a quarter have submitted claims that have been denied.  Given that the named class representatives have provable damages of over $8,000 relating to their individual HVAC claim, it is entirely possible that the ultimate amount paid in this settlement could be a large number indeed. In that circumstance, the addition of $1.5 million in fees payable by AHS would generate the equivalent of a very small additional percentage fee.

**D.     Class Counsel Are Experienced and Competent.**

Class Counsel are experienced and competent class action and mass tort attorneys.  Frank Davis, lead Class Counsel, has devoted a substantial portion of his practice to class action litigation for more than 30 years.  Ex. A, Davis Dec., ¶ 4.  He and his partner, John Norris, also have substantial experience in mass tort litigation.  Id., Ex. F, Norris Dec. ¶ 3. Mr. Davis was an attorney representing parties in a significant number of the important early class action cases, including *Swint v. Pullman-Standard*, *Hayes v. Republic Steel*, and *Cox v. American Cast Iron Pipe Co.*  Ex. A, Davis Dec. ¶ 5.  Mr. Norris likewise worked on cases generating important Eleventh Circuit decisions on class action law, including *Pettway v. American Cast Iron Pipe Co.*, *Cox v. USX*, and *Beavers v. American Cast Iron Pipe Co.*  Ex. F, Norris Dec. ¶ 3.  Both Mr. Davis and Mr. Norris have tried class action cases and settled class action cases.  Ex. A, Davis Dec. ¶ 4; Ex. F, Norris Dec. ¶ 3.  They have represented plaintiffs and defendants in class action cases.  Id.

Mr. Davis has been lead or co-lead counsel in other consumer class actions which were settled on a nationwide basis, including *Hammack v. Quaker State Corp.*, *Singleton v. Splitire, Inc.*, and *Wilson v. Dahlberg*.  Ex. A, Davis Dec. ¶ 5.   He has also been lead or co-lead counsel on the defense

side in nationwide class actions, including class actions against virtually all the rental car agencies in the United States, against computer companies, fast food chains, and others.  Id. ¶ 6.

Mr. Davis and Mr. Norris were also co-lead counsel in one of the largest toxic tort mass cases in the history of the United States.  Id. ¶ 7; Ex. F, Norris Dec. ¶ 4.  They are currently co-lead counsel in the litigation on behalf of the people of Viet Nam.  Id.  Mr. Davis has certainly been counsel to either the plaintiffs or the defendants in more than 50 class actions and likely over 100 class actions.  Ex. A, Davis Dec. ¶ 8.

We have also submitted the declaration of Peter Burke, an attorney with whom Mr. Davis and Mr. Norris have worked closely on previous cases.  Mr. Burke confirms that Mr. Davis and Mr. Norris are knowledgeable and experienced attorneys well-versed in class action law, practice, and procedure.  Ex. H, Burke Dec. ¶ 2.  Mr. Burke, having been supplied with information concerning this case, the general structure of the settlement, and the structure of the proposed attorneys' fee award, is of the opinion that the requested fee is fair and reasonable "to the point of being modest."  Id. ¶ 5.  He states:

> The 25% portion of the fee is at the low end of what courts in this Circuit have awarded in similar cases.  The $1.5 million paid by AHS will not burden the class in any way.  The structure of the fee, which incentivizes Class Counsel to ensure

> that AHS reviews claims in good faith during the review
> process, actually enhances the value of the settlement much
> more than fee awards I have seen in other cases where attorneys
> are award a fixed percentage of a "fund" that may or may not
> be paid to the class. See, e.g., Waters v. International Precious
> Metals Corp., 190 F.3d 1291 (11th Cir. 1999) (affirming district
> court's awarding percentage of fund established to pay claims
> even though district court acknowledged that the claims
> submitted would be less than the fund established to pay them).
> A fee that is tied directly to amounts actually paid to the class
> members is unusual and provides Class Counsel with the
> maximum incentive to ensure that the class members are treated
> fairly in this settlement.

Id. ¶ 5.

### E.    The Faughts Have Performed Valuable Services For The Class At Considerable Personal Sacrifice.

In July 2007, the HVAC system in the Faughts' home failed. Ex. I,

Faught Dec. ¶ 2. They contacted AHS to correct the problem. Id. AHS

denied their claim and, as a consequence, they were left without air

conditioning in our home. Id. Ms. Faught at this time had just given birth to

the Faughts' first child. Id. Once winter arrived, the Faughts realized that

the problems associated with the HVAC system had also affected the heating

exchange. Id. They were given an estimate of $7,374.00 by Alabama

Heating and Air to replace the system and to restore proper air conditioning

and heat to their home. Id.

The Faughts could not afford such a sum to replace the HVAC.

Therefore, they were forced to purchase three window units and several box

fans to make it through the summer months.  Id.  ¶ 3.  This purchase was approximately $500.00.  Id.  Additionally, in the winter they had to purchase space heaters to make the home habitable.  Id.  They had to eat out more in the summer because the kitchen was uncooled, which constituted an additional expense they could not afford.  Id.  They had to spend their days outside the house and our nights at one of their parents' house to avoid the heat and the cold.  Id.  The Faughts' lives were inconvenienced in the extreme for the past two years.  Id.

Subsequently, the Faughts learned that other people like them believed their claims had been wrongly denied by AHS.  Id.  ¶ 4.  They understood that they had the option of pursuing their claims against AHS in an Alabama district court, which would have been resolved within a reasonable amount of time.  Id.  However, they chose to pursue this matter not only on the Faughts' own behalf, but also on behalf of others who similarly had claims wrongfully denied.  Id.

The Faughts were advised that if they pursued the claim as a class action it could take potentially years before the claim was resolved; and that there would be a substantial time commitment on their part as class representatives.  Id.  ¶ 5.  Additionally, they were advised there are no guaranteed outcomes.  Id.  They have never been promised or guaranteed

any amount of money to compensate them for their personal claim against AHS or to compensate them for their services as class representatives.  Id.

Steven and Laura Faught each have expended many hours in meeting with Class Counsel, both in person and by telephone; reviewing documents and providing input on behalf of the class members.  Id. ¶ 6. They each discussed with Class Counsel all serious settlement proposals which were offered during the mediation process and purposefully set aside their own interest in deference to the class.  Id.  The Faughts rejected any offers which they felt did not provide an adequate remedy to the class, even if the offer would have made the Faughts, personally, whole as to their individual claim. Id.

Once the Settlement Notice was sent out the Faughts received several telephone calls and emails regarding the claim to which they directed Class Counsel.  Id. 7. The Faughts also have several friends who received the Notice who have contacted them.  Id.

The Faughts have been fully involved in this litigation from the very beginning and take seriously their jobs as class representatives on behalf of all members of the class.  Id.  ¶ 8; Ex. A, Davis Dec. ¶ 11; Ex. F, Norris Dec. ¶ 7.  The Faughts have, like many of the class members, suffered through heat waves and cold spells without proper heating and air conditioner with

the full understanding that they may never receive any compensation.  Ex. I,
Faught Dec. ¶ 8.  However, the Faughts believe it is important to make
people aware of the problem that existed with AHS's claims-handling
practices, and to ensure that the class as a whole is treated with fairness, and
to ensure that any relief awarded to the class, whether by judgment or
settlement, is fair, adequate, and reasonable.  Id.

The Faughts fully understand that, under the Stipulation of Settlement,
the Court may approve the settlement but refuse to award them the incentive
payment for which they have petitioned, even though AHS has agreed not to
object to a request for an incentive payment not to exceed $5,000 for each of
the Faughts.  Id. ¶ 9. With this full knowledge and understanding, the
Faughts nevertheless support this settlement and urge the Court to approve it
regardless of whether the Court decides to award them any incentive
payment in the requested amount or any other amount. Id.

## III.

## ARGUMENT

### A.  The Appropriate Methodology For Awarding Fees From A Common Fund Is To Award A Percentage Of The Recovery.

The United States Supreme Court recognized over 100 years ago that
attorneys have a claim to fees payable as a percentage out of a common fund

which they created through their efforts.  Internal Imp. Fund Trustees v. Greenough, 105 U.S. 527, 532 (1881); Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 124 (1885).  Payment through this method serves the salutary purpose of spreading the fee obligation among those benefitted by the litigation.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989).  Indeed, while some courts in this country prefer a "lodestar" method for awarding attorneys' fees, which is determined by multiplying the hours expended by the attorneys by a reasonable hourly rate, the Eleventh Circuit has consistently held for nearly 20 years that the percentage of recovery method is the *sole* method for calculating a reasonable attorneys' fee in a common fund recovery case.  Camden I Condominium Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991) ("After reviewing Blum, the Task Force Report, and the foregoing cases from other circuits, we believe that that percentage of the fund approach is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund <u>shall</u> be based upon a reasonable percentage of the fund established for the benefit of the class.") (emphasis supplied).

The Eleventh Circuit in Camden I observed that there is "no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee, because the amount of any fee must be

determined upon the facts of each case." Camden I, 946 F.2d at 774.  While

recognizing that a "majority" of the fee awards fell within the 20% - 30%

range, the Eleventh Circuit in Camden I noted that fees could reach the

upper limit of 50% in certain cases.  Id. At 774-75.  Accord, Waters v.

International Precious Metals Corp., 190 F.3d 1291, 1294-95 (11th Cir.

1999) (approving an attorneys' fee award of 33.33%).

The establishment of an appropriate fee percentage does vary from

case to case, and the Eleventh Circuit in Camden I adopted the twelve

factors established in Johnson v. Georgia Highway Express, Inc., 488 F.2d

714, 717-19 (5th Cir. 1974), as appropriate guideposts "in evaluating, setting,

and reviewing percentage fee awards in common fund cases."  Camden I,

946 F.2d at 775.    The Eleventh Circuit emphasized in Camden I, however,

that the Johnson factors are not exclusive.  "Other pertinent factors are the

time required to reach a settlement, whether there are any substantial

objections by class members or other parties to the settlement terms or the

fees requested by counsel, any non-monetary benefits conferred upon the

class by the settlement, and the economics involved in prosecuting a class

action.  In most instances, there will also be additional factors unique to a

particular case which will be relevant to the district court's consideration."

Camden, 946 F.2d at 775.  Accord, Waters, 190 F.3d at 1295-96.  Arguably,

though, "the most critical factor is the degree of success obtained." Hensley

v. Eckerhart, 461 U.S. 424, 436 (1983). See also Advisory Committee

Notes to the 2003 Amendments to Federal Rule of Civil Procedure 23 ("For

a percentage approach to the measurement, results achieved is the basic

starting point.").

**B.      The Request Percentage of 25% In This Case Is Far Below
        Percentage Awards That Have Been Awarded By Other Courts In
        Class Actions.**

As stated earlier, it is common for courts to award percentage fees that

greatly exceed 25%. Empirical studies bear this out. For example, Arthur

Miller, the well-known Harvard civil procedure professor and co-author of

Wright & Miller, Federal Practice and Procedure, signed an affidavit in 2004

in connection with In re DPI, Inc. Sec. Litig., 307 F. Supp. 2d 947 (S.D.

Ohio 2004). Professor Miller spoke in support of a fee application in that

case of 35%. 307 F. Supp. 2d at 952. He based his conclusion, in part, on

such studies as Denise N. Martin, et al., Recent Trends IV: What Explains

Filings and Settlement in Shareholder Class Actions, 5 Stanford Journal of

Law, Business, and Finance 121, 141 (1999), which concluded that the

average fee in such class actions equaled 32% of the amount recovered. See

also Vincent E. O'Brien and Richard W. Hodges, A Study of Class Action

Securities Fraud Cases, 1988-1996 (Law & Economics Consulting Center

1996).  Professor John Coffee of the Columbia University School of Law has opined that in class actions "the average fee award appears to be over 30" percent.  Declaration of John C. Coffee, Jr., cited in In re: Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d 503 (S.D.N.Y. 2003).

Reported court decisions also bear this out.  The district court in Pinto v. Princess Cruise Lines, Ltd., 2007 WL 853431, *6-7 (S.D. Fla. Feb. 16, 2007), concluded that fee percentages in class actions typically range from 25% to 35% of the recovery, and awarded a fee of 30% of a settlement fund of $4,250,000 in a case involving less than one year of litigation.  The court in Pinto noted that the "fee requested in this case is . . . well in line with the bulk of the fee awards in class action litigation."  Id. At *70-10.  Similarly, the Eleventh Circuit in Waters v. International Precious Metals Corp., 190 F.3d 1291, 1300 (11th Cir. 1999), affirmed a fee award in a case where the district court had determined that the benchmark fee should be 30%, and then adjusted the fee award upwards to one-third of the fund.  The Eleventh Circuit affirmed the payment of a $13.3 million fee, as calculated on the total potential value of the settlement, even though it was clear that not all of the $40 million fund would ever be claimed.  Id. At 1295-98.  In stark contrast, Class Counsel in this case seek to be paid *only* a percentage of monetary relief actually paid to the class.

Likewise, in the "mega-fund" <u>Allapattah</u> case, the District Court for the Southern District of Florida approved the class counsel's fee request of 31 and 1/3 percent of a common fund settlement in excess of one billion (with a "b") dollars.  <u>Allapattah Servs. v. Exxon Corp.</u>, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  Indeed, in that case the district court reasoned that "the more appropriate measure of a reasonable percentage is the market rate for a fee in commercial cases . . . Applying this approach, I conclude that the fee requested is unquestionably within the range, if not below, the market rate for private contingency agreements in commercial cases."  <u>Id.</u> at 1211-1212.  Eleventh Circuit  Judge Dubina, when he was a district court judge, awarded a common fund attorneys' fee of over 30% in <u>Mashburn v. National Healthcare, Inc.</u>, 684 F. Supp. 679 (M.D. Ala. 1988) (cited approvingly in <u>Camden I</u>, <u>supra</u>, 946 F.2d at 775).  Judge Dubina found that a fee of 30.29% was appropriate even though there was no long or protracted litigation.

Courts from other jurisdictions have awarded fees approaching the levels of 35% or higher.  For a example, a 36% fee was approved in <u>In re U.S. Bancorp Litig.</u>, 2291 F.3d 1035, 1038 (8th Cir. 2002).  The Eighth Circuit in that case relied heavily upon Judge Dubina's opinion in <u>Mashburn</u>, <u>supra</u>.  <u>Accord</u>, <u>In re: Control Data Sec. Litig.</u>, No. 3-85-1341 (D.

Minn. Sept. 23, 1994) (awarding 36.96%); <u>In re: Coordinated Pretrial</u>

<u>Proceedings in Antibiotic Antitrust Actions</u>, 410 F. Supp. 680 (D. Minn.

1975) (awarding 37% from $45 million common fund); <u>In re Crazy Eddie</u>

<u>Sec. Litig.</u>, 824 F. Supp. 320 (E.D.N.Y. 1993) (awarding 33.8%); <u>Adair v.</u>

<u>Bristol Tech. Sys., Inc.</u>, 1999 WL 1037878, at *3 (S.D.N.Y. Nov. 16, 1999)

(awarding one-third); <u>Greene v. Emersons Ltd.</u>, 1987 WL 11558 (S.D.N.Y.

May 20, 1987) (awarding 46.2%) (cited approvingly by Judge Dubina in

<u>Mashburn</u>, <u>supra</u>); <u>In re: General Instrument Sec. Litig.</u>, 209 F. Supp. 2d 423

(E.D. Pa. 2001) (awarding one-third of $48 million settlement); <u>In re: Corel</u>

<u>Corp. Inc. Sec. Litig.</u>, 293 F. Supp. 2d 484, 496-97 (E.D. Pa. 2003)

(awarding one-third); <u>Friedman v. Lansdale Parking Auth.</u>, 1995 WL

141467 (E.D. Pa. Mar. 31, 1995) (awarding 35%); <u>Cimarron Pipeline</u>

<u>Constr., Inc. v. National Council on Compensation Ins.</u>, 1993 WL 355466

(W.D. Okla. June 8, 1993) (awarding one-third).

Applying the holdings in these cases to this one, it is readily apparent

that the requested percentage of 25% of the amounts actually paid to the

class members is "reasonable to the point of being modest."  Burke Dec. ¶ 5.

Class counsel in this case have litigated and negotiated for over two years to

reach this result.  As the court in <u>Camden I</u> noted, perhaps the "most critical

factor is the degree of success obtained."  946 F.2d at 775.  The quality of

relief afforded by the Stipulation of Settlement is extraordinary.  Every single AHS customer who has a grievance with the way a claim was handled may re-submit their claim to the Review Desk.  The Review Desk will be forced to handle those claims in absolute good faith, because Class Counsel, motivated by the contingency nature of the fee award, will zealously monitor the operation of the Help Desk.  Ex. A, Davis Dec. ¶ 14.  Moreover, the penalty and attorneys' fees provisions will make the Review Desk think twice about wrongfully denying any claims.  Ex. C, Stipulation of Settlement ¶¶ 5.2(Q), 5.2(R), 5.2 (S).  The nationwide group of courts analogous to the Alabama district and small claims courts will function as a punitive deterrent to any bad faith conduct by the Review Desk, because a wrongful denial carries with it the risk of an automatic monetary or attorneys' fee penalty on top of any damages recovered by a class member disgruntled by an AHS Review Desk decision.  As a practical matter, the class will receive better relief than any classwide adversarial judgment could have hoped to achieve.

An additional factor needs to be stressed on this point.  This is not a "fixed fund" case.  There is no limited monetary fund from which claims will be paid.  The amount AHS may be called upon by AHS to pay is not limited in any way.  Additionally, the relief accorded to the class, as we have

explained, is not limited to monetary payments. Thus, the percentage fee requested is more than reasonable, given that it is tied purely to the amounts actually paid to the class members.  The law in the Eleventh Circuit holds that, in a claims-made settlement such as this one, class counsel is entitled to a percentage of a fund established to pay claims, even where the court knows that the entire fund will not, in fact, be distributed to the class. <u>Waters v. International Precious Metals Corp.</u>, 190 F.3d 1291, 1300 (11th Cir. 1999). We are not asking the Court to go that far.  Class Counsel deliberately seeks a percentage only of the amounts actually paid, so that Class Counsel will remain motivated and incentivized to ensure that this class settlement works for the maximum benefit to the class.

**C.    The Amount Requested To Be Paid By AHS Is Reasonable, Serves To Compensate Class Counsel For Benefits To The Class For Which They Will Otherwise Go Uncompensated, and Is Consistent With the Law of this Circuit.**

Courts in the Eleventh Circuit have awarded fees paid directly by the defendant, even in cases where Class Counsel would otherwise be entitled to a percentage of the recovery pursuant to <u>Camden I</u>.  For example, in <u>Hillis v. Equifax Consumer Servs., Inc.</u>, 2007 U.S. Dist. Lexis 48278 (N.D. Ga. June 12, 2007), the court approved a settlement including a provision requiring defendants to pay a lump sum attorneys' fee of $4 million to class counsel, rather than taking any percentage of a monetary recovery (in the form of the

24

offer of additional services to the class members) valued at between $100 million and $221 million, although the court was "aware that not all consumers will avail themselves of an opportunity to redeem this benefit." Id.  At *15-16.  The Hillis court noted that in "most class action cases, and in any contingency fee case, Class Counsel would be entitled to seek attorneys' fees and costs directly from any cash recover." Id. at *13.  Nevertheless, the court approved the payment directly to counsel from the defendants rather than requiring the class members to shoulder the burden of paying counsels' fees. Id.

This holding justifies the Court's awarding the portion of the fee to be paid directly by AHS.  The particular factual context of this settlement provides further support.  The Eleventh Circuit has squarely held that "the amount of any fee must be determined upon the facts of each case." Camden I, 946 F.2d at 774.  One of the factors considered is "any non-monetary benefits conferred upon the class by the settlement. . . .  In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration." Camden, 946 F.2d at 775.

In this case, the $1.5 million fee paid directly by AHS is justified by the considerable value of the "non-monetary benefits conferred upon the

class by the settlement." 946 F.2d at 774.   Much of the relief to be awarded to this class under the Review Desk procedure will necessarily be "non-monetary."   For example, if a class member claims that AHS wrongfully failed to repair a water heater, and that water heater remains unrepaired, then AHS may appropriately elect to have its own contractors repair the water heater.  Ex. C, Stipulation of Settlement ¶ 5.2(K)(i).  In this situation, since the class member does not receive any cash payment, Class Counsel would not receive any portion of the benefit provided to the Class Member. Similarly, AHS may in certain circumstances elect to provide an extension of the warranty period to a class member.  Ex. C, Stipulation of Settlement ¶ 5.2(K)(iii). Again, Class Counsel would receive nothing in this circumstance even though the class member receives something of value.

Class Counsel is fully committed to working hard to ensure that these non-monetary claims are treated just as fairly as those involving monetary payments.  Mr. Davis has stated in his declaration as follows:

> I view our obligation as Class Counsel to do everything in our power to ensure that these class members submit claims and that the Help Desk evaluates those claims in good faith.  This portion of the settlement, since it does not result in a fund or in amounts paid directly to class members, is in the nature of injunctive relief.  The portion of the fee to be paid directly by AHS is intended to compensate Class Counsel for its work, both before and after settlement approval, directed to this injunctive aspect of the relief to be awarded to the class.

Ex. A, Davis Dec. ¶ 13.

The amount of work contemplated, both now and in the future, is extraordinary. Since the class notice was delivered to the class members, Class Counsel have received so many inquiries via telephone, email, their website, and mail that since the week before Christmas nine attorneys and five assistants have spent all or most of their time responding to inquiries, explaining the settlement to class members, and assisting class members in gathering documents they would eventually need to submit to the help desk. Ex. A, Davis Dec. ¶ 12.  Both Mr. Davis and co-lead Class Counsel, John John Norris, have personally talked to many class members who wished to speak to lead counsel or whose questions could not be answered by other attorneys and other staff.  Id.  The volume of inquiries today still necessitate all of this full-time staff working on this case, and Class Counsel does not anticipate that changing anytime soon.  Id.  Moreover, Class Counsel anticipates that the postcard that will be mailed notifying the class members of the opening date of the Help Desk will generate many times the telephone calls, emails, website inquiries, and letters than the number that were prompted by the original class notice.[7]  Id.  In addition, Class Counsel's involvement at that stage, given their duty under the settlement to encourage

---

[7] The postcard will be a single page, much simpler to read and interpret, and has contact information for Class Counsel prominently available on it, as opposed to the densely written single-spaced multi-page class notice where class members had to hunt for contact information on the last page of the notice.

participation in the Help Desk process,[8] will be much more extensive.  Id.

Class Counsel anticipates that after the Effective Date Class Counsel will

need to hire a much larger staff to handle their duties as Class Counsel, and

they are committed to doing exactly that.

 In these circumstances, it is more than reasonable that Class Counsel

receive some amount of fee over and above the very modest amount

requested as a percentage of the amounts awarded to the class members.

Additionally, since this amount is coming directly from the defendant, it will

not burden the class members in any way.  There is no evidence that this

amount is being paid by AHS in order to obtain the collusion of Class

Counsel in connection with this settlement.  As we have set forth

exhaustively herein, it is absolutely without dispute that counsel did not

engage in any discussions relating to fees or reach any agreement concerning

fees prior to reaching an agreement as to the relief to be awarded to the

class.

**D.**   **The Faughts' Requested Incentive Payment Of $5,000 Apiece Is Fair And Reasonable Compensation For Their Efforts On Behalf Of The Class.**

 "Incentive awards to class representatives are an accepted element of

class action cases."  Hillis v. Equifax Consumer Services, Inc., 2007 U.S.

---

[8] Ex. C, Stipulation of Settlement ¶ 12.3.

Dist. Lexis 48278 *50-51 (N.D. Ga. June 12, 2007).  In <u>Hillis</u>, an incentive award of $7,500 to each class representative was approved based on their "active participation" in the suit.  <u>Id.</u> at *51.  <u>Accord</u> <u>In re: Domestic Air Transp. Litig.</u>, 148 F.R.D. 297 (N.D. Ga. 1993); <u>In re: GNC Sharehold Litig.</u>, 668 F. Supp. 450, 452 (W.D. Pa. 1987).

As we have detailed above, the Faughts in this case have performed exemplary services as class representatives, at real and substantial cost to themselves.  They were never promised anything as far as an incentive payment and they support the approval of this settlement no matter whether they receive such a payment or not.  This is not a case, such as in <u>Holmes v. Continental Can Co.</u>, 706 F.2d 1144 (11th Cir. 1983), where the attorneys created an impermissible conflict of interest for the class representatives by affirmatively agreeing prior to filing the case to seek an incentive payment in a particular amount.  This case instead involves plaintiffs who have performed a public service without a promise of any personal benefit.  They should be compensated, and $5,000 is a reasonable amount of compensation.  It should be noted that AHS has agreed to pay the incentive award and so this award will not burden the class in the least.

## IV.

## CONCLUSION

For the reasons set forth above, plaintiffs pray for an order awarding them incentive payments to be paid by AHS in the amount of $5,000 apiece. Class Counsel prays for an order awarding attorneys' fees in the amount of $1.5 million to be paid directly by AHS, as well as 25% of any monetary recovery paid to the class members during the Review Desk process.

____/s John E. Norris_____
Class Counsel and Attorney for
Laura and Steven Faught

Of Counsel:
D. Frank Davis
Davis & Norris LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama  35205
Voice: 205.930.9900
Fax: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing to be served on all counsel of record via the Court's electronic filing system on this the 25th day of January, 2010.

_____/s John E. Norris_____
Of Counsel
