FILED
2010 Jan-25  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FORT THE NORTHERN DISTRICT OF ALABMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | CIVIL ACTION NO.:CV-07-P-1928-S |
| v. | ) ) | |
| AMERICAN HOME SHIELD CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF D. FRANK DAVIS

D. Frank Davis declares as follows:

1.      I am an attorney licensed to practice law in Alabama and Tennessee. For many years I was a partner at Burr & Forman, LLP, in Birmingham, where I chaired the Litigation Section.  In 2003, I became one of the founders of Davis & Norris LLP.

2.      I am a member of the bars of the United States Supreme Court, the Fifth and Eleventh Circuit Courts of Appreal, the United States District Court for the Northern District of Alabama, and several other United States district courts.  I have been admitted *pro hac vice* to a great many other federal and state courts

throughout the United States.  I estimate that I have physically appeared on behalf of clients in more than 35 states.

3.      I have been listed in Birmingham's Top Attorneys and in Alabama Super Lawyers.  I have been peer-review rated AV by Martindale-Hubbell, indicating "preeminent" professional ability.

4.      A substantial portion of my practice has been devoted to class action litigation for more than 30 years.  I also have substantial experience in mass tort litigation.  I was an attorney representing parties in a significant number of the important early class action cases, including *Swint v. Pullman-Standard*, *Hayes v. Republic Steel*, and *Cox v. American Cast Iron Pipe Co.*  I have tried class action cases and settled class action cases.  I have represented plaintiffs and defendants in class action cases.

5.      In particular, I have been lead or co-lead counsel in other consumer class actions which were settled on a nationwide basis, including *Hammack v. Quaker State Corp.*, *Singleton v. Splitire, Inc.*, and *Wilson v. Dahlberg*.

6.      I have also been lead or co-lead counsel on the defense side in nationwide class actions, including class actions against virtually all the rental car agencies in the United States, against computer companies, fast food chains, and others.

7.    I was co-lead counsel in one of the largest toxic tort mass cases in the history of the United States.  I am currently co-lead counsel in the litigation on behalf of the people of Viet Nam.

8.    I am confident that I have been counsel to either the plaintiffs or the defendants in more than 50 class actions and I believe the number is likely over 100 class actions.

9.    Until we reached an agreement as to the relief to be given the class in this class action settlement, there were no discussions, either in the mediator's presence or outside his presence, with counsel for AHS concerning the amount of fees to be awarded to Class Counsel in connection with this settlement.[1]  The negotiations were prolonged and at times contentious.  On at least three occasions Class Counsel left mediation sessions convinced that the parties were at an impasse and that further negotiations would be fruitless. In fact, at one point when AHS took a position that Class Counsel frankly found to be outrageous, Class Counsel formally terminated the mediation and so informed the Court, and filed an adversarial motion for class certification.  Class Counsel only withdrew this motion

---

[1] As accurately stated in the Declaration of the mediator, George M. Van Tassel, III, there had been inconclusive discussions concerning fees relating to the agreement reached as to the original, narrower Faught class.  See Van Tassel Declaration ¶¶ 3-4.  No discussions concerning fees as to this narrower class occurred until after an agreement had been reached as to the relief to be awarded to that class.  The fee discussions were tabled when, after the California court rejected the settlement in Edleson, the parties began negotiations in Faught to expand the Faught settlement to include a broader class.  As to that broader class, no discussions as to fees occurred until after an agreement was reached as to the relief to be awarded to the broader class.

and agreed to resume negotiations when AHS reversed its position on an important

issue.  Counsel for both parties negotiated at arms length, zealously advocating the

respective positions of their clients.  In addition to the 17 formal mediation sessions

conducted by Marty Van Tassel, counsel for the parties met in person and spoke on

the phone numerous times during the negotiations, and exchanged many versions of

the draft that eventually became the Stipulation of Settlement.

10.    In light of the defenses asserted by AHS, the merits of plaintiffs'

claims, and the uncertainty of litigation, it is my opinion that the proposed

settlement is fair, reasonable, and adequate for the class.  I am further of the opinion

that the fee requested by Class Counsel's petition for attorneys' fees is reasonable,

consistent with Eleventh Circuit law, and modest in comparison with fees that have

been awarded in this Circuit and affirmed by the Court of Appeals.

11.    The plaintiffs in this case, Laura and Steven Faught, have performed

valuable services for the class.  They agreed to function as class representatives

even though they knew that they could personally receive relief in an Alabama

district court much faster than by being class representatives in a class action filed

in federal court.  We never promised or guaranteed them any particular result or

benefit to them.  They understood their duty to be fair to the class, and to advocate

the position of the class.  They have performed their duties admirably and at

substantial sacrifice to themselves.

12.     At our firm, which does plaintiffs' work almost exclusively on a
contingency fee basis, we do not ordinarily and customarily maintain detailed time
records for attorneys and other legal professionals who work on a particular case. It
is my estimate, based on my work on the case, my discussions with other lawyers
working on the case, and my review of the pleadings, discovery, correspondence,
and other files we maintain with regard to this case, prior to the fairness hearing we
will have expended attorney and paralegal time worth in excess of $1,500,000 at
rates that prevail in the Birmingham legal market for similar litigation work that is
not done on a contingency fee basis.

12.     Since the class notice was delivered to the class members, we have
received so many inquiries via telephone, email, our website, and mail that since the
week before Christmas nine attorneys and five assistants have spent all or most of
their time responding to inquiries, explaining the settlement to class members, and
assisting class members in gathering documents they would eventually need to
submit to the help desk.  My partner, John Norris, and myself have personally
talked to many class members who wished to speak to lead counsel or whose
questions could not be answered by our other attorneys and other staff.  The volume
of inquiries today still necessitate all of this full-time staff working on this case, and

I do not anticipate that changing anytime soon.  Moreover, I anticipate that the

postcard that will be mailed notifying the class members of the opening date of the

Help Desk will generate many times the telephone calls, emails, website inquiries,

and letters than the number that were prompted by the original class notice.  In

addition, our involvement at that stage, given our duty under the settlement to

encourage participation in the Help Desk process, will be much more extensive.  I

anticipate that after the Effective Date our firm will need to hire a much larger staff

to handle our duties as Class Counsel, and we are committed to doing exactly that.

13.    A large percentage of the inquiries directed to our firm since the class

notice was delivered have involved fairly recent claims and ongoing disputes.  It is

likely that many of the affected components in those instances will remain

unrepaired at the time the Help Desk is making decisions.  Since AHS may satisfy

its obligations by simply doing the requested repairs, those claims will not result in

a monetary payment from which a percentage fee may be awarded to Class

Counsel.  Nevertheless, I view our obligation as Class Counsel to do everything in

our power to ensure that these class members submit claims and that the Help Desk

evaluates those claims in good faith.  This portion of the settlement, since it does

not result in a fund or in amounts paid directly to class members, is in the nature of

injunctive relief.  The portion of the fee to be paid directly by AHS is intended to

compensate Class Counsel for its work, both before and after settlement approval,

directed to this injunctive aspect of the relief to be awarded to the class.

     14.    We deliberately negotiated provisions in the Stipulation of Settlement

that give Class Counsel the ability to monitor the Help Desk's decisions and enforce

the Help Desk's obligation to review previously denied claims in good faith.  We

plan to use these provisions to the maximum extent to ensure that the class is treated

fairly.  Ensuring that Class Counsel would be motivated to provide the maximum

benefit to the class, we negotiated a fee structure that is primarily based on the

amount actually paid to the class members.  Our interests, therefore, are perfectly

aligned with the interests of the class.  This is not a case where the fee award is

based on a percentage of a "fund' that may or may not be actually paid to the class.

Cf. Waters v. International Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999)

(affirming district court's awarding percentage of fund established to pay claims

even though district court acknowledged that the claims submitted would be less

than the fund established to pay them).  As stated earlier, I believe that the

requested fee is fair and reasonable.  I also believe that the structure of the fee,

which incentivizes Class Counsel to ensure that the class is treated fairly during and

after the Review Desk process, adds to the value of the settlement to the class.

     I hereby declare, under penalty of perjury, that the foregoing is true and

correct.

    EXECUTED on this _____25ᵗʰ_____ day of January, 2010.

 

                            D. Frank Davis
                            Class Counsel

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: CV-07-P-1928-S |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERICAN HOME SHIELD CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF GEORGE M. VAN TASSEL, JR.

George M. Van Tassel, Jr., declares as follows:

1.      I am an attorney licensed to practice law in the State of Alabama, and have been since 1972.  In my career as a civil trial lawyer, I have tried many different kinds of cases.  Since 1999, I have limited my practice to the area of alternative dispute resolution, with mediation being the primary focus.

2.      In September, 2008, I was asked by the parties in the above-referenced case to serve as a mediator as it relates to the claims asserted by the Faughts and the class they sought to represent.  Over the course of the next 13 months, the parties engaged in prolonged and sometimes contentious negotiations.  There were 17 separate mediation sessions.  Additionally, there were many occasions between sessions when I spoke by telephone or in person with one side or the other.

3.      During the time between September, 2008 and November 7, 2008, there were several occasions when the parties seemed near impasse.  In fact, after a particularly difficult mediation session, I was formally advised by counsel for the Faught class that

the negotiations had failed and that the Plaintiffs intended to go forward to seek an adversarial class certification and jury trial.  Ultimately, at the mediation session held on November 7, 2008, the attorneys reached an agreement in principle as to a resolution for the Faught class as that class was defined in the pleadings in the case.  The parties thereafter memorialized the class settlement in a Stipulation of Settlement, which contained an agreement concerning attorneys' fees.  The first discussion of attorneys' fees which occurred in my presence occurred at the mediation session held on February 6, 2009, followed by a session on February 24, 2009. Fees were the only subject of discussion at both sessions, but no agreement was reached.

4.      The next mediation session did not occur until August 18, 2009.  At that time, fees were "off the table" because the parties were now seeking to achieve a resolution of claims on behalf of a larger class.  Subsequently, a number of mediation sessions were devoted to negotiating the expanded class relief.  Fees were never discussed in my presence during these negotiations.  The parties reached an agreement on the expanded class relief at the mediation session conducted on October 6, 2009.  That was my last involvement with the matter.  The attorneys acknowledged at that time that the fee issue had yet to be discussed, and elected not to embark on fee discussions at that time.

5.      I was not involved in the negotiation of attorneys' fees to be awarded Class Counsel subsequent to the October 6, 2009, session.  On October 23, 2009, I was advised by one of the attorneys for AHS that the parties had reached an agreement on the issue of attorneys' fees, subject to approval by the Court.

6.      Throughout the proceedings held in my office, the attorneys conducted themselves professionally, and were strong advocates for their respective positions.  The attorneys for both sides repeatedly advised me that there would be no discussion of fees until all class issues were resolved.  Other than as discussed regarding the sessions in February, 2009, no fee discussions occurred in my presence, except as to the procedure

for who would decide the attorneys' fee question (subject to Court approval) if an agreement could not be reached.

I hereby declare, under penalty of perjury, that the foregoing is true and correct.

EXECUTED on this the 22ⁿᵈ day of January, 2010.

George M. Van Tassel, Jr.

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Case No. CV-07-P-1928-S** |
| | ) | |
| **AMERICAN HOME SHIELD CORPORATION,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## STIPULATION OF SETTLEMENT

# TABLE OF CONTENTS

I.     PREAMBLE ...................................................................................................................1

II.    DEFINITIONS................................................................................................................1

III.   CLAIMS OF THE NAMED PLAINTIFFS AND BENEFITS OF SETTLEMENT ..........7

IV.    DENIAL OF WRONGDOING OR LIABILITY ...............................................................8

V.     SETTLEMENT CONSIDERATION ................................................................................9

VI.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY ...........................19

VII.   IMPLEMENTATION OF THE SETTLEMENT .............................................................21

VIII.  DETERMINATION OF ATTORNEYS' FEES, COSTS, AND EXPENSES ..................26

IX.    PAYMENT METHOD AND INSTRUCTIONS...............................................................29

X.     RELEASE, COVENANT NOT TO SUE, AND DISMISSAL OF CLAIMS...................31

XI.    ENFORCEMENT AND TERMINATION.......................................................................34

XII.   MISCELLANEOUS PROVISIONS...............................................................................37

THIS STIPULATION OF SETTLEMENT is entered into this 6th day of October, 2009 (the "Settlement Date"), by and among named plaintiffs Laura and Steven Faught (the "Named Plaintiffs"), individually and as representatives of the Class, and defendant American Home Shield Corporation (the "Defendant"), by and through their attorneys.

## I.   PREAMBLE

WHEREAS, on October 22, 2007, Davis & Norris LLP filed the above-captioned action (together with all existing and future amendments thereto, the "Action" or "*Faught*") in the U.S. District Court for the Northern District of Alabama;

WHEREAS, *Faught* is a putative nationwide class action that alleges the Defendant failed to fulfill contractual obligations to certain of its customers and breached other duties;

WHEREAS, the Named Plaintiffs in *Faught* believe the claims asserted in their complaint have merit;

WHEREAS, the Defendant in *Faught* has vigorously denied, and continues to vigorously deny, any wrongdoing and any liability based on the allegations contained in the complaints filed in *Faught*; and

NOW THEREFORE, it is agreed, by and among the undersigned, that this Action shall be settled and dismissed on the merits and with prejudice, without costs to Plaintiffs or Defendant (except as expressly hereinafter provided), subject to the approval of the Court on the terms and conditions outlined herein.

## II.   DEFINITIONS

As used herein, the following terms shall have the respective meanings specified, which shall be equally applicable to both the singular and plural forms:

2.1    "Agreement" means this agreement and all of its attachments and exhibits, which the settling parties understand and agree set forth all of the material terms and conditions of the Settlement among them and which is subject to approval by the Court.

2.2    "American Home Shield" or "AHS" means American Home Shield Corporation, a Delaware Corporation, together with all of its direct and indirect subsidiaries.

2.3    "Attorneys' Fees" means reasonable attorneys' fees, costs and expenses to be paid to Named Plaintiffs' Counsel for their past, present, and future work, efforts, and expenditures in connection with this Action.

2.4    "Business Day" means any day that is not a Saturday, Sunday or the day set aside for observing New Year's Day, Martin Luther King Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, or Christmas Day, and any other day declared a holiday by the President or Congress.

2.5    "Claimant" means a Settlement Class Member who makes a Submission regarding an individualized breach of Home Service Contract claim to the Review Desk.

2.6    "Claims" means any and all claims, demands, debts, rights, causes of action, suits, actions, damages, costs, expenses, compensation, requests for compensation, restitution, repayment or reimbursement, obligations, liabilities, penalties, attorneys' fees, or losses in law or equity, of whatever kind or nature, whether or not known, ripe or mature.

2.7    "Class" means those Persons in the United States who purchased or were issued any Home Service Contract during the Class Period. Excluded from the Class are the Defendant, its parents, subsidiaries, affiliates, officers, directors, and employees; and any judge, mediator or arbitrator who has jurisdiction over or will serve in connection with this matter now or in the future, and any member of the family of any such judge, mediator or arbitrator.

2

2.8    "Class Member" means any Person that is a member of the Class.  For the avoidance of doubt, Named Plaintiffs are Class Members.

2.9    "Class Notice" means the notice provided to Class Members pursuant to Paragraph 7.4 in the form attached as Exhibit B.

2.10    "Class Notice Date" means the first date on which Defendant, as provided by Paragraph 7.4, (i) has substantially completed the sending of the Class Notice; (ii) has made available the information required to be made available via an Internet website; and (iii) stands prepared to make available, in response to any Class Member requests that may be received by mail, the information required to be made available by Paragraph 7.4.

2.11    "Class Period" means the period beginning on July 24, 2001 up to and including the date on which a Preliminary Approval Order is issued.

2.12    "Complaint" means the complaint filed by Named Plaintiffs' Counsel on October 22, 2007, thereby commencing the Action, together with all current and future amendments thereto.

2.13    "Contractor Network" means a subset of the larger universe of  home repair contractors engaged by AHS to make service calls to Home Service Contract customers, which subset is defined as those who have executed a written contract with AHS containing a commitment by AHS to attempt to dispatch to such contractor a specified number of service calls per annum, also known as a "call commitment."

2.14    "Contractor Relations Practices" means, generally, AHS's practices respecting selecting, recruiting, training, dispatching, rating, evaluating, terminating, monitoring, compensating, incentivizing, rewarding, penalizing, disciplining, following up service calls by, allocating service calls to, authorizing repairs by, allowing non-covered charges to be collected

by, supervising repair or replacement work performed by, enforcing compliance with contract terms by, overseeing compliance with applicable permitting or other legal requirements by, or otherwise supervising, managing, or monitoring home repair contractors that AHS engages, authorizes and/or directs to make service calls for purposes of providing services pursuant to Home Service Contracts.

    2.15    "Court" means the United States District Court for the Northern District of Alabama, Southern Division, and any appellate court reviewing the orders, judgments or rulings thereof.

    2.16    "Day" or "day" means calendar day unless identified as "Business Day."

    2.17    "Defendant's Counsel" means Sidley Austin LLP and Bradley Arant Boult Cummings LLP, together with any successor, replacement or additional counsel.

    2.18    "Denied Claim" means a Settlement Class Member request received by American Home Shield for service on an item covered under his/her Home Service Contract during the Class Period, where repair or replacement services were denied by AHS, in whole or in part, or where the Settlement Class Member deemed inadequate a cash payment they received from AHS in lieu of repair or replacement services.

    2.19    "Effective Date" means the date on which the time for filing an appeal expires without any appeal being filed from a Final Judgment and Order of the Court approving the Settlement. In the event that one or more such appeal(s) from such a final decision of the Court is timely brought, the Effective Date will be the date on which such appeal(s) are finally resolved in favor of upholding the Settlement without any modification, except any downward adjustment in attorneys' fees, costs, and expenses that may be ordered by the Court or an appellate court,

and without any possibility of remand to the Court or a further appeal to, or any discretionary review by, any court superior to the Court.

2.20    "Escrow Account" has the meaning ascribed it in Paragraph 8.6.

2.21    "Escrow Agent" has the meaning ascribed it in Paragraph 8.6.

2.22    "Fairness Hearing" means a hearing conducted by the Court after the Class Notice Date for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Agreement pursuant to class action procedures and requirements; and (ii) entering a Final Judgment and Order.

2.23    "Final Judgment and Order" means a final order (that cannot be further appealed) entered by the Court after the Fairness Hearing granting its approval of the Settlement pursuant to Paragraph 7.10 in the form attached as Exhibit C, or in a form that otherwise may be agreed to hereafter by the parties and approved and entered by the Court.

2.24    "Home Service Contract" means and includes any of the various service contracts issued to the public and/or underwritten by AHS, or by a parent or affiliate of AHS, and going by various names in different markets and under different regulatory regimes, including designations such as "service contract," "extended service contract," "residential service contract," "home service contract," "home protection contract," "home warranty," and "warranty contract."

2.25    "*Johnson* Factors" has the meaning ascribed it in Paragraph 8.5.

2.26    "Named Plaintiffs' Counsel means Davis & Norris LLP, together with any successor, replacement or additional counsel.

2.27    "Named Plaintiffs' Payment" has the meaning ascribed it in Paragraph 5.1.

2.28    "Negotiated Attorneys' Fees" has the meaning ascribed it in Paragraph 8.1.

2.29    "Opt-Out List" means the complete, final, and accurate list of all properly submitted exclusion requests received by Named Plaintiffs' Counsel and provided to Defendant's Counsel, as required under the Agreement.

2.30    "Person" means any natural person, any legal entity, including a limited or general partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, sole proprietorship, an unincorporated organization, any other form of legal entity, and/or any governmental body (including any department, agency, commission, authority, administration, or political subdivision thereof), whether federal, state, local or other.

2.31    "Plaintiffs" means all Class Members.

2.32    "Post-Submission Suit" has the meaning ascribed it in Paragraph 5.2(Q).

2.33    "Preliminary Approval Order" means an order entered by the Court preliminarily approving the Settlement pursuant to Paragraph 7.3 in the form attached as Exhibit D.

2.34    "Released Claims" means any and all Claims set forth in Section 10.

2.35    "Released Parties" means the Defendant, its, direct or indirect, subsidiaries, divisions, partners, limited partners, owners, investors, holding companies, parents, affiliates (regardless of the form of the legal entity, e.g., corporation, limited liability company, general or limited partnership), including its predecessors and successors, and their present and former officers, directors, employees, principals, agents, attorneys, and/or any other Person for which any of these Persons shall have a direct or indirect interest, or for which they may otherwise be responsible, as of any given date.

2.36    "Releases" means collectively the terms of the releases, covenants not to sue, and agreed-on dismissal set forth in Section 10.

2.37    "Review Desk" means the review process to be established by American Home Shield as described in Paragraph 5.2 of this Settlement.

2.38    "Settlement" means the overall terms and conditions of the parties' agreed on settlement resolving *Laura Faught and Steven Faught v. American Home Shield Corporation*, Case No. CV-07-P-1928-S, United States District Court for the Northern District of Alabama, as reflected and embodied in this Agreement.

2.39    "Settlement Class" means all Class Members who do not opt out of this Settlement in a timely and valid manner in accordance with the procedures set forth in Paragraph 7.7.

2.40    "Settlement Class Member" means the Named Plaintiffs and any Person that is a member of the Settlement Class.

2.41    "Submission" has the meaning ascribed it in Paragraph 5.2(F).

2.42    "Submission Period" means a period of one hundred twenty (120) days, beginning thirty (30) days after the Effective Date.

2.43    "Submittal Form" means the form obtained from AHS that must be used to make Submissions to the Review Desk, in substantially the form attached hereto as Exhibit E, or as hereafter may be agreed to by the parties.

2.44    "Suit" means any lawsuit, suit, action, proceeding, litigation, legal representation or complaint brought or pending in any federal, state, administrative, judicial, arbitral, or other forum, whether direct, derivative or representational.

**III.    CLAIMS OF THE NAMED PLAINTIFFS AND BENEFITS OF SETTLEMENT**

The Named Plaintiffs believe the claims asserted in the Action have merit. However, the Named Plaintiffs and Named Plaintiffs' Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Defendant through

trial and through appeals. Named Plaintiffs and Named Plaintiffs' Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in a complex action such as this Action, as well as the difficulties and delays inherent in such litigation. Named Plaintiffs' Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Action. Based on their evaluation, Named Plaintiffs' Counsel have determined that the Class relief and Releases set forth herein are fair, reasonable, and adequate, and that Settlement confers substantial benefits on and is in the best interests of the Class.

## IV. DENIAL OF WRONGDOING OR LIABILITY

4.1     This Agreement constitutes the resolution of disputed claims and is for settlement purposes only. Defendant denies it has violated any law; denies that it has breached any agreement with, or obligation to, the Class Members (or anyone else); denies any liability to the Class Members (or anyone else); and denies all the allegations of wrongdoing recited in the Complaint.

4.2     Notwithstanding anything else herein, neither the fact of, nor any provision contained herein, nor any action taken hereunder, shall constitute or be construed as an admission of any liability or wrongdoing, or recognition of the validity of any allegation of fact or contention of law made by Plaintiffs in this Action or in any other Suit.

4.3     This Agreement, and statements made in negotiating this Settlement, and any actions taken by Defendant hereunder, shall not be offered or be admissible in evidence or used in any fashion against any Released Party in any Suit (including a Post-Submission Suit) for any purpose, except in a Suit pursuant to Paragraph 11.1 seeking an order from the Court finding that Defendant is in material breach of its commitments hereunder. Nothing herein shall be construed to preclude the Released Parties from offering this Agreement and the Releases in defense of any Claims, including Suits brought by Class Members, at any time.

8

## V.  SETTLEMENT CONSIDERATION

In consideration for the full, complete, irrevocable, and final Settlement of this Action and in consideration for dismissal of this Action with prejudice and in consideration for the Releases contained herein, Defendant will provide benefits to the Named Plaintiffs and to the Settlement Class Members as follows:

5.1  *Named Plaintiffs' Relief.* Named Plaintiffs may seek an incentive payment only by making a timely and appropriate written request to the Court and obtaining the Court's approval for such an award as reflected in a signed and dated order by the Court. Any incentive payment shall be subject to the Court's review and approval. If the request to the Court seeking an incentive payment by or on behalf of Named Plaintiffs seeks an incentive payment of no more than a total aggregate gross amount of $5,000 each, Defendant agrees not to object to such request. If the request to the Court seeking an incentive payment by or on behalf of Named Plaintiffs seeks an incentive payment greater than the total aggregate gross amount of $5,000 each, Defendant may, in its sole discretion, object to all or any part of such request as it deems appropriate. The Named Plaintiffs shall also receive a compensatory payment of a total aggregate gross amount of $8,000 jointly, as full compensation and complete satisfaction for any alleged injuries or damages individualized as to them that are described in the Complaint (collectively, with the incentive payment, the "Named Plaintiffs' Payment"). As part of this Settlement, the Named Plaintiffs agree that they will terminate any contracts that they have with Defendant or any of Defendant's affiliated companies and will not become customers of Defendant or any of Defendant's affiliated companies in the future. Named Plaintiffs also shall execute a complete general release of Defendant and the Released Parties. The Released Parties shall owe Named Plaintiffs no other monies, obligations or duties.

9

5.2     *Class Relief – the Review Desk*:  AHS will establish the Review Desk, subject to the following terms and conditions:

A.      Except as expressly provided herein, the Review Desk will consider Submissions from any Settlement Class Member who experienced a Denied Claim during the Class Period.

B.      Settlement Class Members wishing to submit their Denied Claims to the Review Desk must make a Submission in accordance with Paragraph 5.2(F).

C.      AHS will make Submittal Forms available to Settlement Class Members via (i) a dedicated website; (ii) a dedicated 1-800 telephone number; and (iii) a dedicated United States Post Office Box address, all three of which will be created and maintained by AHS at AHS's expense.  Settlement Class Members may make Submissions to the Review Desk via mail sent to a designated Post Office Box address, via sending an electronic image of the Submission to an e-mail address identified by AHS, or via any other method that may be permitted by AHS.

D.      AHS will staff the Review Desk with experienced customer service representatives who will be specially trained to address Submissions.  The Review Desk will review all Submissions that are received by AHS during the Submission Period.

E.      AHS will send Settlement Class Members notification of the opening of the Submission Period no later than twenty (20) days after the occurrence of the Effective Date via postcards sent by third-class United States mail to Settlement Class Members' last known addresses, as this information has been retained by AHS in the ordinary course of business and verified, or corrected if necessary, by  a third-party selected by Defendant and approved by Named Plaintiffs' Counsel, which approval shall not be unreasonably withheld,

10

delayed, or conditioned, which third party will compare the addresses provided by Defendant with those contained in the National Change of Address system. The postcards to be used as described in this paragraph shall be substantially in the form appended hereto as Exhibit F, or in such other form to which the parties may hereafter agree.

      F.     Submissions must be made via a signed, dated and fully and properly completed Submittal Form that provides AHS with, at a minimum, (i) the Settlement Class Member's name as it appeared on his or her Home Service Contract; (ii) the address of the real property covered by the Settlement Class Member's Home Service Contract; (iii) the Settlement Class Member's preferred method for receiving responsive communications from AHS; (iv) a description of the home system, appliance, or other item at issue; (v) the approximate date (or at a minimum, the year) during the Class Period of the Settlement Class Member's initial request for Home Service Contract service; (vi) a description of the Settlement Class Member's service request and alleged Denied Claim; (vii) the reasons the Settlement Class Member believes the same service request should now be reviewed and the Denied Claim overturned or revised; and (viii) the Settlement Class Member's present address, telephone number, and e-mail address (collectively, a "Submission").

      G.     At the Settlement Class Member's discretion, additional information may also be provided via the Submittal Form to bolster his or her Submission, including the following: (i) photographs; (ii) receipts; (iii) cancelled checks; (iv) correspondence with AHS; (v) correspondence with contractors (whether or not chosen by AHS) that diagnosed or attempted to correct the relevant service issue; (vi) a statement providing relevant history or an overview of events; and/or (vii) other supplemental information.

H.     Submissions will be considered by AHS and processed in a reasonably commercially feasible and efficient order that AHS deems appropriate, e.g., prioritization based on the reverse chronological order of the date of claim or the date of AHS's receipt of the Submission. The time for resolving claims will depend on a number of factors, including the number of Submissions received by the Review Desk. Nothing herein will be interpreted or construed to mean that AHS will incur any obligation to meet any specific processing deadline, except as explicitly set forth in subparagraphs i – iv below:

i.     AHS will use full time customer service associates with at least three (3) years of experience who will be trained to handle Submissions until substantially all Submissions have been processed (either an offer for additional benefits has been made by AHS or the claim has been denied by AHS).

ii.     If AHS has not responded to a Settlement Class Member's Submission within ninety (90) days of the date it was made, AHS will provide a brief written or e-mail update to the Settlement Class Member that will include the current status of the Review Desk's review of his/her Submission and an estimated timeframe of when AHS expects a decision to be made on the Submission. Although AHS will use commercially reasonable efforts to resolve the Submission within the estimated time frame provided in the written or e-mail update, nothing herein will be interpreted or construed to mean either that AHS is obligated to meet that estimated time frame or that AHS will be liable in any way if it does not meet that estimated time frame.

iii.     On the one hundred fiftieth (150th) day after the Submission Period begins, AHS will determine the percentage of the total number of Submissions for which at least ninety (90) days have passed since their receipt by AHS to which AHS has not then responded (the "Unresolved Submission Determination"), e.g., due to a delayed response from a Claimant's contractor to a request for information. Thereafter, AHS will

make the Unresolved Submission Determination on a semi-monthly basis. In the event forty percent (40%) of the total number of Submissions for which at least ninety (90) days have passed since their receipt by AHS to which AHS has not then responded at the time of any Unresolved Submission Determination, AHS commits, within ten (10) business days of that Unresolved Submission Determination, to train and assign five (5) additional full time staff to the Review Desk for every twenty-five hundred (2500) Submissions to which AHS has not then responded for which at least ninety (90) days have passed since their receipt by AHS until eighty-five percent (85%) of all such unresolved Submissions have been responded to.

        iv.     No later than twenty-four (24) months after the Effective Date, AHS will, as to every timely Submission, have made either an Offer or a Denial, as described in Paragraph 5.2(Q). AHS shall notify Named Plaintiffs' Counsel promptly after AHS has made an Offer or Denial as to the last timely Submission it considers.

        I.     If AHS determines based on its consideration of a Submission that additional contractual benefits are not appropriate, AHS will provide a written or e-mail explanation to the Settlement Class Member making the Submission of the reason(s) relied upon by AHS in making such a determination. Each Settlement Class Member retains the right to respond to AHS in writing regarding the denial of additional contractual benefits as to his/her claim specified in his or her Submission (the "Settlement Class Member Response"). If AHS determines based on its consideration of the Settlement Class Member Response that additional contractual benefits are not appropriate, AHS will provide a written or e-mail explanation to the Settlement Class Member of the reason(s) relied upon by AHS in making

such a determination, and the Settlement Class Member may bring a Suit pursuant to Paragraphs 5.2(Q) and 5.2(R).

     J.    ***Additional Instruction to Review Desk Personnel.***  AHS personnel manning the Review Desk shall be instructed as set forth in Exhibit A. This Agreement shall not obligate AHS to apply or use Exhibit A for any purpose outside of this Settlement, and then only to such Settlement Class Members as described in the instruction contained in Exhibit A.. AHS does not need to notify such Settlement Class Members who make Submissions to the Review Desk of the instruction set forth in Exhibit A.

     K.    Settlement Class Members for whom AHS determines additional contractual benefits are appropriate based on its consideration of a Submission will be offered, at AHS's sole option, one of the following:

     (i) In cases where the breakdown at issue in the relevant Denied Claim has not already been resolved, either (a) cash reasonably calculated to be equal to the Settlement Class Member's estimated out-of-pocket costs for the repair or replacement services determined by AHS to be covered under the terms of the Settlement Class Member's applicable Home Service Contract, or (b) provision of those same services by AHS;

     (ii)    In cases where the breakdown at issue in the relevant Denied Claim has already been resolved, either (a) cash equal to the actual out-of-pocket costs for the repair or replacement services determined by AHS to be covered under the terms of the Settlement Class Member's applicable Home Service Contract, as established and documented by bona fide receipts for such costs provided to the Review Desk; or (b) if

no such receipts are provided, then AHS's wholesale cost of such repair or replacement as reasonably determined to apply at the time of the Denied Claim;

(iii)    Waiver of the contract fee, or a discount, for an AHS contract, if offered by AHS and accepted by the Settlement Class Member; or

(iv)    Any other compensation offered by AHS and accepted by the Settlement Class Member.

L.    In considering and processing Submissions, AHS may deduct from any offer an amount equal to the amount of any prior concessions or cash-in-lieu payments, in whatever form, made to the Settlement Class Member. For the avoidance of doubt, consequential damages shall not be recovered as the result of, or in connection with, any Submission.

M.    AHS may seek confirmation of the Settlement Class Member's out-of-pocket repair or replacement expenses by directly contacting any vendor providing relevant services or equipment to the Settlement Class Member. In addition, by making a Submission to the Review Desk, the Settlement Class Member shall be deemed to represent that the Submission is being made in good faith and to authorize AHS to contact the Settlement Class Member notwithstanding any "do not call" or similar laws that might otherwise limit or constrain AHS's ability to initiate unsolicited contacts with former customers.

N.    All releases of whatever type or nature, and in whatever form (including by operation of law), of AHS by a Class Member before this Settlement shall be in full force and effect and not be deemed diminished, waived, or otherwise rendered ineffective by this Agreement.

15

O.     Any Settlement Class Member receiving monetary or other benefits as the result of a Submission will be deemed to have thereby irrevocably released any and all Claims against the Released Parties arising from, relating to, or otherwise regarding the Denied Claim at issue in the Submission.

P.     After the end of the Submission Period, Settlement Class Members who did not make a Submission may not bring a Suit against AHS based on a Denied Claim unless (A) the Settlement Class Member provides the following information to AHS by calling 1-877-433-3843 or a successor 1-800 telephone number established and maintained by AHS, at its sole expense and communicated to Class Members via a posting on AHS's website, (i) the Settlement Class Member's present address, telephone number, and e-mail address; (ii) the address of the real property covered by the Settlement Class Member's Home Service Contract, or other information sufficient for AHS to confirm that the request is being made by a Class Member; and (iii) an announcement of the Settlement Class Member's "intention to bring Suit against AHS on a Claim arising in the Class Period" or an equivalent statement; and (B) at least fifteen (15) days have elapsed since the date the Settlement Class Member provided such notice (the "Suit Intention Notice Date"). All applicable statutes of limitations shall be deemed tolled for the benefit of those Settlement Class Members who provide such notice for a period of fifteen (15) days beginning on the relevant Suit Intention Notice Date. Failure of a Class Member to follow this procedure in this Paragraph shall not serve as a bar to dismiss a Claim, provided, however, that AHS may insist that this procedure be followed before a Suit may be allowed to proceed. Any Suit brought pursuant to this Paragraph 5.2(P) will be brought and maintained solely on behalf of an individual holder of a Home Service

Contract and will not at any time be joined with any Suit of any other holder of a Home Service Contract, whether through a class action, joinder, or any other method.

Q.     Settlement Class Members who make Submissions may bring a Suit against AHS for any Denied Claim if that Denied Claim has been presented to AHS in a Submission and at least seven (7) days have elapsed since AHS communicated to the Settlement Class Member either (i) the written or e-mail explanation pursuant to Paragraph 5.2(I) informing the Settlement Class Member that AHS determined based on its consideration of a Submission that additional contractual benefits are not appropriate (the "Denial"), or (ii) the Settlement Class Member has communicated to the Review Desk that he/she has rejected the offer of additional contractual benefits that AHS determined was appropriate based on its consideration of a Submission pursuant to Paragraph 5.2(K) (the "Offer"). All applicable statutes of limitations shall be deemed tolled for the benefit of those Settlement Class Members who make timely Submissions for a period of time ending seven (7) days after AHS communicates either the Denial or the Offer. Nothing herein shall be interpreted to mean that a Class Member may obtain the revival of a Claim that has lapsed and is barred under the applicable limitations period by submitting the Claim to the Review Desk. Any Suit brought pursuant to this Paragraph 5.2(Q) (a "Post-Submission Suit") will be brought and maintained solely on behalf of an individual holder of a Home Service Contract and will not at any time be joined with any Suit of any other holder of a Home Service Contract, whether through a class action, joinder, or any other method.

R.     Settlement Class Members who bring a Post-Submission Suit arising from a Submission regarding a Denied Claim relating to a heating or air conditioning system during the first year of their Home Service Contract with AHS that was denied outright solely

17

because of lack of annual maintenance and who recover more in contract damages in such Post-Submission Suit than the dollar value of the aggregate benefit(s) that AHS offered in response to the Submission, shall be reimbursed by AHS for the reasonable attorneys' fees actually incurred in prosecuting such Post-Submission Suit. AHS may request, and the Settlement Class Member will be required to provide if so requested, document(s) evidencing the attorneys' fees actually incurred in prosecuting such Post-Submission Suit. If the Claimant's Post-Submission Suit is deemed by a court to be frivolous or otherwise in bad faith, the Claimant shall reimburse AHS for any reasonable attorneys' fees actually incurred in defending the Post-Submission Suit. Any award of attorneys' fees under this Paragraph shall be capped at the greater of (1) $5,000; (2) three times the difference between (i) the contract damages recovered in the Post-Submission Suit and (ii) the dollar value of the aggregate benefit(s) that AHS offered in response to the Submission; or (3) any attorneys' fees to which the Claimant may be entitled pursuant to the applicable state statute governing breach of contract claims. Any Suit brought pursuant to this Paragraph 5.2(R) will be brought and maintained solely on behalf of an individual holder of a Home Service Contract and will not at any time be joined with any Suit of any other holder of a Home Service Contract, whether through a class action, joinder, or any other method.

S. The provisions of this Paragraph 5.2(S) shall apply for purposes of this Settlement only and only to Settlement Class Members who bring a Post-Submission Suit arising from a Submission (i) regarding a Denied Claim not relating to a heating or air conditioning system during the first year of their Home Service Contract with AHS that was denied outright solely because of lack of annual maintenance or (ii) regarding a Denied Claim relating to a heating or air conditioning system during the first year of their Home Service

18

Contract with AHS that was denied outright solely because of lack of annual maintenance but who do not utilize the services of an attorney in the prosecution of such Post-Submission Suit. If such a Settlement Class Member recovers more in contract damages in a Post-Submission Suit than the dollar value of the aggregate benefit(s) that AHS offered in response to the Submission, then (i) AHS shall make one lump-sum payment totaling $1,000 to the Claimant, in addition to any recovery obtained by the Claimant in the Post-Submission Suit, or (ii) the Claimant may elect to receive any attorneys' fees to which the Claimant may be entitled pursuant to the applicable state statute governing breach of contract claims. If the Claimant's Post-Submission Suit is deemed by a court to be frivolous or otherwise in bad faith, the Claimant shall reimburse AHS for any reasonable attorneys' fees actually incurred in defending the Post-Submission Suit. For the avoidance of doubt, a Claimant may not recover both (1) attorneys' fees actually incurred in prosecuting the Post-Submission Suit pursuant to Paragraph 5.2(R) and (2) the additional $1,000 pursuant to this Paragraph 5.2(S). Any Suit brought pursuant to this Paragraph 5.2(S) will be brought and maintained solely on behalf of an individual holder of a Home Service Contract and will not at any time be joined with any Suit of any other holder of a Home Service Contract, whether through a class action, joinder, or any other method.

    5.3    ***Class Relief – Business Practices Changes***

        A.    The parties recognize that AHS is a for-profit enterprise that must operate profitably and compete free from undue impediments in a highly dynamic competitive environment. At AHS's option, AHS may solicit and consider (but is not required to implement) comments from Named Plaintiffs' Counsel concerning communications, business practices, training materials, or other business concerns.

      B.     No later than four (4) months after the Effective Date, AHS will make a dedicated distribution of written training materials to the Contractor Network conveying the importance AHS places on honoring the terms of coverage and other terms of Home Service Contracts and the important role that contractors play in this effort.

      C.     No later than sixteen (16) months after the Effective Date, AHS will develop and distribute written training materials to the Contractor Network to address and resolve any material issues that AHS determines require further training or revision.

## VI.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

6.1    Upon execution hereof, the parties agree that, subject to Court approval, this Action will be deemed, for purposes of this Settlement only, to satisfy the requirements for class certification under, as applicable, Federal or Alabama Rule of Civil Procedure 23. Defendant has agreed to certification of the Settlement Class for purposes of this Settlement only.

6.2    Any certification of the Settlement Class hereunder, or otherwise, shall not constitute and shall not be construed (in this Action or in any other Suit) as an admission on the part of Defendant, or as the basis of a finding, or as evidence, that this Action or any other proposed or certified class action is appropriate for class treatment in a contested certification proceeding. This Agreement is without prejudice to the rights of Defendant to oppose (i) any requests for class certification in this Action should this Agreement be terminated or fail to be approved or implemented for any reason, or (ii) any requests for class certification in any Suit involving a proposed or certified class action.

6.3    If this Agreement is not approved, does not become effective, or if it is terminated or fails to be implemented for any reason, any certification, either preliminary or final, of the Class or of any other alleged class shall be deemed null and void *ab initio* and without force or effect.

## VII. IMPLEMENTATION OF THE SETTLEMENT

Upon execution hereof by all parties, the parties will respectively undertake the following actions to implement and obtain approval of the Settlement:

7.1 *Use of Reasonable Efforts.* Named Plaintiffs, Named Plaintiffs' Counsel, and Defendant will use reasonable efforts to obtain the entry of the Preliminary Approval Order, final approval of this Settlement, and the entry of a Final Judgment and Order that dismisses this Action with prejudice and binds the Named Plaintiffs and all Settlement Class Members. Named Plaintiffs and Named Plaintiffs' Counsel will cooperate fully and completely with Defendant with respect to any and all appeals, including of the Final Judgment and Order, and in obtaining the dismissal of any and all subsequent Suits against the Released Parties asserting Released Claims. Defendant's Counsel and Named Plaintiffs' Counsel agree to cooperate to draft and execute any additional documents to effectuate the terms of this Settlement and to adjust the case schedule and deadlines in the Action pursuant to the terms hereof as may be reasonably requested by Defendant's Counsel.

7.2 *Jurisdiction for Approval of Settlement.* The filing and approval of this Settlement shall occur in the United States District Court for the Northern District of Alabama.

7.3 *Preliminary Approval.* No later than seven (7) Business Days after the fee negotiation set forth in Paragraph 8.1 is declared by either party to have ended, or as soon thereafter as possible, Named Plaintiffs, Named Plaintiffs' Counsel, and Defendant will jointly present this Agreement and a motion seeking its preliminary approval to the Court. Counsel for the parties will take all appropriate steps to obtain the entry of a Preliminary Approval Order that (i) appoints Named Plaintiffs' Counsel as counsel representing the Class and all Class Members; (ii) conditionally certifies the Class for purposes of this Settlement only; (iii) preliminarily approves this Agreement and determines the Settlement to be sufficiently fair, reasonable, and

adequate as to allow notice to be disseminated to the Class; (iv) approves the Class Notice; (v) schedules a Fairness Hearing to determine, after such notice to the Class, whether this Settlement should be finally approved as fair, reasonable, and adequate; and (vi) preliminarily bars and enjoins all Class Members, or any of them, from commencing, prosecuting, participating in or continuing the prosecution of, any Suit asserting any of the Claims released in this Settlement in any capacity, against the Released Parties, pending the final determination of whether this Settlement should be approved by the Court. The Preliminary Approval Order will remain in effect until (i) the Effective Date occurs, (ii) the Court enters an order declaring this Settlement terminated and no longer binding, or (iii) Defendant terminates the Settlement under Paragraph 11.3.

7.4 *Methods of Notifying Class Members.* No later than sixty (60) days after the entry of the Preliminary Approval Order, the parties shall notify Class Members of the Settlement as follows. Defendant will send the Class Notice via U.S. mail, postage prepaid to the last known address of each Class Member, as this information has been retained by AHS in the ordinary course of business and verified, or corrected if necessary, by a third party selected by Defendant and approved by Named Plaintiffs' Counsel, which approval shall not be unreasonably withheld, delayed, or conditioned, which third party will compare the addresses provided by Defendant with those contained in the National Change of Address system. Defendant may distribute the Class Notice using any bulk rate or pre-sorted mail rate made available by the United States Postal Service. Defendant will make available on an internet website, to be selected by Defendant and disclosed in the Class Notice, copies of the following items: (i) the Class Notice; (ii) this Agreement; (iii) a Submittal Form (if applicable under the terms hereof); and (iv) information about the Review Desk process described in Paragraph 5.2.

Defendant will make available to Class Members, upon request received by mail at a mailing address to be identified in the Class Notice, copies of the following items: (i) the Class Notice; (ii) this Agreement; (iii) a Submittal Form (if applicable under the terms hereof); and (iv) a summary of the Review Desk process described in Paragraph 5.2.

    7.5     Neither Named Plaintiffs' Counsel nor Defendant's Counsel may communicate with any Class Member regarding this Settlement without receiving prior approval from the Defendant's Counsel or Named Plaintiffs' Counsel, respectively.  If prior approval is not granted by Named Plaintiffs' Counsel or the Defendant's Counsel (as applicable), the party seeking to communicate with the Class may petition the Court, with the other party having the right to have their input be considered, as to both the fact and the content of the proposed communication to the Class.  Any communication with the Class pursuant to this Paragraph 7.5 shall be disseminated to the Class by Defendant or its authorized agent, provided, however, that the party or counsel seeking to communicate with the Class pursuant to this Paragraph 7.5 shall bear the full costs of such communication.  Notwithstanding anything in this Paragraph 7.5 to the contrary, Named Plaintiffs' Counsel and Defendant's Counsel need not obtain prior approval from any source for (a) any communications initiated by a Class Member, or (b) the delivery of the documents required pursuant to Paragraphs 5.2(E) and 7.4.  For the avoidance of doubt, if a Class Member makes a Submission to the Review Desk, that Class Member shall be deemed to have initiated the communication with the Defendant, and the Defendant and/or its affiliates shall be entitled, without the need for prior approval from Named Plaintiffs' Counsel or the Court, to communicate with that Class Member regarding the Submission by any means whatsoever, including by e-mail or any other cost-effective means of communication.  Likewise, for the avoidance of doubt, if a Class Member initiates a communication with Named Plaintiffs'

Counsel, Named Plaintiffs' Counsel shall be entitled, without the need for prior approval from Defendant's Counsel or the Court, to respond to that Class Member's communication by any means whatsoever. Notwithstanding anything in this Paragraph 7.5 to the contrary, Defendant and/or its affiliates shall be free to communicate in any manner with Class Members in the normal course of Defendant's business, so long as such communication is not related to the Settlement.

7.6     At least seven (7) days prior to the Fairness Hearing, Defendant's Counsel will provide Named Plaintiffs' Counsel and the Court with a declaration from a competent declarant stating that the Class Notice Date has occurred.

7.7     ***Exclusions from the Settlement Class.*** Any Class Member may request exclusion from the Settlement Class. Any Class Member who would like to request exclusion from the Settlement Class must make the request in accordance with the procedures and requirements set forth in the Class Notice. Beginning on the Friday immediately following the Class Notice Date and on every Friday until the time for requesting exclusion has expired, Named Plaintiffs' Counsel shall provide to Defendant's Counsel complete and accurate copies of all exclusion requests received during the week ending on the previous Friday. In addition, within ten (10) days after expiration of the deadline for Class Members to request exclusion from the Settlement Class, Named Plaintiffs' Counsel shall furnish the Opt-Out List to for Defendant's Counsel. Exclusions may not be submitted on behalf of a putative class or subclass of similarly situated Class Members. Defendant's Counsel and Named Plaintiffs' Counsel shall take no affirmative action to encourage Class Members to exclude themselves from the Settlement Class ("participation").

7.8    ***Written Objections to the Settlement.***  Any Settlement Class Member may present written objections explaining why the Settlement should not be approved as fair, reasonable, or adequate, or why attorneys' fees, costs, and expenses should not be awarded to Named Plaintiffs' Counsel in the amount or in the manner set forth herein.  Written objections must be submitted in accordance with the procedures and requirements set forth in the Class Notice.  Objections may not be submitted on behalf of a putative class or subclass of similarly situated Class Members.  Defendant's Counsel and Named Plaintiffs' Counsel shall take no affirmative action to encourage Class Members to object to the Settlement.

7.9    ***Appearances at Fairness Hearing.***  Any Settlement Class Member may appear at the Fairness Hearing for purposes of supporting or objecting to the Settlement.  Any Settlement Class Member who would like to make an appearance at the Fairness Hearing must both make a written objection and Fairness Hearing appearance request in accordance with the procedures and requirements set forth in the Class Notice.  Any Settlement Class Member who does not file and serve a written objection, as described in Paragraph 7.8, or make a Fairness Hearing appearance request, as described in this Paragraph 7.9, in a timely fashion and in the appropriate manner, shall be foreclosed from objecting to or seeking review of this Settlement whether by appeal or otherwise.  Defendant's Counsel and Named Plaintiffs' Counsel shall take no affirmative action to encourage Settlement Class Members to appear or not appear at the Fairness Hearing.

7.10   ***Final Judgment and Order.***  Upon approval of the Settlement by the Court after the Fairness Hearing, Defendant will make a motion (which Plaintiffs will support) for entry of a Final Judgment and Order.  This Final Judgment and Order shall, among other things, permanently foreclose and bar all Released Claims (including Claims for additional recovery,

25

penalties, interest, attorneys' fees, costs, and expenses) and all other Claims that any Settlement Class Members have alleged or could have alleged in connection with this Action.

      7.11    ***Retention of Jurisdiction.***  The parties shall request that the Court retain jurisdiction of this matter for a period not to exceed sixty days after AHS has provided Named Plaintiffs' Counsel with the notification required under Paragraph 5.2(H)(iv). The Court may enter such orders as are necessary or appropriate to effectuate the terms, administration, purposes, and intent of this Settlement.

      7.12    Neither Named Plaintiffs' Counsel nor Defendant's Counsel shall initiate any action whatsoever that is reasonably designed to affect any Settlement Class Member's decision-making process regarding whether or not to make a Submission to the Review Desk.

## VIII.  DETERMINATION OF ATTORNEYS' FEES, COSTS, AND EXPENSES

      8.1    The parties agree to negotiate the amount of Attorneys' Fees to be awarded to Named Plaintiffs' Counsel. If the parties are able to negotiate an agreed-upon amount of Attorneys' Fees ("Negotiated Attorneys' Fees"), the parties will prepare an amendment to this Stipulation to confirm their agreement.

      8.2    Named Plaintiffs' Counsel may seek an award of Attorneys' Fees only by making a timely and appropriate application to the Court and obtaining the Court's approval for such an award as reflected in a signed and dated order entered by the Court. Any award of Attorneys' Fees, in any and all amounts, shall be subject to the Court's review and approval. The parties recognize that the Court has ultimate authority to approve or disapprove any award of Attorneys' Fees. Because this Settlement is for the benefit of the Settlement Class, however, the parties further agree that any downward adjustment in Attorneys' Fees that may be ordered by the Court or the amount of Attorneys' Fees ultimately awarded to Named Plaintiffs' Counsel will not be a basis or reason for terminating the Settlement under any provision hereof.

8.3     If the application to the Court seeking Attorneys' Fees by or on behalf of Plaintiffs or Named Plaintiffs' Counsel requests Attorneys' Fees in an amount less than or equal to the Negotiated Attorneys' Fees, Defendant agrees not to object to such application.

8.4     If the application to the Court seeking Attorneys' Fees by or on behalf of Plaintiffs or Named Plaintiffs' Counsel requests Attorneys' Fees in an amount greater than the Negotiated Attorneys' Fees or if no agreement has been reached regarding Attorneys' Fees, Defendant may, in its sole discretion, object to all or any part of such application in such filings made with the Court as it deems appropriate.

8.5     If the parties are not able to reach agreement on Attorneys' Fees, the parties hereby agree that the Honorable R. David Proctor will make a final non-appealable determination as to the amount of reasonable Attorneys' Fees to be awarded to Named Plaintiffs' Counsel based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* Factors"), or to the extent applicable other binding 11th Circuit precedent.

If Judge Proctor is not willing or able for whatever reason to make such a determination, the parties hereby agree that retired Alabama Supreme Court Justice R. Bernard Harwood, Jr. will make a final non-appealable determination as to the amount of reasonable Attorneys' Fees to be awarded to Named Plaintiffs' Counsel based on the *Johnson* Factors, or to the extent applicable other binding 11th Circuit precedent.

If Justice Harwood is not available for a period of at least 45 days following notification from Judge Proctor that he is not willing or able to make this determination, the parties agree to meet and confer in good faith to select a mutually agreeable individual who would most closely approximate the approach of Judge Proctor in setting reasonable Attorneys' Fees to make a final

27

non-appealable determination as to the amount of reasonable Attorneys' Fees to be awarded to

Named Plaintiffs' Counsel based on the *Johnson* Factors, or to the extent applicable other

binding 11th Circuit precedent. If the parties cannot agree on such a person, Mr. Martin Van

Tassel will select three neutrals whom he believes would most closely approximate the approach

of Judge Proctor in setting reasonable Attorneys' Fees. Named Plaintiffs' Counsel shall strike

one of the neutrals selected by Mr. Van Tassel. The Defendant then shall strike one of the

neutrals selected by Mr. Van Tassel. The neutral that is not stricken by either party will make a

final non-appealable determination as to the amount of reasonable Attorneys' Fees to be awarded

to Named Plaintiffs' Counsel based on the *Johnson* Factors, or to the extent applicable other

binding 11th Circuit precedent.

     8.6    No later than thirty (30) Business Days after the Effective Date or such longer

time as ordered by the Court, Defendant shall deposit by wire transfer the sum of any Attorneys'

Fees payable by Defendant that was approved by the Court as reflected in the Final Judgment

and Order (as modified, if at all, on appeal or remand following an appeal) as full and complete

payment for any and all services that have been or will be rendered, and costs and expenses

incurred, by Named Plaintiffs' Counsel in connection with this Action and the Settlement. This

wire transfer will be made into a segregated, identified interest bearing money market or similar

account (the "Escrow Account") under the control of First Tennessee Bank, or such other agent

mutually agreed upon by counsel for the parties (the "Escrow Agent"), to be held by it and

disbursed pursuant to the terms hereof.

     8.7    No later than thirty (30) Business Days after the Effective Date or such longer

time as ordered by the Court, Defendant shall send the Named Plaintiffs' Payment by wire

transfer to Named Plaintiffs' Counsel. Named Plaintiffs' Counsel shall be responsible for

ensuring that each Named Plaintiff receives the appropriate allocation of the Named Plaintiffs' Payment. Defendant will have no obligation, liability, or responsibility whatsoever (i) for any taxes or other charges relating to the Named Plaintiffs' Payment, or (ii) to ensure that the funds are allocated among the Named Plaintiffs fairly, correctly, or appropriately.

8.8     The Attorneys' Fees and the Named Plaintiffs' Payment, together with any payments made to a Settlement Class Member under Paragraphs 5.2(K), 5.2(R), and 5.2(S) shall be the sole, aggregate, maximum, and gross amount Defendant or any Released Party will owe or pay to Named Plaintiffs, the Class, and Named Plaintiffs' Counsel for any Attorneys' Fees and/or any other amounts of any kind whatever incurred in connection with this Action, or for any other reason related to this Action. Named Plaintiffs' Counsel shall reimburse Defendant for any such taxes or charges that Defendant is required to pay on Named Plaintiffs' Counsel's behalf. A Settlement Class Member shall reimburse Defendant for any such taxes or charges that Defendant is required to pay on the Settlement Class Member's behalf.

## IX.     PAYMENT METHOD AND INSTRUCTIONS

9.1     Before the Effective Date, Named Plaintiffs' Counsel will transmit wiring instructions to the Escrow Agent for the payment of Attorneys' Fees from the Escrow Account to Named Plaintiffs' Counsel, and to Defendant for payment of the Named Plaintiffs' Payment to Named Plaintiffs' Counsel.

9.2     Once Named Plaintiffs' Counsel's wiring instructions have been received by the Escrow Agent, the Escrow Agent may cause funds on deposit in the Escrow Account to be reduced and paid out in accordance with this Paragraph 9.2.

A.     Funds may be paid out of the Escrow Account for the benefit of Named Plaintiffs' Counsel only upon a payment instruction from Named Plaintiffs' Counsel,

29

addressed to the Escrow Agent with copies to Defendant, that is in accordance with the Final

Judgment and Order, or as otherwise directed by the Court.

        B.      The Escrow Agent shall make no payment pursuant to a payment

instruction from Named Plaintiffs' Counsel unless at least three (3) Business Days have

elapsed since the receipt of the instruction and Defendant has interposed no objection to the

payment. In the event of an objection, the dispute between the parties shall be resolved by the

Escrow Agent, with the involvement of the Court as necessary.

        C.      Any accrued interest or funds remaining in the Escrow Account after a

payment instruction from Named Plaintiffs' Counsel has been executed will be paid out of the

Escrow Account, after deduction of the costs of the Escrow Agent, to Defendant for its

benefit.

    9.3     Named Plaintiffs' Counsel shall be responsible for ensuring that Named

Plaintiffs' Counsel receives the appropriate allocation of the funds in the Escrow Account.

Defendant will have no obligation, liability, or responsibility whatsoever (i) for any taxes or

other charges relating to money paid out of the Escrow Account, or (ii) to ensure that the funds

are allocated among Named Plaintiffs' Counsel fairly, correctly, or appropriately. To the extent

any attorney or firm serving as Named Plaintiffs' counsel or otherwise contests their or its

portion of the total award for Attorneys' Fees provided for hereby or approved by the Court,

such attorney or firm must look solely to Named Plaintiffs' Counsel, and not to Defendant, for

their remedy. Under no circumstances will Defendant have any obligation whatsoever arising

from this Action to any attorney or firm serving as Named Plaintiffs' Counsel or otherwise

representing Class Members other than the express obligations set forth herein.

9.4    Should the Agreement be terminated, the Escrow Account shall be closed and its funds (including any interest remaining in the Escrow Account after deduction of any costs of the Escrow Agent) disbursed to the Defendant, as directed by Defendant, without any further order of the Court or any countersignature by anyone other than the Escrow Agent.

9.5    Not later than thirty (30) days following the final closing of the Escrow Account, the Escrow Agent shall file with the Court a statement disclosing the distribution of funds from the Escrow Account.

9.6    Upon disbursement of all funds in the Escrow Account upon any termination of the Agreement, the Escrow Agent shall be released and relieved of all liabilities and obligations, if any, arising out of or relating to the administration of the Escrow Account and any such liabilities and obligations shall become the liabilities of Defendant.

## X.    RELEASE, COVENANT NOT TO SUE, DISMISSAL OF CLAIMS, AND STANDSTILL

10.1    Except as provided in Paragraphs 5.2(P) and 5.2(Q), Named Plaintiffs covenant and agree, and the entire Settlement Class will be deemed to have covenanted and agreed, that Named Plaintiffs and all Settlement Class Members will, by operation of the Final Judgment and Order and as of the Effective Date, have fully, unconditionally, irrevocably, and completely released, waived, relinquished, and forever discharged all of the Released Parties from any and all Claims, including for an accounting, for the rescission or reformation of contracts (or any equitable theory whatsoever), for restitution or repayment, and for prospective injunctive relief to mandate, cease, reform, or otherwise modify in any way the Released Parties' business practices, arising from Home Service Contracts concluded and events occurring during the Class Period and related to AHS's policies, procedures, and/or practices during the Class Period as alleged in, or reasonably related to those alleged in, the Action, including (i) Contractor Relations Practices;

31

and (ii) AHS's policies, procedures and/or practices respecting: the timing or promptness of

responding to customer problems and situations, including expediting such responses; the

diagnosis of customer problems and situations; authorizing repairs or replacements in response to

customer requests; choosing between offering repairs and offering replacements; offering or

requiring the acceptance of cash in lieu of repairs or replacements; denying claims (in part or in

their entirety); applying contract limitations and exclusions; applying business rules for

emergencies; responding to customer inquiries or escalating the attention given to such inquiries;

or otherwise making decisions regarding either the application of the terms and conditions of

Home Service Contracts, or the authorization of repair and replacement services pursuant to

Home Service Contracts.

     10.2    Except as provided in Paragraphs 5.2(P) and 5.2(Q), Named Plaintiffs covenant

and agree, and the entire Settlement Class will be deemed to have covenanted and agreed, that

Named Plaintiffs and all Settlement Class Members will, by operation of the Final Judgment and

Order and as of the Effective Date, have fully, unconditionally, irrevocably, and completely

released, waived, relinquished, and forever discharged all of the Released Parties from any and

all Claims, including for damages based on theories of breach of express contract, breach of

implied contract, reformation or rescission of contract, restitution, repayment, breach of

warranty, fraud, misrepresentation, concealment, failure to disclose, fraudulent

misrepresentation, negligent misrepresentation, bad faith failure to pay claims, breach of

covenant of good faith and fair dealing, breach of local, state, or federal consumer protection

laws or regulations (including Section 1750 and associated provisions of the California Civil

Code, Sections 17200, 17500, and associated provisions of the California Business and

Profession Code, Section 8-19-1 and associated provisions of the Alabama Deceptive Trade

Practices Act, and other similar provisions of the laws of California, Alabama, and of any other state), or any other legal theory whatsoever, based on events occurring during the Class Period and allegedly caused by AHS's generalized policies, procedures, and/or practices as described in Paragraph 10.1 and as are alleged in, or reasonably related to those alleged in, the Action; provided, however, that the release contained in this Paragraph shall not encompass any AHS customer's breach of Home Service Contract claim that is individualized and does not depend on any allegation of generalized AHS policies, procedures, practices, or any other reasonably disputed allegation of fact that applies in common across any subset of the Class or the Class as a whole.

10.3    Named Plaintiffs covenant and agree, and the Settlement Class will be deemed to have covenanted and agreed, that Named Plaintiffs and each Settlement Class Member will, by operation of the Final Judgment and Order as of the Effective Date, have covenanted not to file or participate (whether individually, as a putative or actual class member, or otherwise) in any Suit with respect to any Released Party arising from or related to any Claims asserting AHS's generalized policies, procedures, and/or practices as described in Paragraph 10.1 and as are alleged in, or reasonably related to those alleged in, the Action, that arise after the Effective Date (the "Standstill Claims") for a period of twenty-four (24) months beginning on the Effective Date (the "Standstill Period"), except that nothing herein shall be construed as limiting the rights of the Named Plaintiffs and the Settlement Class to (i) enforce this Agreement pursuant to Paragraph 11.1, (ii) file a Suit pursuant to Paragraphs 5.2(P) , or (iii) file a Post-Submission Suit pursuant to Paragraphs 5.2(Q) and 5.2(R). Any statute of limitations or repose applicable to the Standstill Claims shall be tolled during the Standstill Period. However, nothing in this Agreement revives, extends, or tolls any Claims, if any, that the Named Plaintiffs or the

33

Settlement Class had or may have had against the Defendant but that were barred or precluded from being asserted by the Named Plaintiffs or the Settlement Class by statute or otherwise as of the Effective Date.

    10.4    In consideration of the benefits described herein, Named Plaintiffs agree, and each Settlement Class Member shall be deemed to have agreed, to the dismissal with prejudice of this Action.

    10.5    Nothing in this Agreement is intended to, or will operate to, release or compromise in any way any claims that have been brought, or may in the future be brought through amendments to pleadings filed by any State, insofar as such claims seek statutory penalties, civil fines, or other relief sought on behalf of and payable exclusively to and for the benefit of the State or any officer acting exclusively in an official capacity or political subdivision thereof.

## XI.    ENFORCEMENT AND TERMINATION

    11.1    Upon any alleged material breach by Defendant of its obligations hereunder, Class Members may, after giving Defendant reasonably specific notice of the alleged material breach, and allowing a period no less than forty-five (45) days for Defendant to correct the alleged breach, seek an order from the Court finding that Defendant is in material breach of its commitments hereunder. In the event the Court makes a finding of material breach, the Court shall direct Defendant to come into compliance with this Agreement within forty-five (45) days or such other period of time that the Court deems appropriate. In seeking such an order from the Court, Class Members must not oppose any Defendant request to be allowed a fair opportunity to present evidence and argument to the Court.

    11.2    On a quarterly basis beginning six months after the opening of the Review Desk and ending with AHS's provision of the notification to Named Plaintiffs' Counsel required under

Paragraph 5.2(H)(iv), AHS shall provide to Named Plaintiffs' Counsel a confidential claims summary of activity of the Review Desk, breaking out the number of Submissions by type of appliance or system, the amount claimed (if any), and the relief offered. A separate breakout will be provided as to heating and air conditioning claims that were denied outright solely for lack of maintenance during the first year of the contract.

11.3    Defendant will have the option to terminate this Settlement, in its sole discretion, if the number of requests for exclusion from the Settlement exceeds five percent (5%) of the total number of persons in the Class. Defendant will have thirty (30) days from its receipt of the final Opt-Out List in which to exercise, in its sole discretion, this right to terminate. In addition, this Agreement may also be terminated by Defendant, in its sole discretion, in the event that any of the following occur: (i) a motion seeking preliminary approval or final approval of this Settlement is denied or is granted but later reversed on appeal; or (ii) the entry of the Final Judgment and Order is reversed on appeal; or (iii) the Court modifies this Agreement or fails to enforce any provision hereof, except as expressly provided below. Notwithstanding the foregoing, any downward modification of the Final Judgment and Order either by the Court or on appeal regarding the amount of Attorneys' Fees to be awarded to Named Plaintiffs' Counsel shall not give Defendant, Named Plaintiffs, Class Members, or Named Plaintiffs' Counsel the option to terminate this Agreement. Any termination pursuant to this Paragraph shall be accomplished by filing with the Court a notice of termination, which shall be served on Named Plaintiffs' Counsel. Upon the filing of such a termination notice, this Settlement and Agreement shall be deemed to be terminated.

11.4    Notwithstanding any termination of this Agreement, Paragraphs 4.2, 4.3, 6.2, 6.3, 11.4, 12.4, 12.7, 12.12, 12.17, 12.19, 12.20, 12.21, 12.22, 12.23, and 12.24 (and the defined

35

terms used therein) shall remain in full force and effect. In the event this Settlement is terminated before the Effective Date for any reason, all other provisions of this Agreement, and the Settlement itself, shall be deemed null and void *ab initio* and without force or effect. In such event, this Agreement shall not be offered in evidence or used in this or any other Suit for any purpose including the existence, suitability for certification, or maintenance of any purported class. In such event, this Agreement and all negotiations, statements, proceedings, and documents prepared in connection herewith (including all legal briefs and exhibits thereto) shall not be deemed or construed to be an admission or confession by any party of any fact, matter, or proposition of law and shall not be offered by anyone adverse to the Defendant for any purpose whatsoever in any Suit. In the event of such termination, all parties to this Action shall stand in the same position as if this Agreement had not been negotiated, signed, or filed with the Court, except as expressly provided in this Paragraph.

11.5    The Named Plaintiffs on behalf of themselves and each Class Member covenant and agree that if any Claims are filed against any Released Party that violate any injunction, including enjoining Settlement Class Members from asserting any Released Claims against any Released Parties that the Named Plaintiffs and Defendant will request as part of the Preliminary Approval Order and the Final Judgment and Order, the Released Party shall be entitled to reimbursement from the party asserting such Claim of any reasonable attorneys' fees, expenses or costs actually incurred in seeking and obtaining the enforcement of such injunction as against such Claim; provided, however, that the Released Party shall be entitled to reimbursement under this Paragraph 11.5 only if it provides notice by direct mail to the party asserting such Claim, if not represented by counsel, or its counsel, if so represented, of (a) the injunction and (b) the

potential for reimbursement of reasonable attorneys' fees, expenses or costs actually incurred, and such Claim is not dismissed or withdrawn within 30 days of service of such notice.

## XII. MISCELLANEOUS PROVISIONS

12.1 *Entire Agreement.* This Agreement, including all Exhibits attached hereto and hereby incorporated by reference, shall supersede any previous agreements or understandings between the parties with respect to this Action. This Agreement is the entire agreement of the parties with respect to this Action and may not be changed, modified, or amended except as expressly set forth in Paragraph 12.2.

12.2 *Modification By Writing Only.* This Agreement may be amended or modified only by a written instrument, signed by both Named Plaintiffs' Counsel and Defendant's Counsel. Each party will promptly consider and respond to any other party's written request to modify the Settlement or this Agreement. The Agreement, as modified or amended under this Paragraph 12.2, is subject to Court approval before the Effective Date.

12.3 *Recommendation to Plaintiffs.* Named Plaintiffs' Counsel shall recommend the Settlement to Named Plaintiffs and the members of the Class, and shall use their best efforts to obtain their approval of, support for, and participation in this Settlement.

12.4 *Expenses.* Except as otherwise expressly set forth herein, each party hereto will pay all costs and expenses incident to its negotiation and preparation hereof and to its performance and compliance with all agreements and conditions contained herein on its part to be performed or complied with, including the fees, expenses and disbursements of its counsel, independent public accountants, and other advisors, whether or not the Final Judgment and Order shall have been entered by the Court. Nothing herein shall require Defendant or any Released Party to pay out or expend any monies other than as expressly provided herein.

12.5   ***Invalidity or Unenforceability of Provisions.***  In the event that any one or more of the provisions contained herein shall for any reason be held in whole or in part to be invalid or unenforceable in any respect by any federal, state, administrative, judicial, arbitral, or other forum, bar association, or committee of competent jurisdiction, such invalidity or unenforceability shall not affect any other provision hereof if the parties hereto agree in writing to proceed as if such invalid or unenforceable provision had never been included herein.  Absent such agreement, this Agreement shall be deemed terminated.

12.6   ***Amount Paid Not a Penalty.***  No consideration or amount or sum paid, credited, offered, or expended by Defendant in the performance hereof constitutes a penalty, fine, punitive damages, or other form of penalty for any alleged Claim or offense.

12.7   ***Agreement Mutually Prepared; Construction.***  This Agreement shall be deemed to have been mutually prepared by the parties and shall not be construed against any one of them by reason of authorship.  Accordingly, no party hereto shall be considered to be the drafter of any of its provisions for the purpose of any statutes, case law, or rule of interpretation or construction that might otherwise cause any provision or paragraph hereof to be construed against its purported drafter.  Otherwise, this Agreement shall be construed in accordance with the four corners of the agreement and otherwise in accordance with the contract construction rules applicable to contracts made within the State of Alabama.  References in this Agreement to: (1) "herein," "hereto," "herewith" and "hereunder" shall refer to this Agreement as a whole; (2) any paragraph or section shall be to a paragraph or section hereof, unless otherwise specified; (3) Exhibits shall refer to Exhibits attached hereto; and (4) "including" shall be deemed to be immediately followed by "without limitation."  The preamble is hereby incorporated herein by reference.

12.8    ***Counterparts.***  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  For purposes hereof, a facsimile signature shall be deemed an original.

12.9    ***Binding Effect.***  This Agreement shall be binding upon and inure to the benefit of the parties, the Defendant, the Named Plaintiffs, the Class Members, and their representatives, heirs, successors, and assigns.  The parties expressly agree that the terms hereof, including all promises and covenants stated herein, are contractual and shall survive the execution hereof and entry of the Final Judgment and Order and shall continue in full force and effect thereafter in accordance with their terms.

12.10    ***Headings.***  The headings and subheadings (if applicable) hereof are included for convenience only and shall not be deemed to constitute part hereof or to affect its construction.

12.11    ***Waiver.***  Any party may waive rights belonging to it hereunder or defaults or breaches hereof committed by the opposing party.  No waiver by any party of any provision hereof or any default or breach hereunder, whether intentional or not, shall be valid, however, unless the same shall be in writing and signed by the party making such waiver.  Nor shall such waiver be deemed to extend to any prior or subsequent default or breach hereunder or affect in any way any rights arising by virtue of any prior or subsequent such default or breach.

12.12    ***Full Authority.***  All counsel executing this Agreement or any related documents warrant and represent that they have full authority to do so and that they have the authority to make binding commitments in regards to the actions required or permitted to be taken hereunder in order to effectuate its terms.

12.13    ***Receipt of Advice of Counsel.***  The parties acknowledge, agree, and specifically warrant to each other that they have fully read this Agreement, received independent legal, tax,

and financial advice with respect to the advisability of entering into it and with respect to the legal effect hereof. The parties further acknowledge, agree, and specifically warrant that they fully understand the legal effect hereof.

12.14 *Opportunity to Investigate.* The parties acknowledge, agree, and specifically warrant to each other that they and their counsel have had adequate opportunity to make whatever investigation and inquiries are deemed necessary or desirable in connection with the subject matter of the Settlement and the advisability of entering into this Agreement. The parties further agree that Named Plaintiffs' Counsel have sufficient information to date, through discovery or otherwise, to allow them to determine that the Settlement is in the best interests of the Class, and no further information, through discovery or otherwise, is necessary or will be sought in connection with the Settlement.

12.15 *Good Faith Settlement.* The parties acknowledge, agree, and specifically warrant to each other that they are entering into this Agreement freely, without duress, in good faith, and at arms length. The benefits, procedures and offers set forth in this Agreement constitute the entire consideration provided to the Class under this Agreement and are agreed by all parties to constitute fair, reasonable and adequate consideration for the Releases and the other agreements and obligations of the Class reflected in this Agreement. Neither Defendant nor any of the Released Parties shall have any obligations to any Class Members in respect of the Released Claims, except as expressly provided for in this Agreement.

12.16 *Unknown Claims.* The parties acknowledge, agree, and specifically warrant to each other that they are familiar with California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

40

Being aware of California Civil Code Section 1542, all parties releasing Claims hereby expressly waive any and all rights they may have under this law and under any other federal or state law of similar effect with respect to the matters released herein.

12.17 *Notices.* Unless otherwise provided herein, any notice, request, waiver, instruction, application for Court approval, or application for Court order sought in connection herewith or other document to be given by any party or to the other party shall be in writing and delivered personally or sent by registered or certified mail, postage pre-paid, with copies by facsimile to the attention of Named Plaintiffs' Counsel or Defendant's Counsel (as well as to any other recipients that a court may specify), or if applicable via use of the e-filing and e-service system for the United States District Court for the Northern District of Alabama. As of the date hereof, the respective representatives are as follows:

For Defendant: **John E. Goodman**
BRADLEY ARANT BOULT
CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

For Plaintiffs: **D. Frank Davis**
Davis & Norris LLP
2154 Highland Avenue South
Birmingham, AL 35205
Telephone: (205) **930-9900**
Facsimile: (205) 930-9989

12.18 *Extensions of Time.* The parties may agree, subject to the approval of a court where required, to reasonable extensions of time to carry out the provisions hereof.

12.19 *No Beneficiaries.* No portion hereof shall provide any rights to, or be enforceable by, any Person other than Named Plaintiffs, the Class Members, Named Plaintiffs' Counsel, or the Released Parties. No third party beneficiaries are created or intended to be created hereby. No Class Member may assign or otherwise convey any right to enforce any provisions hereof.

12.20 *Preservation of Privilege.* Nothing contained herein or in any order of a court, and no act required to be performed pursuant hereto or any order of a court, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege.

12.21 *No Public Announcement.* Except as expressly provided in this Paragraph 12.21, none of the Named Plaintiffs, Named Plaintiffs' Counsel, or Defendant shall, without prior written approval, make any press release or other public announcement concerning this Agreement, except as and to the extent that any such party shall be so obligated by law, in which case the other party shall be advised and the parties shall use their reasonable efforts to cause a mutually agreeable release or announcement to be issued; provided, however, that the foregoing shall not apply to communications or disclosures necessary for a party to meet its obligations hereunder or to comply with the accounting and/or the Securities and Exchange Commission disclosure provisions or the rules of any stock exchange. This Paragraph does not prohibit Named Plaintiffs' Counsel from disclosing on its website, starting not sooner than the end of the Submission Period , that Named Plaintiffs' Counsel successfully settled a nationwide class action against a national service contract company involving more than one hundred thousand consumers, provided that Named Plaintiffs' Counsel may not state or provide information sufficient to identify the name of any Released Party in such disclosure.

12.22 **_Confidentiality and Return of Documents._** With respect to all information and documents obtained by, through, or from Defendant, through formal and informal discovery, Named Plaintiffs' Counsel and Named Plaintiffs represent that they have not shared such information with any individuals or third parties, other than the Named Plaintiffs, their own legal and support staff and retained experts, and mediator Martin Van Tassel. This Agreement shall remain confidential until the motion for preliminary approval of this Settlement is presented pursuant to Paragraph 7.3, at which point the fact and terms of this Agreement shall become a matter of public record. All information related to this Action including that reflected in Named Plaintiffs' Counsel's files shall be maintained in the strictest confidence to be used only in carrying out the express terms hereof. Within forty-five (45) days of the Effective Date, the Named Plaintiffs and Named Plaintiffs' Counsel will return to Defendant any and all documents, data, and other materials provided by Defendant in their files, including all copies thereof. Upon satisfaction of this duty and responsibility, Named Plaintiffs' Counsel will certify in writing that all such data, documents, and materials, and all copies thereof, have been returned. This Paragraph shall not operate to prohibit: (1) disclosures by Named Plaintiffs and/or Named Plaintiffs' Counsel that, after reasonable notice to Defendant, are legally required to respond to legal processes or requests from government agencies, nor of any legally required disclosure not specified herein; (2) disclosures to the Named Plaintiffs' and Named Plaintiffs' Counsel's fiduciaries, insurers, personal attorneys, or financial representatives, provided an express agreement to maintain the confidentiality of such information is in place and being adhered to; and (3) Named Plaintiffs' Counsel from filing all documents necessary to obtain approval and confirmation of the Settlement and/or to enforce the Settlement as provided herein. The

confidential claims summary of activity of the Review Desk shall be considered AHS confidential information.

    12.23   ***Confidentiality of AHS Proprietary Information.***  Information regarding the identity, including without limitation the names, addresses, telephone numbers, and email addresses, of Class Members (the "Compilation of Class Members") is and shall remain at all times confidential, proprietary information and trade secrets of AHS. Notwithstanding anything herein to the contrary, AHS has no obligations to provide the Compilation of Class Members to Named Plaintiffs' Counsel, the Court, or any other third-party, except that AHS may provide to the Court in connection with the Fairness Hearing a list of the Class Members who validly excluded themselves from this Settlement pursuant to Paragraph 7.7.

    12.24   ***Governing Law.***  This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Alabama without giving effect to any choice or conflict of law provision or rule (whether of the State of Alabama or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Alabama.

    12.25   ***Defamation.***  The Named Plaintiffs and Named Plaintiffs' Counsel agree that they (i) will not make any false statements of fact in any way concerning the Released Parties; and (ii) will not make any statements to third Persons that could constitute slander, libel, or which would have a tendency to subject to ridicule or disparagement the Released Parties, their affiliates, their business operations, or their officers, directors, or employees.

    12.26   ***Enforcement of Home Service Contracts.***  Nothing in this Settlement shall constitute a waiver of Defendant's right to enforce its Home Service Contracts fully outside the Review Desk process, including situations in which a Settlement Class Member rejects Defendant's Review Desk response, except for a Settlement Class Member's claim for prevailing

party attorneys' fees under Paragraph 5.2(R) or additional lump sum relief offered under

Paragraph 5.2(S).

IN WITNESS WHEREOF, Plaintiffs and Defendant have executed this Stipulation of

Settlement on this **6th** day of October, 2009.

D. Frank Davis

On behalf of the Named Plaintiffs,
the Class, and
Davis & Norris LLP

John E. Goodman

On behalf of Defendant
American Home Shield Corporation

Laura Faught

Steven Faught

AMERICAN HOME SHIELD CORPORATION

By: _____

Its: _____