FILED
2010 Jan-25 PM 04:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT D

```
 1  Martin R. Boles (State Bar No. 124159)
    mboles@kirkland.com
 2  KIRKLAND & ELLIS LLP
    777 South Figueroa Street
 3  Los Angeles, California 90017
 4  Telephone: (213) 680-8400; Facsimile (213) 680-8500

 5  Robert R. Gasaway (Pro Hac Vice)
    rgasaway@kirkland.com
 6  Ashley C. Parrish (Pro Hac Vice)
    aparrish@kirkland.com
 7  KIRKLAND & ELLIS LLP
 8  655 Fifteenth Street, N.W., Suite 1200
    Washington, D.C. 20005
 9  Telephone: (202) 879-5016; Facsimile: (202) 879-5200

10  Attorneys for Defendants
11  AMERICAN HOME SHIELD OF CALIFORNIA, INC.
    AMERICAN HOME SHIELD CORPORATION
12
    Francis A. Bottini, Jr.
13  frankb@johnsonbottini.com
    JOHNSON BOTTINI, LLP
14  655 W. Broadway, Suite 1400
15  San Diego, CA 92101
    Telephone: (619) 230-0063; Facsimile: (619) 233-5535
16
    Attorney for Plaintiffs
17  KARON and L.B. CHIP EDLESON
```

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| KARON and L.B. CHIP EDLESON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HOME SHIELD OF CALIFORNIA, INC., AMERICAN HOME SHIELD CORPORATION, and DOES 1-20,<br><br>Defendants. | Case No. 37-2007-00071725-CU-BT-CTL<br><br>Judge Steven R. Denton<br><br>**STIPULATION OF SETTLEMENT** |

# TABLE OF CONTENTS

I.     PREAMBLE ........................................................................................................3

II.    DEFINITIONS ...................................................................................................4

III.   CLAIMS OF THE NAMED PLAINTIFFS AND BENEFITS OF SETTLEMENT ..................................................................................................9

IV.    DENIAL OF WRONGDOING OR LIABILITY ............................................9

V.     SETTLEMENT CONSIDERATION .............................................................10

VI.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY .......17

VII.   IMPLEMENTATION OF THE SETTLEMENT ..........................................18

VIII.  DETERMINATION OF ATTORNEYS FEES, COSTS, AND EXPENSES .........................................................................................................21

IX.    PAYMENT METHOD AND INSTRUCTIONS ...........................................22

X.     RELEASE, COVENANT NOT TO SUE, AND DISMISSAL OF CLAIMS ............................................................................................................23

XI.    ENFORCEMENT AND TERMINATION ....................................................26

XII.   MISCELLANEOUS PROVISIONS ...............................................................27

THIS STIPULATION OF SETTLEMENT is entered into as of this ___ day of September, 2008 (the "Settlement Date"), by and among named plaintiffs Karon and L.B. Chip Edleson (the "Named Plaintiffs"), individually and as representatives of the Class, and defendants American Home Shield of California, Inc. and American Home Shield Corporation (the "Defendants"), by and through their attorneys.

I. **PREAMBLE**

WHEREAS, on July 24, 2007, this action, captioned *Karon and L.B. Chip Edleson, on behalf of themselves and all others similarly situated, v. American Home Shield of California, Inc., American Home Shield Corporation, The ServiceMaster Company, and Does 1-20*, No. 37-2007-00071725-CU-BT-CTL (Superior Court of California, County of San Diego, Steven R. Denton, or his successor, presiding (the "Court")) (the "Action"), which alleges that American Home Shield failed to fulfill contractual obligations to its customers and breached other duties under California law, was filed as a putative nationwide class action in the Superior Court of California for the County of San Diego;

WHEREAS, the Defendants vigorously denied, and continue to vigorously deny, any wrongdoing and any liability in relation to the allegations contained in the complaint filed in the Action (the "Complaint");

WHEREAS, the parties have engaged in substantial discovery to evaluate the merits of the parties' respective claims and defenses, and have engaged in arm's-length settlement negotiations; and

WHEREAS, prompted in part by this Action and during the course of this Action, American Home Shield Corporation has changed its business practices nationwide, including by making available FlexPlan Contracts to its customers;

NOW THEREFORE, it is agreed, by and among the undersigned, that this Action shall be settled and dismissed on the merits and with prejudice, without costs to Plaintiffs or Defendants (except as hereinafter provided), subject to the approval of the Court on the terms and conditions outlined herein.

II. **DEFINITIONS**

As used herein, the following terms have the respective meanings specified, which shall be equally applicable to both the singular and plural forms:

2.1. "Agreement" means this agreement and all of its attachments and exhibits, which the settling parties understand and agree set forth all material terms and conditions of the Settlement between them and which is subject to this Court's approval.

2.2. "AHS Competitor" means any Person (other than AHS) that issues, offers for sale, or underwrites in North America any of the various service contracts commonly known as "home warranties," and going by various names in different markets and under different regulatory regimes, including designations such as "service contract," "extended service contract," "residential service contract," "home service contract," "home protection contract," and "warranty contract."

2.3. "Alternative Johnson Bottini LLP Attorney" means Frank J. Johnson.

2.4. "American Home Shield" or "AHS" means American Home Shield Corporation, a Delaware Corporation, together with all its direct and indirect subsidiaries, including American Home Shield of California, Inc.

2.5 "Attorneys Fees & Expenses" has the meaning ascribed it in paragraph 8.2.

2.6. "Business Day" means any day that is not a Saturday, Sunday or the day set aside for observing New Year's Day, Martin Luther King Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, or Christmas Day, and any other day declared a holiday by the President or Congress.

2.7. "Claims" means any and all claims, demands, debts, rights, causes of action, suits, actions, damages, costs, expenses, compensation, requests for compensation or reimbursement, obligations, liabilities, penalties, attorneys fees, or losses in law or equity, of whatever kind or nature, whether or not known, ripe or mature.

2.8. "Class" means all Persons in the United States who purchased or were issued any Home Warranty Contract during the Class Period. Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, directors, and employees; Judge Steven R. Denton; and any

1  judge and any member of the family of any judge who has jurisdiction over this matter now or in the
2  future.

3  2.9. "Class Counsel" means counsel appointed by the Court as counsel to represent the
4  Class and/or the Settlement Class. Unless the Court orders otherwise, "Class Counsel" means
5  Johnson Bottini LLP and Chapin Wheeler LLP.

6  2.10. "Class Member" means the Named Plaintiffs and any Person that is a member of the
7  Class.

8  2.11. "Class Notice" means the notice provided to Class Members pursuant to
9  paragraph 7.3 in the form attached as Exhibit A.

10  2.12. "Class Notice Date" means the first date on which Defendants, as provided by
11  paragraph 7.3, (i) have substantially completed the sending of the Class Notice; (ii) have made
12  available the information required to be made available via an Internet website; and (iii) stand
13  prepared to make available, in response to any Class Member requests that may be received by mail,
14  the information required to be made available by paragraph 7.3.

15  2.13. "Class Period" means the period beginning on July 24, 2001 up to and including the
16  date on which the Preliminary Approval Order is issued.

17  2.14. "Contractor Network" means a subset of the larger universe of independent home
18  repair contractors engaged by AHS to make service calls to Home Warranty Contract customers,
19  which subset is defined as those who have executed a written contract with AHS containing a
20  commitment by AHS to attempt to dispatch to such contractor a specified number of service calls per
21  annum, also known as a "call commitment."

22  2.15. "Contractor Relations Initiative" means the 24-month process described in paragraph
23  5.3.

24  2.16. "Contractor Relations Practices" means, generally, AHS's practices respecting
25  selecting, recruiting, training, dispatching, rating, evaluating, terminating, monitoring,
26  compensating, incentivizing, rewarding, penalizing, disciplining, following up service calls by,
27  allocating services calls to, authorizing repairs by, allowing non-covered charges to be collected by,
28

-5-

supervising repair or replacement work performed by, enforcing compliance with contract terms by, overseeing compliance with applicable permitting or other legal requirements by, or otherwise supervising, managing, or monitoring independent home repair contractors that AHS engages, authorizes and/or directs to make service calls for purposes of providing services pursuant to Home Warranty Contracts.

2.17. "Day" or "day" means calendar day unless identified as "Business Day."

2.18. "Denied Claim" means a Settlement Class Member request received by American Home Shield for service on an item covered under his/her Home Warranty Contract during the Class Period, where repair or replacement services were denied by AHS, in whole or in part, or where the Class Member deemed inadequate a cash payment they received from AHS in lieu of repair or replacement services.

2.19. "Effective Date" means the date on which the time for filing an appeal under California Rule of Court Rule 8.104, as may be amended, expires without any appeal being filed from a Final Judgment and Order of the Court approving the Settlement. In the event that one or more such appeal(s) from such a final decision of the Court is timely brought, the Effective Date will be the date on which such appeal(s) are finally resolved in favor of upholding the Settlement without any modification, except any downward adjustment in attorney fees, costs, and expenses that may be ordered by the Court as permitted by paragraph 8.1, and without any possibility of a further appeal to, or any discretionary review by, any court superior to this Court.

2.20. "Escrow Account" has the meaning ascribed it in paragraph 8.2.

2.21. "Escrow Agent" has the meaning ascribed it in paragraph 8.2.

2.22. "Fairness Hearing" means a hearing conducted by this Court after the Class Notice Date for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Agreement pursuant to class action procedures and requirements; and (ii) entering a Final Judgment and Order.

2.23. "Final Judgment and Order" means a final order (that cannot be further appealed) entered by this Court after the Fairness Hearing granting its approval of the Settlement pursuant to paragraph 7.8 in substantially the form attached as Exhibit B.

-6-

2.24. "FlexPlan Contract" means a Home Warranty Contract issued by AHS with the features and attributes described in paragraph 5.2. An exemplar of the FlexPlan Contract which shall be deemed to satisfy the conditions of paragraph 5.2 is attached as Exhibit C. Such exemplar may be modified by AHS at anytime provided it contains the features described in paragraph 5.2.

2.25. "Home Warranty Contract" means and includes any of the various service contracts issued to the public and/or underwritten by AHS, or by a parent or affiliate of AHS, commonly known as "home warranties," and going by various names in different markets and under different regulatory regimes, including designations such as "service contract," "extended service contract," "residential service contract," "home service contract," "home protection contract," and "warranty contract."

2.26. "Lead Class Counsel" means the Person appointed by the Court to discharge the duties of Lead Class Counsel as set forth in this Agreement. Unless the Court orders otherwise, "Lead Class Counsel" means Francis A. Bottini, Jr.

2.27. "Named Plaintiffs Payment" has the meaning ascribed it in paragraph 5.4.

2.28. "Opt-Out List" means the complete, final, and accurate list of all properly submitted exclusion requests received by Class Counsel and provided to counsel for Defendants, as required under paragraph 7.5.

2.29. "Person" means any natural person, any legal entity, including a limited or general partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, sole proprietorship, an unincorporated organization, any other form of legal entity, and/or any governmental body (including any department, agency, commission, authority, administration, or political subdivision thereof), whether federal, state, local or other.

2.30. "Plaintiffs" means the Named Plaintiffs and all Class Members.

2.31. "Preliminary Approval Order" means an order entered by this Court preliminarily approving the Settlement pursuant to paragraph 7.2 in substantially the form attached as Exhibit D.

2.32. "Quarterly Meeting" has the meaning ascribed it in paragraph 5.3.a.

2.33. "Released Claims" means any and all Claims set forth in paragraphs 10.1 and 10.2.

2.34. "Released Parties" means the Defendants, their respective, direct or indirect, subsidiaries, divisions, partners, limited partners, owners, investors, holding companies, parents, affiliates (regardless of the form of the legal entity, e.g., corporation, limited liability company, general or limited partnership), including their respective predecessors and successors, and their respective present and former officers, directors, employees, principals, agents, attorneys, and/or any other Person for which any of these Persons shall have a direct or indirect interest, or for which they may otherwise be responsible, as of any given date.

2.35. "Releases" means collectively the terms of the releases, covenants not to sue, and agreed-on dismissal set forth in paragraphs 10.1, 10.2, 10.3, 10.4, and 10.5.

2.36. "Review Desk" means the review process established by American Home Shield as described in paragraph 5.1.

2.37. "Settlement" means the terms of the parties' agreed-on settlement as reflected and embodied in this Agreement.

2.38. "Settlement Class" means all Class Members that do not opt out of the Settlement in a timely and valid manner in accordance with the procedures set forth herein.

2.39. "Settlement Class Member" means the Named Plaintiffs and any Person that is a member of the Settlement Class.

2.40. "Submission" has the meaning ascribed it in paragraph 5.1.f.

2.41. "Submission Period" means a period of ninety (90) days, beginning thirty (30) days after the Effective Date.

2.42. "Submittal Form" means the form obtained from AHS that must be used to make submissions to the Review Desk. A copy of a Submittal Form is attached as Exhibit E.

2.43. "Suit" means any lawsuit, suit, action, proceeding, litigation, legal representation or complaint brought or pending in any federal, state, administrative, judicial, arbitral, or other forum, whether direct, derivative or representational.

2.44. "Suit Intention Notice Date" has the meaning ascribed it in paragraph 5.1.n.

-8-

### III. CLAIMS OF THE NAMED PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Named Plaintiffs believe the claims asserted in the Action have merit. However, the Named Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Defendants through trial and through appeals. Named Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially a complex action such as this Action, as well as the difficulties and delays inherent in such litigation. Class Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Action. Class Counsel believe the Settlement confers substantial benefits to the Settlement Class. Based on their evaluation, Class Counsel have determined that the Settlement is in the best interests of the Named Plaintiffs and the Class.

### IV. DENIAL OF WRONGDOING OR LIABILITY

4.1. This Agreement constitutes the resolution of disputed claims and is for settlement purposes only. Defendants deny that they have violated any law; deny that they have breached any agreement with, or obligation to, Named Plaintiffs or the Class Members (or anyone else); deny any liability to Named Plaintiffs or the Class Members (or anyone else) for Released Claims; and deny all the allegations of wrongdoing recited in the Complaint.

4.2. Notwithstanding anything else herein, neither the fact of, nor any provision contained herein, nor any action taken hereunder, shall constitute or be construed as an admission of any liability or wrongdoing, or recognition of the validity of any allegation of fact or contention of law made by Plaintiffs in this Action or in any other Suit.

4.3. This Agreement, and statements made in negotiating this Settlement, and any actions taken by Defendants hereunder, shall not be offered or be admissible in evidence or used in any fashion against Defendants in any Suit for any purpose, except in a Suit to enforce the terms hereof that is brought by Named Plaintiffs or Class Members against Defendants. Nothing herein shall be construed to preclude the Released Parties from offering this Agreement and the Releases in

-9-

defense of any Claims, including Suits brought by Named Plaintiffs or other Class Members, at any time.

## V. SETTLEMENT CONSIDERATION

In consideration for the full, complete, irrevocable, and final Settlement of this Action and in consideration for dismissal of this Action with prejudice and in consideration for the Releases contained herein, American Home Shield will provide benefits to Settlement Class Members as follows:

5.1.    *Review Desk*. AHS will establish the Review Desk.

  a.    Except as otherwise provided herein, the Review Desk will consider Submissions from any Settlement Class Member who experienced a Denied Claim during the Class Period.

  b.    Settlement Class Members wishing to submit their Denied Claims to the Review Desk must make a Submission.

  c.    AHS will make Submittal Forms available to Settlement Class Members via (i) a dedicated website; (ii) a dedicated 1-800 telephone number; and (iii) a dedicated United States Post Office Box address, all three of which will be created and maintained by AHS at AHS's expense. Settlement Class Members may make Submissions to the Review Desk via mail sent to a designated Post Office Box address, via sending an electronic image of the Submission to an e-mail address identified by AHS, or via any other method that may be permitted by AHS.

  d.    AHS will send Settlement Class Members notification of the opening of the Submission Period no later than twenty (20) days after the occurrence of the Effective Date via postcards sent by third-class United States mail to Settlement Class Members' last known addresses, as this information has been retained by AHS in the ordinary course of business. These postcard notifications will explain how to obtain Submittal Forms, how to make Submissions, the beginning and ending dates of the Submission Period, and whatever other information AHS may deem appropriate.

  e.    AHS will review all Submissions that are received by AHS during the

-10-

Submission Period.

f. Submissions must be made via a signed, dated and fully and properly completed Submittal Form that provides AHS with, at a minimum, (i) the Settlement Class Member's name as it appeared on his or her Home Warranty Contract; (ii) the address of the real property covered by the Class Member's Home Warranty Contract; (iii) the Settlement Class Member's preferred method for receiving responsive communications from AHS; (iv) a description of the home system, appliance, or other item at issue; (v) the approximate date (or at a minimum, the year) during the Class Period of the Settlement Class Member's initial request for Home Warranty Contract service; (vi) a description of the Settlement Class Member's service request and alleged Denied Claim; (vii) the reasons the Settlement Class Member believes the same service request should now be reviewed and the Denied Claim overturned or revised; and (viii) the Settlement Class Member's present address, telephone number, and e-mail address (collectively, a "Submission").

g. At the Settlement Class Member's discretion, additional information may also be provided via the Submittal Form to bolster his or her Submission, including the following: (i) photographs; (ii) receipts; (iii) cancelled checks; (iv) correspondence with AHS; (v) correspondence with contractors (whether or not chosen by AHS) that diagnosed or attempted to correct the relevant service issue; (vi) a statement providing relevant history or an overview of events; and/or (vii) other supplemental information.

h. Submissions will be considered by AHS and processed in any reasonably commercially feasible and efficient order that AHS deems appropriate, e.g., prioritization based on the reverse chronological order of the date of claim. The time for resolving claims will depend on a number of factors, including the number of Submissions received by the Review Desk. Nothing herein will be interpreted or construed to mean that AHS will incur any obligation to meet any specific processing deadline.

i. Settlement Class Members for whom AHS determines additional contractual benefits are appropriate based on its consideration of a Submission will be offered, at AHS's sole option, one of the following:

-11-

(1) In cases where the breakdown at issue in the relevant Denied Claim has not already been resolved, either (i) cash equal to the Settlement Class Member's estimated out-of-pocket costs for the repair or replacement services determined by AHS to be covered under the terms of the Settlement Class Member's applicable Home Warranty Contract, or (ii) provision of those same services by AHS;

(2) In cases where the breakdown at issue in the relevant Denied Claim has already been resolved, either (i) cash equal to the actual out-of-pocket costs for the repair or replacement services determined by AHS to be covered under the terms of the Settlement Class Member's applicable Home Warranty Contract, as established and documented by bona fide receipts for such costs provided to the Review Desk; or (ii) if no such receipts are provided, then AHS's wholesale cost of such repair or replacement as reasonably determined to apply at the time of the Denied Claim;

(3) Waiver of the contract fee (or some other discount) for one-year of coverage under a FlexPlan Contract; or

(4) Any other compensation deemed to be reasonable by AHS.

j. In considering and processing Submissions, AHS may deduct from any offer an amount equal to the amount of any prior concessions or cash-in-lieu payments, in whatever form, made to the Settlement Class Member. For the avoidance of doubt, consequential damages shall not be recovered as the result of, or in connection with, any Submission.

k. AHS may seek confirmation of the Settlement Class Member's out-of-pocket repair or replacement expenses by directly contacting any vendor providing relevant services or equipment to the Settlement Class Member. In addition, by making a Submission to the Review Desk, the Settlement Class Member shall be deemed to represent that the Submission is being made in good faith and authorize AHS to contact the Settlement Class Member notwithstanding any "do not call" or similar laws that might otherwise limit or constrain AHS's ability to initiate unsolicited contacts with former customers.

l. All releases of whatever type or nature, and in whatever form (including

-12-

1   by operation of law), of AHS by a Class Member before this Settlement shall be in full force and

2   effect and not be deemed diminished, waived, or otherwise rendered ineffective by this Agreement.

3         m.    Any Settlement Class Member receiving monetary or other benefits as the

4   result of a Submission will be deemed to have thereby irrevocably released any and all Claims

5   against the Released Parties arising from, relating to, or otherwise regarding the Denied Claim at

6   issue in the Submission.

7         n.    After the end of the Submission Period, Settlement Class Members who

8   did not make a Submission may not bring a Suit against AHS based on a Denied Claim unless (A)

9   the Settlement Class Member provides the following information to AHS by calling 1-877-433-3843

10   or a successor 1-800 telephone number established and maintained by AHS, at its sole expense and

11   communicated to Class Members via a posting on AHS's website, (i) the Settlement Class Member's

12   present address, telephone number, and e-mail address; (ii) the address of the real property covered

13   by the Class Member's Home Warranty Contract, or other information sufficient for AHS to confirm

14   that the request is being made by a Class Member; and (iii) an announcement of the Settlement Class

15   Member's "intention to bring Suit against AHS on a Claim arising in the Edleson Class Period" or

16   an equivalent statement; and (B) at least fifteen (15) days have elapsed since the date the Settlement

17   Class Member provided such notice (the "Suit Intention Notice Date"). All applicable statutes of

18   limitations shall be deemed tolled for the benefit of those Settlement Class Members who provide

19   such notice for a period of fifteen (15) days beginning on the relevant Suit Intention Notice Date.

20   Failure of a Class Member to follow this procedure in this paragraph 5.1(n) shall not serve as a bar to

21   dismiss a Claim, provided, however, that AHS may insist that this procedure be followed before a

22   Suit may be allowed to proceed.

23         o.    Settlement Class Members who make Submissions may not bring a Suit

24   against AHS for any Denied Claim unless that Denied Claim has been presented to AHS in a

25   Submission and at least one hundred twenty (120) days have elapsed since that Submission. All

26   applicable statutes of limitations shall be deemed tolled for the benefit those Settlement Class

27   Members who make Submissions for a period of one hundred twenty (120) days beginning on the

28

date of the relevant Submission. Nothing herein shall be interpreted to mean that a Class Member may obtain the revival of a Claim that has lapsed and is barred under the applicable limitations period by submitting the Claim to the Review Desk.

5.2. *FlexPlan Offer.* For a period of twenty-four (24) months, beginning on the Effective Date, and without modifying any existing Home Warranty Contract, AHS will make available to all Settlement Class Members in good standing an opportunity, upon the expiration of their current Home Warranty Contract, if any, to enter into a FlexPlan Contract.

    a. For purposes of this Agreement, a FlexPlan Contract shall mean a Home Warranty Contract that includes the following features:

        (1) No "lack of maintenance" contract exclusion in the core coverage received by the customer for the standard contract price, or, in the alternative, an express option to obtain additional coverage at an additional cost that eliminates any otherwise applicable "lack of maintenance" coverage exception;

        (2) An express option to obtain coverage for certain "undetectable pre-existing conditions"; namely, those conditions not capable of being identified by visual inspection or simple mechanical test;

        (3) An express option to obtain $250 or more worth of coverage for upgrades needed in order to correct code violations affecting AHS's ability to make AHS-approved repairs or replacements; and

        (4) An express option to obtain $250 or more worth of coverage for procuring permits for AHS-approved repairs or replacements.

    b. Nothing in this Agreement shall limit or preclude AHS from determining in its sole discretion the prices at which coverage, including those described above, shall be offered to Settlement Class Members or other customers or prospective customers.

5.3. *Contractor Relations Initiative.* The Contractor Relations Initiative will last for twenty-four (24) months beginning on the Effective Date, and will recognize that AHS is a for-profit enterprise that must operate profitably and compete free from undue impediments in a highly

-14-

1  dynamic competitive environment. Pursuant to the Contractor Relations Initiative:

2      a. AHS will meet with Lead Class Counsel, or at the option of Lead Class Counsel, an Alternative Johnson Bottini LLP Attorney, at least once per quarter in the month following the close of the calendar quarter to which the meeting relates (a "Quarterly Meeting"), and Lead Class Counsel shall make himself available more often upon AHS's request, for a confidential face-to-face discussion of then current Contractor Relations Practices and opportunities for making improvements thereto. Quarterly Meetings will be held in San Diego at the offices of counsel for the Defendants.

9      b. Copies will be given to Lead Class Counsel of all relevant AHS mass written communications regarding service work order fulfillment practices that are distributed generally to the Contractor Network after the Effective Date.

12      c. No later than four (4) months after the Effective Date, AHS will make a dedicated distribution of written training materials to the Contractor Network conveying the importance AHS places on honoring the terms of coverage and other terms of Home Warranty Contracts and the important role that contractors play in this effort. At least ten (10) Business Days before making this distribution, AHS shall provide copies of the draft written training materials to Lead Class Counsel for review and comment. Comments suggested by Lead Class Counsel shall be considered by AHS, and AHS may, in its sole discretion and in the exercise of its business judgment, revise its written training materials in whole or in part in response to these comments.

20      d. Beginning no later than the end of the ninth (9th) month after the Effective Date, AHS will begin to produce quarterly service work order fulfillment performance reports in a standardized format based on a methodology for sampling outcomes of AHS service calls that shall be chosen by AHS in its commercially reasonable business judgment. One purpose of these reports will be to obtain useful measurements of the satisfaction levels of AHS's customers as a group with the repair and replacement services provided to them by AHS, while bearing in mind that, because these reports involve sampling, the majority of AHS contractors and service calls likely will not be reflected in any given quarterly report. Lead Class Counsel will be given confidential access to

-15-

these reports at least ten (10) Business Days before the Quarterly Meetings.

e. At least ten (10) Business Days in advance of each Quarterly Meeting, AHS will provide Lead Class Counsel with a written quarterly report as to the number of Submissions made and a summary of relief offered in response to those Submissions since the cut off date for the last quarterly report. During the Submission Period, these reports will be provided to Lead Class Counsel on a monthly basis no later than the tenth (10th) day of the month following the month to which the report pertains.

f. Class Counsel will be bound to treat all communications and related materials coming from or directed to AHS as strictly confidential AHS proprietary commercial information, and Class Counsel will be precluded from accepting representations inconsistent with Class Counsel's role in carrying out this Settlement.

g. AHS and Class Counsel agree to the following specific restrictions on Class Counsel's activities during the twenty-four (24) month Contractor Relations Initiative period:

(1) Class Counsel will neither represent any Person nor act as principal in any Suit against AHS or any other Released Party nor encourage, assist or participate with any Person in so doing;

(2) Class Counsel will neither represent any Person nor act as principal in any Suit against any AHS contractor based on events arising from an AHS service call and/or the contractor's business relationship with AHS; and

(3) Class Counsel will not represent or provide legal advice to or otherwise help or advise in any manner any AHS Competitor except with express written permission from AHS.

h. AHS and Class Counsel will cooperate so as to comply with ethical rules applicable to the practice of law as regards this Settlement and, in particular, with respect to the limitations on Class Counsel's activities provided for in this paragraph.

5.4. The Named Plaintiffs in this action shall receive an incentive payment of $5,000 each, or as otherwise specified by the Court, and a compensatory payment of $5,000 jointly, or as

-16-

1  otherwise specified by the Court, as compensation for serving as Named Plaintiffs in this action and
2  as full compensation and complete satisfaction for any alleged injuries individualized as to them that
3  are described in the Complaint (collectively, the "Named Plaintiffs Payment"). As a part of this
4  Settlement, Named Plaintiffs agree they will not act as principals or attorneys in any Suit if that
5  activity would violate the restrictions on Class Counsel's Contractor Relations Initiative activities if
6  such were undertaken by Class Counsel.

7  5.5.   The Named Plaintiffs and Class Counsel agree that they (i) will not make any
8  false statements of fact in any way concerning the Defendants, their affiliates or their respective
9  officers, directors, and employees; and (ii) will not make any statements to third Persons that could
10 constitute slander, libel, or which would have a tendency to subject to ridicule or disparagement the
11 Defendants, their affiliates, their business operations, or their respective officers, directors, or
12 employees.

13 **VI.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY**

14 6.1.   Upon execution hereof, the parties agree that, subject to Court approval, this
15 Action will be deemed, for purposes of this Settlement only, to satisfy the requirements for class
16 certification under California law. Defendants have agreed to certification of the Settlement Class
17 for purposes of this Settlement only.

18 6.2.   Any certification of the Settlement Class hereunder, or otherwise, shall not
19 constitute and shall not be construed (in this Action or in any other Suit) as an admission on the part
20 of Defendants, or as the basis of a finding, or as evidence, that this Action or any other proposed or
21 certified class action is appropriate for class treatment in a contested certification proceeding. This
22 Agreement is without prejudice to the rights of Defendants to oppose (i) any requests for class
23 certification in this Action should this Agreement be terminated or fail to be approved or
24 implemented for any reason, or (ii) any requests for class certification in any Suit involving a
25 proposed or certified class action.

26 6.3.   If this Agreement is not approved, does not become effective, or if it is terminated
27 or fails to be implemented for any reason, any certification, either preliminary or final, of the Class
28

-17-

or of any other alleged class shall be deemed null and void *ab initio* and without force or effect.

## VII. IMPLEMENTATION OF THE SETTLEMENT

Upon execution hereof by all parties, the parties will respectively undertake the following actions to implement and obtain approval of the Settlement:

7.1. *Use of Reasonable Efforts.* Named Plaintiffs, Class Counsel, and Defendants will use reasonable efforts to obtain preliminary approval of this Settlement, final approval of this Settlement, and the entry of a Final Judgment and Order that dismisses this Action with prejudice and binds the Named Plaintiffs and all Settlement Class Members. Named Plaintiffs and Class Counsel will cooperate fully and completely with Defendants with respect to any and all appeals of the Final Judgment and Order and in obtaining the dismissal of any and all subsequent Suits against the Released Parties asserting Released Claims.

7.2. *Preliminary Approval.* On or promptly after the Settlement Date, Named Plaintiffs, Class Counsel, and Defendants will jointly present this Agreement and a motion seeking its preliminary approval to the Court. Counsel for the parties will take all appropriate steps to obtain the entry of a Preliminary Approval Order that (i) appoints Class Counsel for the purpose of representing the Class and all Class Members; (ii) conditionally certifies the Class for purposes of this Settlement only; (iii) preliminarily approves this Agreement and determines the Settlement to be sufficiently fair, reasonable, and adequate as to allow notice to be disseminated to the Class; (iv) approves notice to Class Members substantially in the form attached hereto as Exhibit A and in the manner described herein; (v) schedules a Fairness Hearing to determine, after notice to the Class, whether this Settlement should be finally approved as fair, reasonable, and adequate; and (vi) preliminarily bars and enjoins all Class Members, or any of them, from commencing, prosecuting, or continuing the prosecution of, any Suit asserting any of the Claims made in this Action, in any capacity against AHS or any of the Defendants, pending the final determination of whether this Settlement should be approved by the Court, except for proceedings in this Action relating to the approval of the Settlement. The Preliminary Approval Order will remain in effect until either (i) the Effective Date occurs, or (ii) the Court enters an order declaring this Settlement terminated and no

-18-