UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| LAURA FAUGHT and STEVEN FAUGHT,<br><br>                      Plaintiffs,<br><br>v.<br><br>AMERICAN HOME SHIELD CORPORATION,<br><br>                      Defendant. | **Case No. 2:07-cv-1928:RDP**<br><br>**STATEMENT OF OBJECTIONS AND STATEMENT OF APPEARANCE**<br><br>**Date:** March 10, 2010<br>**Time:** 10:00 a.m.<br>**Judge:** Honorable R. David Proctor<br>**Courtroom:** 7A |

**PLEASE TAKE NOTICE** that class members Miriam Chapon and John Chapon (hereinafter "Objectors"), (whose address and phone number are in care of the undersigned counsel for purposes of this proceeding) by and through their undersigned counsel, intend to appear and be heard at the fairness hearing to discuss the following objections:

## I. INTRODUCTION

Class action settlements, unlike typical settlements, require court approval for the protection of those class members whose rights may not have been given due regard by the negotiating parties. Fed. R. Civ. P. 23(e)(1)(A). A "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also* Fed. R. Civ. P. 23(e)(1)(C). In evaluating settlement proposals, six factors are generally considered: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *See Cotton*, 559 F.2d at 1330-31.

Additionally, the case at bar demands heightened scrutiny because American Home Shield Corporation (hereinafter "AHS") has stipulated to class certification for settlement purposes only. *See Stipulation of Settlement*, p. 20, § VI. Accordingly, the parties are no longer in an adversarial posture. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997) (holding that the rights of absent class members "demand undiluted, even heightened, attention in the settlement context"); *see also Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1169

(5th Cir.1978) (*Pettway IV*), *cert. denied*, 439 U.S. 1115 (1979) (the class action settlement process is "more susceptible than adversarial adjudications to certain types of abuse.").

In approving a settlement, the trial court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." *Cotton,* 559 F.2d at 1330. The burden of proving the fairness of a settlement rests squarely on its proponents. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan,* 78 F.R.D. 364, 369 (1978). While a high degree of precision cannot be expected in valuing a litigation, the court should nevertheless "insist that the parties present evidence that would enable possible outcomes to be estimated," so that the court can at least come up with a "ballpark valuation." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006) citing *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002). The settling parties have failed to meet this burden let alone even engage it.

## II.  PROOF OF CLASS MEMBERSHIP

Objectors obtained a home warranty from American Home Shield on their home located at 11589 Frisco Drive, Farmington, AR  72730. The Declaration of Miriam Chapon affirming class membership, which Ms. Chapon previously filed in a related case in San Diego, California, is attached hereto as Exhibit A.

## III.  THE SETTLING PARTIES ARE FORUM SHOPPING AND ARE SEEKING TO "END-RUN" THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF SAN DIEGO

The settlement presented to this Court is substantially similar to an

agreement presented for final approval in San Diego Superior Court case number 37-2007-00071725-CU-BT-CTL.  *See Evidentiary Submissions in Support of Motion of Plaintiffs for Incentive Payments and Motion of Class Counsel for an Award of Attorneys' Fees*, Exhibit. D.

The court in the California case, in declining to approve the settlement, found *inter alia* "Plaintiffs (other than the two lead plaintiffs) really get nothing more than a right to submit or resubmit claims to a defendant that has allegedly not acted in good faith on prior occasions."  *See Evidentiary Submissions in Support of Motion of Plaintiffs for Incentive Payments and Motion of Class Counsel for an Award of Attorneys' Fees*, Exhibit E.  Rather than attempt to re-tool the settlement to provide a fair, adequate, and reasonable resolution of class claims, defendant American Home Shield, in cooperation with class counsel, is attempting to foist essentially the same shoddy settlement on this Court in the hope of a different outcome.

"An intolerable conflict occurs when litigants are able to exploit conflicts affirmatively through forum shopping  . . ." Samuel Estreicher & John E. Sexton, *A Managerial Theory of the Supreme Court's Responsibilities: An Empirical Study*, 59 N.Y.U. L. Rev. 681, 725 (1984).  "Forum-shopping is of particular concern in nationwide class action suits, where plaintiffs' attorneys can essentially cherry-pick whom they wish to make a named plaintiff and decide for themselves the district and circuit in which to file suit." *Allapattah Servs. v. Exxon Corp.*, 362 F.3d 739, 764 (11th Cir. 2004).  It is improper to allow settling parties to shop an unfair settlement around the country until they find a court that is willing to approve it despite its deficiencies.

## IV.  THE PROPOSED SETTLEMENT OFFERS NO CERTAIN MONETARY RESTITUTION TO CLASS MEMBERS AND THE PROPOSED INJUNCTIVE RELIEF PROVIDES LITTLE REAL VALUE OR ASSURANCE TO CLASS MEMBERS

The proposed *Stipulation of Settlement* provides no guarantee of restitution to class members who have been damaged by the defendant.  Class members are being asked to release their valuable claims with no assurance of meaningful compensation.  Here, rather than pursue substantial restitution and disgorgement claims available to the class, the lead plaintiffs are proposing a settlement which gives the defendant the exclusive option to determine what it will pay.

The settlement is illusory in that it vests authority for claims administration with AHS.  In other words, the only obligation of AHS under the Agreement is to revisit previously denied claims and determine, in its sole discretion, whether or not the claim was properly denied.  *See Stipulation of Settlement*, ¶ V(5.2).  This is unacceptable.  As one AHS customer explained, "If one reads the small print in the warranty they can get out of paying about everything."  The same seems to hold true for this settlement agreement.  The proposed settlement gives AHS the exclusive option of deciding what, if any, benefits it will pay under the agreement. *Stipulation of Settlement*, p. 14, ¶ k.  Even the loosest definition of "fair, adequate, and reasonable" could not encompass such a scenario.

If the lack of certain compensation were not sufficiently disappointing, AHS requires class members to submit to an onerous claims process in order to have their previously denied claims reviewed.  Despite AHS' prior review and denial of class members' claims, the same class members are now subjected to an additional claims process as if they had never submitted a claim in the first place. *See Stipulation of Settlement,* ¶ V(5.2)( f).

## V. THE INTERESTS OF THE LEAD PLAINTIFFS ARE NOT ALIGNED WITH THOSE OF ABSENT CLASS MEMBERS IN LIGHT OF THE SEPARATE PAYMENT OF COMPENSATORY DAMAGES AND THE EXCESSIVE "INCENTIVE" PAYMENT

The lead plaintiffs in this action seek to be compensated 100% for their compensatory damages (costs associated with replacing HVAC) while their fellow class members are given no guaranteed payment whatsoever. On top of the payment of compensatory damages, lead plaintiffs seek an "incentive award" of $5,000 each. While it may be appropriate in certain circumstances to provide an incentive award to lead plaintiffs, such awards are generally modest in both frequency and amount. A study of 374 opinions from 1993 to 2002 found that awards were granted in about 28% of settled class actions. The average incentive award was 0.16% of the class recovery, with a median of 0.02%.[1] In this case, only the lead plaintiffs are guaranteed any monetary compensation. Moreover, lead plaintiffs have failed to provide evidence of the value of any non-monetary benefit they are claiming for the class. Accordingly, it is impossible to determine whether the incentive awards are commensurate with the benefit (if any) to the class as a whole.

Excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion. *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003). Indeed, "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977)

---

[1] Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, New York University Law and Economics Working Papers (2005).

("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

The lead plaintiffs in this case appear to have taken a conflicting position with absent class members as evidenced by the special payment of lead plaintiffs' compensatory damages, as well as the disparity in the requested incentive award. Accordingly, this Court should carefully scrutinize whether the lead plaintiffs, along with class counsel, are inadequate with respect to representing this class. The named plaintiffs are seeking to obtain a windfall that is grossly disproportionate to relief available to absent class members which the named plaintiffs purport to represent. This type of approach is contrary to the protective requirements of Fed. R. Civ. P. 23, and well-established public policy.

In order for the lead plaintiffs or class counsel to be adequate, they must not have interests which conflict with the unnamed class members. A class representative's claims must not be inconsistent with those of the class. *Nat'l Assoc. of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340 (D.C. Cir. 1976); Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 3:23 (4th ed. 2002). By seeking such inflated awards and attorneys' fees, lead plaintiffs and class counsel have put their own selfish interests ahead of the absent class members they purport to represent. Accordingly, the Court should apply heightened scrutiny to the entire negotiated settlement.

The Court should require class counsel to produce their retainer agreements with the lead named plaintiffs as a condition for final approval in light of the disparity between the proposed relief for lead plaintiffs and the class benefit as a whole. This is warranted given the disconnect between the relief the named representatives are eligible to receive in contrast with that accorded to ordinary class members. This disparity is both unseemly and striking and should cause the

Court to be suspicious of the motives of the settling plaintiffs (e.g., were they promised anything pursuant to a retainer agreement which caused an irreconcilable conflict of interest between the named representatives, class counsel, and the rest of the class). *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009). Only through production of the retainer agreements can actual light be shed on this issue.

At a minimum, if the Court ultimately decides to approve the substantive settlement, fundamental fairness requires that the Court reduce the awards to lead plaintiffs so that the savings may be properly allocated among all damaged class members.

## VI. THE SETTLING PARTIES HAVE NOT PRESENTED SUFFICIENT EVIDENCE TO ALLOW CLASS MEMBERS TO DECIDE WHETHER TO OPT OUT OF THE SETTLEMENT, NOR HAVE THE PARTIES PRESENTED EVIDENCE SUFFICIENT TO SUPPORT AN INDEPENDENT ANALYSIS OF THE SETTLEMENT BY THE COURT

The Notice of Class Action and Settlement is vague and incomplete with regard to the duties of the "Review Desk" concerning revised criteria for reviewing claims. Accordingly, class members do not possess sufficient information to determine if they should remain in the class or opt out. Moreover, the settling parties have presented no evidence that class members will receive value under the settlement commensurate with the value of their underlying claims. *See* C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure, § 1797.1 at 392 (1986) (settling parties must offer evidence to demonstrate fairness and adequacy of settlement); *see also In re Matzo Food Products Litigation*, 156 F.R.D. 600, 604 (D.N.J. 1994) (the factual record must be sufficiently developed to allow the court to make an independent determination of fairness, adequacy, and reasonableness).

## VII.  THE RESULTS OBTAINED IN THIS LAWSUIT DO NOT WARRANT A SUBSTANTIAL FEE AWARD

The class relief is inadequate in light of class counsel's requested fee. That the parties agreed to pay counsel in excess of $1,500,000.00 plus an award of not more than 25% of the monetary amounts paid out to a Settlement Class Member under the Review Desk (the "Proposed NPC Fees"), when the class is guaranteed no monetary compensation further cements the inadequacy of the class relief.

The amount of requested attorneys' fees is an important factor in assessing the reasonableness of the class relief, since every dollar that goes to class counsel is a dollar less that is available to compensate class members. *See, e.g., Apple Computer v. Superior Court,* 126 Cal. App. 4th 1253, 1269 (2005) ("Although under the terms of [a] settlement agreement, attorneys' fees technically derive from the defendant rather than out of the class recovery, in essence the entire settlement amount comes from the same source.").  The award to the class and the agreement on attorneys' fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class recovery.

The parties' agreed-upon fee raises even greater suspicions about the adequacy of the class relief than in a typical settlement.  First, the parties' negotiation of a "clear sailing provision," whereby the defendant agrees not to challenge class counsel's fee request [2] triggers heightened scrutiny of the settlement's fairness because of the risk that class counsel may have bargained away valuable relief for the class "in exchange for red carpet treatment on fees."[3] Second, the proposed attorneys' fee is largely distinct from the class relief, which decouples class counsel's interest from that of the class.  Because counsel will get paid $1,500,000.00 regardless of whether class members actually submit claims,

---

[2] *NOTICE OF CLASS ACTION AND SETTLEMENT*, § 3(c)
[3] *See Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524-25 (1st Cir. 1991).

class counsel only has an incentive to create an appearance of valuable relief, so as to justify their fee.

Even though fee awards must provide sufficient incentive for competent counsel to undertake class action litigation, "there also must be recognition that an element of public service is involved and that the opportunity to represent the class plaintiffs is judicially determined." *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1327 (C.D. Cal. 1977). Objectors request that the Court carefully consider the amount of attorneys' fees and expenses requested by class counsel. The Court should consider declining to award any fee in light of the *de minimis* relief obtained by class counsel.

## VIII. THE MERE RIGHT FOR CLASS MEMBERS TO REQUEST EXCLUSION DOES NOT MITIGATE THE INADEQUATE RELIEF OFFERED TO CLASS MEMBERS

As representatives of the class, class counsel has a fiduciary duty to protect the interests of *all* class members at *all* stages of the case - but especially during settlement negotiations. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). The opportunity to exclude oneself from the class cannot cure inadequate representation at any point. Nor does it permit a court to overlook such inadequacies when passing on the fairness of a proposed settlement. Notwithstanding the right to opt out, courts must carefully scrutinize class settlements to assure that absent class members' rights are not lost, prejudiced, or sold out too cheaply through inadequate representation.

## IX. ADDITIONAL OBJECTIONS

Objector adopts all *bona fide* objections filed by other objectors in this case.

## X.  CONCLUSION

For the foregoing reasons, Objectors respectfully request that the Court withdraw its conditional approval of the Stipulation of Settlement and enter orders requiring further proceedings so as to effect substantial justice in this case between the parties and the absent class members. Objectors hereby reserve the right to amend and refine their objections as more information is made available.

DATED:  February 8, 2010             Respectfully submitted,

                                                     R. Stephen Griffis
                                                   2100 Riverhaven Drive, Suite 1
                                                   Hoover, Alabama  35244
                                                   Telephone: (205) 402-7476
                                                   Facsimile: (205) 402-7292

                                                   John W. Davis
                                                   Law Office of John W. Davis
                                                   501 W. Broadway, Ste. 800
                                                   San Diego, California  92101
                                                   Telephone:  (619) 400-4870
                                                   Facsimile:  (619) 342-7170


                                               by:/s/ John W. Davis                         .
                                                     John W. Davis
                                                     Counsel for Objectors
                                                     Miriam Chapon and John Chapon

# EXHIBIT A

| | |
|---|---|
| 1  John W. Davis, State Bar # 200113<br>LAW OFFICE OF JOHN W. DAVIS<br>2  501 W. Broadway, Suite 800<br>San Diego, CA 92101<br>3  Telephone: 619.400.4870<br>Facsimile: 619.342.7170<br>4<br>Steven F. Helfand, State Bar # 206667<br>5  HELFAND LAW OFFICES<br>582 Market Street, Suite 1400<br>6  San Francisco, CA 94104<br>Telephone: 415.397.0007<br>7  Facsimile:  415.397.0009 | F I L E D<br>Clerk of the Superior Court<br><br>MAR 2 6 2009<br><br>By: A. SEAMONS, Deputy |

8   Attorneys for Objector Miriam Chapon

9
10                SUPERIOR COURT OF THE STATE OF CALIFORNIA
11                      FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| 12<br>KARON and L.B. CHIP EDLESON, on<br>13  behalf of themselves and all others<br>similarly situation,<br>14<br>        Plaintiffs,<br>15<br>v.<br>16<br>AMERICAN HOME SHIELD OF<br>17  CALIFORNIA INC., AMERICAN<br>HOME SHIELD CORPORATION, and<br>18  DOES 1-20,<br>19<br>        Defendants. | **Case No. 37-2007-00071725-CU-BT-CTL**<br><br>Judge Steven R. Denton<br><br>**DECLARATION OF MIRIAM CHAPON** |

20
21  Miriam Chapon hereby affirms:

22  1. I am, and at all times relevant to this matter was, a resident of the United States of
23     America.
24  2. My counsel in this matter are John William Davis and Steven Franklyn Helfand.
25     Please contact me only through counsel.
26  3. This declaration confirms and verifies that I am a member of the Class in the above
27     captioned case. I make this declaration in support of my Objection to Proposed
28

Settlement filed concurrently herewith.

4. On or about December 26, 2007, I purchased or acquired an American Home Shield "Select Home Warranty" on my home located at 11589 Frisco Dr., Farmington, Arkansas 72730.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed this 2nd day of March, 2009.

_____
Miriam Chapon

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Law Office of John W. Davis, 501 W. Broadway, Suite 800, San Diego, CA 92101. On February 8, 2010, I served the enclosed documents:

- **STATEMENT OF OBJECTIONS AND STATEMENT OF APPEARANCE**

via First Class Mail by placing in a sealed, postage prepaid envelope or package containing a true and correct copy of each document as indicated, in the Law Office of John W. Davis mail room for collection, processing and delivery this same day to the United States Postal Service. I further declare that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

**PARTIES SERVED:**

| | |
|---|---|
| D. Frank Davis | John E. Goodman |
| John E. Norris | Bradley Arant Boult Cummings LLP |
| Davis & Norris LLP | One Federal Place |
| 2154 Highland Avenue South | 1819 Fifth Avenue North |
| Birmingham, Alabama 35205 | Birmingham, Alabama 35203 |
| Facsimile: (800) 439-0240 | Facsimile: (205) 521-8800 |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed on February 8, 2010 at San Diego, California.

/s/ John W. Davis            .
John W. Davis