FILED

2010 Feb-08  PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

2010 FEB -8 P 2 14

U.S. DISTRICT COURT

N. DAURA FAUGHT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 07-CV-1928-RDP ) |
| vs. | ) Honorable R. David Proctor ) |
| AMERICAN HOME SHIELD CORPORATION, | ) ) ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF ROBERT AND LUZ SHEPARD'S, VIVIAN F. JOHNSON'S, JANET TZENDZALIAN'S, MERLYN D. LIND'S, ROSALYN URBANEK'S, AND DONALD P. LEACH'S OBJECTIONS TO CLASS ACTION SETTLEMENT**

Class members Robert and Luz Shepard, Vivian F. Johnson, Janet Tzendzalian, Merlyn D. Lind, Rosalyn Urbanek, and Donald P. Leach (collectively "Objectors") hereby object to the settlement in this case for the following reasons.[1]

## I.   INTRODUCTION

Far from achieving a settlement agreement "that is unprecedented in the quality of and scope of the relief to be afforded to class members," (*See* Plaintiffs' Motion for Fees at p.1), Plaintiffs agreed to a settlement that,

---

[1] The information about these Objectors required by the class notice is provided in their accompanying objections.

other than some minor window dressing, is identical to the settlement agreement that the California state court rejected in *Edleson v. American Home Shield of California, Inc.*, No. 37-2007-00071725-CU-BT-CTL (the "*Edleson* Action"). In exchange for giving American Home Shield ("AHS") a second bite at the judicial-approval apple, Plaintiffs' counsel agreed to $1.5 million in attorneys' fees that they didn't earn. Worse, $1.2 million of the attorneys' fees that AHS agreed to pay in the *Edleson* Action are now being paid by the class members here.

The Court should, and must, reject the settlement agreement. As a starting point, the settlement agreement is null and void because AHS lacked the authority to settle this case, especially on a nationwide basis without the permission of the Edlesons' counsel.

Further, the Court should reject the settlement because the class notice lacked critical information that any class member would consider material when deciding whether to stay in or opt out of the class. Specifically, the class notice failed to inform the class members that the court in the *Edleson* Action had rejected, as inadequate, a virtually-identical settlement agreement. Indeed, the notice was affirmatively misleading since it stated that the *Edleson* settlement was "terminated" rather than disclosing that it was rejected on the merits by the California court. It also was highly misleading because it omitted to disclose the fact that thousands of class members objected to or opted out of the *Edleson* settlement and failed to disclose or summarize the reasons they did so. Second, the notice failed to disclose that AHS settled this case after the Edlesons notified it of their intent to file a motion to preliminarily enjoin AHS's wrongful business practices based on substantial and compelling documentary and expert

2

evidence and that a hearing on that motion had already been scheduled for November 20, 2009.

In addition, it is unclear whether AHS has complied with the Class Action Fairness Act's ("CAFA") requirement that it notify all appropriate state and federal officials about this settlement. Without such a showing, the Court must reject the settlement.

Moreover, the Court should reject, or significantly reduce, the amount of fees requested by Plaintiffs' counsel. First, with respect to the lump sum fee requested by Plaintiffs, Plaintiffs have submitted zero evidence of their lodestar, and the evidence which exists with respect to relative contribution demonstrates that Plaintiffs case here was stayed for a significant amount of time while the Edleson case was being actively litigated. In addition, with respect to Plaintiffs' request for a percentage of the alleged common fund, the Court must delay ruling on Plaintiffs' application for a percent of the potential common fund because the Court has not been presented with any information about whether there will be a common fund or not and, if so, the amount of the fund. Despite their unsupported claims to the contrary, Plaintiffs' counsel did very little to achieve the settlement in this case. The bulk of the work was done by the Edlesons' counsel during the seven months that Plaintiffs here were "standing down." Plaintiffs' counsel simply took the *Edleson* settlement and added some minor terms, which, as explained below, actually hurt the class. Plaintiffs' counsel should not be rewarded so handsomely for riding the coattails of others.

Additionally, the Court should not rule on Plaintiffs' counsel's fee request in a vacuum. The Court has no way of knowing the true value of the settlement or the reasonable value of Plaintiffs' counsel's services because Plaintiffs' counsel has failed to provide any evidence on these issues.

3

Without such information, the Court cannot fulfill its obligation to scrutinize the fee request.

Finally, and perhaps most significantly, the Court should reject the settlement because Plaintiffs counsel has sold out the class by allowing AHS to pass onto the class attorneys' fees it was previously willing to pay. In a nutshell, both the *Edleson* and *Faught* settlements require AHS to re-review previously denied claims and pay certain customers or face the risk of a lawsuit if it improperly denies the claims again. Under the *Edleson* settlement, AHS agreed to pay 100% of the $2.7 million in attorneys' fees to the Edlesons' counsel. No fees were deducted from any recovery that class members were to receive in response to their submitted claims. Thus, the Class' recovery under the *Edleson* settlement was not reduced one penny by any fees AHS paid to counsel. Under the *Faught* settlement, however, the amount of attorneys' fees AHS has to pay is capped at $1.5 million *but class members now have to pay* Plaintiffs' counsel 25% of what could wind up being "a very large number indeed." (Plaintiffs' Motion for Fees at p. 10, fn. 6). In other words, AHS saves $1.2 million and the class members now have to pay for something they were getting for free under the terms of the *Edleson* settlement. Class members are significantly prejudiced by this material (detrimental) change in the settlement terms.

For these reasons, all of which are set forth more fully below, the Court should reject the inadequate settlement.

4

## II.   ARGUMENT

### A.   The Settlement Agreement Is Void And Unenforceable

Under the terms of the *Edleson* Stipulation of Settlement, and its accompanying September 30, 2008 side letter, AHS voluntarily and contractually agreed to (1) obtain the Edlesons' counsel's written permission before settling this case; (2) limit the scope of any settlement of this case to an Alabama-only class; and (3) file a notice of termination with the California state court to terminate the settlement.

In its rush to avoid a hearing on the Edlesons' motion for preliminary injunction, AHS engaged in forum-shopping and conducted a reverse auction by settling this case on terms virtually identical to the rejected *Edleson* settlement.   AHS breached its obligations under the *Edleson* settlement when AHS entered into the *Faught* settlement on October 6, 2009.  On that day, the *Edleson* settlement remained binding.  In fact, AHS's own conduct acknowledged the binding effect of the *Edleson* settlement on that day because AHS filed a notice to terminate the *Edleson* settlement on October 9, 2009.   Yet in violation of the *Edleson* settlement, AHS (1) concealed the negotiation of the *Faught* settlement from the Edlesons' counsel and the California state court, and failed to seek or obtain the permission of the Edlesons' counsel to settle the *Faught* Action; (2) settled the *Faught* Action as a nation-wide class action; and (3) failed to seek written modifications of the *Edleson* settlement before October 6, 2009. These violations render the *Faught* settlement void.  Any approval of the *Faught* settlement is likewise void.  *See In re Stock Exchanges Options Trading AntiTrust Litig.*, 2005 U.S. Dist. LEXIS 13734, \*30 (S.D.N.Y. 2005) (refusing to approve settlement agreement that was "null and void.").

5

Objectors recognize the Court has already considered and rejected some of these arguments. But the Court also indicated that it had only preliminarily approved the settlement and would keep an open mind and re-examine these arguments at the final approval process. Objectors thus ask the Court to re-examine its previous analysis in greater detail.

**B.    The Class Notice is Insufficient and Misleading**

"Absentee class members will generally have had no knowledge of the suit until they receive the initial class notice. This will be their primary, if not exclusive, source of information for deciding how to exercise their rights under Rule 23." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998). Thus, class notice "must contain information that **a reasonable person would consider to be material in making an informed, intelligent decision** of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp Antitrust Litig*, 552 F.2d 1088, 1105 (5th Cir. 1977) (emphasis added).

The class notice here is deficient in at least two respects:

First, the notice's disclosure about the *Edleson* settlement is missing crucial information. The notice merely states "[t]he *Edleson* settlement has been terminated, and is no longer in effect." There is no explanation about why the settlement was terminated. By any measure, class members would want to know that the settlement was terminated not because AHS voluntarily terminated it, but instead because a Superior Court judge in California found it inadequate after a full review of the merits of the settlement and after having received the benefit of thousands of objections and opt out letters from class members. *See* Declaration of Brett Weaver ("Weaver Dec.") at ¶2 (Attached hereto as **Exhibit A**).   Thus, this information should have been included in the class notice. *See Wal-Mart*

6

*Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116, fn. 22 (2nd Cir. 2005) (explaining that information concerning "related litigation" in a class notice is "material to a reasonable person," "obviously . . . helpful to class members," and should be included in a class notice.).[2]

Second, the class notice fails to disclose that the Edlesons filed a motion for preliminary injunction supported by extensive discovery and expert investigation. A class member would consider it material that AHS settled this case only after the Edlesons notified it of the motion for preliminary injunction and after the Edlesons had obtained a hearing on the motion.    Certainly, reasonable class members might opt out of this settlement if they conclude that AHS settled this case to prevent a California court from reviewing evidence of AHS's wrongful business practices. *Id.*

Plaintiffs all but admit that the class notice is confusing and incomplete. According to Plaintiffs, "[s]ince class notice was delivered to the class members, Class Counsel have received so many inquiries . . . that . . . nine attorneys and five assistants have spent all or most of their time responding to inquiries [and] explaining the settlement to class members." *See* Plaintiffs' Motion for Fees at p. 27.    Objectors are not surprised. Objectors' attorneys have been overwhelmed with inquiries from class

---

[2] Also telling on this point is the fact that, in response to previous indications to this Court that the Faught settlement is void, AHS has repeatedly taken the meritless position that the Edleson settlement was terminated when and as a result of the California court's rejection of the settlement. While objectors obviously disagree with this argument, the fact that AHS believed the California's court rejection of the settlement to be the reason or cause of the termination of the Edleson settlement should, at a minimum, have caused AHS to disclose this fact in the Faught notice to class members (and should have also caused it to provide the reasons and other particulars supporting the California court's rejection of the settlement on the merits).

7

members who have called them because: (1) the Faught's counsel repeatedly fail to answer their phones and have not returned the phone calls of class members; (2) class members are confused by the notice; and (3) some class members still think the Edlesons' counsel represent them, and do not understand what the status of the *Edleson* Action is, why they have received two notices, and the relationship, if any, between the *Faught* and *Edleson* Actions. *See* Weaver Dec. at ¶3. Many class members have called asking what happened with the *Edleson* settlement and why they were receiving a second class notice from a different case. *See* Declaration of Robert W. Shepard at ¶¶ 4-5 (Attached hereto as **Exhibit B**).

## C.     There Is No Evidence That AHS Complied With CAFA's Governmental Notice Requirements

CAFA requires each defendant in a federal class action to notify the "appropriate" state and federal officials about a pending settlement. 28 U.S.C. § 1715(b). The notice must be sent, within ten days after a proposed settlement is filed with the court, to the appropriate official of every state in which a class member resides. The purpose of this requirement is to allow government officials the opportunity to intervene if they believe a settlement is unfair. S. Rep. No. 109-14, at 32.

As of the date of this objection, AHS has not submitted any evidence that it complied with CAFA's governmental-notice requirement. If AHS fails to submit any evidence on this issue before the fairness hearing, the Court should reject the settlement. Otherwise, the Court will be approving a toothless settlement agreement. 28 U.S.C. § 1715(e)(1) ("A class member may refuse to comply with or choose not to be bound by a settlement agreement . . . if the class member demonstrates that the [governmental] notice has not been provided.").

8

**D.    The Court Should Reject Plaintiffs' Counsel's Attorneys' Fees Request**

"In considering a fee award in the class action context, the district court has a significant supervisory role." *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1293 (11 Cir. 1999). "Proponents of class action settlements bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable, and adequate." *Whitson v. Heilig-Meyers Furniture, Inc.*, 1995 U.S. Dist. LEXIS 4312, *22 (N.D. Al 1995). Even if the defendant agrees to the amount of the fees, the Court still must "scrutinize" the request and not just "rubber-stamp[]" it. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 520 (1st Cir. 1991). Judicial examination is necessary to deter class counsel from accepting "less-than-optimal" settlement terms for the class "in exchange for red-carpet treatment on fees." *Id.* at 524.

Here, Plaintiffs' counsel seeks a fee award of no less than $1.5 million, plus 25% of whatever money the class members recover. *See* Plaintiffs' Motion for Fees at p. 10.    There are numerous problems with Plaintiffs' counsel's fee request.

**1.  Plaintiffs' counsel seeks to profit from the labor of others**

Plaintiffs' counsel goes to great lengths to portray this case as involving "over two years of contentious litigation and marathon settlement negotiations," (Plaintiffs' Motion for Fees at p. 1).    A closer look tells a different story.

Plaintiffs' counsel filed this case in October 2007. They successfully opposed a motion to dismiss addressing class certification "issues not properly before the court," (*See* Court's Order Denying Motion to Dismiss (Docket #12) at p. 3, fn. 2) and filed a motion for class certification that was never heard or even opposed. *See* Court's September 15, 2008 Order. There

were no discovery battles, motions for summary judgment, trial, or any of the other things courts usually consider significant in justifying large fee awards. *See Waters,* 190 F.3d at 1298 (finding that litigation was "lengthy and contentious" given that it generated 134 volumes of record and "[f]ourty eight witnesses testified at the trial alone.").

Further, this case was stayed for seven months. During that time, the Edlesons and their counsel were negotiating most of the principal terms of this settlement, including the Review Desk and the class members' right to sue if they were unhappy with the result. Far from being a "long and bumpy" road toward settlement (*See* Plaintiffs' Motion for Fees at p. 3), in reality, Plaintiffs' counsel had a smooth ride on the coattails of the Edlesons' counsel. In truth, what Plaintiffs' counsel wants is $1.5 million, plus 25%, for adding window dressing to a settlement that AHS had already agreed to.

Objectors recognize that the Court has already preliminarily determined that the *Faught* settlement as "more advantageous to the class members." *See* Court's October 30 Order On Expedited Unopposed Motion For Injunction (Docket #43) at p. 6. But the Court indicated it would take a closer look at the issue (and keep an open mind) at the final approval hearing. A closer examination of the issue merits the Court reversing its position. For example, one of the differences the Court found significant was "the Faught settlement does not require class members to wait 120 days from submission to the Review Desk to file suit." *Id.* In fact, the *Faught* settlement requires class members to wait much longer. Under the *Edleson* settlement, class members can file suit 120 days after they make a submission to the Review Desk. *Edleson* Stipulation of Settlement at §5.2.o. They do not have to wait for AHS to deny the submission or make a new offer before filing suit. *Id.* The class members in *Faught,* however,

10

have to wait until **after** AHS denies the submission or makes an offer before bringing suit. *See Faught* Stipulation of Settlement at §5.2.P. The *Faught* settlement allows AHS to take as long as **two years** to issue a denial or make an offer. *Id.* at §5.2.H.iv. And although the *Faught* settlement provides for additional staffing if the review process moves too slowly, allowing class members to sue after just 120 days is a far more effective tool for ensuring that AHS processes submissions in a timely manner.[3]

To the extent the Court awards Plaintiffs' counsel any fees, any award should take into account the value of the services provided by the Edlesons' counsel, and should award such portion of any fees to the Edlesons' counsel, not the Faught's counsel. The Edlesons' counsel have previously provided detailed submissions to the California court and the California mediator regarding their lodestar, thus establishing an affirmative basis for their fee and their contribution to the case. *See* Weaver Dec. at ¶¶4-10. Since the Edlesons procured 90% of the settlements' benefits, they should get 90% of the attorneys' fee award. *See In re Air Crash Disaster at Florida Everglades On December 29, 1972*, 549 F.2d 1006, 1016 (5th Cir. 1977) (holding district court has inherent power to direct attorneys to pay fees to other attorneys whose efforts benefited the class.); *In re: Diet Drugs Product Liability Litigation*, 582 F.3d 524 (3rd Cir. 2009) (same).[4]

---

[3] In fact, under the *Edleson* settlement, AHS probably would have staffed the Review Desk sufficiently from the start in order to ensure that all claims were processed within 120 days from the date of submission.

[4] The Edlesons' fee request in the California court was based on the lodestar analysis and was supported by declarations and evidence concerning the number of hours they worked and a detailed description of all the substantial work and discovery they had conducted in the case.

### 2. There is no evidence that the requested fees are reasonably tied to the value of the settlement

In *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), the Eleventh Circuit held that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." The court further noted that the "majority of common fund fee awards fall between 20% and 30% of the fund." *Id.* District courts should view this range as a "benchmark" that "may be adjusted in accordance with the individual circumstances of each case . . ." *Id.*

Here, Plaintiffs' counsel seeks 25% of whatever money AHS winds up paying to class members. On its face, that amount appears to be squarely within the benchmark. The problem is that Plaintiffs' counsel "do not venture to speculate as to how much the class members will ultimately receive, and which, if approved, would form the basis of a 25% fee." *See* Plaintiff's Motion for Fees at p. 10, fn. 6. Thus, Plaintiffs' counsel asks the Court to rule on the reasonableness of their fees in a vacuum. The Court cannot do so, and thus should defer ruling on Plaintiffs' fee request until after the close of the claims submission period so that there is a record before the Court as to what if any common fund actually exists.

"The first step in a percentage of the fund analysis is a determination of the value of the fund." *Waters,* 190 F.3d at 1297, fn. 10. The district court itself has to value the settlement based on credible evidence. *Yeagley v. Wells Fargo & Company*, 2008 U.S. Dist. LEXIS 5040, *24 (N.D. Calif. 2008). It cannot "simply award[] fees by reference to the valuation of the settlement presented by counsel . . ." *In re TJX Companies Retail Security Breach Litigation*, 584 F.Supp. 2d 395, 404 (D. Mass. 2008); *Yeagley*, 2008

12

U.S. Dist LEXIS 5040, *20 (refusing to adopt counsel's "fiction" about a proposed settlement's worth.).

Plaintiffs' counsel does not offer a shred of evidence as to the realistic value of the common fund in this case. The best Plaintiffs' counsel can muster is "it is entirely possible that the ultimate amount paid in this settlement could be a very large number indeed." *See* Plaintiffs' Motion for Fees at p. 10, fn. 6. In other words, Plaintiffs' counsel might get 25% of $1 million (probably a reasonable amount) or 25% of $100 million (probably not a reasonable amount). The Court cannot fulfill its obligation to scrutinize the fee request under these blind circumstances.

### 3. Plaintiffs fail to provide any evidence that their fee request is reasonably related to their attorneys lodestar

Again, the Eleventh Circuit mandates the percentage of the fund method, over the lodestar method, in common fund cases. *Camden I,* 946 F.2d at 774. But the Eleventh Circuit has also explained, "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison." *Waters,* 190 F.3d at 1298 (affirming 33.3% fee award because it represented "modest lodestar multiplier of 1.05%."). District courts in this Circuit routinely run "lodestar cross-checks" to ensure that the percentage sought by class counsel bears a reasonable relationship to the amount of fees counsel actually incurred. *See Whitson,* 1995 U.S. Dist. Lexis 4312, *27 (court rejected fee request because it resulted in effective hourly rate of $3,908.29 per hour: "Despite learned class counsel's years of experience and expertise, one doubts whether even the wisdom and counsel of King Solomon would justify an hourly rate of $3,908.29."). *Hillis v. Equifax Consumer Services, Inc.*, 2007 U.S. Dist. LEXIS 48278 (N.D. Ga. 2007) (approving $1.5 million fee award because

13

"[c]lass counsel submitted declarations showing that the number of hours they logged collectively in these cases exceeded 7,800.");

The starting point in any lodestar analysis is the submission of evidence sufficient to "permit the court to conduct a meaningful analysis of the number of hours billed by class counsel." *Johnson v. Mutual Savings Life Ins. Co.,* 2004 U.S. Dist. LEXIS 29398, *10 (N.D. Al. 2004). Thus, "[p]laintiffs' attorney bears the burden of submitting detailed records documenting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The court may reduce those hours if the documentation is inadequate . . ." *Id.* Plaintiffs' counsel has completely failed to meet this burden.

Plaintiffs' counsel has not submitted any declarations, timesheets or other credible evidence supporting their $1.5 million fee request. Instead, Plaintiffs' counsel relies on a declaration from lawyer and friend, Peter Burke, concluding that the fees are reasonable in his opinion.    *See* Declaration of Peter Burke at ¶5. "Generalized statements that the time spent was reasonable or unreasonable . . . are not particularly helpful and not entitled to much weight." *Johnson,* 2004 U.S. Dist. LEXIS 29398, *10 (rejecting fee request where the individual members of class counsel merely stated the number of hours each devoted to the case.). This is especially true here since Mr. Burke apparently did not look at any timesheets and instead based his opinion solely on what "he has been told" by Plaintiffs' counsel. *See* Declaration of Peter Burke at ¶5.

Because Plaintiffs' counsel has failed to do provide any evidence about the value of their services, the Court is left to guess whether the fee request has any reasonable relationship to the actual value of Plaintiffs'

14

counsels' services.    The Court should reject the fee request for this reason alone.

### 4.  Without the ability to conduct a lodestar analysis, the court cannot determine whether Plaintiffs' counsel has any incentive to fulfill its further duties to the class

Because it does not know the lodestar of Plaintiffs' counsel, the Court has no way of knowing if the 25%, on top of the $1.5 million, will result in a Plaintiffs' counsel not fulfilling their continuing duties to the class.    For example, if Plaintiffs' counsel is only getting a 1 or 1.5 multiplier, then the desire for additional fees will probably motivate Plaintiffs' counsel to closely monitor AHS to ensure that it is living up to its end of the settlement agreement. If, on the other hand, Plaintiffs' counsel has already earned a 10 or 12 multiplier, then its motivation is not so great.

Indeed, Plaintiffs' counsel complains mightily about the amount of time they have already spent, and will continue to spend, administrating the settlement. *See* Plaintiffs' Motion for Fees at p. 27.    At some point, the continued burden just won't be worth it, especially if Plaintiffs' counsel has already been overcompensated for its services.

### 5.  The settlement requires the class members to pay $1.2 million of the attorneys' fees that AHS was already willing to pay

Regardless of the cosmetic differences between the *Edleson* and *Faught* settlements, at the end of the day, the result is the same.  Disgruntled class members can resubmit their claims and, if they are still unhappy with the result, file a lawsuit seeking damages.    The number of class members who receive a monetary recovery as a result of resubmitting their claims will be the same under both settlements since the review standards are identical. The only significant difference between the two settlements is that the class

15

members now have to pay $1.2 million of the attorneys' fees that AHS was previously willing to pay.

Specifically, AHS agreed to pay the Edlesons' counsel $2.7 million in fees. The class members did not have to pay anything if their submission to the Review Desk resulted in a refund. Under the *Faught* settlement, however, the amount of fees AHS must pay is capped at $1.5 million. The class members are left to make up the difference, and then some, by turning over 25% of their refund to Plaintiffs' counsel. In other words, class members now have to pay attorneys 25% of what they were previously getting for free. Put bluntly, Plaintiffs' counsel sold out the class.

### III.   CONCLUSION

Based on the arguments discussed above, it is clear that the settlement agreement in this case is unfair, unreasonable and inadequate. Thus, like the *Edleson* court, this Court should reject the settlement.

Dated: February 8, 2010                   Respectfully submitted,

                                          JOHNSON BOTTINI, LLP
                                          FRANCIS A. BOTTINI, JR.
                                          BRETT M. WEAVER

                                          BRETT WEAVER
                                          501 West Broadway, Suite 1720
                                          San Diego, California 92101
                                          Telephone: (619) 230-0063
                                          Facsimile: (619) 238-0622

                                          Attorneys For Robert And Luz Shepard,
                                          Vivian Johnson, Janet Tzendzalian,
                                          Merlyn D. Lind, Rosalyn Urbanek, and
                                          Donald P. Leach

Exhibit A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07-CV-1928-RDP |
| vs. | ) ) | Honorable R. David Proctor |
| AMERICAN HOME SHIELD CORPORATION, | ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF BRETT WEAVER IN SUPPORT OF ROBERT AND LUZ SHEPARD'S, VIVIAN F. JOHNSON'S, JANET TZENDZALIAN'S, MERLYN D. LIND'S, ROSALYN URBANEK'S, AND DONALD P. LEACH'S (COLLECTIVELY "OBJECTORS") OBJECTION TO CLASS ACTION SETTLEMENT

I, BRETT WEAVER declare as follows:

1.       I am an associate at Johnson Bottini, LLP ("Johnson Bottini"), Counsel for Objectors in this action.  Johnson Bottini was also co-lead counsel for the class in *Edleson v. American Home Shield,* California Superior Court, County of San Diego, Case No. 37-2007-00071725-CU-BT-CTL (the "*Edleson* Action)".  I am duly licensed to practice before all state and federal courts in the State of California.  I have also been admitted *pro hac vice* in numerous state and federal courts throughout the Country.  I have personal knowledge of the facts stated below, if called upon to do so, I could and would competently testify thereto.

2.       After defendant, American Home Shield ("AHS") sent out notice of the class action settlement in the *Edleson* Action, my firm was overwhelmed with calls, emails, letters, and faxes from class members.  Many of these class members elected to opt out of the class or object to the settlement.  Specifically,

twenty class members formally objected to the settlement and over 3,200 class members officially opted out of the class. All of this information was provided to the San Diego Superior Court and was a factor in the court's decision to reject the *Edleson* settlement.

3.      When the class notice in this case went out, my firm again became inundated with inquiries from class members. Many of these class members: (1) complain that the Faughts' counsel is not answering their phones and do not return the class members' calls; (2) state that they are confused by the notice; (3) state that they still think my firm represents them; and (4) want to know the relationship, if any, between the *Faught* and *Edleson* Actions. Many class members have also asked what happened with the *Edleson* settlement and why they received a second class notice from a different case.

4.      In connection with the *Edleson* Action, my firm and co-lead counsel, Chapin Wheeler, LLP ("Chapin Wheeler"), prepared a detailed complaint, successfully opposed a demurrer, propounded extensive written discovery, filed a motion to compel supplemental discovery responses (which was withdrawn after AHS voluntarily agreed to produce supplemental responses); reviewed tens of thousands of pages of documents; deposed several witnesses and participated in several mediation sessions with retired California Court of Appeal Associate Justice, Howard B. Weiner, which ultimately resulted in a settlement on May 2008. As of April 20, 2009, the total number of hours spent by my firm was 1,709.05. The total lodestar amount for attorney/paralegal time based on the firm's then-applicable rates was $762,573.75. The hourly rates shown below were the usual and customary rates charged in 2009 for each individual in all our cases:

| *NAME* | | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| Frank J. Johnson | (P) | 318.5 | $585.00 | $186,322.50 |
| Francis A. Bottini | (P) | 713.8 | $585.00 | $417,573.00 |
| Brett M. Weaver | (A) | 44.4 | $405.00 | $17,982.00 |
| Derek J. Wilson | (A) | 386.3 | $275.00 | $106,232.50 |
| Elsa Mechulan | (LC) | 65.35 | $175.00 | $11,436.25 |
| Zena Hindiyeh | (LC) | 8.8 | $175.00 | $1,540.00 |
| Shelby Ramsey | (PL) | 47.9 | $125.00 | $5,987.50 |
| Gini Christensen | (PL) | 113 | $125.00 | $14,125.00 |
| Trisha Rivera | (PL) | 11 | $125.00 | $1,375.00 |
| *TOTAL:* | | 1,709.05 | | $762,573.75 |

(P) Partner
(A) Associate
(LC) Law Clerk
(PL) Paralegal

5.    In addition, the total number of hours spent by co-counsel, Chapin Wheeler, as of April 20, 2009, was 137.10. The total lodestar amount for attorney/paralegal time based on Chapin Wheeler's then-applicable rates was $4,107.50.

6.    As of April 20, 2009, the total combined number of hours worked on this case by my firm and by Chapin Wheeler was 1,846.15.

7.    My firm incurred a total of $35,598.73 in expenses in connection with the prosecution of this litigation. They are broken down as follows:

| *EXPENSE CATEGORY* | *TOTAL* |
|---|---|
| Copies, Postage, Telephone, Facsimile | $6,218.25 |
| Filing, Witness & Other Fees | $1,119.60 |
| Travel, Meals, Hotel, etc. | $1,015.77 |
| Lexis, Westlaw, Online Library Research | $22,666.56 |
| Court Reporter fees | $4,578.55 |
| *TOTAL* | $35,598.73 |

DECLARATION OF BRETT WEAVER

8.     These expenses are reflected in the books and records of this firm. These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

9.     As of April 20, 2009, the Chapin Wheeler firm incurred a total of $2,264.00 in expenses in connection with the prosecution of this case.

10.     The total lodestar amount for attorney/paralegal time for my firm and the Chapin Wheeler firm, as of April 20, 2009, was $836,681.25 and the total combined expenses were $37,863.73 for a combined total of $874,544.98. Thus, the lump sum of fees recommended by Justice Weiner in the amount of $2.5 million resulted in a 2.86 multiplier, which Justice Weiner found to be well within the acceptable range.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 8th day of February, 2010, at San Diego, California.

BRETT WEAVER

Exhibit B



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LAURA FAUGHT and STEVEN )
FAUGHT, on behalf of themselves )
and all others similarly situated, )
 )
       Plaintiffs, ) Case No. 07-CV-1928-RDP
 )
   vs. ) Honorable R. David Proctor
 )
AMERICAN HOME SHIELD )
CORPORATION, )
 )
      Defendants. )

## DECLARATION OF ROBERT W. SHEPARD IN SUPPORT OF OBJECTION TO THE FAUGHT'S CLASS ACTION SETTLEMENT

I, ROBERT W. SHEPARD, declare as follows:

1.   I have personal knowledge of the facts stated below, if called upon to do so, I could and would competently testify thereto.

2.   Several months ago, I received notice of the class action settlement in *Edleson v. American Home Shield*.

3.   In early December, I received notice of a class action settlement in *Faught v. American Home Shield*.

4.   I was confused about why I was receiving a second class notice, what had happened to the settlement in the *Edleson* action, and why I was receiving notice of a similar settlement in the *Faught* action.

5.   Because I could not determine, from reading the *Faught* class notice, what happened to the first class action settlement and the status of the *Edleson* case, I called the *Edleson* class counsel, Johnson Bottini.

6.   Johnson Bottini informed me that the judge in the *Edleson* case denied the *Edleson* settlement as inadequate. Because I believe the *Faught* settlement is also inadequate, I hereby object.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this ⎯ day of February, 2010, at *SAv.DIEGD* , California.

_____
ROBERT W. SHEPARD