FILED
2010 Feb-09  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, | ) CLASS ACTION<br>) Case No. 2:07CV1928-RDP<br>) Judge R. David Proctor |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| AMERICAN HOME SHIELD CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## OBJECTION TO THE PROPOSED SETTLEMENT

COME NOW, Objecting Class Members Todd Pettitt, a resident of St. Louis, MO; Sharon Lee, a resident of Glendale, CA; and John and Connie Pentz, residents of East Stroudsburg, PA, and hereby file this objection as allowed by the Courts notice of class action dated December 18, 2009.  In support thereof, Objectors state as follows:

Objectors, through their undersigned counsel, now enter their appearance in this cause to participate in further proceedings in this Court and to prosecute this action to the end purpose that any settlement or resolution proposed or approved by the Court is, in all respects, fair, adequate and reasonable.

This Proposed settlement is a second attempt to secure judicial approval of a settlement that will allow Defendant to continue its challenged business practices essentially unabated Although a class settlement is supposed to benefit all Class Members consistent with applicable law, it is far from fair, adequate and reasonable to those class members.

1

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

This Court has wide discretion in the approval of class action settlements brought before it.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).   That discretion is not unbounded, however.  A district court must compare the settlement terms "with the likely rewards the class would have received following a successful trial of the case."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

This case presents an unusual situation in which a settlement that was denied final approval in California is now presented for approval here.   See attached Ex. A, July 8, 2009 minute order.  The revised Stipulation of Settlement (the "SOS") has dropped some of its most odious features, but it still suffers from major defects that precluded final approval in California, and now preclude final approval here.  Indeed, a review of the entire record here strongly supports the inference that this settlement is a starkly collusive attempt to evade the jurisdiction of the California court that had denied the settlement and was permitting the case to go forward on the merits.  And those merits appear to be considerable, given that the California plaintiffs had a well-supported preliminary injunction motion pending at the time their case was barred from proceeding.

Yet class members were not advised of the status of that proceeding in the Notice provided to the class, lest they be disinclined to opt-out of this proceeding in favor of that one. What the settling parties are attempting here is scandalous, and this Court should not permit it.

Objectors have attached hereto, as Exhibits B and C, the objections they filed in the California case, which convinced the trial court judge there to deny final approval.   These objections continue to apply, and Objectors respectfully request that this Court take judicial

notice of them in this proceeding.

## II.     ARGUMENT

### A.      The Relief Offered by the Proposed Settlement Is Illusory

The central relief provided to the class (as opposed to the very rich cash rewards proposed to be given to the putative class representatives) is the opportunity for customers to have AHS review denied claims.  This "Review Desk" procedure proposed is virtually identical to that already decreed to be unfair and of no value to class members in the California case.

Specifically, AHS is the sole arbiter of the claims review process, though it has

Any relief to be provided is "at AHS's sole option" (SOS at 14 V(5.2)(K)), and does not include consequential damages of any kind.  SOS at 15 V(5.2)(L).  Worst of all, the procedures equate to an overt attempt to re-write all contract holders' policies to prohibit the claims from being prosecuted as class actions.  SOS at 16-17 V(5.2)(P); see also Ex. C (Lee/Pentz California Objection) at 9-10.

AHS, which has steadfastly denied liability and continues to do so, is an inappropriate arbiter of class member claims.  See Ex. B (Pettit California Objection) at 2-4.    And the standards set forth for the review of claims permit AHS almost unfettered discretion in determining whether to re-deny a claim.  See Attachment A to Stipulation of Settlement.  Thus class members whose claims were denied gain little from this procedure that they wouldn't get anyway simply by taking AHS to small claims court, and lose considerable rights by being subject to it.

The other relief proposed for the class is "Business Practice Changes."  This would be the

3

only relief for class members whose agreements are within the broad class definition (and whose contracts are therefore being rewritten to their detriment by this settlement) but who do not have a claim for review by the "Review Desk."   But the practice changes provisions are so vague as to be meaningless, and are for the most part entirely at the option and discretion of AHS.  See SOS at 19, V(5.3)(A)-(C)).  There is no indication of what, exactly, AHS intends to "convey" to its contractors about the importance of honoring the terms of coverage, nor any indication of what training materials AHS will "develop and distribute" to them, and therefore no reason to believe that this will amount to any kind of actual change in business practices or any particular benefit to the class.   While such hopeful-sounding, generalized resolutions might be useful in the public relations field, they are far too vague to serve as any consideration for class members in a lawsuit.

The "relief" in this settlement is not relief for class members.  It is relief for AHS.  It is nothing more than an attempt to exercise absurd procedural control over class member disputes and to rewrite existing contracts to remove class members due process rights and to prevent them from bringing class litigation when AHS re-denies their claims.  That is not a benefit to the class at all, but a detriment.

## B.    The Release Is Facially Overbroad

The release of claims in this case purports to eliminate whatever consumer rights and remedies the "relief" does not.    Incredibly, the release continues to improperly attempt to prevent AHS contract holders from bringing any class action related to AHS's business practices for two years after the Effective Date (what the parties euphemistically call "the Standstill Claims").   See SOS at 33, X(10.3)  AHS could not obtain this relief in California even in a

4

voluntarily-signed agreement, much less a reformation of the agreement pursuant to a slap-dash class action settlement in another state. A provision in a contract that purports or operates to frustrate consumer class actions is, under California law, unenforceable. *Gentry v. Superior Court*, 42 Cal.4th 443, 457 (2007); *Discover Bank v. Superior Court*, 36 Cal.4th 148, 161 (2005); see also Ex. C Lee/Pentz California Objection at 12-14.   This settlement, even if approved, will present a denial of due process for Californian class members, as it facially violates the provisions of the California consumer laws, which prevent their prospective waiver by contract.   See Cal. Civ. Code §1751 and Cal. Civ. Code, § 1668.   Therefore, a settlement purporting to waive such protections unrelated to resolving the allegations of this case is void as against public policy, and presents major due process issues.   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (forum state wishing to bind absent class members must observe due process: "absent plaintiffs as well as absent defendants are entitled to some protection from the jurisdiction of a forum State which seeks to adjudicate their claims.")

## C. The Attorneys' Fees Bargained For, as well as the $18,000 Proposed Incentive and Compensatory Payments for the Class Representatives, Are Excessive and Call into Question The Adequacy of Representation

Tellingly, the first paragraph of the "Settlement Consideration" section of the Stipulation of Settlement is entitled: "*Named Plaintiffs' Relief*".  SOS at 9, ¶V.5.1. There is found the only mention of a sum certain of cash to be paid to any class member in this case, and it is for the named representatives.   Not only are they to receive $8,000 for their own claims, without having to undertake the "review" process they are recommending for other class members, but counsel have agreed to seek an additional $10,000 in incentive compensation.

5

Disparities between the benefits provided to the named plaintiffs and those provided to the class are prima facie evidence that the settlement is unfair to the class. *E.g, Plummer v. Chemical Bank*, 91 F.R.D. 434, (S.D.N.Y. 1981), aff'd 668 F.2d 654 (2d Cir. 1982). Here, the class benefits would appear to amount to detriments; less than nothing – compared to a relatively large award to the class representatives that cannot be expressed as a multiple of individual class member benefits because those benefits are zero. This feature of the settlement is a major red-flag that this Court should not ignore.

The claim of attorneys' fees in this case is $1,500,000.00 dollars plus 25% of monetary amounts paid out in settlement. Objector shows the Court that this blended formula for attorney fees has a blended result: first, the base fee of $1.5 million dollars is excessive for a settlement with illusory benefits and essentially a copy of the one attempted in San Diego. Second, the percentage fee unfairly diminishes the value of the settlement (if there is one) to the class and is excessive. The Court should not rubberstamp Class counsel's fee request without comparing fee awards in other class action settlements, and examination of time, records and a rational assessment of whether the fee requested is reasonable. The Court should delay a final decision on attorney fees until it can determine what benefits were actually conferred on the class. This would include a recapitulation of all claims reviewed (including non-monetary claims allowed) and the resulting return to the class. Any fee awarded in this case should bear some relationship to the adequacy of the result and benefit conferred upon the class.

Objectors adopt any other bona fide objections by other Class Members.

Objectors plan to attend the Fairness Hearing to present his arguments to the Court on March 10, 2010.

6

For all the forgoing reasons, Objectors respectfully submit that the terms of the Proposed Settlement are insufficient, unfair, unjust, unreasonable and inadequate to the absent Class Members.

**WHEREFORE**, having demonstrated the unfairness, inadequacy and unreasonableness of the Proposed Settlement, the Objectors request appropriate general relief as follows:

1.    That the Court deny the proposed motion for approval.

2.    That the Court disallow the attorneys' fees as requested.

3.    That the Court enter such other further Orders as may be necessary and just, so as to effect substantial justice in this cause between the parties and the absent Class Members.

Respectfully submitted,

/s/ Kearney Dee Hutsler
KEARNEY DEE HUTSLER, ESQ
One of the Attorney for
Todd Pettitt, Sharon Lee,
John & Connie Pentz
2700 Hwy. 280, Suite 320W
Birmingham, AL 35223
Phone No. (205) 414-9979
Fax No. (205) 879-9229
Email kdhlaw@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2010. I have forwarded a true and correct copy of the foregoing objection via U.S. mail, to the following:

**CLERK OF THE COURT**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
1729 Fifth Avenue North
Birmingham, AL 35203

D. FRANK DAVIS
JOHN E. NORRIS
WESLEY W. BARNETT
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Fax (800) 439-0240
Lead Class Counsel

**John E. Goodman, Esq.**
Bradley Arant LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Facsimile: (205) 521-8800
Counsel for Defendants

/s/ Kearney Dee Hutsler
Kearney Dee Hutsler

# EXHIBIT A

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO
## CENTRAL

### MINUTE ORDER

Date: 07/08/2009                    Time: 11:00:00 AM      Dept: C-70

Judicial Officer Presiding: Judge Jay M. Bloom
Clerk: Lynn Rockwell

Bailiff/Court Attendant:
ERM: Not Reported

Case Init. Date: 07/24/2007

Case No: 37-2007-00071725-CU-BT-CTL      Case Title: Edleson vs. American Home Shield of California,
                                          Inc

Case Category: Civil - Unlimited          Case Type: Business Tort

Event Type: Motion Hearing (Civil)

Causal Document & Date Filed:

**Appearances:**

The Court, having taken the above-entitled matter under submission on 07/02/2009 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

**THE MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLMENT IS DENIED.** ALL EVIDENTIARY OBJECTIONS ARE OVERRULED.

The motion for final approval of the class action settlement is denied. While the court respects the views of Justice Wiener and learned counsel in this case, the court cannot justify approval of the settlement. Plaintiffs, other than the two lead plaintiffs, really get nothing more than a right to submit or resubmit claims to a defendant that has allegedly not acted in good faith on prior occasions. There are no guarantees claims will now be accepted or properly serviced, or that if improperly denied, plaintiffs have any realistic remedy. They may have the right to sue in the future, but that is subject to the applicable statute of limitations in each jurisdiction in the United States. The court has no information as to what the applicable limitations are or what other limits may exist to preclude filing of a lawsuit.

The settlement also allows defendant to essentially sell more insurance to plaintiffs at an unspecified price. This allows defendant to make additional money from the settlement rather than paying it out to plaintiffs. The contractor relations initiative also does not provide plaintiffs with any realistic guarantees. The entire settlement essentially asks plaintiffs to give up many viable and realistic rights in return for the hope that defendant will act in good faith. Without more concrete guarantees, plaintiffs, other than the lead plaintiffs, have gotten very little in return for a waiver of claims against defendant. In the face of this illusory result for plaintiffs, counsel receive $2.75 million and defendants substantially limit their liability for past conduct. The court cannot accept this result. Any settlement must give the plaintiff class some tangible benefits or an unfettered right to bring legal claims against defendant.

### Plaintiffs' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES is DENIED.

# EXHIBIT B

1    J. Garrett Kendrick (61698)
     C. Benjamin Nutley (177431)
2    KENDRICK & NUTLEY
     1055 E. Colorado Blvd., 5th Floor
3    Pasadena, CA 91106
     Telephone:  (626) 204-4060
4    Facsimile:  (626) 204-4061

5    Attorneys for Objecting Class Member
     Todd Pettitt

6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9                       **COUNTY OF SAN DIEGO**

10

11    KARON and L.B. CHIP EDLESON, on      Case No. 37-2007-00071-CU-BT-CTL
     behalf of themselves and all others similarly
12    situated,                           CLASS ACTION
                Plaintiffs,
13                                 PRELIMINARY OBJECTION TO CLASS
        v.                            ACTION SETTLEMENT AND REQUEST
14                                 FOR ATTORNEYS' FEES

15    AMERICAN HOME SHIELD OF           NOTICE OF INTENTION TO APPEAR AT
     CALIFORNIA, INC., AMERICAN HOME    FINAL APPROVAL HEARING
16    SHIELD CORPORATION, and DOES 1-
     20,
17                                 DATE:       April 24, 2009
                                     TIME:       10:30 a.m.
18                 Defendants.             DEPT:       73
                                     JUDGE:    Hon. Steven R. Denton
19

20

21

22

23

24

25            TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD: Please take

26    notice that Objecting Class Member Todd Pettitt, by and through undersigned counsel, hereby

27    enters his appearance in this action and objects to the proposed Settlement and petitions for

28    attorneys' fees, and also gives notice of his intent to appear through undersigned counsel at the

                                                   1

final fairness hearing scheduled for April 24, 2009.  Mr. Pettitt is a Settlement Class Member who resides in St. Louis, MO.[1]   Objector Pettitt is aware of other objections filed concurrently herewith by the Lee and Arrington Objectors, and hereby joins and adopts those objections (and any other any other bona fide objections by absent class members) without restating them, and makes the following further objections and argument.

## I.    INTRODUCTION

Objecting class member Todd Pettitt was a party to a contract with Defendant American Home Shield for his home located in St. Louis, Missouri.  Like others within the class as defined by the settlement, during the class period Objector Pettitt attempted to make a claim under his AHS contract because of a broken air conditioner.  Mr. Pettitt attempted on a number of occasions to have AHS repair the item pursuant to the contract. However, Mr. Pettitt was unsuccessful in  these attempts, and therefore was requiredto have the air conditioner repaired by someone unrelated to AHS, and Mr. Pettitt was required to pay out of pocket for these repairs.

Although Mr. Pettitt's experiences are similar to those complained of in the present case, and appear widespread among class members, there is nothing in the proposed settlement that would change the result the next time around.   Instead, the this proposed settlement does nothing but ratify the conduct of AHS and permit it to carry on unchecked.

## II.    OBJECTIONS TO THE SETTLEMENT

### A.    AHS Is an Unsuitable Arbiter of Class Claims

The central benefit of the settlement is AHS's agreement to establish a "review desk," i.e., a procedure by which class members arc ostensibly permitted to resubmit previously denied claims

---

[1]      Mr. Pettitt has provided to the parties under separate cover an affidavit authorizing his objection and setting forth his home address so that the parties may verify his membership in the class.

2

1  for reevaluation.[2]  Class members would have a period of time to submit certain information about

2  the claims, including a statement as to why the class member believes the previous denial of the

3  claim should be overturned or revised.  (SS 5.1(f)(vii), at 11:10-11.)   In addition, class members

4  may submit other supplemental information they believe to be relevant, including  photographs,

5  receipts, cancelled checks, and correspondence with AHS or its contractors.  (SS 5.1(g), at

6  11:13-18.)

7

8  Who is to be the arbiter of these resubmitted claims?  AHS itself.  (SS 5.1(h) & (i).)  The

9  process is entirely dependent upon the notion that AHS will somehow put aside its own self-

10  interest to adjudicate these claims impartially.   That would be a tall order for a defendant in a

11  lawsuit even if its good faith were not at issue.   But the gravamen of plaintiffs' very first cause of

12  action in this case is that AHS systematically breached the duty of good faith and fair dealing

13  (Complaint, ¶46 at 15-20), which also serves as a predicate for plaintiffs' third cause of action

14  under Bus. & Prof. Code Section 17200, *et seq.*  (Complaint, ¶66 at 11:22-12:11.) Assuming that

15  there was a basis for these allegations, how does plaintiff now recommend a process dependent

16  entirely upon the good faith of AHS?

17

18  The language of the settlement itself demonstrates that AHS cannot be an impartial

19  arbiter.  AHS continues to deny vehemently that it has ever improperly denied a claim or

20  otherwise wrongly failed to compensate any class member.  The Notice contains two separate

21  declarations, in bold print, that the defendants deny any wrongdoing or liability.  (Notice at 1, 2.)

22  Indeed, the SS itself contains an entire section devoted to disclaiming any wrongdoing or liability.

23  (See SS at 9 [Section IV, entitled "DENIAL OF WRONGDOING OR LIABILITY"].)[3]  Would

24

25  [2]  "Denied Claims" is defined at SS 2.18, 6:7-11.

26  [3]  There, the parties reiterate that:

27

28  Defendants deny that they have violated any law; deny that they have breached any
   agreement with, or obligation to, Named Plaintiffs or the Class Members (or

3

any sensible person agree to accept an arbiter who had several times declared unequivocally its firm belief that there was no claim?

Moreover, AHS makes it clear that it intends to apply every single defense that it believes it has against compensation of the claims.  The settlement does not revive any claims that would be otherwise barred.[4]   The settlement warns that any existing release "of whatever type or nature, and in whatever form (including by operation of law), of AHS by a Class Member before this Settlement shall be in full force and effect and not be deemed diminished, waived, otherwise rendered ineffective by this Agreement." (SS 5.1(l) at 12:28 - 13:2).  Nor does it afford any class member any advantage or presumption they don't already have.

Even assuming that AHS undertakes the reviews in the utmost good faith, it is an admittedly prejudiced adjudicator that clearly intends to interpret and apply its own defenses in the way most beneficial to itself.   There is no provision in the review desk process that would provide class members with any adversarial counterpart to AHS, nor even an impartial adjudicator to rule on the propriety of AHS's own self-serving interpretations of its defenses.   How can it be presumed that AHS can make fair individual determinations of the commencement and tolling of statutes of limitations and the application of other, as yet unspecified defenses?

---

anyone else); deny any liability to Named Plaintiffs or the Class Members (or anyone else) for Released Claims; and deny all the allegations of wrongdoing recited in the Complaint.

(SS paragraph 4.1, at 9:14-18.)  The Preamble to the SS recites:

WHEREAS, the Defendants vigorously denied, and continue to vigorously deny, any wrongdoing and any liability in relation to the allegations contained in the complaint filed in the Action (the "Complaint").

(SS Preamble at 3:15-17.)

[4]      "Nothing herein shall be interpreted to mean that a Class Member may obtain the revival of a Claim that has lapsed and is barred under the applicable limitations period by submitting the Claim to the Review Desk." (SS 5.1(o), at 14:1-3.)

4

**B.     The Settlement Does not Provide Class Members Any Benefit the Don't Already Have**

The Review Desk process can be expected to be of little value to class members, and doesn't give them anything they don't already have. On the contrary, it simply adds a layer of administrative hoops that class members must go through – the equivalent of imposing a requirement that class members exhaust administrative remedies, though no such requirement presently exists.

Without this litigation or the settlement, nothing would stop any AHS customer whose claim was denied from submitting information and evidence to AHS to convince it to reverse itself. If AHS refused, nothing would stop that individual from suing. In most cases, that would mean small claims court. That person would invest about the same amount of time and resources gathering and submitting to the court the same information that would be submitted to the Review Desk under this settlement. But the individual could sue without being bound by the byzantine notice and waiting period procedures set up in this settlement. And the claims and defenses would be reviewed by an impartial adjudicator. If successful, the person would be entitled to money or appropriate equitable relief, rather than having AHS decide that the appropriate compensation is "in kind" relief in the form of a discount on a new contract with AHS.

**C.     Adequacy of Representation and Due Process Issues Foreclose Certification of a Nationwide Settlement Class**

The Lee Objectors have noted the conflict of interest and adequacy of representation issues that have arisen in this case. Those problems create an additional problem with due process and this Court's very jurisdiction, for where there is a failure of adequacy of representation, there is a failure of due process, and that renders this Court unable to enter a valid judgment binding absent class members, particularly those outside of California, such as Objector Pettitt. (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811-12 [forum state wishing to bind absent class members must observe due

5

1  process: "absent plaintiffs as well as absent defendants are entitled to some protection

2  from the jurisdiction of a forum State which seeks to adjudicate their claims."].)

3

4  **CONCLUSION**

5

6      The integrity of the class action device, particularly as it relates to vindicating the rights of

consumers, is of major import to California public policy. *America Online, Inc.* v. *Superior Court*

7  *of Alameda County* (2001) 90 Cal.App.4th 1, 17; quoting *Vasquez v. Superior Court* (1971) 4

8  Cal.3d 800, 812.   Yet a settlement that seems to benefit only the attorneys and class

9  representatives, while imposing undue and unlawful burdens upon absent class members,

10

11 undercuts the integrity of that device.  Objector Pettitt therefore requests that this Court

12 deny the proposed motion for approval, disallow the requested attorneys' fees, and enter such

13 other further Orders as may be necessary and just, so as to effect substantial justice in this cause

14 between the parties and the absent Class Members.

15

16                                    Respectfully submitted,

17

18 DATED:      March 3/ , 2009

19                                    J. Garrett Kendrick
                                      KENDRICK & NUTLEY
20                                    1055 E. Colorado Blvd., 5th Floor
                                      Telephone:  (626) 204-4060
21                                    Facsimile:  (626) 204-4061

22                                    Objecting Class Member
                                      Todd Pettitt
23

24

25

26

27

28

                                      6

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of

eighteen (18) years and not a party to the within action; my business address is 1055 E. Colorado

Blvd., 5th Floor, Pasadena, CA 91106.

On March 31, 2009, I served a true and correct copy of the following document(s):

**PRELIMINARY OBJECTION TO CLASS ACTION SETTLEMENT AND
REQUEST FOR ATTORNEYS' FEES; NOTICE OF INTENTION TO APPEAR
AT FINAL APPROVAL HEARING**

by causing to be hand delivered an accurate copy of said document on the persons listed below.

Francis A. Bottini, Jr.
JOHNSON & BOTTINI, LLP
655 W. Broadway, Suite 1400
San Diego, CA 92101

Attorneys for Plaintiff

Martin R. Boles, Esq.
KIRKLAND & ELLIS
777 South Figueroa Street
Los Angeles, CA 90017

Attorneys for Defendants

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed on March 31, 2009.

J. Garrett Kendrick

# EXHIBIT C

1    J. Garrett Kendrick (61698)
     C. Benjamin Nutley (177431)
2    KENDRICK & NUTLEY
     1055 E. Colorado Blvd., 5th Floor
3    Pasadena, CA 91106
     Telephone:  (626) 204-4060
4    Facsimile:  (626) 204-4061

5    Attorneys for Objecting Class Members
     Sharon Ann Lee, John Pentz, and Connie Pentz
6

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9                           **COUNTY OF SAN DIEGO**

10

11   KARON and L.B. CHIP EDLESON, on behalf        Case No. 37-2007-00071-CU-BT-CTL
     of themselves and all others similarly situated,
12                                      Plaintiffs,   CLASS ACTION

13               v.                                   PRELIMINARY OBJECTION TO CLASS
                                                     ACTION SETTLEMENT AND REQUEST
14   AMERICAN HOME SHIELD OF                         FOR ATTORNEYS' FEES
     CALIFORNIA, INC., AMERICAN HOME
15   SHIELD CORPORATION, and DOES 1-20,             NOTICE OF INTENTION TO APPEAR AT
                                                     FINAL APPROVAL HEARING
16                                      Defendants.

17                                                   DATE:      April 24, 2009
                                                     TIME:      10:30 a.m.
18                                                   DEPT:      73
                                                     JUDGE:     Hon. Steven R. Denton
19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . 1

II.     CLASS COUNSEL HAVE CREATED A CONFLICT OF INTEREST THAT
        REQUIRES THEIR DISQUALIFICATION, PRECLUDES A FINDING OF
        ADEQUATE REPRESENTATION, AND REQUIRES REJECTION
        OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    Class Counsel's Agreement to Advise AHS is a violation of Rules of
              Professional Conduct and a Prohibited Conflict of Interest . . . . . . . . . . . . . . . 3

        B.    The Conflict of Interest Results in a Failure of Adequate
              Representation and a Consequent Failure of Due Process . . . . . . . . . . . . . . . . . 6

III.    THE SETTLEMENT IS NOT FAIR, ADEQUATE, AND REASONABLE

        A.    The Proposed Relief for "Review Desk" Claims is Illusory . . . . . . . . . . . . . . . 7

        B.    The"FlexPlan Offer" Does Not Benefit the Class . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    The "Contractor Relations Initiative" is Illusory . . . . . . . . . . . . . . . . . . . . . . . 9

        D.    The Settlement Seeks to Impose Burdens and Detriments to the Class That Are
              Unlawful and Far Outweigh Any Possible Benefit . . . . . . . . . . . . . . . . . . . . . . 10

IV.     ATTORNEYS' FEES

        A.    There Is as Yet No Support for Any Fee Award to Class Counsel . . . . . . . . . . 12

        B.    The Conflict of Interest Puts Class Counsel's Entire Fee in Jeopardy  . . . . . . . 13

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES CITED

### CASES

*Amchem Prods. Inc. v. Windsor*
(1997) 521 U.S. 591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Apple Computer Inc. v. Superior Court*
(2004) 126 Cal.App.4th 1253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Aral v. Earthlink, Inc.*
(2005) 135 Cal.App.4th 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*
(1997) 52 Cal.App.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Cal West Nurseries, Inc. v. Superior Court*
(2005) 129 Cal. App. 4th 1170 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Comden v. Superior Court*
(1978) 20 Cal.3d 906 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Discover Bank v. Superior Court (Boehr)*
(2005) 36 Cal.4th 148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Flatt v. Superior Court*
(1994) 9 Cal.4th 275 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Gilbert v. National Corp. For Housing Part.*
(1999) 71 Cal.App.4th 1240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hanlon v. Chrysler Corp.*
(9th Cir. 1998) 150 F.3d 1011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Huston v. Imperial Credit Commercial Mortg. Inv.,*
179 F. Supp.2d 1157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jeffry v. Pounds*
(1977) 67 Cal.App.3d 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kass v. Young*
(1977) 67 Cal.App.3d 100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Kullar v. Foot Locker Retail*
　　(2008) 168 Cal.App.4th 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*La Sala v. American Sav. & Loan Assn.*
　　(1971) 5 Cal.3d 864 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Linder v. Thrifty Oil Co.*
　　(2000) 23 Cal.4th 429 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Palumbo v. Tele- Communications, Inc.*
　　(D.D.C. 1994) 157 F.R.D. 129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rebney v. Wells Fargo Bank, NA*
　　(1990) 220 Cal.App.3d 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Salton City Area Property Owners Assn. v. M. Penn Phillips*
　　(1977) 75 Cal.App.3d 184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Sipper v. Capital One Bank*
　　(C.D. Cal. 2002) 2002 WL 398768; 2002 U.S.Dist. LEXIS 3881 . . . . . . . . . . . . . . . . . 6

*Trotsky v. Los Angeles Federal Savings and Loan Association*
　　(1975) 48 Cal.App.3d 134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gentry v. Superior Court*
　　(2007) 42 Cal.4th 443 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **STATUTES**

Cal. Civ. Code §1780(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Code Civ. Proc. §1021.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1   TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD: Please take

2   notice that Objecting Class Member Sharon Ann Lee, and Objecting Class Members John and

3   Connie Pentz, by and through her undersigned counsel, hereby enter their appearance in this

4   action and object to the proposed Settlement and petition for attorneys' fees, and also give notice

5   of their intent to appear through undersigned counsel at the final fairness hearing scheduled for

6   April 24, 2009.  Ms. Lee is a member of the settlement class defined in the Notice and is a

7   resident of Glendale, California.  Mr. and Mrs. Pentz are residents of East Stroudsburg,

8   Pennsylvania.[1]

9   **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

10   The California Supreme Court has repeatedly recognized that class actions have a strong

11   potential to work injustice, so that trial courts must "carefully weigh respective benefits and

12   burdens and to allow maintenance of the class action only where substantial benefits accrue both

13   to litigants and the courts." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429,435); see also *Salton*

14   *City Area Property Owners Assn., v. M. Penn Phillips* (1977) 75 Cal.App.3d 184, 189 [any

15   benefit to the defendant is incidental, and is not the purpose of the class action procedure].)

16   More specifically, the Court should consider "whether the court's resources would really be

17   employed for the benefit of the [class members] or mainly for the class action attorney." *Kass v.*

18   *Young* (1977) 67 Cal.App.3d 100, 106.  Here, Objectors respectfully submit that the class

19   mechanism is being employed for the benefit of the class action attorneys and not for the benefit

20   of the courts or the class.

21   This case cannot be settled upon the terms proposed by the parties.  First and foremost,

22   there is a serious conflict of interest for class counsel Johnson & Bottini, LLP inherent in the

23   settlement.  Class counsel's employment agreement with AHS violates the Rules of Professional

24   Conduct and presents a prohibited dual representation and conflict of interest, resulting in

25   inadequate representation and compulsory disqualification.  The case cannot be settled on any

26   terms until the Court resolves the conflict of interest and adequacy of representation issues.

27

28   [1]   Objectors have provided to the parties under separate cover the information such as home addresses necessary to determine their membership in the class.

1

1    The substantive terms of the settlement reinforce the conclusion. They are, uniformly and

2    categorically, of no benefit to the class.  The settlement waives individual class members' best

3    claims in favor of a presumptively biased, complicated process for claims review that leaves class

4    members alone to advocate their interests against AHS – with AHS making the decisions.  The

5    settlements provisions do not require AHS to provide any distinct benefit to any class member and

6    are left almost entirely to the discretion of AHS.  There is no injunctive relief or other requirement

7    that AHS change its business practices in any tangible way going forward.

8    Though class members get little by the settlement, they stand to lose much and are in fact

9    made worse off by this settlement.  It burdens class members with releases, notice-of-intent-to-

10   sue requirements, and "waiting periods" that they are not presently subject to.  Class members

11   give up any claims and remedies, while AHS gets to apply whatever defenses it can imagine,

12   construing the facts and applicability of those defenses in the light most favorable to itself.  The

13   procedures and requirements for participating in the process are complicated.  The releases are

14   complex and far-reaching, and their violation is subject to a one-way fee shifting clause against

15   class members.  Worse, the releases impermissibly purport to release prevent class members from

16   bringing or participating in consumer class actions unrelated to this case.  It is telling that, though

17   AHS is the defendant here, the settlement contains far more proscriptions and injunctions upon

18   class members than it does against AHS.  Thus, even if there were not a threshold problem with

19   adequacy of representation compelling denial of final approval, there would be substantial reason

20   to refuse approval of the proffered settlement on the merits.

21   The Lee/Pentz Objectors therefore make the following specific objections to the

22   settlement and any request for attorneys' fees.[2]

23   **II.    CLASS COUNSEL HAVE CREATED A CONFLICT OF INTEREST THAT
         REQUIRES THEIR DISQUALIFICATION, PRECLUDES A FINDING OF**

24   **ADEQUATE REPRESENTATION, AND REQUIRES REJECTION OF THE
         SETTLEMENT**

25

26   [2]    The Lee/Pentz objectors are aware of other objections filed by class members

27   Pettitt and Arrington, have coordinated their submissions so that the objections are
     complementary and not redundant, and therefore and hereby join and adopt those objections

28   without restating their contents here.

2

**A.     Class Counsel's Agreement to Advise AHS is a violation of Rules of Professional Conduct and a Prohibited Conflict of Interest**

Under the proposed settlement, class counsel have contracted to periodically meet with AHS representatives "for a confidential face-to-face discussion of Contractor Relations Practices and opportunities for making improvements thereto." (SS 5.3(a) at 15:2-8.) No further information about class counsel's guiding principles is provided, save the instruction that the Contractor Relations Initiative "will recognize that AHS is a for-profit enterprise that must operate profitably and compete free from undue impediments in a highly dynamic competitive environment." (SS 5.3(d), at 14:26-15:1.)

AHS is not required to heed class counsel's advice. And class counsel have no authority, under the SS, to do anything about it if they discover AHS proposing to violate the law. On the contrary, the SS essentially purports to set up an attorney-client relationship between AHS and class counsel. Apart from class counsel providing advice to AHS, the SS also imposes duties of confidentiality and restrictions upon their practice:

- Class counsel are "bound to treat all communications and related materials coming from or directed to AHS as strictly confidential AHS proprietary commercial information...." (SS 5.3(f) at 16:8-10);

- Class counsel are "precluded from accepting representations inconsistent with Class Counsel's role in carrying out this Settlement." (SS 5.3(f) at 16:10-11);

- Class counsel may not, for a two-year period, "represent any Person nor act as principal in any Suit against AHS or any other Released Party nor encourage, assist or participate with any Person in so doing." (SS 5.3(g)(1) at 16:14-16);

- Class counsel may not, for a two year period, "represent any Person nor act as principal in any Suit against any AHS contractor based on events arising from an AHS service call and/or the contractors' business relationship with AHS." (SS 5.3(g)(2) at 16:17-19); and

- Class counsel may not, for a two-year period, "represent, provide legal advice, or otherwise help or advise in any manner any AHS Competitor except with express written permission from AHS." (SS 5.3(g)(3) at 16:20-22.)[3]

In return for accepting these restrictions and for rendering legal advice and services to AHS, AHS is to pay class counsel $250,000 in monthly installments over two years. (See Exhibit

---

[3]     These same restrictions are imposed by reference upon the class representatives, apparently as consideration for their agreed-upon incentive payments. (SS 5.4 at 17:3-6.)

3

1  F to SS at 2-3.)

2      This may be the first known class litigation in which plaintiffs' counsel have openly sought

3  to switch sides to represent a defendant while still purporting to represent the class.  What class

4  counsel proposes is a prohibited conflict of interest, a violation of several rules of professional

5  conduct, and results in a compulsory finding of inadequate representation in this case and

6  automatic disqualification of plaintiff and his chosen counsel.

7      First, apart from class counsel's duties to the class, this arrangement violates California

8  Rule of Professional Conduct 1-500, regarding restrictions on attorneys' rights to practice. It is

9  contrary to the rule even to suggest such restrictions, much less agree to them.

10     More fundamentally, Class Counsel's employment contract with AHS is a prohibited dual

11 representation and conflict of interest.  Here, class counsel purport to represent the class.  Yet it

12 appears that they used their bargaining position in the settlement negotiations to secure

13 employment for themselves by the defendant in the case AHS, while otherwise permitting AHS to

14 negotiate a settlement in which it has few material obligations other than paying class counsel.

15     Lawyers may not concurrently represent clients who have divergent interests or actual or

16 potential conflicts of interest. (*Cal West Nurseries, Inc. v. Superior Court* (2005) 129 Cal. App.

17 4th 1170, 1175; *Gilbert v. National Corp. For Housing Part.* (1999) 71 Cal.App.4th 1240,

18 1253.)  The rule applies not just to dishonest practitioners, but also prevents

19         the honest practitioner from putting himself in a position where he may be required
            to choose between conflicting duties, or be led to attempt to reconcile conflicting
20         interests, rather than to enforce to their full extent the rights of the interest which
            he should alone represent.
21
22 (*Id.*, quoting *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 289.)

23     The attempt to create a concurrent representation here is grounds for automatic

24 disqualification of class counsel for a conflict of interest and, perforce, a finding of inadequacy of

25 representation.   Even outside of class actions, and with few exceptions, the rule of

26 disqualification in concurrent representation cases is *per se* or automatic even when the clients'

27 respective matters have nothing in common and there is no risk of disclosure or misuse of

28

4

1    confidential information. (*Flatt*, 9 Cal.4th at 284.)[4]

2        In class action cases the disqualification standard is more stringent.  First, the major

3    exception to the concurrent representation prohibition – informed consent by the clients involved

4    – is not available in class actions. (*Apple Computer Inc. v. Superior Court* (2004) 126

5    Cal.App.4th 1253, 1274, n.7 ["Unidentified class members cannot waive a potential conflict of

6    interest."] quoting *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1,

7    12.)  Second, the disqualification rule is applied more vigorously in class actions because class

8    counsel are held to a "heightened standard" of conflict avoidance:

9          "[I]n a class action context, disqualification is more likely because putative class
          counsel are subject to a 'heightened standard' which they must meet if they are to

10         be allowed by the Court to represent absent class members." As explained by one
          district court:

11              The fact that [counsel] seek to represent a national class of
             plaintiffs makes the decision to disqualify even more compelling . . .

12              In the class action context, the Court has an obligation to closely
             scrutinize the qualifications of counsel to assure that all interests,

13              including those of as yet unnamed plaintiffs are adequately
             represented. See Fed.R.Civ.P. 23(a)(4) (representative parties must

14              "fairly and adequately represent the interests of the class").

15    (*Huston v. Imperial Credit Commercial Mortg. Inv.*, 179 F. Supp.2d 1157, 1167, quoting

16    *Palumbo v. Tele- Communications, Inc.* (D.D.C. 1994) 157 F.R.D. 129, 132-33.)  Counsel are

17    held to this heightened standard because, "in certifying a class action, the Court confers on absent

18    persons the status of litigants and 'creates an attorney-client relationship between those persons

19    and a lawyer or group of lawyers.'" (*Palumbo*, 157 F.R.D. 129, 132-33 [citations omitted],

20    quoted with approval in *Cal Pak Delivery*, 52 Cal.App.4th at 11-12 and followed in *Huston*, 179

21    F.Supp.2d at 1167.)  Finally, particularly in nationwide class cases receiving public attention and

22    scrutiny, courts are concerned with the public perception of the "administration of justice and in

23    the integrity of the bar" and the "integrity of our judicial process." (*Comden v. Superior Court*

24    (1978) 20 Cal.3d 906, 915; applied, *Cal Pak Delivery*, 52 Cal.App.4th at 13.)  All of these

25    principles are at stake here, and require the disqualification of plaintiffs' counsel from representing

26

27

28        [4]    See Cal. Prof. Cond. Rule 3-300 ("Avoiding Interests Adverse to a Client") and
   Rule 3-310 ("Avoiding the Representation of Adverse Interests").

5

1 | the class.[5]

2 | **B.     The Conflict of Interest Results in a Failure of Adequate Representation and a Consequent Failure of Due Process**

3 |

4 | Adequacy of representation is an indispensable component of due process to the class. (*La*

5 | *Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871-72.) "To satisfy constitutional due

6 | process concerns, absent class members must be afforded adequate representation before entry of

7 | a judgment which binds them." (*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1020

8 | citing *Hansberry v. Lee* (1940) 311 U.S. 32, 42-43.)   Adequacy of representation is absent when

9 | plaintiffs or their counsel have conflicts of interest with other class members. (*Id.*)

10 | A failure of adequate representation cannot be tolerated, nor can it be replaced by the

11 | involvement and oversight of the Court. (*Apple Computer*, 126 Cal.App.4th at 1272 ["[J]udicial

12 | oversight is not a realistic substitute for enforcement of the fair and adequate representation

13 | requirement."] quoting *Cohen v. Bloch* (S.D.N.Y. 1980) 507 F.Supp. 321, 325.)   The lack of

14 | adequate representation is cause for dismissal of the case or the replacement of the inadequate

15 | plaintiff or attorneys with adequate representatives.  (*Id.*)[6]  Nor is the outcome different if the

16 | Court believes that the settlement itself is adequate notwithstanding the attorneys' misfeasance: an

17 | otherwise adequate settlement cannot substitute for adequate representation.  On the contrary, in

18 | *Amchem Prods. Inc. v. Windsor* (1997) 521 U.S. 591, 621, the Supreme Court explicitly held that

19 | questions of Plaintiffs' adequacy are antecedent to issues of a settlement's fairness: unless the

20 | criteria for certification of a settlement class are met, a judge cannot even proceed to consider a

21 |     [5]     The problem class counsel have created here cannot be cured by means other than
22 | disqualification.  A law firm cannot avoid disqualification by, for example, attempting to
withdraw from representation of one of the clients. (*Flatt*, 9 Cal.4th at 288. See also *American*
23 | *Airlines v. Sheppard* (2002) 96 Cal.App.4th 1017, 1037 [attempt to convert present client into
former client "may itself be a breach of loyalty."].)
24 |

25 |     [6]     Other counsel presently representing the class, who might seek to carry on despite
the disqualification of lead class counsel, are in jeopardy of being disqualified as well.  See
26 | *Sipper v. Capital One Bank* (C.D. Cal. 2002)2002 WL 398768; 2002 U.S.Dist. LEXIS 3881. In
*Sipper*, there were two assertedly "untainted" plaintiffs, who were represented by co-counsel not
27 | a party to the conflict.  But the district court also disqualified co-counsel and the plaintiffs, even
though (or arguably, because) they were unaware of the conflict, in part because they failed to
28 | detect the conflict and then failed to recognize its seriousness on briefing it.  *Id.* at *4.

6

1  settlement's merits. (*Id.*)

2  **III.    THE SETTLEMENT IS NOT FAIR, ADEQUATE, AND REASONABLE**

3       As noted above, the patent failure of adequate representation should prevent this Court

4  from even proceeding to the merits of the settlement. But the terms of the settlement itself are so

5  far from reasonable that they actually reinforce the finding of inadequate representation.

6       There are several factors trial courts consider in analyzing proposed class settlements.

7  (See *Kullar v. Foot Locker Retail* (2008) 168 Cal.App.4th 116, 128, citing *Dunk v. Ford Motor*

8  *Co.* (1996) 48 Cal.App.4th 1794, 1801.) Most fundamentally, however, the amount offered in

9  settlement must be judged against the strength of plaintiffs' claims on the merits. (*Kullar*, 168

10  Cal.App.4th at 120 ["[a]n informed evaluation cannot be made without an understanding of the

11  amount that is in controversy and the realistic range of outcomes of the litigation."].) In this case,

12  the analysis fails from the outset: there is no "amount" offered in settlement, but rather a series of

13  "benefits" that are either effectively worthless or actually pose a detriment to class members,

14  leaving them worse off than they would have been without the settlement.

15      **A.    The Proposed Relief for "Review Desk" Claims is Illusory**

16       As discussed in more detail in the Pettitt Objection filed herewith, AHS is an overtly

17  prejudiced adjudicator of class members' individual claims. Given its expressed belief in the

18  integrity of its claims process, it will be surprising if many class members are afforded any reversal

19  or revision of their claim. But even if AHS does determine that "additional contractual benefits

20  are appropriate" as a consequence of a class member's submission, it has complete discretion on

21  the remedy it will provide, "at AHS's sole option." (SS 5.1(i), at 11:27.) The remedies that may

22  be provided at AHS's sole option include, among other terms:

23          (3)    Waiver of the contract fee (or some other discount) for one-year of
coverage under a FlexPlan Contract; or

24

25          (4)    Any other compensation deemed to be reasonable by AHS.

    (SS 5.1(i)(3)-(4), at 12:13-15.)

26

27       In other words, the settlement permits AHS to settle valid claims by offering ***anything*** it

  deems reasonable, including a nominal discount on a new FlexPlan contract. This possibility

28

1  renders this aspect of the settlement little more than a "coupon" and a marketing opportunity for

2  AHS. For present or former customers who do not wish to deal further with AHS, this is

3  worthless.

4       Worse, the import and effect of the claim process is confusing. The SS is unclear about

5  what happens if a class member disagrees with AHS's determination. On the one hand, as

6  discussed herein, the release language throughout the settlement is broad, repeated, and

7  draconian. On the other, the SS seems to anticipate that class members who did not make a

8  submission to the review desk may might still bring suit as long as they notify AHS and wait the

9  required time period (SS 5.1 (n) at 13:7-22.) Why they should have to do this is completely

10  inexplicable. Class members who make submissions can also apparently sue, as well (SS 5.2(o)

11  at 13:23-14:3.) But class members who "receive money or other benefits as the result of a

12  Submission" in which case they are bound and cannot sue. (SS 5.2(m) at 13:3-6.) Is a claimant

13  whose submission is approved and is "awarded" nominal "relief" by AHS bound, though they

14  continue to disagree? The settlement is not clear, yet the stakes may be quite high for many class

15  members.

16      **B.**    **The"FlexPlan Offer" Does Not Benefit the Class**

17       The second relief provision of the settlement provides that AHS will "make available to all

18  Settlement Class Members in good standing an opportunity, upon the expiration of their current

19  Home Warranty Contract, if any, to enter into a FlexPlan Contract." (SS 5.2 at 14:5-7.)    But

20  one does not have to be a class member to get that benefit. Any member of the general public

21  presently has the "opportunity" to enter into a FlexPlan contract merely by logging on to

22  www.ahsflexplan.com. There, anyone can fill in the online form and be offered a FlexPlan

23  contract evidently identical to those that will be "offered" to class members.

24       The fact that AHS has devised a new product to capitalize on covering formerly-excluded

25  items for an extra charge is not a benefit to the class. AHS was certainly not required by this

26  settlement to introduce FlexPlan, nor is it even required to give a specific price discount to class

27  members that is not otherwise available to the general public. The SS states that:

28       Nothing in this Agreement shall limit or preclude AHS from determining in its sole

8

---

1    discretion the prices at which coverage, including those described above, shall be
2    offered to Settlement Class Members or other customers or prospective
     customers.

3    (SS 5.2(b), at 14:22-24.)  "Requiring" AHS to do for the class what it is already doing for the

4    entire world – offering FlexPlan contracts at prevailing prices – does not provide any actual

5    consideration to the class and should not be considered as a benefit supporting the settlement.

6    **C.    The "Contractor Relations Initiative" is Illusory**

7          The third purported benefit of the Settlement is the "Contractor Relations Initiative",

8    under which AHS will periodically discuss with class counsel "opportunities for making

9    improvements" to its "Contractor Relations Practices." (SS 5.3(a) at 15:5-7.)  The most

10   astonishing aspect of this element of the Settlement is the fact that Class Counsel negotiated it at

11   all.  Nevertheless, it is also important to note the illusory nature of this feature of the settlement.

12   In this case, plaintiffs complained that:

13        Defendants adopted a uniform, consistent policy which it applied uniformly to
          Plaintiffs and the Class, pursuant to which Defendants failed to adopt and
14        implement any standard for the investigation of claims, and instead merely
          contracting [sic] with third party laborers to perform house calls and instructing
15        [sic] such laborers to act in Defendants' interests to the detriment of Plaintiff and
          the Class.
16
     (Complaint, ¶66 at 12:7-11.)  Plaintiff sought an injunction enjoining defendants "from continuing
17
     the unlawful conduct alleged herein, and requiring Defendants to properly adjust all claims
18
     submitted by the Class." (Complaint, Prayer for Relief, subsection C, at 12:22-24.)
19
          Although the Contractor Relations Initiative has the look and feel of prospective injunctive
20
     relief, it is not.  In fact, AHS makes no specific commitment at all to change its practices, either
21
     by its own initiative or by the suggestion of its new lawyers, erstwhile class counsel.  Under this
22
     provision, AHS is bound only to provide information confidentially to class counsel and to receive
23
     advice from them.  The SS makes clear that AHS need not actually devise nor implement any
24
     changes to its contractor relations at all.  On the contrary, the sole guiding principle of the
25
     Initiative is "that AHS is a for-profit enterprise that must operate profitably and compete free
26
     from undue impediments in a highly dynamic competitive environment." (SS 5.3(d), at 14:26-
27
     15:1.)
28

                                              9

1

**D.     The Settlement Seeks to Impose Burdens and Detriments to the Class That
Are Unlawful and Far Outweigh Any Possible Benefit**

2

3       Courts should pay close attention to the release in class action settlements to ensure that

4   they do not release claims unrelated to the litigation at hand: "[a]ny attempt to include in a class

5   settlement terms which are outside the scope of the operative complaint should be closely

6   scrutinized by the trial court to determine if the plaintiff genuinely contests those issues and

7   adequately represents the class." (*Trotsky v. Los Angeles Federal Savings and Loan Association*

8   (1975) 48 Cal.App.3d 134, 146-48].)

9       In this case, the purported release of claims in the SS is very broad.  Though the

10  Settlement itself does nothing to require any change in or reformation of AHS's business

11  practices, the release includes a release of any "prospective injunctive relief to mandate, cease,

12  reform, or otherwise modify in any way the Released Parties' business practices...." (SS 10.1 at

13  24:3-5.)  Beyond merely releasing the claims that were or could have been brought in this case,

14  the release purports to include any claim based upon "AHS's policies procedures, and/or

15  practices" respecting any "Home Warranty Contracts concluded and events occurring during the

16  class period", with an enumeration of activities so broad that they cover nearly the entire range of

17  AHS's business activities and practices, not just those litigated and genuinely contested in this

18  case.  (SS 10.1 at 24:4-16.)

19      As broad as the standard release is, however, the SS contains a novel feature: an

20  additional, broader release of class and representative action claims unrelated to this litigation.

21  Paragraph 10.2 of the SS purports to release:

22          any and all Claims, including for damages based on theories of breach of express
23          contract, breach of implied contract, reformation of contract, breach of warranty,
            fraud, misrepresentation, concealment, failure to disclose, fraudulent
            misrepresentation, negligent misrepresentation, bad faith failure to pay claims,
24          breach of covenant of good faith and fair dealing, ***breach of local, state, or federal
            consumer protection laws or regulations***, including Section 1750 and associated
25          provisions of the California Civil Code and Sections 17200, 17500, and associated
            provisions of the California Business and Profession [*sic*] code and other similar
26          provisions of the laws of California and of other states, ***or any other legal theory
            whatsoever***, based on events occurring during the Class Period and ***allegedly
27          caused by AHS's generalized policies, procedures, and/or practices*** as described
            in paragraph 10.1;

28  (SS 10.2 at 24:21– 25:3 [emphases added].)

10

1    The provision makes clear it is directed at foreclosing class actions based upon allegations

2  of common conduct and business practices:  it expressly excepts from the release any customer

3  claim that is "individualized and does not depend upon any allegation of generalized AHS policies,

4  procedures, practices, or any other reasonably disputed allegation of fact that applies in common

5  across any subset of the class."  (SS 10.2, at 25:3-7.)  For good measure, the SS promises that

6  class members will not "participate in any Suit with respect to any Released Party arising from or

7  related to the Claims in equity released in paragraph 10.1" for two years, and continues that

8  "[e]ach settlement class member covenants not to participate in any Suit against the Defendants

9  during this [two year] period unless such Settlement Class Member has first complied with the

10  terms hereof."  (SS 10.3, at 25:8-15.)[7]

11    This presents an unprecedented overreach in a class settlement.  Plaintiffs purport to

12  release and to bind the class not to pursue class claims based upon "any...legal theory whatsoever"

13  and that are completely unrelated to this case, and to bind class members to a covenant not to

14  "participate" in any litigation against AHS for two years.  Should class members somehow run

15  afoul of these proscriptions, they could lose much more than they have at stake in this case.  The

16  SS contains a one-way fee shifting clause against class members, holding that they "covenant and

17  agree" that:

18    if any Claims are filed against any Released Party that violate any injunction
     entered by the Court in this Action, the Released Party shall be entitled to
19    reimbursement from the Settlement Class Member of any reasonable attorneys
     fees, expenses or costs actually incurred in seeking and obtaining the enforcement
20    of such injunction as against such Claim.

21  (SS 11.4 at 27:12-16.)  And class members won't be able to count on class counsel for help.  On

22  the contrary: "Named Plaintiffs and Class Counsel will cooperate fully and completely. . .in

23  obtaining the dismissal of any and all subsequent Suits against the Released Parties asserting

24  Released Claims."  (SS 7.1 at 18:8-11.)

25    These provisions render this settlement beyond approval.  A provision in a contract that

26

27    [7]    "Suit" is defined broadly to include any lawsuit, suit, action , proceeding, litigation,
     legal representation or complaint brought or pending in any federal, state, administrative, judicial,
28  arbitral, or other forum, whether direct, derivative or representational."  (SS 2.43 at 8:23-25.)

11

1    purports or operates to frustrate consumer class actions is, under California law, unenforceable.

2    (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 457; *Discover Bank v. Superior Court* (Boehr)

3    (2005) 36 Cal.4th 148, 161; *Aral v. Earthlink, Inc.* (2005) 135 Cal.App.4th 544, 564.)

4    Furthermore, the CLRA has an express anti-waiver provision:  plaintiffs cannot settle CLRA cases

5    they have not brought. (Cal. Civ. Code §1751.)  Neither the protections of the CLRA nor the

6    UCL generally may be waived by contract because the public interest is involved. (Civ. Code, §

7    1668.) Therefore, a settlement purporting to waive such protections unrelated to resolving the

8    allegations of this case is void as against public policy.

9        This problem is more than academic.  AHS recently settled another class action in federal

10   court in California relating to an alleged scheme to sell air conditioning upgrades to its customers.

11   *Ward v. American Home Shield Corp.* USDC CDCA No. CV-07-01380 GW (PJWx).  See Ward

12   Notice of Settlement available at :

13   http://wardclassaction.com/downloads/Notice_Class_Action_Settlement.pdf.   That case – the

14   allegations of which are distinct from this case – would have been foreclosed by the release in this

15   case.   In fact, the SS can be construed to affect class members' ability to even make a claim in the

16   settlement of that case, as such class members would arguably be "participating" in the case in

17   contravention of the SS.

18   **IV.    ATTORNEYS' FEES**

19       The settlement proffered here should not be approved, so the issue of attorneys fees may

20   well prove to be premature.  As it is, the issue of attorneys' fees arrangements mainly go to the

21   merits of the settlement because they establish a conflict of interest and collusion in the settlement.

22   Nevertheless, even if the settlement were taken at face value, the fees requested are so high

23   relative to the benefits to the class that they remain highly objectionable.

24       **A.    There Is as Yet No Support for Any Fee Award to Class Counsel**

25       The settlement provides that AHS will not oppose a fee request by class counsel up to

26   $2.5 million, exclusive of the employment arrangement.  Class counsel have not yet filed their fee

27   application, which is not due until after the date for objections.  As such, class members have no

28   clue as to the theory of fee recovery class counsel will press to justify the amount to be requested.

1    Yet class members must have information about the fee to be paid sufficient for them to review
2    and comment upon the fee request. (*Rebney v. Wells Fargo Bank, NA* (1990) 220 Cal.App.3d
3    1117, 1144.)

4         To the extent that plaintiffs intend to argue for a fee measured as a percentage of a fund,
5    the fee request is objectionable because there is no fund in this case. It is possible under the
6    settlement that some class members will get cash relief, but that amount would have to approach
7    $10 million before the requested $2.5 million would be appropriate.

8         To the extent that plaintiffs intend to rely upon statutory fee-shifting, the fee is also
9    objectionable. Such statutes require plaintiff to "prevail" (e.g., the CLRA, Cal. Civ. Code
10   §1780(e)) or otherwise "confer a significant benefit on a large group of people" (Cal. Code Civ.
11   Proc. §1021.5) and there is serious question as to whether plaintiffs here could qualify for fee
12   shifting under any theory given the settlement they have proposed. As noted above, the
13   monetary value of the settlement to the class could well be nothing at all. Nor has AHS agreed to
14   any specific changes in its business practices. In fact, the settlement might better be described as
15   "conferring a detriment" upon the class, which does not support fee recovery.

16        **B.    The Conflict of Interest Puts Class Counsel's Entire Fee in Jeopardy**

17        In this particular case, there is an additional objection to attorneys' fees based upon the
18   conflict of interest. A conflict of interest that requires disqualification of the attorneys results in
19   the presumption that they are not entitled to any fees at all. (*Cal Pak Delivery*, 52 Cal.App.4th at
20   14, n.2.) The exception to the rule is that an attorney may claim fees in *quantum meruit* only for
21   services provided before the conflict arose and the ethical breach occurred. (*Jeffry v. Pounds*
22   (1977) 67 Cal.App.3d 6, 12.) That would undoubtedly amount to much less than class counsel
23   evidently intend to seek in this settlement.

24   **V.    CONCLUSION**

25        This settlement is collusive, and manifestly so. It leaves class members alone to litigate
26   their individual claims, before an admittedly prejudiced adjudicator, who may well reward valid
27   claims with a sales pitch for more of the very same service that caused this litigation in the first
28   place. AHS is not required to distribute a dime of cash relief under this settlement, save to the

13

1    representative plaintiffs and Class Counsel. Nor is AHS required to reform its business practices
2    or conduct in any material way. Instead, it is apparent that AHS regards the settlement primarily
3    as a process to eliminate its outstanding liability, frustrate pending and future consumer suits
4    against it, and to pitch existing and former customers additional coverage pursuant to its newly
5    rolled-out warranty product, FlexPlan. Meanwhile, the lawyers who filed the case on behalf of
6    the class and engineered this proposed settlement are to be rewarded, retained, and restrained by
7    AHS. This Court should refuse to accord approval to this settlement, and should instead take all
8    necessary measures to ensure adequate representation of the absent class in the case.

9                                                         Respectfully submitted,

10

11   DATED:        March 3/, 2009

                                                         J. Garrett Kendrick
12                                                       KENDRICK & NUTLEY
                                                         1055 E. Colorado Blvd., 5th Floor
13                                                       Telephone: (626) 204-4060
                                                         Facsimile: (626) 204-4061
14

                                                         On behalf of Objecting Class Members
15                                                       Sharon Ann Lee, John and Connie Pentz

16   Signed:    3/31/09

17

18

     Objecting Class Member Sharon Ann Lee
19

20

21

22

23

24

25

26

27

28

                                            14

---

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of

eighteen (18) years and not a party to the within action; my business address is 1055 E. Colorado

Blvd., 5th Floor, Pasadena, CA 91106.

On March 31, 2009, I served a true and correct copy of the following document(s):

**PRELIMINARY OBJECTION TO CLASS ACTION SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES; NOTICE OF INTENTION TO APPEAR AT FINAL APPROVAL HEARING**

by causing to be hand delivered an accurate copy of said document on the persons listed below.

Francis A. Bottini, Jr.
JOHNSON & BOTTINI, LLP
655 W. Broadway, Suite 1400
San Diego, CA 92101

Attorneys for Plaintiff

Martin R. Boles, Esq.
KIRKLAND & ELLIS
777 South Figueroa Street
Los Angeles, CA 90017

Attorneys for Defendants

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on March 31, 2009.

J. Garrett Kendrick