FILED

2010 Feb-26  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FORT THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | )CIVIL ACTION CV-07-P-1928-S |
| | ) |
| v. | ) |
| | ) |
| AMERICAN HOME SHIELD CORPORATION, | ) ) |
| | ) |
| Defendant. | ) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF APPROVAL OF CLASS ACTION SETTLEMENT

## I.

## INTRODUCTION

This is a nationwide class action case involving a class of over 4 million consumers who either were or are customers of defendant American Home Shield Corporation ("AHS").  After over two years of contentious litigation and marathon settlement negotiations, AHS has agreed to settle this case on a basis that will require AHS to reconsider every previous warranty claim that any class member re-submits for review, with draconian penalties hanging as a threatening ax over AHS's head should it fail to

overturn prior decisions wrongfully denying or otherwise improperly treating claims.

With over 4 million notices mailed to the class members, it was inevitable that some of the lawyers who make it a practice to file objections to class action settlements filed objections to this one. A key indicator of the value of this settlement, however, is that only a handful of these professional objectors have found clients willing to object to this settlement. The objections themselves are in many instances vague and the objectors contradict each other. Moreover, as we explain below, most of the objections are based on factual predicates that are simply incorrect. This settlement provides unprecedented benefits to this large plaintiff class, and the Court should approve it over the vague, contradictory, and factually inaccurate protestations of these few objectors.

## II.

## ARGUMENT

### A.     The Settlement Provides Real and Concrete Benefits To The Class.

Many of the objectors, perhaps with the bad taste of the *Edleson* settlement still lingering in their mouths, contend that this settlement, like *Edleson*, provides benefits to the class that are merely illusory, and that AHS has essentially unchecked discretion in deciding how to treat claims.

Nothing could be further from the truth.  This Court, of course, has already

stated in its own terms the very real and concrete benefits the class here will

receive that were not given to the class in the failed *Edleson* settlement.

Order on Expedited Unopposed Motion for Injunction of Related

Proceedings Under All Writs Act p. 6 (enumerating in detail the things that

"are all valuable aspects of the proposed settlement that were not present in

respect to the *Edleson* settlement which was flatly rejected by the California

Superior Court Judge").

     Among other differences, of course, are the following:

> [T]he Faught settlement does not require class members
> to wait 120 days from submission to the Review Desk to file
> suit.  It does not provide AHS another built-in opportunity to
> sell additional contracts.  It includes additional safeguards to
> ensure notice goes to appropriate addresses.  It provides that
> Review Desk staff will have a minimum level of experience
> (i.e., three years).  It provides that if submissions are not being
> processed in a timely manner, AHS will provide additional
> staffing to the Review Desk.  It provides deadlines for AHS to
> make decisions on submissions.  It provides for an appeal
> process within the Review Desk.  It provides for explicit
> instructions to Review Desk employees regarding factors to
> consider in evaluating submissions.  And perhaps most notably,
> it provides for an award of attorneys fees or a monetary
> payment to those class members rejecting offers, filing suit, and
> recovering more than the amount offered by AHS's Review
> Desk in court, i.e., recovery of actual attorneys' fees up to
> $5,000 or three times the difference between the amount offered
> by AHS and the amount received in court, or a $1,000 lump
> sum.

Id.

Both from the standpoint of analyzing the differences between this settlement and the *Edleson* settlement as well as evaluating whether the Review Desk procedure provides a real benefit to the class,[1] there are two key provisions. The first provides a concrete and pro-class member standard for the Review Desk in evaluating one of the most important groups of claims, that is, the first-year lack of maintenance HVAC claims.  The first-year lack of maintenance HVAC claims, of course, were encompassed in the original *Faught* settlement before the expansion of that settlement in the wake of the California court's rejection of the *Edleson* settlement.

As to those claims, the Stipulation of Settlement provides:  "AHS personnel manning the Review Desk shall be instructed as set forth as follows:  Prior denials (in whole or in part) of claims relating to a failure of a covered heating or air conditioning system during the first year of a customer's contract with AHS *shall be overturned* if such claims were denied outright solely because of lack of annual maintenance . . ." Stipulation of Settlement Ex. A (emphasis supplied).  This absolute language is tempered somewhat by subsequent language allowing AHS to consider "evidence (of any type) of lack of maintenance in any time period which, in AHS's good faith judgment, is such as to rise to the level of abuse by

---

[1] These issues are inextricably intertwined because in *Edleson*, the Review Desk procedure in fact provided no benefit to the class because in that case, as opposed to in this case, the Review Desk's discretion was absolutely unfettered.

cumulative neglect." *Id.*   In turn, "abuse by cumulative neglect" is narrowly defined as "neglect of ordinary care, including, if applicable, maintenance, by the current or former homeowner (or combination of former homeowners) of sufficient gravity and over a substantial period of time such that it actually caused the breakdown of the item." *Id.*

Not a single objector addresses this provision.  How could they?  It is impossible to reconcile some objectors' claims that the settlement contains no standards for the Review Desk to follow with this provision stating that the Review Desk "shall" reverse the previous denial of claims in this important category unless a narrow and difficult-to-prove exception applies.

The second provision that puts to rest any concern that the Review Desk will operate with unfettered discretion, a provision with no analogy in the *Edleson* settlement, is the one mentioned by the Court above allowing class members to sue in court if dissatisfied with the Review Desk's decision, and to recover a lump sum penalty of $1,000 in most circumstances, or an attorneys' fee with generous caps in the case of first-year lack of maintenance HVAC claims. [2]  This reversal of the American

---

[2] The reason first year lack of maintenance HVAC claims are treated differently is twofold.  First, these claims are the ones involving the most money since the HVAC is typically the most expensive system in a house to repair or replace.  Second, as the plaintiffs alleged in their original complaint, the merits of the breach of contract claim for first year lack of maintenance claims is grounded in the clear language of the uniform AHS warranty language, which squarely precludes the denial of a claim for failure to do annual maintenance during the first year of the contract – how can a customer be faulted for failing to do

Rule in any post-submission lawsuit will operate as a formidable deterrent to any bad faith conduct by the Review Desk.  AHS will certainly think twice, for example, about denying a $500 claim and risk having a surcharge of $1,000 automatically added to the tab.

Additionally, some objectors contend that a post-submission suit is an ineffective deterrent because the claims are too small to bring in court, and counsel could not be found to represent plaintiffs bringing such small claims.  Attorneys in the office of Class Counsel have spoken to attorneys around the country, who have confirmed that, in view of the attorneys' fees and penalty provisions contained in Section 5.2(Q) and (R) of the settlement agreement, they would in fact accept the representation of class members who are dissatisfied with the benefits offered by the Review Desk.  (Ex. A, Declaration of Tyler Vail).

Those objectors who complain that the release is too broad in view of the relief afforded by the settlement clearly have not carefully read the settlement agreement (a problem that permeates most of the objections).   In fact, read together, the release provisions retain all of the class members' individual claims, and only serve to prohibit them from bring collective or class actions.  The releases are contained in Paragraphs 10.1 and 10.2 of the

---

something that is required to be done once a year when a year has not yet elapsed?  <u>See generally</u> Class Action Complaint.

Stipulation of Settlement.  Each of these releases begins with the following language:  "Except as provided in Paragraphs 5.2(P) and 5.2(Q)."  Paragraph 5.2(P), in turn, authorizes the bringing of a lawsuit based on a "Denied Claim" by class members who do *not* make a submission to the Review Desk.  Paragraph 5.2(Q) authorizes the bringing of a lawsuit based on a "Denied Claim" by class members who do submit claims to the Review Desk but are dissatisfied with the relief offered to them by the Review Desk.  Neither paragraph 5.2(P) nor 5.2(Q) place any limit upon the types of claims or legal theories that may be asserted based on a "Denied Claim."  Moreover, the Stipulation of Settlement broadly defines a "Denied Claim" to include any situation where a class member requested service from AHS, and "repair or replacement services were denied by AHS, *in whole or in part*, *or* where the Settlement Class Member deemed inadequate a cash payment they received from AHS in lieu of repair or replacement services."  Stipulation ¶ 2.18.

The net effect of Paragraphs 10.1 and 10.2, read together with Paragraphs 5.2(Q) and 5.2(P), is to preserve all claims or legal theories any class member may have against AHS, with the sole limitation being that they cannot bring those claims as a class action or other multi-party action.  Since

this is, after all, the settlement of a class action, a provision prohibiting class members from bringing future class actions is a reasonable one.

Thus, the settlement is a far cry from *Edleson*, where far broader releases were given by the class members in exchange for a Review Desk operating without even the restraints imposed by the original warranty contract. In stark contrast, here the class members waive no rights at all other than the right to bring a class action, and in exchange they receive the right to have the Review Desk review their claims using concrete, meaningful criteria requiring the Review Desk in many instances to reverse prior claim denials, with the threat of substantial attorneys' fees and penalties being awarded against AHS if the Review Desk gets it wrong.

### B.     The Fee Requested Is A Modest One.

Some of the objectors object to the fee that plaintiffs' counsel has requested in this case. Class Counsel has submitted a separate fee petition and supporting evidentiary materials and a memorandum of law, but in addition to the arguments that have already been made in support of the fee request, Class Counsel would like to add additional matters that respond to some objectors' claims that the fee request is excessive.[3]

---

[3] These matters also refute the meritless claim advanced by the Edleson attorneys that Class Counsel have not been responsive to class member inquiries.

Class Counsel correctly anticipated that the large class notice mail-out would generate numerous inquiries from the class members.  Accordingly, prior to the class action notice being mailed, Class Counsel arranged for state of the art telephone, email and facsimile systems to be put into place. (Ex. B, Davis Dec. ¶ 2).  The telephone system functioned in such manner that all calls that were not answered by a live person went to voice mail.  (*Id.* ¶ 3).  The voice mail system had for all practical purposes an unlimited capacity, and for all practical purposes, unlimited calls could be received simultaneously.  (*Id.*).  In addition to voice messages, the system captured the caller-ID of each call.  (*Id.*).  The system provided information as to the day and time each call was received.  (*Id.*).  It produced summary charts which were downloaded into usage spreadsheets.  (*Id.*).

The facsimile system also had, for all practical purposes, unlimited capacity, and for all practical purposes unlimited numbers of faxes could be received simultaneously.  (*Id.* ¶ 4).  Similarly, Class Counsel arranged that essentially unlimited e-mails could be received by their office.  (*Id.* ¶ 5).

Between December 19, 2009 and February 18, 2010, Class Counsel received 12,727 telephone calls related to the Faught Class Settlement, or an average of 205 calls per calendar day.  (*Id.* ¶ 6).  Class Counsel received 1,289 e-mails, and 307 faxes during the same two month time period.  (*Id.* ¶

7).   With the exception of a very small percentage of calls, faxes, and e-mails that required no response, every call was answered live or returned, every e-mail received a reply, and every fax received a response.  (*Id.* ¶ 8). Some necessitated multiple calls or responses.  (*Id.*).

The personnel who worked exclusively on responses included two attorneys and four legal assistants.  (*Id.* ¶ 9).  One of the legal assistants was Spanish speaking, and primarily responded to Spanish speaking class members.  (*Id.*).  In addition to the lawyers and legal assistants who worked exclusively on the matter, six additional attorneys spent very substantial amounts of time on responses as did four other legal assistants.  (*Id.*).  The efforts in responding to calls, e-mails, and faxes included evenings and weekends.  (*Id.*).   During the time period between January 1, 2010 and February 12, 2010 the exclusively dedicated attorneys recorded 546 hours, the exclusively dedicated legal assistants recorded 704.5 hours and based on inquiry a reasonable estimate of the other attorneys time working on the case during the same time period is 720 hours and other legal assistants' time is 240 hours.  (*Id.* ¶ 10).

According to the most recent Billing Rates and Practices Survey Report published by Incisive Legal Intelligence, the average billing rate for U.S. attorneys nationwide is $284 per hour.  (*Id.* ¶ 11).  Using this rate and

only $100 per hour for legal assistants, the value of the work being performed by the attorneys for the class since the date of the class notice exceeds $300,000 per month.   (*Id.*).

After the postcard goes out opening the claims period, Class Counsel expects that the volume of calls, faxes, and e-mails will go up substantially and then that this higher volume of work will remain steady during the two years the claims desk may remain open.  (*Id.* ¶ 12).  Class Counsel expects the length and number of calls with each person will go up significantly. (*Id.*).  Thus, the value of services performed as calculated above will exceed $300,000 per month, and considering work before the postcard is mailed, the time period that counsel will expend legal services at that rate will exceed two years.  (*Id.*).

Viewed in this context, the $1.5 million cash fee that AHS has agreed to pay Class Counsel is a mere drop in the bucket.  Class Counsel will burn through that amount in five months flat at the current pace, and by the time the settlement administration is complete, it is reasonable to assume that Class Counsel will perform post-notice legal services to this class valued at in excess of $7,000,000.   Based on these additional facts, as well as the evidence and argument presented in support of Class Counsel's fee

application, the Court should award the requested modest attorney's fee as part of its approval of this settlement.

### C.   Here They Go Again – The Edlesons' Attorneys Continue Their Attack On This Settlement.

The Edlesons have requested to be excluded from the class, but their attorneys, the same ones who agreed to a much less valuable California settlement, have entered an appearance on behalf of other parties who object to the settlement in this case.  Tellingly, most of the arguments advanced by the Edlesons' lawyers are self-serving regurgitations of the arguments these lawyers have made on behalf of the Edlesons in this court and before the Eleventh Circuit, and when we say "self-serving," the "self" refers to the attorneys, not any AHS customer or the class.

Their first argument is their now-shopworn claim that the settlement in this case is "void" because, in connection with the California class settlement that was explicitly disapproved by the California court, AHS allegedly agreed to settle this case on a nationwide class basis only with the Edlesons' counsel, and to limit any settlement in this case to an Alabama-only settlement.  Since Class Counsel here were not parties to any agreements, we do not address who agreed to what and when, and leave that to AHS, who has already repeatedly briefed the issue.  Plaintiffs are

constrained to point out, however, that the Edlesons' lawyers' arguments on this point are entirely devoid of legal support.

The *Edleson* lawyers do not, for example, cite any authority for the proposition that a class action settlement agreement, which has to receive Court-approval in order to become effective, nevertheless continues to bind class members, including the Faughts, following the Court's explicit rejection of and refusal to declare the settlement valid. If that were the law, it would run counter to the basic notion that class action settlements must receive court approval in order to become effective. And if there were support for this non-sensical proposition, surely the *Edleson* lawyers would cite to it.

Likewise, the *Edleson* lawyers fail to cite any law for the proposition that an otherwise valid and enforceable contract is somehow "void" as to all parties when entering into that contract constitutes a breach of a prior contract with an entirely different party. It lacks legal support and flies in the face of common sense. It is certainly not the law, for example, that if I agree to sell my car to you, and subsequently agree to sell the same car to my brother, that the subsequent agreement to sell my car to my brother is void. Instead, it places me in the unenviable position of being in breach of contract no matter what I do, either as to the contract with you or my

brother.  Under the logic advanced by the *Edleson* lawyers, my brother

would have no remedy against me at all if I conveyed my car to you,

because in the fantasy world in which the *Edleson* lawyers live, the sale

contract between my brother and me was void at its inception based on the

previous sale contract between you and me – whether my brother knew

about it or not.   Again, if that ridiculous result were the law, one would

expect the Edleson lawyers to provide legal support for it.

 The sole citation that the Edleson lawyers provide in support of their

frivolous claim that this settlement is "void" is In re Stock Exchanges

Options Trading Antitrust Litig., 2005 U.S. Dist. Lexis 13734, *30

(S.D.N.Y. July 8, 2005).  The words "null and void" do appear in that

decision, but that is about the extent of its relevance here.  The Court there

simply enforced a provision *in the settlement agreement between the*

*plaintiffs and defendants in that case* that rendered the settlement agreement

void if certain conditions occurred.  Since those contractually agreed-upon

conditions occurred, the Court gave effect to the explicit terms of the parties'

agreement.  This holding provides no support at all for the bizarre argument

that a prior agreement between the Edlesons and AHS, embodied as a

private letter side-agreement to a class action settlement agreement that was

considered and rejected on its merits, somehow, and against the wishes of

the Faughts, their counsel, and without the knowledge of the class, renders this agreement void.

The *Edleson* lawyers next claim that the class notice is inadequate because it does not provide information about the failed *Edleson* settlement. The *Edleson* lawyers have clearly confused this settlement with the rejected *Edleson* settlement, as they write that by "any measure, class members would want to know that the settlement was terminated not because AHS voluntarily terminated it, but instead because a Superior Court judge in California found it inadequate after a full review of the merits of the settlement." *Edleson* Lawyer Obj., p. 6. The *Edleson* lawyers do not explain, however, why a class member in the Faught case, which has settled on terms that are, as this court has found, substantially more favorable than the failed settlement in *Edleson*, would "want to know" about the rejection of this entirely different and less favorable settlement. The *Edleson* lawyers cite cases[4] standing for the unremarkable proposition that a class notice must adequately inform class members that they are among those who are included in the class, but fail to articulate how the failure to disclose utterly irrelevant information about the failed *Edleson* case has anything to do with

---

[4] The *Edleson* lawyers cite Twigg v. Sears, Roebuck & Co., 153 F.3d 1222 (11th Cir. 1998), a case involving a notice that inaccurately described the kinds of claims covered by the settlement, and In re: Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088 (5th Cir. 1977), a case where the district court was reversed for ordering the class notice to omit information about the terms of the proposed settlement. Neither of these situations has the remotest bearing on this proposed class settlement.

whether the *Faught* class members are sufficiently informed that they are included in the class in this case.

On page 11 of their brief, the *Edleson* lawyers finally come right out and admit what they are really after – money.  The *Edleson* lawyers claim that they did all the work leading to this settlement, and that Class Counsel here "had a smooth ride on the coattails of the Edlesons' counsel."  *Edleson* Lawyer Obj., p. 10.  This, of course, is based squarely on their repeated mischaracterization of this settlement as being merely the *Edleson* settlement with "window dressing," a claim we have addressed above and elsewhere and which this Court has already rejected.

**D.** **The Claims Made By The Texas Attorney General Are Without Factual Support.**

In its objection, the state of Texas makes three assertions that are simply incorrect.

First, to the extent that footnote 2 of their objections might be read to imply that the Texas Attorney General's office was not aware of the *Faught* settlement until six days before the deadline for filing objections, that implication is in error.  Frank Davis, lead Class Counsel, personally spoke to the attorney in the Texas Attorney General's office who signed and filed Texas's objections on November 19, 2009, over two and a half months before objections were due to be filed.  (Ex. C, Dec. of D. Frank Davis ¶ 1).

16

She informed Mr. Davis on that date that she had already read the settlement agreement.  (*Id.*).

Second, the state of Texas suggests that Class Counsel may have a conflict of interest because Burr & Forman LLP, Class Counsel's former law firm, currently lists Terminix as a firm client.  Terminix is AHS's sister company.  Both companies are subsidiaries of ServiceMaster Corporation. Mr. Davis and his partner, John Norris, left Burr & Forman in January, 2003, over seven years ago.  (Ex. C,  Davis Dec. ¶ 2; Ex. D,  Norris Dec. ¶ 1).  While they were at Burr and Forman, neither of them ever performed any work for Terminix.  (*Id.*).  Indeed, neither Mr. Davis nor Mr. Norris have any recollection of Terminix being a Burr & Forman client while they practiced law there.  (*Id.*).

Third, the state of Texas suggests that the releases in this case are so broad that they would prevent class members in the case of *Rudd v. American Home Shield Corp.*, a separate class action filed by Class Counsel that is currently pending before Your Honor, from participating in the class. While Class Counsel agree with and applaud the State of Texas's characterization of that case as one of "drop dead liability and substantial damages," Class Counsel respectfully does not share Texas's concern that

the scope of the releases in the *Faught* settlement would operate to bar class members from participating in the *Rudd* case.  (Ex. C, Davis Dec. ¶ 3).

The *Rudd* case, as the Court is no doubt aware, is not based on any claim that AHS has wrongfully denied or otherwise incorrectly handled claims.  Indeed, *Rudd* has nothing to do with claims at all.  Instead, *Rudd* is strictly a statutory claim arising under the Real Estate Settlement Practices Act ("RESPA") based upon the payment of kickback to real estate brokers in connection with recommending that home sellers and buyers purchase AHS warranty contracts.  The releases contained in the Stipulation of Settlement, Paragraphs 10.1 and 10.2, are not general releases, but instead are strictly limited to any "event . . . related to AHS's policies, procedures, and/or practices during the Class Period *as alleged in, or reasonably related to* those alleged in the action."  (Ex. C, Davis Dec. ¶ 3) (emphasis supplied).  The complaint, as amended, in this action does not have anything to do with kickbacks paid to real estate brokers.  A claim that AHS violated a federal law prohibiting kickbacks in connection with recommending a particular home warranty company is in no way related to the common law claims in this case, which deal strictly with AHS conduct in handling claims for its existing customers.

**E.    The Objectors' Miscellaneous Claims Do Not Warrant Denial Of Approval Of This Class Settlement.**

Some of the objectors contend that the claims process puts too onerous a burden on the class members.  Pro se attorney objector Charles M. Thompson, for example, incorrectly claims that to "file a claim, the class members have to exert more effort and supply more information than each individual class member would otherwise have to provide to AHS under their respective warranty agreements."  Thompson Obj., p. 2.  In fact, however, all the class members have to do is to fill out a single form giving basic information about their identity and the year they think they made a claim.  (*See* Stipulation of Settlement Ex. D).

One objection laments that the settlement does not guarantee the refund of all premiums.  This objection, while correct in its premise, fails to understand that this is a settlement of a case, taking into account all the risks of continued litigation.  A refund of premiums would be a remedy that AHS never would have agreed to (and likely could never afford).   It would essentially ask AHS to refund all of its income for the past nine years.  No company would agree to, or could likely survive, such a result.

Another objection complains that AHS is free to reimburse class members for previous repairs at AHS's wholesale prices rather than the retail prices class members likely paid, where the class member does not

have receipts showing the actual retail cost.  First, this is a settlement, and there were compromises made.  Would the settlement have been better if AHS had guaranteed reimbursement of retail prices (which it has agreed to reimburse with receipts) in all cases?  Well, yes, although then an issue would arise as to which retail price AHS should select.  But AHS did not agree to this and Class Counsel believed this compromise was necessary to achieve maximum benefit for the class.  More fundamentally, however, if a class member is dissatisfied with the amount offered, he or she retains the right to sue with the right to recover penalties and attorneys' fees.  This right will deter the Review Desk from nickel and diming the claimants.

Several objectors complain that it is unreasonable to give AHS two years to administer what will likely turn out to be many thousands of claims.[5]  These objections are entirely misguided.  We are submitting the declaration of Edgar C. Gentle, a well-known local attorney who specializes in claims administration for class and mass action settlements.  (Ex. E).  Mr. Gentle, having examined the settlement agreement and being informed of the number of potential claimants, is of the opinion that two years is an entirely reasonable period of time in which to process such a large volume of potential claims.

---

[5]  Amazingly enough, one such complaint comes from the Edlesons' lawyers, who in their failed California settlement gave AHS an absolutely unlimited amount of time to process claims.

Some objectors decry the failure of the settlement documents to put a dollar value on the settlement.  Since it is not known how many claimants would submit claims, it is impossible to make such an estimate that has any validity whatsoever.  These objectors cite to cases that award fees based on an estimated value of the settlement.  Since Class Counsel here have not asked the Court to do that, and instead are content to be paid from amounts actually paid to class members, this argument is misplaced.

## III.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court enter an order giving approval to the class action settlement that the Court preliminarily approved in its prior order.  Plaintiffs further request that the Court reject the objections raised to the settlement, and other further and different relief as the Court may deem appropriate.

____/s John E. Norris_____
Class Counsel and Attorney for
Laura and Steven Faught

Of Counsel:
D. Frank Davis
Davis & Norris LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama  35205
Voice: 205.930.9900
Fax: 205.930.9989

fdavis@davisnorris.com
jnorris@davisnorris.com

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing to be served on all counsel of record via electronic mail. I further certify that I have filed a copy with the Court's electronic filing system on this the 26th day of February, 2010 which will provide copies to the following:

John E. Goodman
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL. 35203
jgoodman@babc.com

Kirkland E. Reid
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP
Post Office Box 46
Mobile, AL. 36601
kreid@joneswalker.com

John W. Davis
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA 92101
john@johnwdavis.com

R. Stephen Griffis
R. Stephen Griffis PC
2100 Riverhaven Drive, Suite 1
Hoover, AL 35244
rsglaw@bellsouth.net

Charles Thompson
Charles M. Thompson PC
5615 Canongate Lane
Birmingham, AL 35242
Mchapmanlaw@bellsouth.net

Kearney D. Hutsler
Hutsler Law Firm
2700 Highway 280, Suite 320W
Birmingham, AL 35223
kdhlaw@hutslerlawfirm.com

And I hereby certify that I have served by U.S. Mail the document to the following non-CM/ECF participants:

Francis A. Bottini, Jr.
Brett Weaver
JOHNSON BOTTINI, LLP
501 W. Broadway, Suite 1720
San Diego, CA 92101
frankb@johnsonbottini.com
brett@johnsonbottini.com

David J. Worley
Page Perry LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, GA 30338
dworley@pageperry.com

Edward D. Chapin
CHAPIN WHEELER LLP
550 West "C" Street, Suite 2000
San Diego, CA 92101
echapin@cfslawfirm.com

Frank Tomlinson
15 North 21st Street, Suite 302
Birmingham, AL 35203
htomlinson@bellsouth.net

_____/s John E. Norris_____
Of Counsel