FILED

2010 Mar-08  AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LAURA FAUGHT and STEVEN FAUGHT,** )<br>**on behalf of themselves and all others** )<br>**similarly situated,** )<br> )<br>    **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**AMERICAN HOME SHIELD** )<br>**CORPORATION,** )<br> )<br>    **Defendant.** ) | **CASE NO.**<br>**CV-07-P-1928-S** |

## *AMICUS CURIAE* BRIEF OF THE TEXAS ATTORNEY GENERAL OPPOSING PROPOSED CLASS SETTLEMENT

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

PAUL D. CARMONA
Chief, Consumer Protection & Public Health
Division

PAT TULINSKI
Texas State Bar No. 20283485
Assistant Attorney General

300 W. 15th Street, 9th Floor, MC 010
Austin, Texas 78701
Tel. 512.463.2185
Fax 512.473.8301
Appearing by permission of the Court

## ATTORNEYS FOR *AMICUS CURIAE* THE STATE OF TEXAS

## TABLE OF CONTENTS

I. SPECIAL APPEARANCE AND SUMMARY OF ARGUMENT........................... 1

II. SETTLEMENT IS NOT FAIR, ADEQUATE OR REASONABLE......................4

    A. Texas Consumers Have a Strong Case Against American Home Shield ...............5

        1. Wrongful Refusal to Repair/Replace Home Systems .......................................5
        2. RESPA Violations/Breach of Fiduciary Duties/Commercial Bribery ............ 9
        3. The State's Case Against American Home Shield is Particularly Strong ..... 11

    B. Claims Desk Review ...........................................................................13
    C. No Monetary Relief ........................................................................ 14
    D. No Disgorgement, Restitution, or Penalties ........................................ 14

III. WRONGFUL AND UNNECESSARY WAIVER OF CONSUMER RIGHTS..15

    A. Proposed Settlement Waives Right to Restitution....................................16
    B. State Deceptive Trade Practice Claims ................................................16
    C. Rights to File/Participate in Class Actions ..........................................18

IV. QUALIFICATIONS OF CLASS COUNSEL AND CLASS
REPRESENTATIVES ...............................................................................19

    A. Conflict of Interest Issues.................................................................20
    B. *Rudd v. American Home Shield* ........................................................22
    C. Class Representatives Receive Generous Monetary Compensation to the
       Exclusion of the Class............................................................23
    D. No Adequate Representation Means No Jurisdiction Over Class Members ....... .24

V. ABSTENTION....................................................................................25

    A. *Pullman* and *Burford* .......................................................................26
    B. *Younger* and *Colorado River* ............................................................28

VI. CONCLUSION ..................................................................................30

VII. EXHIBIT LIST ................................................................................35

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3rd Cir. 2009)..................................9, 22

*Black Sea Investment, Ltd. v. United Heritage Corp.*, 204 F.3d 647 (5th Cir. 2000)...............29, 30

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008), on remand,
    642 F. Supp. 2d 1283) (N.D. Ala. 2009).................................................................................9

*Burford v. Sun Oil Co.*, 319 U.S. 315, 316-317 (1943).........................................................26

*Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979 (6th Cir. 2009)......................................9

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)......... 29, 30

*Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).......................................................5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). .......................................5

*Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940) ......................................................................24

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)..............................................................29

*Kerr-McGee Chem Corp. v. Hartigan*, 816 F.2d 1177, 1181 (7th Cir.1987)...............................1,2

*Middlesex Ethics Comm'n. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982)...............28, 29

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm'n.*,
    283 F.3d 650, 653 (5th Cir. 2002)...................................................................................26

*Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 132-33 (D.D.C. 1994) .......................21

*Petrovik v. Amoco Oil Co.* 200 F.3d 1140, 1155 (8th Cir. 1999).............................................21

*Phillips Petroleum Co. v. Shutts*,  472 U.S. 797, 812 (1985). ..........................................24

*Railroad Co. v. Pullman Co.*, 312 U.S. 486, 501 (1941). ...............................................25 - 27

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002) ....................................19, 20

*Rudd v. American Home Shield Corp.*, Cause No. 2:09-CV-01018-RDP, (N.D.Ala.(Southern)..22

*Synfuel Technologies, Inc. v. DHL Expresss, Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). ...............14

*United Servs. Life Ins. Co. v. Delany*, 396 S.W.2d 855, 856 (Tex. 1965). ...................................26

*Ward v. American Home Shield Corp.*, No. CV-07-01380 GW (PJWx), (C.D. Ca.).............22, 23

*Younger v. Harris*, 401 U.S. 37, 53-54 (1971)......................................................................28, 29

## STATE CASES

### Texas

*Martin v. Lou Poliquin Enter., Inc.*, 696 S.W.2d 180
    (Tex. App. – Houston [14[th] Dist.] 1985, writ ref'd n.r.e.). ...............................................18

*State v. Pet Foods*, 591 S.W.2d 800, 805 (Tex. 1979) ...............................................................12

*Thomas v. State*, 226 S.W.3d 697, 707
    (Tex. App. – Corpus Christi 2007, pet. dism'd).............................................................25

### California

*Apple Computer Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1274 n.7 (2005) .....................21

*Edleson v. American Home Shield of California, Inc.*,
    No. 37-2007-00071725-CU-BT-CTL, Sup.Ct. Ca., San Diego........................................13

### Alabama

*Ex Parte Terminix Intern. Co. Ltd.*, 14 So.3d 849 (Ala. 2009)....................................................20

*Leonard v. Terminix Intern. Co., L.P.*, 854 So.2d 529 (Ala. 2002)..............................................20

*Waston v. Terminix Intern. Co., L.P.*, 810 So. 2d 689 (Ala. 2001)..............................................20

## STATUTES

### Federal

Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4
    (codified in various sections of 28 U.S.C.)................................................................*passim*

Real Estate Settlement Procedures Act of 1974, Section 8 ("RESPA"), 12 U.S.C. § 2607............9

28 U.S.C. § 1715(b)..........................................................................................................1

24 C.F.R. § 3500.2 (Regulation X) ...............................................................................2

### Texas

Tex. Bus. & Com. Code Ann. §§ 17.41 - .904 (Vernon 2002 & Supp. 2009) ("DTPA").....*passim*

Tex. Bus. & Com. Code Ann. § 17.42 (Vernon 2002) (Waivers: Public Policy). ........................17

Tex. Gov't Code Ann. § 402.006(c) (Vernon 2005)....................................................12

## SECONDARY SOURCES

John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*,
     95 COLUM. L. REV. 1343, 13554 (1995) ..........................................................19

Issacharoff & Nagareda, *Class Settlements Under Attack*,
     156 U. PA. L. REV. 1649, 1676 (2008)...............................................................24

Klonoff & Herrmann, *The Class Action Fairnesss Act: An Ill-Conceived
     Approach to Class Settlements*, 80 TUL. L. REV. 1695, 1708 (2006)...................2

*Marketing Agreements on the Brink*, RESPA News Monthly,
     Vol.3, Issue 11 at 9 (Nov. 2008) .......................................................................10

Henry Monaghan, *Antisuit Injunctions and Preclusion Against Absent
     Nonresident Class Members*, 98 COLUM. L. REV. 1148, 1173 (1998)........................24, 25

Wright, THE LAW OF FEDERAL COURTS § 52 at 303 (4th ed. 1983) ..............................25

### Misc. Federal Materials

ABA Model Code of Professional Responsibility, Canon 9........................................20

S. Rep. 109-14 at 31 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 32
     (Senate Judiciary Committee Report on CAFA).............................................14

Manual for Complex Litigation (Fourth) § 20.312 (2004)........................................22

## I.  SPECIAL APPEARANCE AND SUMMARY OF ARGUMENT

The State of Texas is appearing in this cause under the authority of the Class

Action Fairness Act ("CAFA").  See Pub. L. No. 109-2, 119 Stat. 4 (codified in various

sections of 28 U.S.C.).  The State of Texas, through the Consumer Protection & Public

Health Division of the Office of the Texas Attorney General, is currently in litigation with

Defendant American Home Shield ("AHS") in Texas State court alleging numerous

violations of the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code §§ 17.41

- .904 (Vernon 2002 & Supp. 2009) ("DTPA")).  See **Exhibit A** (State's Enforcement

Action against American Home Shield).  The State's suit was filed April 12, 2006 – well

before the present *Faught* suit was filed and is set for jury trial on July 19, 2010.[1]

Consequently, the State of Texas is appearing as authorized by CAFA – as *amicus curiae*

regarding this proposed settlement and is not subjecting itself to the jurisdiction of the

Court.[2]  See *Kerr-McGee Chem Corp. v. Hartigan*, 816 F.2d 1177, 1181 (7th Cir. 1987).

---

[1]  Currently, the parties are jointly moving for a continuance of the trial date to November, 2010.

[2]  Despite the fact that the State of Texas has been litigating with Defendant for several years concerning the same factual matters contained in the case *sub judice*, the State of Texas was not served with notice of this *Faught* proposed class settlement.  Rather, counsel in this action served the required "CAFA" notice on a relatively small regulatory agency in Texas, the Texas Real Estate Commission ("TREC").  The CAFA notice was not forwarded to the Attorney General until February 2, 2010, when the undersigned Assistant Attorney General inquired whether TREC had received any documents related to the *Faught* litigation.  Had an affirmative inquiry not been made, the State of Texas who is simultaneously litigating with the Defendant over these same matters in Texas State Court would not have known about the CAFA notice purportedly "served" on the State.  See 28 U.S.C. § 1715(b).  The fact that counsel for American Home Shield in the State litigation informally e-mailed, several months ago, a copy of a proposed settlement to one Assistant Attorney General is not adequate under CAFA.  CAFA describes the type of notice, and it is a jurisdictional requirement.  Even AHS does not claim that

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 1**

The proposed class settlement should not be approved by this Court. As the State will show, the settlement is not fair, adequate or reasonable on several independent grounds. The Texas class members have strong factual and legal liability claims against American Home Shield. Among others, the following claims will be decided by a Texas jury in the Texas litigation. First, American Home Shield wrongfully denied their home-system repairs or replacements by asserting specious "limitations" or exclusions to warranty coverage.[3] Second, American Home Shield paid kickbacks[4] to real estate brokers in the form of commissions on the sale of home warranties. Significantly, the State of Texas' pending civil enforcement action against American Home Shield, brought

---

the informal copy of a settlement agreement is adequate CAFA notice to the State, as evidenced by AHS's cover letter to TREC, outlining the many documents required to be provided pursuant to CAFA. See **Exhibit B.**

It remains unclear whether a defendant must serve both the primary regulator and the AG, or whether one of the two suffices. See Klonoff & Herrmann, *The Class Action Fairnesss Act: An Ill-Conceived Approach to Class Settlements*, 80 TUL. L. REV. 1695, 1708 (2006)("Given the severity of the punishment, defendants should err on the side of over-notifying state officials").

Moreover, TREC has informed the Texas Attorney General's Office that American Home Shield recently approached it requesting TREC to take a position approving this proposed class settlement. TREC declined, informing AHS that ***TREC was deferring to the Texas Attorney General in this matter***. See **Exhibit C.**

[3] For convenience, the State uses the term "coverage" loosely. In Texas, home warranties are not insurance and are not regulated by our State insurance authorities.

[4] "Kickback" is a term of art under the Real Estate Settlement Procedures Act ("RESPA"). It describes the payment of monies for a referral of business related to a "settlement service" purchased during the course of a real-estate transaction or closing. Real estate agents and real estate brokers, as well as home warranty service providers, fall under the auspices of RESPA. See 24 C.F.R. § 3500.2 (Regulation X)

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 2**

under the Texas Deceptive Trade Practices Act ("DTPA"), has stronger remedies and less onerous burdens than a comparable private consumer-fraud lawsuit. For instance, the State is entitled to recover (1) civil penalties of up to $20,000 per individual violation of the DTPA with no maximum or cap; (2) American Home Shield's disgorgement of any ill-gotten gains; (3) consumer restitution to Texas consumers; (4) attorney fees and court costs, and (5) comprehensive injunctive relief curtailing American Home Shield's future business practices.

The proposed settlement is not fair, adequate or reasonable, as it merely provides the class members, who are **willing and able** to amass and prepare all the required paperwork, a second review through a "claims desk."[5] The second review is administered under the sole discretion and authority of the very company that wrongfully denied the Texas consumers' claims in the first instance. There is no stick or carrot to ensure that American Home Shield acts in good faith. In exchange for this "benefit," the consumers waive significant legal rights, not the least of which is the right to **bring or participate** in a class action against American Home Shield, the right to bring a lawsuit under the consumers' respective deceptive trade practices statute, and the right to receive restitution from the consumers' respective state authority who may choose to sue American Home

---

[5] AHS could preform a meaningful review without requiring the consumers to take any action. It appears, AHS wants to limit the number of "claims desk" submissions, and class counsel is allowing it to do so.

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 3**

Shield for violation of its state laws, just as the State of Texas has done. In the end, AHS would be complying with the terms of the settlement by not reversing itself on one prior claim denial. Thus, it is entirely possible that, if this settlement is approved by the Court, Texas consumers could collectively receive not one penny of relief through this settlement.

More disturbing, however, is the inadequacy of class counsel and the class representatives in their efforts to represent the interests of the class members. Class counsel have potential conflicts of interest that apparently have neither been disclosed to the Court nor the class members. As opposed to the class members, the class representatives are not forced to endure a "claims desk" review of their claims, but rather receive monetary compensation for their claims.

Finally, the Court should not approve the settlement before this Court, as it attempts to interfere with the State of Texas' pending enforcement action in Texas state court. By way of example, Texas is seeking restitution on behalf of all Texas consumers who were deceived by American Home Shield. The settlement attempts to prohibit the Texas class members from legally accepting restitution that may be awarded to them by a Texas jury.

## II. SETTLEMENT IS NOT FAIR, ADEQUATE OR REASONABLE

This proposed class-action settlement is subject to heightened scrutiny both because it was negotiated prior to class certification and because it does not involve the

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 4**

payment of any monetary compensation to members of the class. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). When certification precedes settlement, the motion for certification is likely to be contested by the defendant, who will have self-serving reasons to raise all manner of counter-arguments in an effort to derail class certification in any form.

### A.   Texas Consumers Have a Strong Case Against American Home Shield

This Court should consider the proposed settlement in light of "the likely rewards the class would have received following a successful trial. . . ." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Here, the State is in the fortuitous position of being able to describe the legal and factual case it will be presenting to the Texas state court.

Initially, the State refers this Court to its expert plumbing report concluding that AHS provides no real plumbing coverage, despite its explicit representations to consumers. See **Exhibit D**. The State also refers this Court to its expert HVAC reports concluding that the exclusions generally swallow the coverage that AHS so eagerly touts to consumers. See **Exhibit E**. Third, the State refers this Court to its expert report concerning AHS's payment of kickbacks to real-estate brokers as commissions on the sale of home warranties to the brokers' clients. See **Exhibit F**.

### 1.   Wrongful Refusal to Repair/Replace Home Systems

American Home Shield falsely represents that it "will protect, repair and replace your major systems and appliances, regardless of age, make or model." AHS's brochures

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                              **Page 5**

depict 20-year-old HVAC and other systems – complete with impressive charts showing expensive replacement costs resulting from major malfunctions.[6]  In truth, AHS denies most expensive HVAC claims.

By way of example, from January 2004 through July of 2006, AHS identified 941,374 warranties with HVAC coverage in Texas.  During this same period, AHS dispatched contractors 434,344 times for HVAC service calls.  Because the contractor was able to repair the item at a minimal cost (anywhere from zero to $140) only 125,322 were called in for authorization or approval by AHS.  Of these 125,322 calls for approval, 76,056 were partially or fully denied by AHS – a notable 61% denial rate.[7]

Over sixty percent of expensive HVAC repairs are denied.  The reasons given for the denials are not legitimate.  The contractors and authorizers are induced to deny claims.  The performance of AHS's "independent" contractors, like its former wholly-owned contractor subsidiary ("ARS," which had a 6.78% higher dispatch level denial rate than non-affiliated contractors), as well as AHS's call-center authorizers, are judged solely on a "cost-per-call" basis.  As far as their performance is judged, the higher the denial rate the better.  To reach sixty percent denial rates for expensive HVAC claims,

---

[6] AHS has many versions of its brochures that have been distributed to consumers over time. Nonetheless, this representation is fairly consistently made and certainly was made to Texas consumers over a span of many years.

[7] These statistics relate to the only period of time for which AHS has provided the State with the relevant information; the State has requested that AHS supplement its prior discovery responses, and AHS's counsel in the State litigation has indicated that it intends to do so.

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                                    **Page 6**

authorizers were required to rely on AHS's interpretations of "limitations" contained in the fine-print of the consumer contracts.  The limitations include:

* Not normal wear and tear
* Improper install
* Rust or corrosion during first 30 days
* Collapsed ductwork
* Chemical or sedimentary build up
* Failure to clean or maintain
* Improperly sized HVAC system [inadequacy or lack of capacity]
* Heat pump systems with mismatched condensing unit and evaporator coil
* Rust on the coils
* Missing parts
* Pest damage
* Improper installation
* Not within "code"
* Improper previous repair or design
* Improper modifications to system

Remarkably, there is no requirement that there be any causal nexus between the exclusion and the malfunction.  Thus, a "rust on the coils" exclusion does not have to be the cause of the malfunction and, in all likelihood, has nothing to do with it.  Yet, it prevents the consumer from obtaining the promised repair or replacement.  In essence, AHS did not "repair and replace [consumers'] major systems and appliances, regardless of age, make or model" despite express representations to do so.

The plumbing "coverage" issue provides a straightforward example.  AHS's marketing materials indicate plumbing coverage; however, the fine print in the AHS warranties eliminate almost all of this purported "coverage" (leaks, collapses and breaks in water, drain, gas, waste or vent lines if caused by freezing, roots, rust, corrosion,

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                                    **Page 7**

chemical deposits, stoppages due to roots or foreign objects, flow restrictions in fresh

water lines, etc.). Many things consumers think of when they see the word "plumbing"

are simply not covered, such as faucets, tubs, and showers. If a "stoppage" problem is

caused by anything outside of the foundation or by "foreign objects" it is not covered. If

the problem is within the foundation, AHS offers coverage only if there is "access

through unobstructed walls, ceilings or floors." The State believes reasonable jurors will

look at AHS's representations regarding plumbing coverage, compare it with the fine

print excluding most every type of plumbing problem, and conclude that there was never

any "coverage" to begin with.

　　　In addition to the failure to repair and replace home systems, American Home

Shield's warranties contained an "evergreen clause," in which the annual warranty

automatically renews if the consumer mistakenly makes a payment in the subsequent year.

In the event of an inadvertent payment on the consumer's part, AHS would not allow the

consumer to cancel the warranty and receive a refund of any or all of the premium. This

was particularly problematic for consumers who paid monthly for their annual warranty,

through their mortgage lender. Every time, AHS used its evergreen clause to extend its

residential service contracts when mortgage companies *automatically* collected a

mortgage payment from consumers (which included the "monthly payment" of an AHS

contract) into a "13th month," it was a violation of the Texas DTPA, which generally

prevents the use of "evergreen" clauses.

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)　　　　　　　　　　**Page 8**

The State is providing this evidence to the Court as a microcosm of the factual issues involved in any consumers' case against American Home Shield for failure to repair or replace their home system. This is precisely the type of evidence that the Court will not hear because the parties are focused on obtaining approval for a quick settlement, prior to class certification.

### 2. RESPA Violations/Breach of Fiduciary Duties/Commercial Bribery

For many, many years, American Home Shield has been making payments to real-estate brokers, as a commission on the sale of American Home Shield warranties to the brokers' clients. It is well-settled that this practice violates the anti-kickback provision of section 8 of the Real Estate Settlement Procedures Act of 1974 ("RESPA"). 12 U.S.C. § 2607; e.g., *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3rd Cir. 2009); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979 (6th Cir. 2009); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008), on remand 642 F. Supp. 2d 1283) (N.D. Ala. 2009) (granting plaintiff's motion for partial summary judgment).

American Home Shield's payment to the brokers is viewed by its own industry as illegal for several distinct reasons. First, the payments are made to the brokers on a "referral" or commission basis. Second, the "marketing agreements" require that the brokers deal exclusively with American Home Shield – thus freezing all other home

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                                    **Page 9**

warranty companies out of the market.[8] <u>See</u> **Exhibit G** (AHS Marketing Agreement). Third, the agreements call for secrecy and confidentiality. <u>Id.</u> According to an industry publication, marketing agreements with these provisions are not viable. <u>See</u> *Marketing Agreements on the Brink*, RESPA News Monthly, Vol.3, Issue 11 at 9 (Nov. 2008) (**Exhibit H**) (detailing these three conditions, any one of which is likely to violate RESPA).

The State contends that the existence of the broker payments violates the DTPA.[9] For instance, AHS's representation that real estate professionals prefer its product over other home-warranty companies (such as, "300,000 real estate professionals trusted AHS" and "realtors recommend AHS over twice as often as its nearest competitor") violates the DTPA because AHS is paying those persons to sell its warranty and paying those persons to offer its product exclusively. Clearly, AHS is buying the real-estate brokers' approval or preference, which makes its representations false.

AHS is liable for countless DTPA violations for representing that brokers prefer its product on the basis of quality or some other legitimate reason, while in fact it is because

---

[8] According to American Home Shield, roughly 80% of all home-warranty business is derived as a settlement service – during and through the sale of real estate.

[9] <u>See</u> DTPA sections 17.46(a) (false, misleading and deceptive), 17.46(b)(3) (certification by another), 17.46(b)(5) (sponsorship, approval, characteristics), 17.46(b)(7) (standard, quality or grade), 17.46(b)(12) (agreement involves rights, remedies, or obligations which it does not have or involve or which are prohibited by law), and 17.46(b)(24) (failing to disclose information to induce consumers into a transaction).

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 10**

AHS pays the brokers. Given the backdrop of RESPA, which allows for both civil and criminal penalties for this conduct, the State believes a Texas jury will have little difficulty determining the practice to be false, misleading and deceptive under this statute.

Further, because the representation of real estate agent endorsement is misleading– at best – AHS further implicitly misrepresents the consumers' agreement with their brokers, namely that AHS is doing nothing improper to affect the consumers' legal relationship with their broker. This creates an illusion of propriety with regard to the broker/client relationship, which is factually not true. Therefore, AHS's conduct indirectly implies that the agreement between the broker and its client involves rights or obligations which it does not have.

### 3. The State's Enforcement Action Against AHS is Particularly Strong

While the Texas consumer class members have a strong case against American Home Shield involving significant damages, the State of Texas as plaintiff has an even stronger case. Under the Texas Deceptive Trade Practices Act ("DTPA"), the State has less onerous burdens to overcome in order to prevail in its litigation. The State sued AHS in an enforcement action brought under DTPA section 17.47, seeking restitution, disgorgement, permanent injunction, attorney's fees, and civil penalties. A cause of action brought by the State under the DTPA is relatively straightforward. Under DTPA section 17.46, certain practices are declared unlawful. Under subsection (b), the laundry list of twenty-some items is a familiar one, as it applies to both private litigants and the

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 11**

State. While the State has the specific authority to bring any claims under subsection (b), it also may bring suit under the much-broader subsection (a) which declares as unlawful any "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

With regard to the specific elements of a cause of action under the DTPA, unlike a private lawsuit, the State does not have to show "producing cause." See DTPA § 17.50(a) (requiring consumer to show "producing cause"). Rather, the State is simply required to show that money or property "may have been acquired by means of any unlawful act or practice." Id. at 17.47(d). Also, the State does not have to show a consumer's reliance on the deceptive conduct, as required in a private lawsuit. Id. at 17.50. Further, the State does not have to show immediate and irreparable harm, as a private litigant must do, in order to obtain injunctive relief. Rather, the State need only show a statute authorizing injunctive relief and conduct justifying injunctive relief. See State v. Pet Foods, 591 S.W.2d 800, 805 (Tex. 1979) (no "balancing of the equities" is required when the State seeks injunctive relief pursuant to an authorized statute). Finally, in contrast to private litigants, the State need only obtain injunctive relief or civil penalties to entitle it to an award of attorney's fees. See Tex. Gov't Code Ann. § 402.006(c) (Vernon 2005).

The bottom line here is that the Texas consumers who have been wronged will have an easier time obtaining restitution against American Home Shield through the State's DTPA enforcement action than they would if they brought an individual private

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 12**

DTPA suit.  By denying the Texas consumers any restitution, which this settlement explicitly does, a valuable right is being taken from them.

### B.  Claims Desk Review

In a prior attempt at settling this nationwide class action in State Court in California, the Honorable Jay M. Bloom, acting as a fiduciary toward the class, described the "claims desk" settlement as follows:

> The court cannot justify approval of the settlement.  Plaintiff, other than the two lead plaintiffs, **really get nothing more than a right to submit or resubmit claims to a defendant that has allegedly not acted in good faith on prior occasions.  There are no guarantees claims will now be accepted or properly serviced**, or that if improperly denied, plaintiffs have any realistic remedy.  They may have the right to sue in the future, but that is subject to the applicable statue of limitation in each jurisdiction.

*Edleson v. American Home Shield of California, Inc.*, No. 37-2007-00071725-CU-BT-CTL, in the Superior Court of California, San Diego (emphasis added) (**Exhibit I**).

While class counsel has made minor revisions, the settlement is largely the same. Because the second review must be initiated by the class member, requiring some action on their part, certainly there will be low participation, as many class members will not be inclined to go to the trouble of re-submitting a claim that AHS has already denied – under the same circumstances and procedures that applied the first time.  If this Court were to approve this settlement, Texas consumers would be forced to deal again with the very company whose conduct was unfair and deceptive in the first instance.  Ironically, some of the consumers who had claims denied by AHS went through an AHS internal re-

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 13**

review or appeal of their claim, ending up with yet another denial of their original claim.

## C.  No Monetary Relief

While the fair, adequate and reasonable language in CAFA mirrors the language of
Federal Rule of Civil Procedure 23(e), it is clear that Congress envisioned subjecting non-
monetary settlements to a higher level of scrutiny than previously employed in pre-CAFA
decisions interpreting Rule 23(e), because CAFA sets a higher standard or strictest
scrutiny to coupon settlements (those in which the consumer gets no monetary damages
from the wrongful conduct).  See S. Rep. 109-14 at 31 (2005), *as reprinted in* 2005
U.S.C.C.A.N. 3, 32. (Senate Judiciary Committee Report on CAFA)   The concern is that
in many cases "counsel are awarded large fees, while leaving class members with
coupons or other awards of little or no value." *Synfuel Technologies, Inc. v. DHL
Expresss, Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).  Given all the arguments made by the
State of Texas, it is difficult to imagine that the proposed settlement could survive this
highest scrutiny.

## D.  No Disgorgement, Restitution, or Penalties

The Texas Deceptive Trade Practices Act provides a remedy that the Defendant
shall disgorge all ill-gotten gains.  In the proposed settlement, American Home Shield
Corporation does not give up any such ill-gotten gains.  In the State's enforcement action,
American Home Shield is exposed to disgorgement of all profits realized from the sale of
its warranties and of all payments made to the real estate brokers.

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 14**

As for restitution, in the State's enforcement action, the consumers are entitled to the "restoration of money or property" wrongfully obtained by American Home Shield. It is this relief that American Home Shield is expressly trying to keep from Texas consumers through the proposed settlement.

Further, the penalties implicated by the State's suit are enormous. Every time that AHS made a misrepresentation relating to HVAC or plumbing coverage, it was a violation of the DTPA. Every time that AHS used its evergreen clause to extend its residential service contracts when mortgage companies *automatically* collected a mortgage payment from consumers, it was a violation of the DTPA. Every time that AHS represented that "realtors recommend AHS over twice as often as the nearest competitor," it was a violation of the DTPA. Every time that AHS paid a kickback to a real estate broker, it was a violation of the DTPA. The total number of DTPA violations committed by AHS are sizable.

## III.  WRONGFUL AND UNNECESSARY WAIVER OF CONSUMER RIGHTS

The proposed settlement mandates that the class members waive all claims that could have risen out of, or been related in any way to, Defendant's business practices. Thus, the only real relief afforded in this settlement lies exclusively at American Home Shield's feet. The consumers get nothing.

### A.  Proposed Settlement Waives Right to Restitution

Most troubling is the fact that counsel for the Plaintiff Class has Texas consumers

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 15**

waive any right to restitution, which the State of Texas is currently seeking on their behalf.[10]  Attempting to hinder enforcement actions collaterally through settlement releases violates basic public policy.  Further, the State will be seeking restitution from a Texas jury for Texas consumers.  To the extent that the proposed settlement would bar Texas consumers from accepting restitution, it is both void as against public policy and violates the anti-waiver provision of the Texas DTPA.  It can hardly be defended as being in the consumers' best interests.  As this point, it seems clear that there is a fatal conflict among the class members, those from Texas and those not, that has not been properly addressed through the proposed settlement.

## B.  State Deceptive Trade Practice Claims

The Texas Deceptive Trade Practices Act prohibits the waiver of rights under the act unless the consumer is represented by counsel of their own choosing at the time they

---

[10]  "Class Members . . . have fully, unconditionally, irrevocably, and completely released, waived, relinquished, and forever discharged all of the Released Parties from any and all Claims, including for an accounting, for the rescission or reformation of contracts (or any equitable theory whatsoever) for *restitution* or repayment, and for prospective injunctive relief to mandate, cease, reform, or otherwise modify in any way the Released Parties' business practices . . . ."  See *Notice of Class Action and Settlement* at V (c) (i) ("Release of Claims Belonging to Settlement Class Members") (emphasis added).

"Class Members . . . have fully, unconditionally, irrevocable, and completely released, waived, relinquished and forever discharged all of the Released Parties from any and all Claims, including for damages based on theories of breach of express contract, breach of implied contract, reformation of contract, *restitution*, repayment, breach of warranty, fraud, misrepresentation, concealment, failure to disclose, fraudulent misrepresentation, negligent misrepresentation, bad faith failure to pay claims, breach of covenant of good faith and fair dealing, breach of local, *state, or federal consumer protection laws or regulations* . . . or any other legal theory whatsoever, based on events occurring during the Class Period and allegedly cause by AHS's generalized policies, procedures, and/or practices. . . ."  Id. at V (c) (ii) (emphasis added).

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                                           **Page 16**

acquire the goods or services and the waiver is signed by the consumer. <u>See</u> Tex. Bus. &

Com. Code Ann. § 17.42 (Vernon 2002) (Waivers: Public Policy). Under the DTPA, a

waiver by a consumer of the provisions of this subchapter (including the State's

enforcement authority) is contrary to public policy and is unenforceable and void. <u>Id.</u> at

17.42(a). To effectuate a proper waiver: (1) the waiver must be in writing signed by the

consumer; (2) the consumer must not be in a significantly disparate bargaining position;

and (3) the consumer must be represented by legal counsel when seeking or acquiring the

good or services. <u>Id.</u> Further, the written waiver must be (1) conspicuous and in bold-

face type of at least 10 points in size; (2) identified by the heading "Waiver of Consumer

Rights" or words of similar meaning; and (3) state:

> I waive my rights under the Deceptive Trade Practices - Consumer
> Protection Act, Section 17.41 *et seq.*, Business & Commerce Code, a law
> that gives consumers special rights and protections. After consultation with
> an attorney of my own selection, I voluntarily consent to this waiver.

<u>Id.</u> at 17.42(c). Moreover, a waiver is not effective if the consumer's legal counsel was

directly or indirectly identified, suggested, or selected by a defendant or an agent of a

defendant.[11] <u>Id.</u> at 17.42(b).

A limitation of liability clause in a party's contract does not waive the consumer's

right to sue under the Deceptive Trade Practices-Consumer Protection Act in light of the

---

[11] Given class counsel's apparent conflicts, this certainly cannot be presumed and should be
addressed.

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 17**

Legislature's mandate that a consumer's waiver of any provision is contrary to public policy and is unenforceable and void.  See *Martin v. Lou Poliquin Enter., Inc.*, 696 S.W.2d 180 (Tex. App. – Houston [14th Dist.] 1985, writ ref'd n.r.e.).  As explained earlier, having Texas consumers waive their right to restitution and other remedies under the State's enforcement action is not only unfair, but also legally untenable.  See Footnote 10.  Under the DTPA, as well as most other states' deceptive trade practices statutes, such a waiver is unenforceable and void as against public policy.

### C.  Rights to File/Participate in Class Actions

There is no legitimate need to have consumers waive any rights to participate in or to bring a class action lawsuit against Defendant.[12]  Through well-established principles of collateral estoppel and *res judicata*, the consumers would not be allowed to bring the same claims again against this Defendant.  It seems likely that this waiver is a veiled attempt to absolve the Defendant from other wrongs committed against these consumers, for which they are presently unaware.  Given that there is no monetary compensation paid to the *Faught* class members it is inconceivable that it is necessary to have the consumers waive so many rights.

---

[12]  Class members may not bring suit "based upon AHS's alleged generalized policies, procedures and practices in conducting its business."  See Notice of Class Action Settlement at IV, 2, ¶ 1.

Class Members . . . have covenanted ***not to file or participate*** (whether individually, or as putative or actual class member, or otherwise) ***in any Suit*** with respect to any Released Party arising from or related to any Claims asserting AHS's generalized policies, procedures, and or practices. . . for a period of twenty four (24) months."  Id. at V (c) (iii) (emphasis added).

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 18**

Because the settlement denies due process to the class members, by barring their

rights to sue, it serves to oust this Court of personal jurisdiction over the class members,

as the State will explain below under Section V.

## IV. QUALIFICATIONS OF CLASS COUNSEL AND CLASS REPRESENTATIVES

Now that class counsel has joined with American Home Shield to sell their

proposed deal to the Court, the fiduciary obligations of this Court to the class are that

much harder to fulfill.  <u>See</u> *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir.

2002) (the Court is "a fiduciary of the class, who is subject therefore to the high duty of

care that the law requires of fiduciaries").  The Court must now consider the possibility of

a "reverse auction," whereby a defendant in search of a class settlement identifies

plaintiffs' lawyers willing to join in seeking judicial approval for a deal allowing the

defendant to purchase the preclusion of class members' claims on the cheap.  John C.

Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 COLUM. L. REV.

1343, 13554 (1995) (describing the tendency toward "structural collusion").

> In colloquial terms, counsel simply might not work hard enough to
> maximize the value of the settlement given that, among other things, class
> counsel would bear all of the marginal costs associated with such an effort
> but capture only part of the marginal benefit in the form of a larger fee
> award.  The defendant in a reverse-auction scenario plays on this residual
> risk of shirking by parking a desired class settlement with class counsel
> most inclined to shirk in exchange for at least some measure of a fee award.

<u>Id.</u> at 1699 (citations omitted).  The fiduciary capabilities of any court are limited.  Even a

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                                                **Page 19**

court dedicated to the "highest degree of vigilance" in its fiduciary role stands at a considerable informational disadvantage vis-á-vis class-settlement proponents who are no longer adversaries but, now, willing buyers and sellers of the preclusion that would flow from a court-issued judgment. *Reynolds*, 288 F.3d at 279.

## A.  Conflict of Interest Issues

Counsel for the *Faught* Plaintiff Class represent themselves as former partners of a large law firm, Burr & Forman, L.L.P.[13]  That law firm lists on its website Terminix as a client; the law firm appears to have represented Terminix at the same time that counsel was a partner at the firm.  See **Exhibit J** (client list).  Terminix is a sister company to American Home Shield.  They are both subsidiaries of ServiceMaster Corporation.  See **Exhibit K** (ServiceMaster Family of Brands).  Thus, the issue arises concerning a structural conflict of interest undermining the legitimacy of this proceeding *ab initio*.

Canon 9 of the American Bar Association Model Code of Professional Responsibility provides that "a lawyer should avoid even the appearance of professional impropriety."  Further, any lack of explicit prohibition on the "appearance of impropriety"

---

[13] Curiously, counsel for the *Faught* class recently changed its website to remove any reference to its prior affiliation with the law firm of Burr & Forman, L.L.P., which represents Terminix.  The earlier version indicated that Mr. Davis was Litigation Chair of a large multi-state law firm and  Mr. Norris was a litigation partner at a large multi-state law firm.  Yet, on Mr. Norris' biography, he identified his prior firm as "Burr & Forman, L.L.P." No such reference currently exists.

For samples of *published* cases with Burr & Forman representing Terminix, see the following: *Ex Parte Terminix Intern. Co. Ltd.*, 14 So.3d 849 (Ala. 2009); *Leonard v. Terminix Intern. Co., L.P.*, 854 So.2d 529 (Ala. 2002); *Waston v. Terminix Intern. Co., L.P.*, 810 So. 2d 689 (Ala. 2001).

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 20**

in the applicable Rules of Professional Conduct does not alter the underlying principle

that an attorney owes undivided loyalty to the client. *Petrovik v. Amoco Oil Co.* 200 F.3d

1140, 1155 (8th Cir. 1999). Even if this Court accepted the fact that the clients could

waive any conflict through the exercise of informed consent, informed consent is not

possible in class-action lawsuits. *Apple Computer Inc. v. Superior Court*, 126 Cal. App.

4th 1253, 1274 n.7 (2005) ("unidentified class members cannot waive a potential conflict

of interest"). Moreover, the disqualification rule is applied more vigorously in class

actions because class counsel are held to a "heightened standard" of conflict avoidance, to

wit:

> The fact that [counsel] and his firm seek to represent a national class of
> plaintiffs makes the decision to disqualify even more compelling. If
> [counsel] were representing only an individual plaintiff, he could
> conceivably seek a written waiver of conflict of interest. But, in this case,
> [counsel] seeks to represent a large, unenumerated and as yet unidentified
> class of plaintiffs. Unidentified class members cannot waive a potential
> conflict of interest. In the class action context, the Court has an obligation
> to closely scrutinize the qualifications of counsel to assure that all interests
> including those of as yet unnamed plaintiffs are adequately represented.
> This is because in certifying a class action, the Court confers on absent
> persons the status of litigants and 'creates an attorney-client relationship
> between those persons and a lawyer or group of lawyers.'

*Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 132-33 (D.D.C. 1994) (citations

omitted). In a nationwide consumer-fraud class-action lawsuit, such at the case at bar, the

public perceptions and the integrity of the process are of monumental concern. The

conflict described herein renders class counsel inadequate to represent the interests of the

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)    **Page 21**

class. Unfortunately, the integrity of this process is irretrievably worsened by class

counsel's potential failure to disclose any conflicts in the first instance.[14]

### B.  *Rudd v. American Home Shield*

Counsel for the Plaintiff Class has filed another consumer class-action lawsuit

involving the same Defendant American Home Shield Corporation.  See *Rudd v.*

*American Home Shield Corp.*, Cause No. 2:09-CV-01018-RDP, in the District Court,

Northern District Of Alabama (Southern).  The *Rudd* class action asserts a violation of the

Real Estate Settlement Procedures Act, for which the remedy is monetary damages

(trebled), plus attorney fees.  In fact, there is a split of authority whether the measure of

damages to treble, under RESPA, is the amount or cost of the "infected" settlement

service (here the price of the AHS warranty) or the amount of the kickback.  See *Alston v.*

*Countrywide Fin. Corp.*, 585 F.3d 753, 760 n. 7, 8 (3rd Cir. 2009).

The *Faught* class settlement – with all its unnecessary waivers – appears designed

to prevent the consumers from participating in the *Rudd* case.  The problem here is not

academic.  AHS has tried this maneuver before.  AHS settled another class action in

federal court in California relating to an alleged scheme to sell air conditioning upgrades

to its customers.  See **Exhibit L** (*Ward v. American Home Shield Corp.*, No. CV-07-

---

[14]  The State has not been informed whether class counsel similarly failed to inform this Court of
the State of Texas' pending state-court litigation against American Home Shield, as required by the
Manual for Complex Litigation ("identify the names of all similar cases in other courts, their stage of
pretrial preparation, and the assigned judges").  See Manual for Complex Litigation (Fourth) § 20.312
(2004).

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 22**

01380 GW (PJWx), in the Central District of California).   Participation by the class

members in that case arguably would have been foreclosed by the release in the *Edelson*

case.  In fact, the proposed settlement can be construed to bar the class members' ability

to even make a claim in the settlement of that case because they would arguably be

"participating" in the case in contravention of the settlement agreement.  Interestingly,

just as *Rudd* should, the *Ward* case resulted in money damages to the consumers.

Although not large sums (from $7 to $12), the relief in that case was actual dollars paid to

consumers, presumably just as the relief available to consumers in a case like *Rudd* in

which American Home Shield is sued for RESPA violations.  But for the California Judge

in *Edelson*, American Home Shield would have managed to exclude members in the case

with the real money (*Ward*), by including them in a case without any money (*Edelson*).

This Court should not allow that to happen here.

### C.  Class Representatives Receive Generous Monetary Compensation to the Exclusion of the Class

The only money to change hands in this case is between American Home Shield

and the class counsel and American Home Shield and the class representatives, neither of

which is from Texas.  The Faughts will apparently receive $8,000 for their wrongfully-

denied claim as well as a cash bonus of $10,000.[15]  Considering that these representatives

---

[15]  See *Memorandum in Support of Motion of Plaintiffs for Incentive Payments and Motion of Class Counsel for an award of Attorney Fees*, filed January 25, 2010; *Notice of Class Action and Settlement* at IV 3 (b).

**Amicus Curiae Brief of the State of Texas Opposing Class Settlement**
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 23**

have not been inconvenienced by this "litigation," never had to sit for a deposition or answer any discovery, there is no justification for the bonus payments, particularly since they are receiving full monetary damages for any prior wrongful denial of their claim.

## D.  No Adequate Representation Means No Jurisdiction Over Class Members

The law of class actions has embraced the bedrock proposition that adequate class representation is a constitutional-due-process prerequisite to a binding class-wide judgment.  See Hansberry v. Lee, 311 U.S. 32, 42-43 (1940) ("members of a class not present as parties . . . may be bound by the judgment where they are . . . adequately represented by parties who are present").  The concept of adequacy concerns the role of the class representative and, more significantly, the role of class counsel in carrying out their respective duties.  On both counts, the players before this Court fail miserably.

"Adequacy" encompasses no less than the performance of class counsel with regard to the class-settlement terms, the structure of class representation, and the personal jurisdiction of the rendering court over the absent class members.  Issacharoff & Nagareda, Class Settlements Under Attack, 156 U. PA. L. REV. 1649, 1676 ( 2008). Without "adequacy," the Court has no personal jurisdiction over the absent class members.  See Phillips Petroleum Co. v. Shutts,  472 U.S. 797, 812 (1985).  Moreover, jurisdiction is conditioned upon adequate representation "at all times" such that jurisdiction is lost whenever representation is inadequate.  See Henry Monaghan, Antisuit Injunctions and Preclusion Against Absent Nonresident Class Members, 98 COLUM. L.

Amicus Curiae Brief of the State of Texas Opposing Class Settlement
Faught v. American Home Shield Corp., No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 24**

REV. 1148, 1173 (1998).   As such, the Court has no personal jurisdiction over the absent

class members without ensuring that there has been "adequacy" throughout.   These are

issues that must be carefully reviewed by the Court.

## V.  ABSTENTION

This Honorable Court should defer to the lawsuit that the State of Texas has filed

in Harris County, Texas, involving the same Defendant and many of the same issues as

the *Faught* case.   More particularly, every *Faught* class member residing in Texas is

already affected by the Attorney General's lawsuit, as suits brought under the Texas

Deceptive Trade Practices Act are *de facto* class actions.   See *Thomas v. State*, 226

S.W.3d 697, 707 (Tex. App. – Corpus Christi 2007, pet. dism'd).

When a federal court employs one of the abstention doctrines, it declines – out of

deference to the state court – to exercise jurisdiction when the case involves issues of

state law.   See *Railroad Co. v. Pullman Co.*, 312 U.S. 486, 501 (1941).   The most widely

acknowledged abstention doctrines are *Pullman*, *Burford*, *Colorado River*, and *Younger*,

each named for the cases under which they were first recognized.   *Pullman* abstention

avoids a decision of a federal constitutional question when the case may be disposed of

on a question of state law.   Wright, THE LAW OF FEDERAL COURTS § 52 at 303 (4th ed.

1983).   *Burford* abstention is used to avoid needless conflict with state administration of

its own affairs.   Id.   Courts rely on *Colorado River* abstention to avoid duplicate litigation

when a similar action is pending in state court which can completely resolve the

*Amicus Curiae* Brief of the State of Texas Opposing Proposed Settlement
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                          **Page 25**

controversy between or among the parties.  Id. at 315-19.  Finally, the doctrine of

*Younger* instructs that federal courts must refrain from hearing constitutional challenges

to state action under circumstances in which federal action may be an improper intrusion

on the right of states to enforce their own laws in their own courts.  Id. § 52A at 320.

## A. *Pullman* and *Burford* Abstention

A court may decline to exercise its jurisdiction, which is appropriate when

questions of state law should be resolved by the affected states.  See *Pullman*, 312 U.S. at

501.  For *Pullman* abstention to apply, the case must present two elements.  First, there

must be an uncertain question of state law.  See *Nationwide Mut. Ins. Co. v. Unauthorized*

*Practice of Law Comm'n.*, 283 F.3d 650, 653 (5th Cir. 2002).  Second, the state-law

question must be susceptible of interpretation either obviating the need to decide the

federal issue or changing the way the federal court will view it.  Id.  Thus, when a federal

court invokes the *Pullman* doctrine in a Texas case, it should dismiss the action without

prejudice while the state-law question is answered by the state court.  See *United Servs.*

*Life Ins. Co. v. Delany*, 396 S.W.2d 855, 856 (Tex. 1965).

In *Pullman*, the company brought a Fourteenth Amendment challenge to an order

of the Texas Railroad Commission.  *Pullman*, 312 U.S. at 497-98.  While recognizing that

the federal court had jurisdiction over the matter, the Supreme Court ordered the district

court to refrain from deciding the case until the parties could obtain a ruling from the

Texas state court on the issues of Texas law.  Id. at 500.

*Amicus Curiae* Brief of the State of Texas Opposing Proposed Settlement
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 26**

Coincidentally, like *Pullman*, *Burford* abstention arose out of a case also involving the Texas Railroad Commission. See *Burford v. Sun Oil Co.*, 319 U.S. 315, 316-317 (1943). In that case, an oil company challenged the validity of the Commission's order granting permission to drill certain oil wells. The Supreme Court held that questions regarding regulation of the oil industry by state administrative agencies clearly involved Texas policy questions, and Texas courts should be the first to hear them. *Burford*, 319 U.S. at 332. *Burford* abstention instructs a federal court to decline to exercise jurisdiction when federal adjudication would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

In the State's enforcement action against American Home Shield, there are many unique issues of state law that will be decided by the trial judge, and perhaps appellate courts that, among other things, interpret the Texas Deceptive Trade Practices Act and the State's authority thereunder. For instance, but not by way of limitation, the State will be seeking disgorgement of the kickback payments made by American Home Shield to the real-estate brokers. This is an issue of first impression, whether the State can seek, through DTPA disgorgement, a fee that was illegally paid to the consumers' real-estate brokers – constituting a violation of the brokers' fiduciary duties to their clients, violating a felony statute (commercial bribery), and violating the Federal RESPA statute. The Texas judge will also be deciding whether a TREC administrative statute conflicts with the Federal RESPA statute, prohibiting the payments to the brokers. This issue of

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 27**

statutory construction has not yet been decided by the Texas courts. Also, most likely

through a motion for partial summary judgment, the State will be presenting another

issue, namely whether a violation of a Texas penal statute (commercial bribery), intended

to protect the consuming public, constitutes a *per se* violation of the DTPA. Again, this is

an issue of first impression for the Texas state courts. Finally, the Texas judge will be

determining the ability of Texas consumers – in a class-action settlement – to waive their

right to restitution under the DTPA, without an effective waiver mandated by DTPA

section 17.42. All of these statutory questions present issues of first impression, uniquely

appropriate for the Texas courts rule upon.

Under both *Pullman* and *Burford*, this Court should defer to the State of Texas

and, at a minimum, not exercise jurisdiction over Texas consumers whose rights may be

prejudiced by this Court's exercise of jurisdiction over them.

### B.  *Younger* and *Colorado River* Abstention

Federal courts should abstain from interfering with pending state civil suits. <u>See</u>

*Younger v. Harris*, 401 U.S. 37, 53-54 (1971). The *Younger* doctrine arises from the

notion that state governments should be free to perform state functions in their own ways.

<u>Id.</u> at 44. Although the *Younger* case involved a state criminal proceeding, the same

principle of comity has been extended by the U.S. Supreme Court to state civil

proceedings. <u>See, e.g.</u>, *Middlesex Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S.

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 28**

423, 432 (1982); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975).

*Colorado River* abstention is also referred to as duplicative-litigation abstention and is invoked to avoid concurrent litigation in state and federal court when pending litigation involves substantially similar issues. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). In *Colorado River*, the United States brought suit on its own behalf and on behalf of two Indian tribes seeking a declaratory judgment concerning water rights. Id. at 805. Shortly after the filing of the federal action, a defendant in the case filed suit in state court. Id. at 806. The federal court then granted a motion to dismiss the suit pursuant to the doctrine of abstention requiring deference to state-court proceedings. Id. Applying "wise judicial administration" the Court found that the federal action should be dismissed in favor of the pending state action. Id. at 813-18.

Since *Colorado River*, the Fifth Circuit has created four potential factors for the federal court to consider when determining whether to invoke *Colorado River* abstention. See *Black Sea Investment, Ltd. v. United Heritage Corp.*, 204 F.3d 647 (5th Cir. 2000). The four factors are: (1) whether the case involves any property over which the state or federal court has control; (2) whether the federal forum is inconvenient; (3) whether there is a federal-law issue in the case; and (4) whether there is any indication that the parties interests would not be adequately protected in the state-court proceeding. Id. at 650-51. Factor one is not applicable to the case at bar; there is no property over which the Texas courts or this Court has control. Factor two falls in favor of abstention, at least insofar as

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 29**

the class includes citizens of Texas. Texas consumers should be able to have their

disputes heard in Texas state court. Factor three likewise falls in favor of abstention, as

there is no federal-law issue in this case – the case solely involves issues and application

of state deceptive trade practices statutes, like the Texas DTPA. Factor four also falls in

favor of abstention, as there is no hint that American Home Shield cannot receive a fair

trial in Texas state court. AHS's own actions show that Texas is a fair forum. The State

of Texas' enforcement lawsuit was brought as a counterclaim to American Home Shield's

lawsuit, which was filed against the State in an unsuccessful attempt to quash the State's

civil investigative demand. American Home Shield initiated the litigation in a Texas state

court, certainly proving that AHS believed it could obtain justice in Texas. In addition to

these *Black Sea* factors, one additional factor should convince this Court to abstain – the

State's enforcement action was filed first. In *Colorado River*, the federal action was filed

first, and the Supreme Court nonetheless held that the case should proceed in the later-

filed state court action.

Applying any or all of the aforementioned abstention doctrines along with the

factors set out by *Black Sea*, this Court should decline to exercise jurisdiction over this

case. At the very least, the Court should decline to exercise jurisdiction over the Texas

consumers and defer to the State's enforcement action pending in Texas state court.

## VI.  CONCLUSION

There have now been two attempts at a nationwide class-action settlement which

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 30**

would deny Texas consumers the damages, restitution or injunctive relief that Texas law provides. Instead, the settlement attempts to provide only an illusory promise that their wrongfully-denied claims will be treated differently on a second review, despite the fact that all of the control is in the hands of American Home Shield, so there is no tangible reason for any consumer to believe that there is any meaningful benefit for them in this settlement. Before the *Faught* and *Rudd* cases were filed in federal court, the State of Texas filed an enforcement action against American Home Shield of Texas, Inc., American Home Shield Corporation, and the ServiceMaster Corporation, making all the allegations of both cases. In this Texas litigation, the State is vigorously fighting for real monetary benefit to consumers in the form of damages, restitution, disgorgement, and any and all monetary relief for wrongs perpetrated against them over many years.

The proposed settlement seeks to prevent Texas consumers from receiving any benefits from the State's enforcement action. The settlement goes so far as to prohibit the class members from participating in any lawsuit, whether class action or state enforcement action, relating to the "business practices" of American Home Shield for a period of two years. The consumers are simply not receiving a benefit worthy of such a sacrifice, particularly since the State of Texas is using its best efforts to obtain meaningful monetary restitution for them.

Respectfully, the Court, exercising its fiduciary obligations to the class, must address the conflict of interest issues to ensure that there are no conflicts affecting

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)          **Page 31**

adequate representation, as required under the law. If the Court finds any conflict, it is incumbent on the Court not to approve this settlement, as class members cannot give informed consent in this situation – as a matter of law.

Finally, under well-settled principles of abstention, this Court should defer to the Texas state litigation. At a minimum, this Honorable Court should not include the Texas residents in the class settlement, perhaps by simply removing Texas residents from the class definition. As shown, this Honorable Court has not only the legal authority but also the fiduciary obligation to do so.

The State of Texas is presently conferring with other Attorneys General, as the law enforcement official representing consumers of all fifty states. As such, the State of Texas respectfully requests that this Court allow a reasonable period of time, during which the respective Attorneys General, under the authority of CAFA, may join in all or part of the State of Texas' objections to the proposed class settlement.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 32**

PAUL D. CARMONA
Chief, Consumer Protection and
Public Health  Division


PAT TULINSKI
Texas State Bar No. 20283485
Assistant Attorney General
Consumer Protection and Public Health
Division
300 W. 15th Street, 9th Floor, MC 010
Austin,  Texas 78701
Tel.  512.463.2185
Fax 512.473.8301

Attorneys for *Amicus Curiae*
Attorney General of Texas

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 33**

## CERTIFICATE OF SERVICE

I certify that, on March 8, 2010, a copy of this document was electronically filed with the Court and served on the following persons as indicated below:

D. Frank Davis
John E. Norris
DAVIS & NORRIS, L.L.P.
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205

*Via* **Fax (205.930.9989)(without Exhibits) and E-Mail (with Exhibits)**

D. Leal McCall, III
HILL, CARTER, FRANCO,
        COLE & BLACK, P.C.
425 South Perry Street
Montgomery, Alabama 36101-016

*Via* **Fax (334.832.7419)(without Exhibits) and E-Mail (with Exhibits)**

Michael D. McKibben
BRADLEY, ARANT, BOULT,
        CUMMINGS, L.L.P
One Federal Place
1819 Fifth Avenue North, 7th Floor
Birmingham, Alabama 35283-0709

*Via* **Fax (205.521.8800) (without Exhibits) and E-Mail (with Exhibits)**

Pat Tulinski

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                    **Page 34**

## EXHIBIT LIST

**A.** *State of Texas v. American Home Shield of Texas, Inc., et al.*

**B.** American Home Shield Correspondence to the Texas Real Estate Commission.

**C.** Correspondence from TREC to Texas Attorney General.

**D.** Plumbing Expert Report.

**E.** HVAC Expert Reports.

**F.** RESPA, Fiduciary Duty, Commercial Bribery Expert Report.

**G.** Sample American Home Shield Broker Marketing Agreement.

**H.** *Marketing Agreements on the Brink*, RESPA News Monthly, Vol.3, Issue 11 at 9 (Nov. 2008).

**I.** *Edleson v. American Home Shield of California, Inc.*, No. 37-2007-00071725-CU-BT-CTL, in the Superior Court of California, San Diego.

**J.** Burr & Foreman, L.L.P., Client List.

**K.** ServiceMaster Family of Brands (American Home Shield and Terminix).

**L.** *Ward v. American Home Shield Corp.*, No. CV-07-01380 GW (PJWx), in the Central District of California.

*Amicus Curiae* **Brief of the State of Texas Opposing Proposed Settlement**
*Faught v. American Home Shield Corp.*, No. CV-07-P-1928-S, in the U.S. District Court
for the Northern District of Alabama (Southern Division)                 **Page 35**