IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAURA FAUGHT; STEVEN FAUGHT, on behalf of themselves and all others similarly situated, } } } } | |
| Plaintiffs, } | |
| v. } | Case No.: 2:07-CV-1928-RDP |
| AMERICAN HOME SHIELD CORPORATION, } } } | |
| Defendant. } | |

## MEMORANDUM OPINION

This matter is before the court on the Motion of Plaintiffs for Incentive Payments and Motion of Class Counsel for an Award of Attorneys' Fees (Doc. # 64), filed January 25, 2010. The following evidence was filed in support of the Motion: declarations from D. Frank Davis, George M. Van Tassel, Jr., John E. Norris, John E. Goodman, Peter Burke, and Laura and Steven Faught; the Stipulation of Settlement; the Stipulation of Settlement in *Edleson v. American Home Shield of California*; and the July 10, 2009 Order of the Superior Court of San Diego County in *Edleson*. (Docs. # 66, 91). The court also received certain objections regarding the requested attorneys' fees, and heard argument on those objections at the Fairness Hearing conducted on March 10, 2010. (Doc. # 103).

**I.    Procedural History**

The court preliminarily approved the parties' Stipulation of Settlement filed October 9, 2009 (the "Settlement").[1]  (Doc. 37, Ex. 1). The structure of the Settlement and benefits provided to the Class are described in detail at Section II of the court's Final Judgment Granting Final Approval of the

---

[1] This Final Judgment incorporates by reference the definitions in the Settlement, and all applicable terms used herein shall have the same meaning as set forth in the Settlement.

Class Action Settlement Agreement Between the Class and Defendant American Home Shield Corporation (Doc. # 105).  Notably, the Settlement provides for no set amounts of fees to be paid to Class Counsel or the Faughts.  The Settlement is not dependent on any particular award of fees or incentive awards.  Rather, the Settlement provides that Class Counsel may submit, and AHS will not oppose, an award of fees in the amount of $1.5 million to be paid directly by AHS to Class Counsel.  It further provides that Class Counsel may also seek, and AHS will not oppose, an award of 25% of any payments made to Class Members by the Review Desk. The Settlement also provides that the Faughts may request a payment of $8,000 in damages, which is essentially the value of their claim, *i.e.* the cost of their repair, plus out of pocket expenses. (Doc. 66-4, Ex. I).  Moreover it proposes that they each receive a $5,000 incentive payment.  The motion currently before the court, seeks precisely these amounts.  (Doc. # 64).

Following preliminary approval of the Settlement, AHS mailed the court-approved Notice of Class Action and Settlement ("Notice") to 4,731,250 Class Members.  In addition, the Notice, along with the Settlement, the court's Order Preliminarily Approving the Settlement, and other relevant materials were published on an internet website referenced in the Notice: www.faughtclassaction.com. (Doc. # 37, Ex. 2 at 15).  The information on the website summarized the terms of the Settlement, the nature of the lawsuit, and how to obtain additional information.  (Doc. # 92-2).

In response to the Notice, twenty-four class members (not counting the State of Texas, which is not a class member), objected to the settlement for a .00051 per cent objection rate.  (*See* Docs. # 68, 69, 71 - 79, 93, 95).  Certain of the objectors argued that because the Settlement does not provide for a specific dollar value for Class Members, it is impossible to determine whether the attorneys' fee

request is fair and reasonable. (Docs. # 68, 79). Other objectors argue that the proposed benefits to the named Plaintiffs are excessive. (Doc. # 76).

On March 10, 2010, the court conducted a fairness hearing at which all intervenors, objectors, and parties who appeared and wished to be heard from were given an opportunity to present their positions and arguments.

II.     Discussion

    A.     **The Attorney Fee Award**

"In this Circuit, the appropriate standard for fee awards in common fund cases is a percentage of the fund established for the benefit of the class, with the benchmark award being twenty-five percent of the fund." *Flournoy v. Honeywell Intern., Inc.*, 2007 WL 1087279, * 1 (S.D. Ga. 2007) (quoting *Camden I Condominium Associates, Inc. v. Dunkel*, 946 F.2d 768, 774 (11th Cir. 1991)); *see also Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (majority of common fund fee awards fall between 20% to 30% of the fund). Thus, Class Counsel's request for an award of 25% of the payments to class members under the Settlement is well within a reasonable range. *Camden I*, 946 F.2d at 774; *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1341 (S.D. Fla. 2007) ("In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir.1986) (observing that "40% is the customary fee in tort litigation").

Where class counsel request more than the 25% "benchmark," the matter is "committed to the discretion of this Court, guided by what have become known as the twelve *Johnson* factors that were set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974)." *Flournoy*, 2007 WL 1087279 at * 1. Therefore, this court must evaluate that portion of Class Counsel's

requested fee that is over and above the 25% benchmark – that is, their request for additional fees in the amount of $1,500,000, to be paid directly by AHS under the *Johnson* factors.

The court begins this analysis by distinguishing the request for $1,500,000 in fees from a request seeking a percentage over 25% that is to be paid from a common fund settlement. The payment here is to be paid directly by AHS, not from benefits that would otherwise go to the Class. Therefore, the additional payment requested here does not diminish any of the benefits that are to go to the Class under the Settlement.[2]

The requested payment is designed to compensate Class Counsel for achieving non-monetary, but nonetheless valuable benefits on behalf of the Class. Obviously, Class Counsel does not seek to be awarded a fee based upon a percentage of the value of business practices changes to be made under the Settlement. Similarly, Class Counsel does not ask to recover a fee based on a portion of the benefits received under the Settlement where AHS has its contractors make repairs for Class Members, rather than issuing cash payments.

To place the request for this amount in context requires a closer examination of the work performed by Class Counsel. Class Counsel filed this action in 2007 with no guarantee of payment.

---

[2] The court fully understands and appreciates the argument made by some of the objectors that even a fee paid directly to Class Counsel by AHS – and not from a common fund – tends to diminish the recovery by Class Members because a settling defendant looks at a monetary settlement in a whole sum approach and, therefore, any payment in fees to counsel necessarily reduces the amount of money the defendant is willing to devote to class relief. While generally that argument makes some sense, there are two problems with it – one general and one contextual. First, the argument would quite obviously apply to *every* class action settlement because virtually any time a class action is settled class counsel will petition for and seek to receive a fee. Thus, carried to its logical conclusion, the argument would call into question all class settlements unless class counsel were uncompensated. Second, in the context of this case, attorneys' fees were not substantively discussed or agreed upon until after the Settlement was agreed to by the parties. (*See e.g.*, Doc. # 66-1).

They zealously litigated the matter and thereafter entered into what can only be described as marathon settlement negotiations. As a result of those negotiations, the Settlement was reached in October 2009. (Doc. # 37-1).

This attorneys' fee request also takes into account the substantial amount of work performed by Class Counsel after the Settlement was agreed to and Notice was disseminated. Class Counsel correctly anticipated that the Notice would generate numerous inquiries from Class Members. Accordingly, Class Counsel arranged for state of the art telephone, email and facsimile systems to be put into place. (Doc. # 91, Ex. B, ¶ 2). The telephone system forwarded all calls that were not answered by a live person to voice mail. (*Id.* ¶ 3). The voice mail system had for all practical purposes an unlimited capacity, and the system captured the caller-ID of each call. (*Id.*). The system produced summary charts which were downloaded into usage spreadsheets. (Id.). The facsimile and e-mail systems also had, for all practical purposes, unlimited capacity. (*Id.* ¶¶ 4, 5). Between December 19, 2009 and February 18, 2010, Class Counsel received 12,727 telephone calls related to the Settlement (an average of 205 calls per calendar day), 1,289 e-mails, and 307 faxes. (*Id.* ¶¶ 6, 7). With the exception of a very small percentage of calls, faxes, and emails that required no response, every call was answered live or returned, every e-mail received a reply, and every fax received a response. (*Id.* ¶ 8).

Six people in Class Counsel's office worked exclusively in communicating with Class Members and various counsel representing them: two attorneys and four legal assistants. (*Id.* ¶ 9). One of the legal assistants speaks Spanish and that has facilitated communications with Spanish speaking Class Members. (*Id.*). In addition to the staff working exclusively on the matter, six attorneys and four legal assistants spent substantial amounts of time on responses. (*Id.*). During the time period between

January 1, 2010 and February 12, 2010, the exclusively dedicated attorneys recorded 546 hours, the exclusively dedicated legal assistants recorded 704.5 hours. Other attorneys working on the case during the same time period spent approximately 720 hours on the matter, and other legal assistants spent approximately 240 hours. (*Id.* ¶ 10). According to the most recent Billing Rates and Practices Survey Report published by Incisive Legal Intelligence, the average billing rate for U.S. attorneys nationwide is $284 per hour. (*Id.* ¶ 11). Using this rate and only $100 per hour for legal assistants, the value of the work being performed by the attorneys for the Class since the date of the class notice exceeded $300,000 per month. (*Id.*). After the Settlement claims period begins, Class Counsel anticipates that the volume of work will go up substantially, and remain steady during the two years the Review Desk may remain open. (*Id.* ¶ 12). Thus, it appears that the lump sum fees requested by Class Counsel will only fund this level of staffing for about five months.

Turning to the *Johnson* factors, the court addresses each of the factors below.

### 1. The time and labor required

This litigation began in October 2007. Class Counsel spent significant time conducting necessary discovery and conducting settlement negotiations. Once the procedures established by the Settlement are put into place, it will continue to require significant time and effort by all firms involved, particularly Class Counsel, who will be monitoring the Review Desk Process. This level of commitment weighs in favor of an increase in the fee percentage from the benchmark.

### 2. The novelty and difficulty of the questions

The claims asserted in this case are for breach of contract and bad faith failure to pay insurance claims. (Doc. # 34). They are asserted on a nationwide basis. While at first blush, it may not appear that the questions of law and fact are particularly novel or unusual, the court notes that the Class is

made up of over 4.5 million people and the legal claims also arise in all fifty states. The structure of this Settlement certainly required all counsel (but particularly Class Counsel) to think "outside the box" to find a method for Class Members to potentially receive 100 cents on the dollar for their claims, rather than to just agree upon an abstract number, with mere pennies on the dollar going to each class member. These circumstances do not argue for a reduction of the fee from the benchmark.

### 3.     The skill requisite to perform the legal service properly

This is complex class action litigation against a large national corporation represented by very talented lawyers with significant resources at their command. The handling of the litigation and the settlement negotiations required a high level of skill from lawyers experienced in class action litigation. Class Counsel are to be commended for the acumen, industry, and diligence they brought to this case, and their performance in achieving this Settlement. This factor does not argue for any reduction of the fee from the benchmark.

### 4.     The preclusion of other employment by the attorney due to acceptance of the case

Class Counsel's firm is a small law firm. As discussed above, they have been required to increase their staffing specifically to handle inquiries once the Class Notice was issued in this matter. Class Counsel's involvement in this matter has necessarily limited the time and resources that they can devote to other matters over the period of this litigation (and that limitation will no doubt continue for at least the next two years). This factor weighs in favor of an increase of the fee from the benchmark.

### 5.     The customary fee

The customary fee for plaintiffs asserting claims of this type is a contingent fee. The most common contingent fee is one third of the recovery. Forty percent fee contracts are common for

complex and difficult litigation such as this. *Pinto*, 513 F.Supp.2d at1341("In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients."); *Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation"). This factor weighs in favor of an increase of the fee from the benchmark.

### 6. Whether the fee is fixed or contingent

Class Counsel ask for a fee award that is in part fixed, and in part contingent. This makes sense in this lawsuit because Class Counsel negotiated for significant non-monetary relief to the benefit of the Class on which a dollar value cannot be placed. The contingent element of their fee request is right at the benchmark percentage. They seek the additional fixed amount to compensate them for negotiating the non-monetary aspect of the settlement and funding the legal resources necessary to aid Class Members with that. Thus, the structure of the fee request mirrors the structure of the settlement. Therefore, this factor weighs in favor of an increase of the fee from the benchmark.

### 7. Time limitations imposed by the client or the circumstances

As discussed above, the demands of this case during the course of litigation would have, of necessity, interfered with Class Counsel performing other legal work. Further, Class Counsel will continue to be required to devote significant time and effort to the monitoring and administration of the Settlement over the course of the next two years. Therefore, this factor weighs in favor of an increase of the fee from the benchmark.

### 8. The amount involved and the results obtained

Although no precise dollar figure can at this point be placed on it, the Settlement is designed to ensure that Class Members are fully compensated for their losses. It provides injunctive-type business practices changes designed to remedy the alleged problems giving rise to this lawsuit. There

were only twenty-four (not counting the State of Texas, which is not a class member) out of 4,731,250 Class Members who objected to the settlement, for a .00051 per cent objection rate. (*See* Docs. # 68, 69, 71 - 79, 93, 95). This "constitutes an infinitesimal number." *Lipuma*, 406 F.Supp.2d at 1324 (describing .00050% as an infinitesimal number). Moreover, an exceedingly low number of persons – at most 1,543 – opted out of the Settlement. It appears that Class Members are satisfied with the Settlement. Therefore, this factor weighs in favor of an increase of the fee from the benchmark.

### 9. The experience, reputation, and ability of the attorneys

The court is familiar with the experience, reputation, and ability of Class Counsel, as well as the AHS's counsel. This case has, at all stages, been handled on both sides by very experienced and talented lawyers whose reputations for effective handling of complex litigation are well known throughout Alabama. Indeed, George M. VanTassel, Jr., the mediator in this case, has signed an affidavit which states in relevant part that

> Throughout the proceedings held in my office, the attorneys conducted themselves professionally, and were strong advocates for their respective positions. The attorneys for both sides repeatedly advised me that there would be no discussion of fees until all class issues were resolved. Other than as discussed regarding the sessions in February 2009, no fee discussions occurred in my presence, excepts as to the procedure for who would decide the attorneys' fee question (subject to Court approval) if an agreement could not be reached.

(Doc. # 66-1, Ex. B at ¶ 6). This factor weighs in favor of increasing the fee from the benchmark.

### 10. The "undesirability" of the case

In light of the "turf war" instigated by the Edlesons' counsel, obviously this court cannot conclude that this was an undesirable case. However, the court notes that prosecution of individual claims for Class Members on a case-by-case basis would no doubt be undesirable from the standpoint that the actual damages suffered by any particular AHS customer are generally fairly low and there

would not be much incentive to pursue these cases individually. Thus, although this factor does not weigh in favor of increasing the fee from the benchmark, it certainly does not weigh in favor of decreasing the fee from the benchmark either.

**11.    The nature and length of the professional relationship with the client**

Nothing has been brought to the court's attention to indicate that Class Counsel were representing long-term clients. This factor does not call for any increase or decrease of the fee from the benchmark.

**12.    Awards in similar cases**

"The majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774 (citing 1 Herbert B. Newberg, *Attorney Fee Awards* 2.08, at 51 (1986)). In this Circuit, many awards have been approved at the 30% or more range. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (awarding 33 1/3%); *Pinto*, 513 F.Supp.2d at 1342, n.3 (awarding 30% and collecting cases); *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323 (S.D. Fla. 2001) (awarding 25%); *Diaz v. Hillsborough County Hosp. Auth.*, 2000 WL 1682918 (M.D. Fla. 2000) (awarding 30%); *Tapken v. Brown*, 1992 WL 178984 (S.D. Fla. 1995) (awarding 33%).

Having considered all of the *Johnson* factors, the court finds that it is fair and reasonable to award Class Counsel a fee of twenty-five percent of the total monetary recovery paid to Class Members under this Settlement, plus an additional fee of $1,500,00 to be paid directly to Class Counsel by AHS.

### B. Incentive Payments and Compensation to the Faughts

The Settlement proposes that the Faughts receive $8,000 as compensation for their claim, *i.e.* the cost of their repair, plus out of pocket expenses. (Doc. 66-4, Ex. I). It also proposes that they each receive a $5,000 incentive payment. (*Id.*).

#### 1. Incentive Payments

Incentive payments to named class representatives are fairly customary. These payments are intended to recognize the time and efforts the Faughts spent on behalf of the Class Members. By prosecuting this action as a class action, they significantly delayed resolution of their own claims. They spent many hours meeting with Class Counsel and participating in the mediation process. They rejected offers that would have compensated them at the expense of the class. (*Id.*).

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation ." *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal quotations and citations omitted) (approving service awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class.). Interestingly, in this case, unlike in many class action settlements, these proposed payments to the Faughts, like the additional lump sum payment to their counsel, do not lessen the recovery to the class as a whole. The Class may still obtain full relief on their claims under the Settlement.

Courts have found it appropriate to specially reward named class representatives for the benefits they have conferred on the class in greater amounts than those sought here. *See Allapattah Servs, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1218-19 (S.D. Fla. 2006) (collecting cases in which

courts approved class representative incentive awards ranging between $1,500 and $25,000); *Pinto*, 513 F.Supp.2d at 1344 (approving $7,500 awards to three representative plaintiffs); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 to each of 6 class representatives, for an aggregate award of $300,000)*; In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 33 (E.D. Pa.1985) (incentive awards of $20,000 to each of two plaintiffs).

Any appearance of unfairness which arguably might arise because of the disproportionate distribution to the Faughts in the form of these incentive payments are dispelled in this case because they "are rationally based on legitimate considerations." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983). The incentive payments proposed in this case are not shrouded in a "cloud of collusion." *See Holmes*, 706 F.2d at 1148. The Faughts' actions as Class Representatives (1) protected the interests of class members and others; (2) resulted in substantial benefit to Class Members; (3) and required significant time and effort from the Faughts. *See Carnegie v. Mutual Sav. Life Ins. Co.*, 2004 WL 3715446, * 24 (N.D. Ala. 2004) (citing *Spicer v. Chicago Board Options Exchange, Inc.*, 844 F.Supp. 1226, 1266 (N.D. Ill. 1993) (setting forth "legitimate considerations" which dispel a "cloud of collusion"). The court also finds it significant in this case that these payments were not discussed until after a Settlement was reached, and the Settlement is in no way conditioned upon their payment.

In light of the work and service the Faughts performed on behalf of Class Members, the risks they undertook, and their response to the Settlement, the requested incentive payments of $5,000 each are reasonable, appropriate and are due to be approved.

### C.     $8,000 in Compensation to the Faughts

At the fairness hearing, one group of objectors took issue with the fact that the named Plaintiffs were seeking to receive compensation on their claims (the requested $8,000 payment) outside of the Settlement process that they negotiated as Class Representatives. The question raised was this – why are the named Plaintiffs not required to submit their claims in the same manner as the rest of the Class? The court agrees that if the Review Desk process is good enough for the Class, it is good enough for the Faughts. Accordingly, the Faughts must submit their claims through the same process that they negotiated on behalf of the Class.

### III.    Conclusion

For the foregoing reasons, the Motion of Plaintiffs for Incentive Payments and Motion of Class Counsel for an Award of Attorneys' Fees (Doc. # 64) is **GRANTED IN PART AND DENIED IN PART.** To the extent that the motion seeks attorneys' fees on behalf of Class Counsel in the amount requested and incentive payments in the amount of $5,000 to each of Laura and Steven Faught, it is **GRANTED**. To the extent the motion seeks compensation to the Faughts in the amount of $8,000 without submission of their claims to the Review Desk, it is **DENIED**.

**DONE** and **ORDERED** this      27th       day of April, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE