FILED

2010 Apr-27  PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No.: 2:07-CV-1928-RDP** |
| | ) | |
| **AMERICAN HOME SHIELD CORPORATION,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## AHS'S REPLY IN SUPPORT OF ITS MOTION FOR CONTINUATION AND MODIFICATION OF ALL WRITS ACT INJUNCTION

The Edlesons' opposition to continuation of the All Writs Act injunction against them merely rehashes matters already decided against them. Although their opt out only allows them to litigate their individual claim for monetary relief, they want to continue seeking a broad-ranging, class-wide injunction in California that (1) would affect a huge number of customers with whom AHS has already settled, but have no effect on the Edlesons themselves; and (2) would conflict with the *Faught* settlement. The Edlesons' past efforts in this regard were properly enjoined by the Court under the All Writs Act. If it finally approves the settlement,[1] the

---

[1] AHS's motion is contingent upon final approval of the settlement. If the Court does not grant final approval, the issues specific to this motion do not need to be addressed.

Court should continue that injunction to protect the Court's judgment against relitigation and interference. *See Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 881–83 (11th Cir. 1989).

### Introduction and Background Facts

The Edlesons still enjoy the right to bring an individual claim against AHS for money damages concerning their furnace. *See* Doc. 101, Ex. A, ¶ 46. But their opposition makes it clear that their real intentions do not involve that dispute at all. Instead, they insist on pursuing inconsistent classwide relief against AHS. And they apparently intend to do so immediately if the Court lifts its injunction against them.

At the fairness hearing, the Court wondered if the Edlesons intended to pursue only their individual claims in California. Doc. 103 at 103 ("the Edlesons' attorney who appeared in my court represented to me that they were standing down and not doing anything inconsistent with my order in terms of seeking anything other than individual relief."). The Court also asked whether the Edlesons have done anything to show a contrary intent. *Id.* at 105. The Eldesons' opposition does just that. Nowhere in their 25-page brief do they discuss their individual claims or express any interest in modifying the injunction to permit true individual litigation.

2

Instead, they want the freedom to pursue injunctive relief against AHS to "reform" its business practices. Doc. 104 at 17.

The instant motion is not the first time the Court has considered these issues. The Edlesons' pending (albeit stayed) motion in California seeks injunctive relief on behalf of the "Class" to reform AHS's business practices by, among other things, (1) compelling it to make immediate disclosures to all its customers and (2) requiring AHS immediately to change the terms of its contracts with its network of home service contractors. Doc. 39 Ex.7 at 1, 23–24. The *Faught* settlement, by contrast, (1) gives AHS 24 months to reform its customer relations through the Review Desk (Doc. 37 Ex.1 ¶5.2) and (2) allows AHS a period of four months to improve its contractor service through specific written training materials, followed by a 16-month evaluation and retraining period (*id.* ¶ 5.3).[2] Due to this conflict, the Court found the injunctive claims being pressed in *Edleson* would interfere with the *Faught* settlement. The Court agreed that "exposing AHS to an injunction by the California court, on the very issues that are the subject of this settlement, threatens to saddle AHS with inconsistent obligations as regards its business practices, and forces it to defend claims that it has settled." Doc. 43 at 5. The Court

---

[2] Following the parties' further discussions concerning prospective business practice changes, the settlement before the Court now provides for extensive changes to be implemented over the next 24 months, encompassing in various ways contract amendment, dealings with AHS's contractors, claims handling and disclosure. Doc. 97. AHS is required to provide the Court and Named Plaintiffs' Counsel with status reports as to progress toward implementing these changes. *Id.,* ¶ 9.

made this finding because the injunctive relief sought by the Edlesons "(1) was filed on behalf of 'Plaintiffs [Edlesons] and the Class' . . . , (2) was nationwide in scope, (3) was related to Defendant AHS's corporate business practices (including outside of California), and (4) would have substantially interfered with the terms of the settlement preliminarily approved in this case." Doc. 57 at 4. The Court's previous findings remain applicable and correct.[3]

Some additional background may be helpful in considering whether the Edlesons should be permitted to challenge wholesale AHS's business practices via its claims for an injunction under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1770 *et seq.*, and Unfair Competition Law ("UCL"), Cal. Business & Practices Code § 17200 et seq. The Edlesons contend that they have the individual right to seek such relief, but the inescapable fact is that such relief is directed to, and will *solely* benefit, class members with whom AHS has settled.

As the Court knows, the Edlesons are not current customers of AHS. Chip Edleson's declaration from the California case recites that the Edlesons were covered by an AHS policy between March 20, 2003 and March 20, 2005. Edleson

---

[3] The Edlesons were given an opportunity to file a brief in support of their assertion that the initial All Writs Injunction should have been vacated or modified, but declined to do so, instead filing an immediate appeal and taking the (erroneous) position that this Court was without jurisdiction to decide their request.

Decl., ¶ 2 (appended hereto as Exhibit A). As such, the injunctive relief that the Edlesons wish to pursue will not, and is not intended to, benefit them at all. To the contrary, the beneficiaries of any such relief would be only the putative "class" in California, which is unquestionably covered by the settlement in this case. *See* Doc. 39 Ex.7 at 1 (Points and Authorities in Support of *Edleson* Injunction) ("A preliminary injunction should be issued because . . . Class Members are being irreparably damaged due to AHS's false advertising and unfair business practices."); Doc. 37 Ex.1 at ¶¶ 1, 14 (*Edleson* Complaint) (defining the class as all persons or entities in the United States who made a claim under an AHS home service contract between June 2001 and the present).

The consumer evidence on which the Edlesons relied to support their injunction motion in California came from individual customers *with whom AHS has now settled*. See Doc. 44 (under seal) at 3–4 ("in response to this lawsuit, thousands of AHS's current and former customers have contacted Plaintiffs' counsel, many of whom have submitted sworn declarations detailing the problems they have had and currently have with AHS"). Only one of those twenty-eight declarants—Chip Edleson—chose to opt out of the *Faught* settlement (*see* Niewoehner Decl., ¶ 2, appended as Exhibit B). One other—Donald Leach, a

Settlement Class Member who is represented by the Edlesons' counsel Johnson Bottini (*see* Doc. 73)—has objected to the settlement. *Id.*[4]

It is clear from their opposition that the Edlesons intend to pursue their case in California as if nothing has happened. But what has happened is that substantially everyone whom the Edlesons seek to represent—who are the only people who could even conceivably benefit from injunctive relief under the CLRA and UCL—has agreed to participate in and be bound by the settlement in *this* case. Should the Court permit the Edlesons to proceed in California beyond their own individual claims for monetary damages, the settlement reached in this case will be totally undone and set at naught.

## Argument

I.    <u>The fact that the Edlesons have opted out of the settlement does not permit them to pursue their claims for injunctive relief in California.</u>

The Edlesons spend much of their 25-page brief articulating points that do not address either the legal issues before the Court, or the reality of what the Edlesons are determined to do. In particular, the Edlesons argue that they cannot be

---

[4]This lack of objection and decision not to opt out indicates that these Class Members, like the overwhelming majority of the entirety of the Class, find the *Faught* settlement to be fair and reasonable. *See, e.g., Wyatt By and Through Rawlins v. Horsley*, 793 F. Supp. 1053, 1056 (N.D. Ala. 1991) ("a court may properly interpret the absence of objections from a majority of the plaintiff class as indicating support for the . . . settlement"); Doc. 90 at 46–47 (citing cases).

enjoined because they have opted out of the *Faught* settlement. This argument lacks merit, both factually and legally. As a factual matter, the Edlesons' decision to opt out only allows them to litigate their own claims "individual[ly]." Doc. 37 Ex.2 at 11 ("Any Class Member who elects to be excluded will not share in any Class Benefits or otherwise participate in the Settlement, but he or she will not be barred by the Final Judgment *from pursuing individual claims against Defendant in a separate lawsuit.*") (emphasis added), *incorporated by* Doc. 37 Ex.1 ¶ 7.7. But notwithstanding the Edlesons' verbal gymnastics in their brief, their claims under the CLRA and UCL are simply not individual claims. The injunction sought in California could not possibly benefit the Edlesons; they are not consumers of AHS, and haven't been since 2005.

Even if they were, California law is clear that their claim for injunctive relief is statutorily intended to benefit the public, not the individual seeking injunctive relief:

> [T]he evident purpose of the injunctive relief provision of the CLRA is not to resolve a private dispute but to remedy a public wrong. Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered.

*Broughton v. Cigna Healthplans*, 988 P.2d 67, 77 (Cal. 1999). California's highest

court has held the same with regard to the injunctive relief provisions of the UCL.

*Cruz v. Pacificare Health Systems, Inc.*, 66 P.3d 1157, 1164–65 (Cal. 2003).

A cursory review of the Edlesons' preliminary injunction motion reveals that

there is nothing whatsoever "individual" about the relief they seek. As the Court

put it in a previous hearing, the Edlesons may want to call it a "taxi," but their

California case is in fact a "bus." Doc. 53 at 13. The fact that the Edlesons have

opted out of this settlement does not change the impermissibility of their effort to

litigate collectively on behalf of all of AHS's customers in California state court.

Try as they might, the Edlesons are not free to pursue injunctive claims

inconsistent with a federally approved class action settlement. The class action

allegations in *Edleson* have never been dropped, and nothing in any of the

Edlesons' multiple filings in this Court or the Eleventh Circuit have disclaimed an

intention to represent the putative class on whose behalf they filed their case in the

first place. The Court should bar any attempt to seek relief elsewhere on behalf of

Settlement Class Members in this case, even if sought by one who has opted out of

the settlement. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 261 F.3d

355, 364–69 (3d Cir. 2001) (affirming injunction preventing opt-outs from using

evidence pertaining to settled claims in individual lawsuits); *In re Diet Drugs Products Liability Litig.*, 123 Fed. Appx. 465, 470–71 (3d Cir. 2005) (enforcing injunction against litigation of opt-out claims inconsistent with final settlement). The Edlesons as opt outs "do not have unfettered causes of action" in state court. *Diet Drugs*, 123 Fed. Appx. at 470. Their attempt to unsettle what AHS has already settled cannot be permitted. *Id.*; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 105 (3d Cir. 2002).

The Edlesons' claim that enjoining them from pursuing their claims for wholesale reform of AHS via injunction deprives them of their right to opt out of the *Faught* settlement, relying principally on *Drelles v. Metro. Life Ins. Co.* 357 F.3d 344 (3d Cir. 2003). Both their argument and their reliance on *Drelles* fail. AHS does not now take—and has never taken—the position that the Edlesons, having opted out, are not free to pursue their own individual lawsuit against AHS. To permit them, however, to opt out in order to seek a nationwide injunction against AHS, on behalf of and for the benefit of millions of consumers[5] who have made peace with AHS, is to deny that there has even been a settlement. The right

---

[5] There are more than 4.7 million Class Members in this case, across all fifty states. *See* Doc. 85-1, ¶ 4; Doc 92-1 and Ex. A. Tellingly, the Edlesons submitted declarations in support of their preliminary injunction motion from AHS customers residing in the states of Arizona, California, Florida, Georgia, Illinois, Maryland, Nevada, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia. *See* Niewoehner Decl., ¶ 2. The Edlesons' challenge to AHS's business practices is and has always been universal in its scope. Their brief to this Court does not suggest otherwise.

to opt out does not come with the right to continue the litigation, in all its scope and particulars, that has just been settled.

Not only is *Drelles* not to the contrary, it supports a continuation of the injunction in this case. In *Drelles*, the Third Circuit reversed a trial court's injunction against class members who opted out of a class settlement, and were attempting to conduct discovery in their individual actions. *Id.* at 345. In reversing the injunction, the appeals court held that the opt-out claimants were not "relitigating the settled claims at all . . ., they are suing over their own alleged mistreatment at the hands of [the defendant], not over someone else's claim." *Id.* at 346. The contrast between *Drelles*, with its individual claims for monetary damages, and the Edlesons, who want to seek a nationwide injunction that could benefit only settlement class members and not themselves, is stark. The Edlesons are not "suing over their own alleged mistreatment." *Id.* They are unabashedly suing because, according to them, "Class Members are being irreparably damaged." Doc. 39 Ex.7 at 1.

The Edlesons' position amounts to an argument that, because they have opted out, they are entitled to pursue remedies on behalf of all AHS customers—whether those customers have chosen to participate in the settlement or not. Just as

with the Texas' Attorney General's effort to have the Court exclude all Texas residents from this case, the Edlesons' ploy to represent all AHS customers in a suit seeking nationwide injunctive relief for the same alleged wrongs would render the settlement in this case meaningless. *See* Doc. 99 at 9–11 (discussing *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1333–35 (5th Cir. Unit A 1980); *In re Diet Drugs*, 282 F.3d 220, 237–39 (3rd Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1024–25 (9th Cir. 1998); *Carlough v. AmChem Prods.*, 10 F.3d 189, 204 (3rd Cir. 1993); and *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335–39 (2nd Cir. 1985)).

The Edlesons also contend that, because the releases and covenants not to sue in the Settlement do not become effective until the Effective Date (which would come after final approval and resolution of any appeals), both they *and* Settlement Class Members are free in the meantime to continue to sue AHS. Doc. 104 at 13–14. The Edlesons' position, however, is supported by neither logic nor the law.

AHS has never contended that the Edlesons should be enjoined on the basis of the settlement releases or covenants not to sue. The Effective Date in the

11

Stipulation of Settlement merely controls when the Release becomes effective with respect to Settlement Class Members (not opt out like the Edlesons). Doc. 37 Ex. 1 ¶¶ 2.19, 10.1–.3. Rather, it is the conflicting nature of the claims the Edlesons are determined to assert in California, and the dictates of the All Writs Act, that requires a continuation of the injunction. As to the Settlement Class Members, the Edlesons' position makes no sense: AHS, having settled with millions of customers, must nonetheless continue to allow class claims to be pursued behalf on those customers?  It is not surprising that the only case the Edlesons cite in this regard is *Diet Drugs*, 369 F.3d at 315, which involved the rights of **opt-out** class members, **not** the members of the class that have settled.[6]

The Edlesons' arguments in this regard are legally flawed besides.  The Court's adjudication of the Settlement will become final the moment the Court enters a final judgment thereon. *See* 18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4433 (2002); RESTATEMENT (SECOND) OF JUDGMENTS §§ 13–14 (1982). *Res judicata* will take effect immediately and apply unless or until the judgment is reversed or vacated on appeal. Notably, the Edlesons cite nothing in support of their argument that the

---

[6] The Edlesons' argument that "numerous objecting class members intend to appeal if the Court overrules their objections" (Doc. 104 at 14) is likewise of the "heads I win, tails you lose" variety.  The Edlesons have of course themselves already (prematurely) appealed, and in challenging in the appellate court the validity of the settlement *vel non*, their own appeal stands to delay the settlement's Effective Date. It would be the height of inequity to permit them to continue to seek class relief in California based on a delay in the Effective Date, when their own strategic behavior is what will have led to that delay.

Court's judgment will not be enforceable until all appeals are exhausted. *See* Doc. 104 at 14. The law provides otherwise. *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988).

II.   The relitigation exception to the Anti-Injunction Act requires a continuation of the injunction.

The Edlesons contend that the relitigation exception to the Anti-Injunction Act, 28 U.S.C. 2283, cannot be used to justify continuation of the injunction against them, because this case and *Edleson* allegedly lack "a substantial identity of the parties" and "the same cause of action in both law suits." Doc. 104 at 15 (*citing Burr & Forman v. Blair*, 470 F.3d 1019, 1033 (11th Cir. 2006)). Again, the Edlesons are wrong.

While it is true that the final judgment will not be binding on the Edlesons as opt-outs, the point they ignore is that the millions of AHS customers on whose behalf and for whose benefit they wish to continue to litigate against AHS *will* be bound by the final judgment. There will be a near-total identity of parties. The only persons who stand to benefit from the Edlesons' requested injunction in California will be persons who have agreed to resolve all such disputes with AHS in this case, and whose claims (pursuant to the final order) will have been dismissed with prejudice. It is those *settled* claims that cannot be relitigated. Even if this were not

13

so, the relitigation exception squarely encompasses injunctions against non-parties like the Edlesons who seek to relitigate claims that have been settled. *See United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (extending All Writs authority to persons "who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice"); *Baldwin-United*, 770 F.2d at 336–38 (upholding injunction barring non-party states from relitigating in state court claims of their citizens that had been settled in federal court).

The Edlesons' argument that there is no identity between the causes of action in this case and *Edleson* is defeated by their misreading of Alabama preclusion law. "'*Res judicata* applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact.'" *Crutcher v. Wynn*, 591 So. 2d 453, 454 (Ala. 1991) (quoting *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990)). *See Wesch*, 6 F.3d at 1471. There can be little doubt that the Edlesons' claims in California arise out of the same nucleus of operative fact as the claims in this case. *See, e.g., Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285 (11th Cir. 2007); *Thomas v. Blue Cross and Blue Shield Ass'n*, 333 Fed. Appx. 414, 417 (11th Cir. 2009). The Edlesons' request for an injunction is directed at the same alleged

14

misconduct that has been settled in *Faught.* In fact, the Edlesons' California counsel has applied to the Court for attorneys' fees in this case because (according to him) this settlement is all his work anyway. Doc. 73 at 11. Relitigation of what has been finally settled and reduced to judgment is precisely what will occur if this Court permits the Edlesons and their counsel to continue with their claims for injunctive relief in California. The law empowers the Court to prevent the same, and the Court should do so.

III.   <u>A continuation of the injunction is necessary in aid of this Court's jurisdiction.</u>

The Edlesons contend that the "in aid of jurisdiction" exception to the Anti-Injunction Act does not apply, because their suit in California allegedly seeks "different," allegedly non-conflicting remedies from the settlement in this case. Doc. 104 at 19–21. Their contentions are misplaced, legally and factually.

The Eleventh Circuit has recognized that the "in aid of jurisdiction" exception to the Anti-Injunction Act applies when a federal court has "retained jurisdiction over complex, *in personam* lawsuits," resolution of which is threatened by competing state court litigation. *In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233, 1251–52 (11th Cir. 2006) (*citing Battle,* 877 F.2d 877). This "'complex multi-state litigation exception'" is properly invoked where a "complex and

carefully crafted settlement" in federal court "would be undermined by a state court adjudication." *In re Bayshore*, 471 F.3d at 1252. Such is plainly the case here.

The Settlement resolves globally the claims of millions of AHS customers across the country, and provides for forward-looking changes in AHS's business that will benefit AHS's customers in the future. The Court retains jurisdiction over the Settlement for up to two years for assurance of its implementation (Doc. 37 Ex. 1, ¶¶ 7.11, 5.2(H)(iv), and will be provided with status reports as to the implementation of the business practice changes. Doc. 97, ¶ 9.

The Edlesons' requests for relief in California would place requirements on AHS that conflict with those which AHS, Class Counsel, and the Settlement Class have agreed constitute a fair and reasonable resolution of this dispute. In response to claims (asserted in both *Faught* and *Edleson*) that AHS allegedly fails to honor its home service contracts, the settlement in this case provides for multiple changes in AHS' claims administration processes (Doc. 97, ¶¶ 1, 5, 6), in its marketing materials (*id.*, ¶ 2), and in dealing with its customers via provision of a reason for any denial and allowing for the cancellation of contracts (*id.*, ¶¶ 2, 7).[7] The

---

[7] It is noteworthy that none of these provisions were contained within the rejected *Edleson* settlement.

Edlesons' proposed relief attempts to remedy precisely the same issues (how AHS interacts with contractors and customers in addressing coverage issues), but does so in a manner that is inconsistent with the agreement here. To allow for wholesale litigation and entry of different classwide injunctive relief in California on the very same issues that are the subject of this complex, detailed, and intensely negotiated settlement would both threaten the settlement itself and "undermine [this Court's] continuing jurisdiction over the case." *Battle,* 877 F.2d at 881.

In short, it is apparent that the Edlesons desire and intend to litigate in California any aspect of injunctive relief that is not included in the Settlement here. But the law will simply not support that position. *See Diet Drugs,* 282 F.3d at 231, 238–39 (affirming injunction against named plaintiffs in state court class action who opted out of federal settlement to seek greater relief for Texas consumers). *See generally* 18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4409, at 232 (2002) ("A second challenge to continuing conduct may be precluded [by *res judicata*] . . . if the object of the first proceeding was to establish the legality of the continuing conduct into the future."). Because the Edlesons' requested injunctive relief in California is inconsistent with the prospective business practice changes in the pending Settlement, this Court has the authority to protect the settlement. *See Klay v.*

*United Healthgroup*, 376 F.3d 1092, 1104 (11th Cir. 2004) ("Proceedings in other courts that involve the same facts as already issued judgments and orders, or that could result in the issuance of an inconsistent judgment, threaten the jurisdiction of the district court enough to warrant an injunction."); *United States v. District of Columbia* 654 F.2d 802, 810 (D.C. Cir. 1981) ("Where a state court enjoins a course of conduct which is necessary to comply with a prior federal court order, the federal court has authority to effectuate its order by enjoining the state proceeding.").

For the foregoing reasons, the Court should grant AHS's to continue and modify the All Writs Act injunction, as set forth in AHS's motion.

Respectfully submitted,

/s/   John E. Goodman
One of the Attorneys for Defendant
American Home Shield Corporation

OF COUNSEL:

BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

D. Frank Davis, Esq.
John E. Norris, Esq.
DAVIS & NORRIS, LLP
2154 Highland Avenue
Birmingham, AL 32505

Lea Bone, Esq.
Bates & Bone LLP
2154 Highland Avenue
Birmingham, AL 35205
lbone@batesbone.com
*Attorneys for Plaintiffs: Laura Faught and Steven Faught*

Kirkland E. Reid, Esq.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
Post Office Box 46
Mobile, Alabama 36601
kreid@joneswalker.com
*Attorney for L.B. Chip Edleson and Karon Edleson*

John W. Davis
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA 92101
john@johnwdavis.com
*Attorney for Intervenors: John Chapon and Miriam Chapon*

R. Stephen Griffis
R. Stephen Griffis PC
2100 Riverhaven Drive, Suite 1
Hoover, AL 35244-2532
rsglaw@bellsouth.net
*Attorney for Intervenors: John Chapon and Miriam Chapon*

Charles M. Thompson
Charles M. Thompson PC
5615 Canongate Lane
Birmingham, AL 35242
mchapmanlaw@bellsouth.net
*Attorney for Intervenor: Charles M. Thompson*

Kearney D. Hutsler
Hutsler Law Firm
2700 Highway 280, Suite 320W
Birmingham, AL 35223
kdhlaw@hutslerlawfirm.com
*Attorney for Objectors: Connie Pentz, John Pentz, Sharon Lee,*
*Thomas Arrington and Todd Pettitt*

Pat Tulinski
Assistant Attorney General
300 West 15th Street, 9th Floor, MC 010
Austin, Texas 78701
Telephone: (512) 463-2185
Facsimile: (512) 473-8301
*Attorney for Purported Amicus Curiae, Attorney General of the State*
*of Texas*

and I hereby certify that I have served by facsimile and U.S. Mail the document to
the following non-CM/ECF participants:

Francis A. Bottini, Jr., Esq.
Brett M. Weaver, Esq.
JOHNSON BOTTINI, LLP
501 W. Broadway, Suite 1720
San Diego, CA 92101
Telephone: (619) 230-0063

Facsimile: (619) 238-0622
*Attorneys for Karon Edleson and L.B. Chip Edleson;*
*Objectors: Vivian F. Johnson, Janet Tzendzalian, Rosalyn Urbanek,*
*Merlyn D. Ling, Donald P. Leach, Robert W. Shepard, and Luz A.*
*Shepard*

David J. Worley, Esq.
Page Perry LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, Georgia 30338
Telephone: (770) 673-0047
Facsimile: (770) 673-0120
*Attorney for Karon and L.B. Chip Edleson*

Edward D. Chapman, Esq.
CHAPIN WHEELER LLP
550 West "C" Street, Suite 2000
San Diego, California 92101
Telephone: (619) 241-4810
Facsimile: (619) 955-5318
*Attorney for Karon and L.B. Chip Edleson*

Frank H. Tomlinson, Esq.
15 North 21st Street, Suite 302
Birmingham, AL 35203
Telephone: (205) 326-6626
Facsimile: (205) 328-2889
*Attorney for Objectors: John Howe, Jenny Hill, Jennifer Deachin,*
*Michael McKerley, Kenneth R. Behrend, Pamela Behrend, Jeff*
*Williams, Sabrina Williams f/k/a Sabrina Habib, and Janet K. Wood*


/s/ John E. Goodman
John E. Goodman