FILED

2010 May-11  PM 07:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| LAURA FAUGHT and STEVEN FAUGHT,<br><br>               Plaintiffs,<br><br>v.<br><br>AMERICAN HOME SHIELD CORPORATION,<br><br>               Defendant. | **Case No.  2:07CV1928:RDP**<br><br>**APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS OF COORDINATED OBJECTING CLASS MEMBERS**<br><br>[Opposed] |

# TABLE OF CONTENTS

I.  FACTUAL AND PROCEDURAL HISTORY ............................................................................1

II. OBJECTORS WERE BENEFICIAL TO THE COURT'S EVALUATION OF THE

PROPOSED SETTLEMENT ...................................................................................................4

A.  OBJECTORS HAVE TIMELY SUBMITTED THEIR FEE PETITION ............................5

B.  SUBSTANTIAL LEGAL AUTHORITY SUPPORTS AN AWARD OF FEES TO

OBJECTORS ........................................................................................................................6

C.  THE AMOUNT OF FEES SOUGHT BY OBJECTORS IS REASONABLE ...................  7

D.  OBJECTORS' COUNSEL SHOULD BE AWARDED A MULTIPLIER ..........................7

E.  COUNSEL'S FEE MAY BE PAID FROM PLAINTIFFS' ATTORNEYS' FEE

FUND, OR BY THE DEFENDANT, OR BOTH. ...........................................................10

III. CONCLUSION...................................................................................................................11

## **TABLE OF AUTHORITIES**

### **Cases**

*Arroyo Lopez v. Nuttall,* 25 F.Supp.2d 407 (S.D.N.Y.1998) ................................................. 5

*Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273 (11th Cir. Fla. 2006) .................................... 5

*Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal. App. 4th 387 (2005)................................................................................................................................. 9

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990)..................... 6

*Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527 (5th Cir. 1980) ................................... 6

*Gottlieb v. Barry,* 43 F.3d 474 (10th Cir.1994)...................................................................... 6

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhousecoopers*, 212 F.R.D. 400 (E.D. Wis. 2002) ........................................................................................ 8, 11

*In re Domestic Air Transp. Antitrust Litigation,* 148 F.R.D. 297 (N.D.Ga.1993) ................ 6

*In re Horizon/CMS Healthcare Corp. Securities Litigation,* 3 F.Supp.2d 1208 (D.N.M.1998) ......................................................................................................................... 6

*In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 21322 (S.D.N.Y. 2003) ..................................................................................................................................... 7

*In re Westinghouse Securities Litigation*, 219 F.Supp.2d 657 (E.D. Penn. 2002) ................ 6

*Maywalt v. Parker & Parsley Petroleum Co*., 864 F.Supp. 1422 (S.D.N.Y. 1994) .........…..6

*Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir.2002)..................................... 6, 10

*Rodriquez v. West*, 563 F. 3d 948 (9th Cir. 2009) ............................................................... 10

*Shaw v. Toshiba America Information Syst. Inc.,* 91 F.Supp.2d 942 (E.D.Tex. 2000).... 6, 11

*Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849 (10th Cir.1993) .............. 6

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002) ................................................. 6

*Weyant v. Okst,* 198 F.3d 311 (2d Cir. 1999) ........................................................................ 5

*White v. Auerbach*, 500 F.2d 822 (2d Cir. 1974) ................................................................... 6

### **Rules**

ABA Model Code Prof. Responsibility, DR 2-106(B)(8) ........................................................ 8

Fed. R. Civ. P. 54(d)(2)(B) ..................................................................................................... 5

### **Treatises**

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 105 (2007) ............................................................... 9

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 462 (2003).............................................................................. 9, 10

Harry T. Edwards, *Alternative Dispute Resolution: Panacea or Anathema*, 99 Harv. L. Rev. 668 (1986)................................................................................................................................ 9

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981) .. 8

Richard A. Posner, *Economic Analysis of Law* (4th ed. 1992) pp. 534, 567 ........................ 8

Objectors and absent class members Miriam and John Chapon, and Todd Pettitt, et al. (collectively "Objectors"), ask that this Court affirm the long-standing judicial policy acknowledging the important role that objectors play in ensuring that the class action approval process functions properly, and that objectors' counsel are entitled to an award of reasonable attorneys' fees for their efforts in making the process function properly.  Pursuant to ALND Uniform Initial Order ¶ 4(B), counsel have met and conferred concerning this fee application. Counsel for the lead plaintiffs indicated that his clients would oppose this application.  Counsel for defendant American Home Shield indicated that his client would likely oppose but had not confirmed AHS' opposition at the time of this writing.

## I.  FACTUAL AND PROCEDURAL HISTORY

1.      Plaintiffs Laura Faught and Steven Faught filed their original complaint against AHS in this case on October 22, 2007, and amended the complaint on October 6, 2009. The original and amended complaints challenge broadly AHS's policies and practices relating to the adjustment of claims submitted under AHS Home Services Contracts. Plaintiffs allege that AHS has engaged in a broad nationwide pattern of: (l) denying claims for coverage of appliances or their components that display signs of being inadequately maintained and/or cleaned; (2) deliberately breaching express provisions of its Home Service Contracts; and (3) relying upon a service diagnosis from service providers nationwide who stand to gain financially if the appliance at issue is denied coverage under the Home Service Contract, as they may then charge more to repair or replace the appliance than they could under the terms of their service agreements with AHS. Plaintiffs have asserted claims for breach of contract and bad faith, and seek money damages (both compensatory and punitive) for themselves and the proposed nationwide class, as well as declaratory and/or injunctive relief to require AHS to readjust claims that had been denied previously.

2.      On November 10, 2008, the parties notified this Court that Defendant had reached a nationwide settlement touching on the claims in this case in a separate class action pending in the

Superior Court of California for the County of San Diego. *Karon and L.B. Chip Edleson v. American Home Shield of California, Inc., et al.*, Case No. 37-2007-00071725-CU-BT-CTL. (See Doc. # 28 at 2). Thereafter, with the agreement of the parties, this court essentially stayed this action so as not to interfere with the California court's opportunity to determine whether the *Edleson* settlement should be approved.

3.      On March 26, 2009, Objectors filed their objection to the proposed *Edleson* settlement on the grounds that *inter alia* the proposed settlement offered no certain monetary restitution and the proposed injunctive relief was illusory.  The *Edleson* court agreed and denied final approval on July 8, 2009 finding, "Plaintiffs [in the *Edleson* action], other than the two lead plaintiffs, really get nothing more than a right to submit or resubmit claims to a defendant that has allegedly not acted in good faith on prior occasions. There are no guarantees claims will now be accepted or properly serviced, or that if improperly denied, plaintiffs have any realistic remedy."

4.      After the California Superior Court rejected the *Edleson* settlement, the parties to this case reported that fact to this Court, and promptly re-engaged their mediator and resumed negotiations.

5.      On October 9, 2010, the parties filed a Joint Motion for Preliminary Approval of Proposed Settlement.

6.      On October 20, 2009, this Court granted preliminary approval and certified a national class defined as: "All persons who have held a residential home warranty contract from AHS applicable to a house within the United States at any time from June 21, 2001 through October 19, 2009.  Excluded from this class are the defendant, any subsidiary or affiliate of the defendant, and any judge, arbitrator, or mediator who may adjudicate, arbitrate, or mediate this action." The Court appointed Laura Faught and Steven Faught as Class Representatives.

7.       After reviewing the *Faught* Notice to Class Members, Objectors were concerned that many of the same problems present in the *Edleson* matter were still present in the instant case. Accordingly, they filed an objection on February 8, 2010 concerning *inter alia* the value of the proposed relief to class members, the appearance of forum shopping, and excessive demands for

incentive payments by class members.  Objectors moved to intervene on February 16, 2010.  The Court granted the motion on February 18, 2010.

8.      On March 10, 2010, the Court conducted a fairness hearing to assess the fairness, adequacy, and reasonableness of the proposed settlement.  Objectors appeared at this hearing through counsel to voice their concerns.

9.      The Court approved the proposed settlement on April 27, 2010, in granting final approval, the Court recognized *inter alia* the following distinctions between the *Edleson* settlement and the *Faught* settlement that supported final approval:

> • Settlement Class Members need not wait 120 days from submission to the Review Desk to file suit.
>
> • AHS does not have a built-in opportunity to sell additional contracts.
>
> • The settlement contains additional safeguards to ensure notice goes to appropriate addresses.
>
> • Review Desk staff must have minimum of three years' experience.
>
> • AHS must add staff to the Review Desk if submissions are not processed timely.
>
> • AHS must meet specific deadlines on submissions to the Review Desk.
>
> • Review Desk employees must follow explicit instructions deciding submissions.
>
> • Review Desk decisions may be appealed.
>
> • Settlement Class Members who reject offers, file suit, and recover more than the amount offered by the Review Desk become entitled to attorney's fees equivalent to three times the difference or $5000, or a $1000 lump sum.  [Doc. 105 at 7-10; Doc. 43 at 6; Doc. 37 ]

The Settlement also provides for specific communications from AHS to Settlement Class Members regarding their Submissions within specified periods of time, a further benefit not included in the *Edelson* settlement. [Doc. 37-1 at ¶ 5.2].

## II. OBJECTORS WERE BENEFICIAL TO THE COURT'S EVALUATION OF THE PROPOSED SETTLEMENT

10.    Notwithstanding Objectors' opposition to the settlement agreement at the March 10, 2010 fairness hearing[1], reasoned scrutiny confirms that they beneficially contributed to the proceedings because their objections, in conjunction with objections raised by other parties, were a catalyst for improvement to the settlement.  Objectors were successful in defeating the *Edelson* settlement thereby paving the way for the improvements outlined in paragraph ¶ 9 above. Indeed,  Objectors' counsel met with counsel for the settling parties prior to the fairness hearing in the *Edelson* matter to discuss how the settlement could be improved.  The parties did not adopt Objectors' suggestions at that time.  However, after the *Edelson* court denied approval, the settling parties specifically adopted Objectors' proposed enhancements prior to the fairness hearing in *Faught* and, for the most part, prior to filing their Joint Motion for Preliminary Approval of Proposed Settlement.

11.    In this regard, objections to the proposed settlement were *successful* since their participation resulted in substantial improvements to the settlement and allowed class members to access benefits they would not have been afforded had the *Edelson* settlement been approved. Moreover, Objectors created an adversarial and critical context which benefitted this Court in its

---

[1] Objectors maintain that certain enhancements adopted by the parties after denial of the *Edelson* settlement were a step in the right direction. However, as they have also admonished the settling parties, several outstanding issues remain unresolved which preclude them from endorsing the final settlement.   The instant fee application is made without prejudice to Objectors' right to seek further judicial scrutiny of the settlement agreement in the Eleventh Circuit Court of Appeals.  In any event, should Objectors seek further judicial review, they would still be entitled to fees as discussed herein given their beneficial role.

review of the settlement and led to, *inter alia,* the Court's refusal to award lead plaintiffs their requested compensatory damage payment (without submitting to the Review Desk) in addition to an incentive payment, while absent class members were subjected to a lengthy claims process. After hearing argument from Objectors' counsel that lead plaintiffs should not be allowed to negotiate a separate peace with the defendant, the Court found that lead plaintiffs should be subject to the same claims process (". . . if the Review Desk process is good enough for the Class, it is good enough for the Faughts.") [Doc. 107, p. 13, ¶ C].  Thus, Objectors further aided the Court in addressing a patent conflict of interest or, at a minimum, an appearance of impropriety.

12.     In addition to the substantive improvements meant to address Objectors' concerns as discussed above, Objectors played an important role by giving the District Court access to information on the settlement's merits.  In this regard, Objectors served as a highly useful vehicle for class members, for the court, and for the public generally by:

- Raising pertinent questions about the terms or effects, intended or unintended, of the proposed settlement;

- Providing an *adversarial context* in which the court could consider the settlement and class counsel's fee request.  In this regard, Objectors prepared written objections, attended oral arguments and filed briefs;

- *Sharpening the debate* regarding the reasonableness of the settlement and/or fee by acting in the role of devil's advocate, clarifying issues, and requiring lead counsel and the settling defendant to *more fully brief the issues.*

## A.     <u>OBJECTORS HAVE TIMELY SUBMITTED THEIR FEE PETITION</u>

13.     This petition is timely pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure which provides in relevant part that, "Unless otherwise provided by statute or order of the Court, the motion [for attorney's fees] must be filed and served no later than 14 days after entry of judgment...."  *Weyant v. Okst,* 198 F.3d 311, 314 (2d Cir.1999); *Arroyo Lopez v. Nuttall,* 25 F.Supp.2d 407, 410 (S.D.N.Y.1998) (Chin, J.); *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273,

1278 (11th Cir. Fla. 2006). Here, final judgment was entered on April 27, 2010, and thus, the instant fee petition is timely.

## B.   SUBSTANTIAL LEGAL AUTHORITY SUPPORTS AN AWARD OF FEES TO OBJECTORS

14.     Numerous courts have held that efforts by objectors, *even if unsuccessful,* provide an adversarial context that fosters reasoned scrutiny of class action settlements and attorneys' fee requests. Courts have recognized that objectors "are entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *See also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 546 (5th Cir. 1980).[2]  *See also, In re Westinghouse Securities Litigation*, 219 F.Supp.2d 657, 660 (E.D. Penn. 2002) quoting *In re Horizon/CMS Healthcare Corp. Securities Litigation,* 3 F.Supp.2d 1208, 1214 (D.N.M.1998) (citing *Gottlieb v. Barry,* 43 F.3d 474, 491 (10th Cir. 1994), and *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 854 (10th Cir.1993). *See also Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 288 (7th Cir. 2002); *Shaw v. Toshiba America Information Syst. Inc.,* 91 F.Supp.2d 942, 973-74 (E.D.Tex. 2000); *In re Domestic Air Transp. Antitrust Litigation,* 148 F.R.D. 297, 359 (N.D. Ga. 1993).

15.     Likewise, in *Maywalt v. Parker & Parsley Petroleum Co.*, the court awarded a fee to an objector to a settlement even where the settlement was approved because the debate instigated by the objector shed light and provided greater certainty to the court's conclusions. *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F.Supp. 1422, 1439 (S.D.N.Y. 1994) *affirmed*, 67 F.3d 1072 (2d Cir. 1995). The *Maywalt* Court noted:

> The arguments and documentation presented by those supporting the Proposed
> Settlement in response to objections raised by Olick [objector] have shed

---

[2]  The conclusion in *White* that an objector is also entitled to an allowance for attorneys' fees and expenses was embraced by the Third Circuit in *In re Cendant Corp. PRIDES Litigation,* 243 F.3d 722, 743 (3d Cir. 2001) (concluding that attorneys' fees were appropriate for objector, represented by counsel, that successfully appealed attorneys' fee award for class counsel).

additional light and served to provide greater certainty to the Court's conclusion that the Proposed Settlement is fair, reasonable and adequate.  Without Olick's efforts, the degree of certainty for all concerned would have been lessened somewhat. Accordingly, Olick will be awarded fees and expenses …

16.     Similarly, in *In re Independent Energy Holdings PLC Securities Litigation*, Judge Scheindlin affirmed a fee award to objector's counsel even though the court concluded that it "would likely have reached the same result [concerning the reduction in Lead Counsel's fee request] with or without the objectors' comments."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 21322 (S.D.N.Y. 2003).  Indeed, notwithstanding this conclusion, Judge Scheindlin noted that that the "objectors certainly assisted the Court in making an appropriate fee award."  *Id.*

## C.     THE AMOUNT OF FEES SOUGHT BY OBJECTORS IS REASONABLE

17.     Objectors have a lodestar of $90,647.25 in attorneys' fees, and have incurred $1,138.57 in costs as set forth in the declarations of John W. Davis, R. Stephen Griffis, and C. Benjamin Nutley filed herewith.  Additionally, a multiplier between 1.5 and 2.0 is sought based on the contingent nature of the representation, the preclusion of other employment, and public policy grounds.  Accordingly, Objectors seek a total award of fees and costs not to exceed $182,433.07.

18.     Objectors' counsel handle numerous complex business litigation matters and have substantive experience in class action litigation.  This matter was handled on a purely contingent basis.  As a result of this engagement, Objectors' counsel were precluded from accepting other legal matters.

## D.     OBJECTORS' COUNSEL SHOULD BE AWARDED A MULTIPLIER

19.     Objectors' counsel should be afforded a reasonable multiplier on their lodestar.  An upward adjustment to the basic lodestar is appropriate in this case, in which all of the work has been done on a contingent basis with no guarantee that counsel would ever receive compensation for their time and effort.

20.     The economic rationale for fee enhancement in contingency cases has been explained as

follows: "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." Richard A. Posner, *Economic Analysis of Law* (4th ed. 1992) pp. 534, 567. "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."[3]; *see also* Rules Prof. Conduct, rule 4-200(B)(9) [recognizing the contingent nature of attorney representation as an appropriate component in considering whether a fee is reasonable]; ABA Model Code Prof. Responsibility, DR 2-106(B)(8) [same]; ABA Model Rules Prof. Conduct, rule 1.5(a)(8).)

21.     Such fee enhancements are intended to compensate for the risk of loss generally in contingency cases as a class.  In cases involving enforcement of constitutional, statutory and other important rights, but little or no damages, such fee enhancements may make such cases economically feasible to competent private attorneys.  "[M]ost lawyers of this quality do seem to consider the prospects of success and the fee recoverable before adding to their crowded calendars a case in which payment is contingent."[4]

22.     The risks inhering in prosecuting an objection to a class action settlement are very high. The risks far outstrip those faced by attorneys who prosecute typical contingent cases.   A settlement that has been given preliminary approval and for which notice has issued has enormous inertia.  There is, with few exceptions, a strong presumption in favor of approval of proposed settlements. The settlement usually has not only the strong support of the principal litigants and their sophisticated counsel, but also the favor of the trial court ruling on final approval. *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhousecoopers*, 212

---

[3]  John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)
[4] Leubsdorf, *supra,* 90 Yale L.J., at p. 501.

F.R.D. 400, 412 (E.D. Wis. 2002).  Consequently, settlements are approved in the vast majority

of cases in which there are objections.  Christopher R. Leslie, *The Significance of Silence:*

*Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 105 (2007)

("Courts have approved proposed settlements in over 90% of the cases in which class members

filed objections.").  Objections that result in a substantive change to a settlement are therefore

rare.  Indeed, the risk function faced by objectors' counsel is essentially the inverse of that faced

by other contingent-fee counsel who have a greater than 90% chance of settling their case before

a trial on the merits.[5]  At the same time, filing and prosecuting competent objections is costly,

relative to the potential benefit to any individual class member.  Leslie, 59 Fla. L. Rev. at 97-101.

23.     Worse, even objectors who are unquestionably successful in convincing a trial court to

reject a settlement entirely may well find themselves uncompensated.  *See generally* Edward

Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi.

Legal F. 403, 462 (2003) (noting that objectors are unlikely to be compensated for "major

victories" in which they "defeat a proposed settlement so thoroughly that the settlement is never

revived."); *see also e.g.*, *Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal.

App. 4th 387 (2005) (where plaintiff voluntarily dismissed case after objector defeated

settlement approval and class certification, there was no source of payment of fees for successful

objector's counsel).

24.     On the other hand, trial courts are sometimes too reluctant to acknowledge the

contributions of objectors when approving a settlement, even where the objectors have in fact

provided beneficial adversarial analysis.  *See, e.g.*, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d

277 (7th Cir. 2002) (noting that district court could not deny fees to objectors on the ground that

the court had already privately considered the arguments they later advanced); *Rodriquez v. West*,

563 F.3d 948, 963 (9th Cir. 2009) (vacating district court orders denying fees to objectors).

25.     Objecting to a class action settlement before a court requires knowledge and skills

---

[5]     Harry T. Edwards, *Alternative Dispute Resolution: Panacea or Anathema*, 99 Harv. L.
Rev. 668 (1986).

beyond those possessed by most lawyers not experienced in class action litigation, much less lay people. Leslie, *supra*, at 97-98. *See also generally* Brunet, *supra*, (arguing for policies that would encourage qualified lawyers to advise courts and act as external guardians of settlement fairness). Unfortunately, among lawyers who prosecute class actions and who therefore possess the type of experience required to object effectively, the prosecution of settlement objections is unpopular. Leslie, *supra*, 59 Fla. L. Rev. at 98-99; Brunet, *supra*, 2003 U. Chi. Legal F. at 411 ("[O]bjectors may be the least popular litigation participants in the history of civil procedure.")

26.     Successfully objecting to a proposed settlement is not only unpopular, it is difficult. It requires the analysis of numerous case documents and the production of argument within a very short window of time between the publication of the notice and the filing deadlines, typically with no assistance from the proponents of the settlement.  Brunet, *supra*, at 448 (objectors' counsel "have little time to collect their own information, formulate a coherent position, and formally object to the court."). That supports the award of a multiplier.

27.     For all of these reasons, an objection that assists a court and has an effect upon the final approval should be well-compensated, given the overall difficulty and risk encountered in achieving that status. Objector's counsel undertook to make this objection on behalf of their clients knowing that it could have negative consequences for them. If such work is not compensated at a reasonable rate, few truly qualified lawyers will agree to take on objections, and the class action process will lose the benefit of adversarial context when it comes to evaluating and approving settlements.

28.     Objectors' counsel believe that a multiplier between 1.5 and 2 is well within the bounds of reason given the risk and difficulty faced, and therefore ask that the Court award a multiplier of two on the basic lodestar.

**E.      COUNSEL'S FEE MAY BE PAID FROM PLAINTIFFS' ATTORNEYS' FEE FUND, OR BY THE DEFENDANT, OR BOTH.**

29.     In this case, the relief to the class is in the form of a "Review Desk", on a claims-made

basis.  There is necessarily no class fund from which fees can be taken.  In such a case, the fees are often awarded from the fund created by the cash fee award to class counsel, but there is also authority to order the fees to be paid by the defendant and by plaintiffs' counsel jointly.  See, e.g., *Shaw*, 91 F.Supp.2d at 974 (finding that objector's counsels' fee should not be taken from the class fund, but rather borne by plaintiffs' counsel and the settling defendant, apportioned as they might agree); questioned but followed, *Great Neck Capital*, 212 F.R.D. at 416-17 (questioning courts' authority to require defendant to pay, but following *Shaw*).

## III.  CONCLUSION

30.     Objectors' contributions to this litigation substantially increased the value of the settlement for class members.  Based on the benefit provided to the class, and the Court, as discussed above, Objectors respectfully request that this Court grant their application for an award of attorneys' fees and costs.


Dated:  May 11, 2010                          Respectfully submitted,


                                              /s/  John W. Davis                              .
                                              John W. Davis (admitted *pro hac vice*)
                                              Law Office of John W. Davis
                                              501 W. Broadway, Ste. 800
                                              San Diego, California  92101
                                              Telephone:  (619) 400-4870
                                              Facsimile:  (619) 342-7170